# EXHIBIT D

# North·South Center

# A PANORAMA OF BRAZILIAN LAW

Editors
Jacob Dolinger
Professor of Law at the State University of Rio de Janeiro
and Keith S. Rosenn
Professor of Law at the University of Miami

Published jointly by the North-South Center
and Editora Esplanada Ltda.



GRUPO GILBERTO HUBER

1992

UNIVERSITY OF MIAMI
LAW LIBRARY
UNIVERSITY OF GEORGIA

# BRAZILIAN INTERNATIONAL PROCEDURAL LAW

Jacob Dolinger

Professor of Law, State
University of Rio de Janeiro (UERJ)

## I. INTRODUCTION

International Procedural Law, usually studied as an appendix to Private International Law, should be an introduction to the study of International Conflict of Laws. In practical terms, it makes little sense to search for the applicable law for purposes of conflict of laws before deciding on where the case will be tried, for this jurisdiction will select the law to be applied in accordance with its own choice of law rules. Employing the terminology of the early Italian private internationalists, first one should be concerned with *ordinatoria litis*, the rules of procedure, and only later with *decisoria litis*, the rules that will decide the merits of the case. The former will invariably be decided according to rules of *lex fori*, the latter by *lex causae*, which may, but need not, coincide with the law of the forum.

The main focus of this article is on jurisdictional questions. Over which international cases do Brazilian courts have jurisdiction? In cases in which Brazilian courts have jurisdiction, when is it concurrent with the jurisdiction of other States and when is it exclusive? (Part I). Consideration of this issue requires the study of recognition and enforcement of foreign judgments (Part II). Each State's rules on the scope and extent of its own jurisdiction can indirectly turn into rules of limitation of foreign jurisdiction and thus condition recognition and enforcement of foreign judgments. Letters rogatory will be examined as a subject ancillary to recognition of foreign judgments. Representation of foreign corporations has also been included as a subject connected with the jurisdiction of Brazilian courts.

Recognition of foreign judgments, however, will not include foreign arbitral awards.[1] Nor are minor procedural matters, such as the *cautio judicatum solvi* (a

---
[1] On recognition and enforcement of foreign arbitral awards, see Paul Griffith Garland, *American-Brazilian Private International Law* 81 (1959); Keith S. Rosenn, "Enforcement of Foreign Arbitral Awards in Brazil," 28 *American Journal of Comparative Law* 498 (1980); Vicente Marotta Rangel, "Brazil," in *International Handbook on Commercial Arbitration, National Reports Basic Legal Texts* (1988); José Carlos Barbosa Moreira, "Improving the Procedures for the Enforcement and Recognition of Foreign Judgments and Arbitral Awards," in *Justice and Efficiency-General Reports and Discussions, Eighth World Conference on Procedural Law* 191, 217-220 (1980); Jacob Dolinger, "Brazilian Confirmation of Foreign Judgments," 19 *International Lawyer* 853, 870-73 (1985).

litigation bond) for non-resident plaintiffs, formalities related to foreign documents and proof of facts that occurred abroad. Three major subjects — diplomatic and state immunities, international procedure in labor cases and international criminal procedure — are also omitted because they demand more specific and independent studies.

Considering the international character of the subjects dealt with, references are made to certain foreign systems and international convention rules for a better understanding of the Brazilian law. Because the only court with jurisdiction to grant recognition of foreign judgments and enforcement of letters rogatory is Brazil's Federal Supreme Court (*Supremo Tribunal Federal*), considerable attention has been devoted to its decisions.

## II. JURISDICTION OF BRAZILIAN COURTS

Brazilian jurisdictional rules on international matters are set out in the Law of Introduction to the Civil Code[2] and in the Code of Civil Procedure.[3] Article 12 of the Law of Introduction provides that "the Brazilian judiciary has jurisdiction when the defendant is domiciled in Brazil or the obligation has to be performed in Brazil. § 1 — Only the Brazilian judiciary has jurisdiction in actions regarding immovable property located in Brazil."

The Code of Civil Procedure enlarged the spectrum of the jurisdiction of the Brazilian judiciary under the heading of "International Jurisdiction." Articles 88 and 89 set forth the following rules:

Article 88 — The Brazilian judiciary has jurisdiction when:

I — the defendant, whatever his nationality, is domiciled in Brazil;

II — the obligation has to be performed in Brazil;

III — the case originates from a fact that occurred in Brazil or from an act that was practiced in Brazil.

Sole paragraph — For the purposes of subsection I, a foreign legal entity is considered domiciled in Brazil when it has an agency or a branch here.[4]

Article 89 — The Brazilian judiciary has exclusive jurisdiction:

I — over suits related to immovable property located in Brazil;

---

[2] Law of Introduction to the Brazilian Civil Code, approved by Decree-Law No. 4657, Sept. 4, 1942, as amended by Law No. 3238 of Aug. 1, 1957, which replaced the Introduction to the Brazilian Civil Code of 1917 and contains the bulk of Brazilian Rules on Private International Law.

[3] Law No. 5.869 of Jan. 11, 1973, institutes the Code of Civil Procedure, in force since Jan. 1, 1974. This Code governs procedural matters in both federal and state courts. On the basic structure and content of the Code, see José Carlos Barbosa Moreira, "Brazilian Civil Procedure — an Overview" in this "Panorama". The jurisdiction of the Federal Supreme Court and of federal judges in cases concerning foreign States and international organizations is set out in the 1988 Constitution, arts. 102, 105 and 109.

[4] The sole paragraph of Article 88 will be examined below in the context of representation of foreign legal entities.

II — concerning inheritance and procedure of division of property located in Brazil, even if the deceased was a foreigner and had lived abroad.

The three rules of Article 88 follow the old principles of "*actor sequitur forum rei*," "*actor sequitur forum executionis*" and "*actor sequitur forum facti causans*." Subsection I of Article 88 coincides with the defendant's domicile rule of Article 2 of the Brussels Convention,[5] with Articles 42 and 43 of the French Code of Civil Procedure, and with the U.S. Restatement Second, Conflict of Laws, Rule 29 and Restatement Third, The Foreign Relations Law of the United States § 421 (2) (b). Subsections II and III of Article 88 correspond to Article 5 (1) and (3) of the Brussels Convention. Mere presence in the forum state, which is an established jurisdictional rule in England[6] and in the United States,[7] has never been accepted in Brazil when the defendant has a known domicile abroad.

### A. JURISDICTION AND COMPETENCE

Brazilian procedural law is highly influenced by the great Italian writers, mainly Carnelutti and Chiovenda, and, in international procedural law, also by Gaetano Morelli.[8] Jurisdiction and competence, two terms that will be frequently used in this article, have to be defined in order to avoid confusion. Gaetano Morelli[9] says that while the rules of the "so-called international or jurisdictional competency" circumscribe the powers of the State's judiciary, the rules of the "real and proper competency" indicate the specific judicial authority for each case. Amilcar de Castro[10] refers to Chiovenda's distinction: jurisdiction is the power to adjudicate as considered between government and litigating parties, whereas competence is the same power as considered among judges and courts in relation to each other. Quoting João Mendes, Castro says that "competence is the measure of jurisdiction." Further, Castro distinguishes between "general competence" (jurisdiction) and "special competence". The first will indicate the competence of the courts of one country in relation to other countries, and the latter will indicate, within the judiciary of one particular country, which is the competent court for a specific case. Pontes de Miranda makes the same distinction between "*jurisdição*" and "*competência*".[11]

---

[5] Convention Concernant la Compétence Judiciaire et l'Exécution des Décisions en Matière Civile et Commerciale, Bruxelles, (Sept. 27, 1968).

[6] 1 Dicey and Morris, *On the Conflict of Laws* Rule 23 (L. Collins ed., 11th ed. 1987). See Andreas F. Lowenfeld, "Conflict of Laws English Style," 37 *American Journal of Comparative Law* 357-360 (1989).

[7] American Law Institute, *Restatement Third, the Foreign Relations Law of the United States* § 421 (2) (a) (1987) [hereinafter cited as Restatement For. Rel. 3d].

[8] Gaetano Morelli, *Il Diritto Processuale Civile Internazionale* (Padova 1938) (this author has worked with a Spanish translation, Buenos Aires, 1953).

[9] *Id.* at 86.

[10] Amilcar de Castro, *Direito Internacional Privado* 500 (1977).

[11] Pontes de Miranda, 2 *Comentários ao Código de Processo Civil* 172 (1974). See Serpa Lopes, 3 *Comentário Teórico e Prático da Lei de Introdução ao Código Civil* 204 (1946). Hélio Tornaghi says

352

The briefest distinction is probably of Martha Weser,[12] who defines *compétence générale: vocation de l'ensemble des tribunaux d'un Etat de connaître d'un litige; compétence spéciale: vocation d'un tribunal déterminé d'un Etat de connaître d'un litige.*"[13] When the Brazilian Code of Civil Procedure's title to Articles 88-90 refers to "International Competence," it is actually referring to international jurisdiction or to "*compétence générale.*" This is also true for all the references to "*compétence*" in the Law of Introduction and in articles 88 and 89 of the Code of Civil Procedure.

The distinction made in U.S. Conflict of Laws is similar.[14] The Restatement of Conflict of Laws declares that "the fact a state has judicial jurisdiction does not mean that it has given power to a particular court to entertain the action. The state may not have chosen to exercise its jurisdiction in the given situation or, as happens more frequently, may have entrusted the exercise of its jurisdiction to some court other than the court in question."[15] The same distinction is found in The Restatement of the Foreign Relations of the United States: "International law addresses the exercise of jurisdiction by a state; it does not concern itself with the allocation of jurisdiction among domestic courts within a state for example, between national and local courts in a federal system."[16] A subsequent comment states: "This Restatement does not deal with other conditions for the exercise of jurisdiction to adjudicate, sometimes referred to as 'subject matter jurisdiction,' such as the authority of a particular court to hear a given dispute."[17] Although not very clearly expressed, it seems that Robert Casad's distinction between jurisdiction and competence is in harmony with the above.[18]

### B. CONCURRENT JURISDICTION AND EXCLUSIVE JURISDICTION

Article 12 of the 1942 Law of Introduction to the Brazilian Civil Code makes a clear distinction between the Brazilian judiciary's exclusive and non-exclusive jurisdiction. In cases where the defendant is domiciled in Brazil or the obligation has to be performed in Brazil, Brazilian jurisdiction is not exclusive. In actions involving immovable property located in Brazil, the jurisdiction of the Brazilian judiciary is exclusive, meaning that no other country's jurisdiction is acceptable.

353

Article 15 of the original Introduction to the Civil Code (1917) provided that "Brazilian courts always have jurisdiction in actions against persons domiciled or resident in Brazil, arising from obligations contracted or from responsibilities incurred in this or in another country." The Law of Introduction to the Civil Code of 1942, which replaced the earlier statute, omitted the word "always," an omission long understood as a change from exclusive jurisdiction to concurrent jurisdiction. Since 1942, Brazilian jurisdiction has only been exclusive in actions concerning immovable property.[19]

Cases falling under Brazilian's judicial "concurrent jurisdiction" can be brought before a foreign jurisdiction. This is accepted either if the original agreement between the parties chooses that forum,[20] or if the party that is domiciled in Brazil or is otherwise entitled to Brazilian jurisdiction under Article 88 (II) or (III) chooses to sue the other party in a foreign jurisdiction or submits to the foreign jurisdiction by presenting a defense in a case brought against him. Simply denying the court's jurisdiction, by filing an appearance to contest jurisdiction -the-so-called special appearance — does not constitute a submission.

This is the general opinion of Brazilian commentators of the Code of Civil Procedure,[21] of private international law authors[22] and has been applied by the Federal Supreme Court in recognition proceedings of foreign judgments.[23] The

---

[that "the rule that determines competence limits the jurisdiction," which means that rules of competence will say that the jurisdiction of a certain state can only be exercised by this, that or those courts. Hélio Tornaghi, 1 *Comentários ao Código de Processo Civil* 289-290 (1974).]

[12] Martha Weser, *Convention Communautaire sur la Compétence Judiciaire et L'Exécution des Décisions* XXV (1973).

[13] Henri Batiffol, 2 *Droit International Privé* 509 (1983) refers to the distinction between "pouvoir de juridiction" and "compétence" in German law. On the distinction between international and internal competence, see id. at 562, 570-571.

[14] See Scoles and Hay, *Conflict of Laws* 216 (1982).

[15] American Law Institute, *Restatement of the Law Second, Conflict of Laws* (1971) [hereinafter cited as Restatement Conflicts 2d], introductory note to Chapter 3 on Judicial Jurisdiction at (c).

[16] Restatement For. Rel. 3d, § 421, comment (f), at 307.

[17] Id., at § 421, Comment (j), at 308.

[18] Robert C. Casad, "Civil Judgment Recognition and the Integration of Multi-State Associations: A Comparative Study", 4 *Hastings International and Comparative Law Review* 13 (1980). See infra n. 109 and accompanying text.

[19] This has become even clearer in the 1973 Code of Civil Procedure because of the different language employed in Articles 88 and 89, cited in the text earlier. Article 88 sets forth the Brazilian judiciary's concurrent jurisdiction, while Article 89 determines the Brazilian judiciary's exclusive jurisdiction.

[20] On the acceptance by Brazil of choice-of-forum agreements, see Paul Griffith Garland, *supra* note 1, a 90-93. On the concept of "exclusive jurisdiction," see Friedrich K. Juenger, "The Recognition of Money Judgments in Civil and Commercial Matters," 36 *American Journal of Comparative Law* 18, n. 73 (1988). Batiffol, *supra* note 13, at 564, points out that a forum-selection clause creates exclusive jurisdiction, which is the rule contained in Article 17 of the Brussels Convention.

[21] Celso Agrícola Barbi, 2 *Comentário ao Código de Processo Civil* 396 (1975); Hélio Tornaghi, *supra* note 11, at 307.

[22] Haroldo Valladão, 3 *Direito Internacional Privado* 137 (1980); Oscar Tenório, 2 *Direito Internacional Privado* 360 (1976); Amilcar de Castro, *supra* note 10, at 510.

[23] Immediately after the enactment of the 1942 Law of Introduction to the Civil Code, the Federal Supreme Court began confirming foreign judgments in which Brazilian domiciled defendants (individuals or corporations) had submitted themselves to foreign jurisdictions. In the leading case — Sentença Estrangeira [hereinafter referred to as SE] — No. 22.060, 75 *Arquivo Judiciário* 409 (1945), the Brazilian Supreme Court confirmed an English judgment in which the Brazilian domiciled defendant had agreed to submit himself to arbitration in England. The Court cited from Cheshire, *Private International Law* that "The principle of submission means that a person may voluntarily submit himself to the judgment of a Court to whose jurisdiction he would not otherwise be subject."
"If he does so he cannot afterwards say that the judgment of that Court is not binding upon him."
The Supreme Court added that after having submitted himself to a foreign jurisdiction, it is a matter of "loyal play" of the litigating party to respect the decision of that jurisdiction.

same or similar rules are found in the 1928 Bustamante Code,[24] in Articles 17 and 18 of the Brussels Convention,[25] in American statute and case law,[26] as well as in French law[27] and in English law.[28]

## C. COMPETENT JURISDICTION IN CONTRACTUAL MATTERS

Article 88 of the Code of Civil Procedure has been interpreted to mean that the presence of any one of the three requisites enumerated therein is by itself enough to determine that the Brazilian courts have jurisdiction.[29] The Brazilian choice of law rule for contractual matters is the law of the state where the agreement was constituted.[30] Yet for remedial purposes the Code of Procedure provides that the ruling factor can also be the place where the obligation is to be performed.[31]

Isolated applications of rules II and III of article 88 of the Code are rare. They have been applied in only two known cases, one decided by the Tribunal of Justice in São Paulo and the other by the Tribunal of Justice in Rio de Janeiro. In the first, Columbian Carbon Company and Panama Processes S.A., two North American companies, signed a shareholder agreement concerning distribution of dividends by Coperbrás S.A., a Brazilian corporation. The agreement was drawn in English in accordance with New York law. Coperbrás brought a declaratory action in the courts of São Paulo. The defendant, Panamá Processes S.A., claimed that since the agreement was made in accordance with New York law, a Brazilian court had no jurisdiction to interpret and declare the exact meaning of the contract. The contention was dismissed by the São Paulo Court because the shareholder's agreement was meant to be performed in Brazil. The dividends would have to be distributed in Brazil, which gave the Brazilian courts jurisdiction to adjudicate in accordance with Article 88 (II) of the Code of Civil Procedure and Article 12 of the Law of Introduction to the Civil Code.[32]

In *N.V.A. Maas & Co. S.A. v. Eric Emborg Export A/S*,[33] a Belgian company sued a Danish company for freight payments received by the defendant and not reimbursed to the plaintiff. Defendant moved to dismiss the case on the ground that Brazil was not the proper jurisdiction because both parties were not Brazilian domiciliaries and the agreement was to be performed outside of Brazil. The Tribunal of Justice of Rio de Janeiro decided that Brazil had jurisdiction because the agreement had been signed in Brazil, basing its decision on Article 88 (III) of the Code of Civil Procedure.

## D. PROPER JURISDICTION IN FAMILY MATTERS

Article 100 (I) of the Code of Civil Procedure creates an exception to the general rule that the competent court is the place of the defendant's domicile, providing that the *forum* of the woman's residence is competent for suits involving judicial separations, divorce and marriage annulment. This rule has been interpreted as conferring a preferential forum on wives, whether plaintiff or defendant, or whether remaining in the family's original domicile or leaving for another city or state. Even when a legal separation has been granted by a court of one state, conversion of the separation into a divorce may be decided by the court at the woman's new residence, regardless of where in Brazil that may be.

Some authorities and judges have understood that this special procedural privilege for wives also applies to international cases.[34] Judge Basileu Ribeiro Filho of the Tribunal of Justice of the State of Rio de Janeiro wrote in a dissenting opinion that "if the law does not permit a woman who is a resident of Porto Alegre, São Paulo or even Niterói (a neighboring city of Rio de Janeiro) to be sued in Rio de Janeiro, it would be highly incoherent to allow her to be sued here when she resides in another country, from where her defense becomes even more difficult and costly."[35] In a Mexican divorce action in which an attempt was made to serve a wife domiciled in Brazil by letter rogatory, Chief Justice Antonio Neder rejected enforcement of the letter rogatory, referring to the opinions of Pontes de Miranda and Haroldo Valladão that the jurisdiction of the wife's domicile is a benefit that

---

[24] The Bustamante Code — Convention of Private International Law, signed at Havana, February 20, 1928, League of Nations, Treaty Series No. 1,950 (1929), ratified by Brazil through Decree No. 18,871 of Aug. 13, 1929 — contains rules on express and implied submission to courts, stating: "Art. 321 — By express submission shall be understood the submission made by the interested parties in clearly and conclusively renouncing their own court and unmistakably designating the judge to whom they submit themselves."
"Article 322 — Implied submission shall be understood to have been made by plaintiff from the fact of applying to the judge in filing the complaint, and by the defendant from the fact of his having, after entering his appearance in the suit, filed any plea unless it is for the purpose of denying jurisdiction. No submission can be implied when the suit is proceeded with as in default."

[25] See *supra* note 5.

[26] See U.S. Uniform Foreign Judgments Recognition Act 5 (a) 2, 13, U.L.A. 419 (1962) and Royal Bank of Canada v. Trentham Corp., 491 F. Supp. 404, 406 (S.D. Tex 1980). This case decided that if the defendant did not appear in the foreign action, he will be allowed to contest the issue of jurisdiction when the judgment is presented for recognition by an American court.

[27] Batiffol, *supra* note 13, at 566.

[28] Lowenfeld, *supra* note 6, at 361 and especially 367-9.

[29] Celso Agrícola Barbi, *supra* note 21, at 397.

[30] Article 9 of the Law of Introduction to the Civil Code provides: "To characterize and regulate obligations, the law of the country in which they are constituted shall be applied."

[31] Code of Civil Procedure, art. 88 (II).

[32] Agravo de Instrumento No. 3,124-0, 85 *Revista de Jurisprudência do Tribunal de Justiça do Estado de São Paulo* 271 (1983). "Agravo de Instrumento" is an appeal to a higher court on matters of procedure.

[33] Apelação Cível No. 825, Court of Appeals of the Rio de Janeiro State, Diário de Justiça of May 12, 1986, p. 2287. "Apelação" is an appeal to a higher court on a final decision of the lower court.

[34] Pontes de Miranda, *supra* note 11, at 241; Haroldo Valladão, 2 *Direito Internacional Privado* 129-130 (1977).

[35] Agravo de Instrumento No. 3,737 of 1981. The same opinion was expressed by Sérgio de Andréa Ferreira, "A competência internacional da justiça brasileira e o foro nas ações de desquite," 246 *Revista Forense* 275 (1974).

extends to international cases.[36] The Federal Supreme Court has at least one decision that did not accept the wife's domicile as a preferential jurisdiction when she was domiciled abroad.[37]

Article 100 (I) of the Code of Civil Procedure has probably been revoked by the of the 1988 Constitution.[38] The prevailing jurisdiction in family cases will henceforth be ruled by the defendant's domicile for both domestic as well as for international cases.

## E. CASES RELATED TO FOREIGN IMMOVABLE PROPERTY

The rule that only the Brazilian judiciary has jurisdiction over immovable property located in Brazilian territory has been derived from the principle of sovereignty. A commentator on the Code of Civil Procedure has written that "a State cannot permit the jurisdiction of another State to decide over matters related to immovables located in its territory without renouncing its sovereignty."[39] Another reason for the rule is that since any decision concerning immovable property can only be enforced in the forum where the property is located, the proper jurisdiction for any adjudication has to be the forum of that location.[40] Conversely, whenever the law of the State where the immovable property is located does not permit a foreign court to exercise jurisdiction over property located within its territory, it makes no sense for the Brazilian judiciary to accept jurisdiction over any lawsuit concerning such property because any decision would be unenforceable.[41] Nevertheless, in two published cases involving immovable property located in Paraguay, Brazilian courts refused to accept defendants' motions to dismiss for lack of Brazilian jurisdiction because the actions were *in personam*. In *Nerio Guelsi v. Celso Ribeiro de Farias*,[42] plaintiff brought an action to annul an agreement to sell a piece of land in Paraguay. Defendant moved to dismiss for lack of jurisdiction, claiming that only the Paraguayan judiciary could adjudicate the case. Both the trial court of Umuarama and the Tribunal of Justice of the State of Paraná decided that Brazil had jurisdiction to try the case under Article 88 of the Code of Civil Procedure because: 1) defendant was domiciled in the state of Paraná, Brazil; 2) the obligation contained in the agreement was to be performed in Brazil[43] and 3) the case originated from an agreement that had been executed in Brazil. Any of these three conditions is enough to establish jurisdiction of the Brazilian judiciary. In this case, all three conditions were present. The Tribunal of Justice did not expressly state but implied that crucial to its determination to apply the rule of Article 88 was that it had *in personam* jurisdiction.

In *Felix Pereira da Silva v. Faustino Ferreira Mendes*, plaintiff had signed an agreement to buy a piece of land in Paraguay from the defendant. After paying the full price, the buyer sued the defendant to force him to sign the final deed of sale. The court of the County of Foz do Iguaçu decided that the Brazilian judiciary had no jurisdiction to decide a case concerning land in Paraguay. The Tribunal of Justice of the State of Paraná affirmed, stating that because Brazilian courts have exclusive jurisdiction to decide cases related to land located in Brazil, *a contrario sensu*, they have no jurisdiction to decide with respect to land located in another country.[44] Plaintiff appealed to the Federal Supreme Court, arguing that the claim was *in personam*, that it involved performance of an obligation by the defendant; and that in the original agreement the parties had expressly chosen the Brazilian forum of Foz do Iguaçu, which coincided with the defendant's domicile. Plaintiff also alleged he already brought suit against the defendant in Paraguay, only to have the Paraguayan courts decide that they had no jurisdiction, as proven by copies of two decisions of Paraguayan courts. The Federal Supreme Court reversed the courts below, holding that Brazilian courts had jurisdiction.[45] The Court sided with the authorities who interpret Article 89 (I) restrictively, i.e. that exclusive Brazilian jurisdiction applies only in cases *in rem*, and not in cases *in personam*. The case was clearly derived from an obligatory, personal relationship, so there was no reason to exclude Brazilian jurisdiction.[46] The Federal Supreme Court refused to accept the *a contrario sensu* interpretation. There is no reason to infer that in a case concerning real estate located in another country only its judiciary will have jurisdiction. "A different rule of private international law may exist there."[47]

---

[36] See Carta Rogatória No. 3.110 (Mexico), 93 *Revista Trimestral de Jurisprudência* 966 (1980). In this case there was a special aspect because the woman had already served her Mexican husband in Mexico through a letter rogatory in a suit to annul her marriage which, according to Justice Neder, made it impossible to proceed with the *exequatur*. "Carta Rogatória" is the equivalent to Letter Rogatory. Revista Trimestral de Jurisprudência, hereinafter cited as RTJ, publishes most, but not all, decisions of the Brazilian Supreme Court.

[37] Recurso Extraordinário No. 69.408, 45 *Rev. Jur. TJ São Paulo* 75 (1977). The "Recurso Extraordinário" — extraordinary appeal — was adapted from the U.S. writ of error. See Keith S. Rosenn "Civil Procedure in Brazil," 34 *American Journal of Comparative Law* 510 (1986).

[38] Const. of 1988, arts. 5 (I) and 226 § 5. The former is a general equal protection guarantee and the latter provides that "men and women are equal in their rights and obligations."

[39] Hélio Tornaghi, *supra* note 11, at 308.

[40] *Id.*

[41] Oscar Tenório, *supra* note 22, at 366.

[42] Agravo de Instrumento No. 121/85, decided by the Third Chamber of the Tribunal of Justice of the State of Paraná, 1985, in *Boletim Adcoas*, No. 110,169.

[43] The Court did not elaborate, but most probably the request for annulment of the agreement was based on some obligation the other party had to perform in Brazil and did not accomplish.

[44] Batiffol says that a State's rules on the jurisdiction of its courts can become *indirectly* the basis for the rules of the jurisdiction of the foreign courts. *Supra* note 13, at 442.

[45] Recurso Extraordinário No. 90.961, 90 RTJ 727 (1979).

[46] Hélio Tornaghi restricts Article 89 of the Code of Civil Procedure to actions *in rem*. *Supra* note 11, at 308. Pontes de Miranda wrote that the Code speaks of "suits related to immovable property located in Brazil" and not only of cases *in rem*. *Supra* note 11, at 195.

[47] Oscar Tenório wrote that if the law of the country where the immovable property is situated permits Brazilian courts to exercise jurisdiction, there would be no obstacle to the exercise of such jurisdiction.

The Code of Civil Procedure has been criticized by Celso Agrícola Barbi for not excluding suits concerning immovable properties located in other countries from Brazilian jurisdiciton.[48] Barbi points out that Article 136 of the 1939 Code of Civil Procedure provided Brazilian jurisdiction based on the defendant's domicile in cases concerning real estate located abroad. The 1973 Code failed to reproduce this rule, and it would have been better, concludes Barbi, had the 1973 Code expressly excluded Brazilian jurisdiction in such cases.[49]

French courts do not have jurisdiction over *in rem* cases concerning immovable property located abroad. Because only the local courts can enforce any judgment on immovables, only the courts where the property is located were considered to be the only proper ones.[50]

Article 16 (1) of the Brussels Convention confers exclusive jurisdiction on the courts of the State where an immovable is located *in rem* cases. The Court of Justice of the European Communities has decided that suits concerning rental of immovables are included in the rule of Article 16, (1).[51] In Brazil, rental contracts are considered *ad personam*. According to Tornaghi's opinion,[52] Brazil might accept foreign jurisdiction in a case related to such contracts.

F. INHERITANCE PROCEEDINGS

One of the best known cases in Brazilian private international law involved the inheritance of Gabriela Bezansoni Lage Lillo, an opera singer who inherited a vast estate from her husband, Henrique Lage. She died domiciled in Italy. In her will, she bequeathed part of her fortune to the poor people of Rome, nominating Cardinal Fernando Cento as executor of the will. When the probate proceeding was presented to the court in Rio de Janeiro, the Cardinal challenged the jurisdiction of the Brazilian courts. The Court of the State of Guanabara (today the State of Rio de Janeiro) decided that it had jurisdiction because the estate was all located in Brazil.[53] This judgment was rendered in 1966, when civil procedure was governed by the 1939 Code, which lacked a rule similar to Article 89 (II) of the 1973 Code of Civil Procedure providing for exclusive jurisdiction of the Brazilian courts over inheritance of property located in Brazil. The decision was based on the opinion of the authorities in private international law, mainly Haroldo Valladão and Oscar

---

*Supra* note 22, at 366. But see *infra* at note 59 and its accompanying text a decision of the Federal Supreme Court that favored the *a contrario sensu* interpretation.

[48] Celso Agrícola Barbi, *supra* note 21, at 398.

[49] *Id.* at 399.

[50] Batiffol, *supra* note 13, at 492.

[51] Case No. 24/83, *Roesler v. Rottwinkel*, [1985] 3 W.L.R. 898.

[52] See *supra* n. 46.

[53] Agravo de Instrumento No. 18.882, 15 *Revista de Jurisprudência do Tribunal de Justiça do Estado da Guanabara* 124 (1961).

Tenório, who had written that the Brazilian judiciary has exclusive jurisdiction over inheritance proceedings of estates located in Brazilian territory, based on Article 12 § 1 of the Law of Introduction.

The Brazilian Supreme Court has denied recognition of foreign judgments adjudicating title to inheritance of property located in Brazil, even though the deceased and the heirs were foreigners domiciled abroad. In the case of *Lorna Daft*,[54] the Federal Supreme Court denied recognition to a judgment of the Probate Court of Jackson, Michigan, which had awarded real property located in the state of São Paulo to the widow of the deceased, an American citizen domiciled in the U.S. This was the first decision based on Article 89 (II) of the Code of Civil Procedure. This leading case on the 1973 Code of Civil Procedure has been followed by similar decisions of the Supreme Court.[55]

Where an estate is composed of property located in Brazil and other property located abroad, Haroldo Valladão recommends two separate inheritance proceedings, one in each country for the property located in each territory.[56] This solution coincides with the French law on the subject.[57]

Article 327 of the Bustamante Code provides that the proper jurisdiction in inheritance proceedings is where the deceased had his last domicile, which conflicts with the Brazilian rule contained in article 89 (II). The policy of the Federal Supreme Court is that the Brazilian rule of exclusive jurisdiction contained in both sections of Article 89 is a matter of public policy and will prevail over the Bustamante Code. The Brazilian Supreme Court also takes the position that when a conflict occurs between a statute and a international convention, the latter in time will prevail.[58] The Law of Introduction to the Civil Code (1942) and the Code of Civil Procedure (1973) were both enacted after the Bustamante Code (1928). The Supreme Court has interpreted Article 89 (II) *a contrario sensu*, i.e, to mean that Brazilian judiciary has exclusive jurisdiction for the inheritance proceedings for estates located in Brazil, and a foreign court has exclusive jurisdiction over estates situated in that country.[59]

Chief Justice Antonio Neder has decided that while foreign divorce judgments may be confirmed, judgment's division of a couple's Brazilian property cannot be because the Brazilian Courts have exclusive jurisdiction over real property located in Brazil.[60] Although Article 89 (II) refers to division of

---

[54] SE No. 2289, in *Sentenças Estrangeiras* 561 (1975).

[55] See SE No. 2.151, 78 RTJ 48 (1976); SE No. 2.293, 78 RTJ 675 (1976); SE No. 3.780, 121 RTJ 924 (1987); SE No. 4013, 125 RTJ 507 (1988).

[56] Haroldo Valladão, *supra* note 22, at 230.

[57] Batiffol, *supra* note 13, at 492-493. See also 76 *Revue Critique de Droit International Privé* 87 (1987).

[58] The leading case is Recurso Extraordinário No. 80.004, 83 RTJ 803 (1977).

[59] Recurso Extraordinário No. 99.230, 110 RTJ 750 (1984).

[60] SE No. 2567, 96 RTJ 59 (1980).

inheritance property, this Supreme Court decision extended the rule to division of matrimonial property in divorce procedures.

## G. A CASE IN THE INTERNATIONAL PROCEDURAL LAW OF BANKRUPTCY

One of the most important decisions of the Federal Supreme Court on the subject of jurisdiction was rendered in 1933 with respect to a French judgment that declared the bankruptcy of "Companhia Port of Pará."[61] Port of Pará was an American company, incorporated under the laws of Maine, with an office in Portland, Maine, and another office in France. The company had no activities in the U.S.; its only business, by agreement with the Brazilian government, was construction and administration of the port of Belém, the capital of the Amazonian State of Pará. Therefore, even though the company had an office in the U.S., its main domicile was located in Brazil, where its only activity was being performed. Port of Pará had no commercial establishment in France. In 1907, it borrowed money in France through the issuance of debentures, and, in accordance with French law, had to keep an official domicile in France. By the time one of the debenture creditors requested its bankruptcy, Port of Pará had already closed down its office in France. The reaction of the Federal Supreme Court to the judgment of the French court of Mont-de-Marsan (Landes) that declared Port of Pará's bankruptcy and to the exorbitant rule contained in article 14 of the French Civil Code[62] was particularly harsh. Brazil's Supreme Court declared:

> The French law, Article 14 of the Code of Napoleon, setting aside the principles of private international law, and without paying attention to foreign sovereignty, provided that whenever anyone owes money to a French creditor, even though the debtor is not domiciled in nor a resident in France, he can be sued there; therefore a company that has no business nor domicile in France, but owes money to a Frenchman can have its bankruptcy declared in France. That can be fine in France, but it is not possible to believe that any cultured state would recognize and enforce such usurpation of its sovereignty. One of the main impediments to the confirmation of a foreign judgment is offensiveness to our sovereignty. No judgment could be more offensive to our sovereignty than this one, which decreed the bankruptcy of a company that was incorporated in order to operate exclusively in Brazil, with exclusive businesses in Brazil, that has in our Country its only establishment, just because it owes money to a French citizen. Based on this the judgment wants to take possession of the debtor's goods located in Brazil and bring them to France, to be administered by a French trustee, under the rule of French law. This French law cannot have any value out of France.

---

[61] Adrien Serramia v. Companhia Port of Pará, 30 *Arquivo Judiciário* 133 (1934). See Garland, *supra* note 1, at 99, n. 422.

[62] Article 14 of the French Civil Code provides:
"An alien, even not residing in France, may be summoned before the French Courts, for fulfillment of obligations contracted by him in France towards a French person; he may be called before the French Courts for obligations contracted by him in a foreign country towards French persons."

The Federal Supreme Court based its decision on the Brazilian bankruptcy law,[63] which held that foreign bankruptcy decisions of companies domiciled in Brazil cannot be enforced. This is only possible if the company is domiciled in the country where the bankruptcy was declared. The Supreme Court's refusal to confirm the Port of Pará French judgment was based mainly on two motives. One was that the company did not have a domicile in France, so the French courts had no jurisdiction, and the second was that because the company was domiciled in Brazil, only a Brazilian court had jurisdiction to declare the company's bankruptcy.[64]

French courts still deem that they have jurisdiction in cases where the debtor company has only a secondary establishment in France. Nevertheless, the statutory rule indicates that the court of the place of the main establishment of the company has jurisdiction.[65]

## H. INTERNATIONAL PARALLEL LITIGATION

Whether a domestic court should stay litigation pending the outcome of a suit previously filed abroad involving the same parties and subject matter is a question on which legal systems diverge.[66] Article 90 of the Code of Civil Procedure states that a suit filed abroad does not create *lis pendens* with a suit filed in Brazil; therefore, Brazilian courts may exercise jurisdiction over a subsequently filed action involving the same case. In Germany, the pendency of an earlier instituted action in a foreign court is a bar to adjudication before national courts,[67] which is also the rule of Article 21 of the Brussels Convention. In France, courts can grant a *lis pendens* stay, provided that the judgment that may be rendered in the foreign suit is capable of recognition in France.[68] But French courts have been very strict about the jurisdiction of foreign courts when the exception of *lis pendens* is raised. In the United States, the "pendency of a foreign action is not a bar to the maintenance of an action in the state of the forum," but "it may induce the court to grant a stay of the latter action" in situations "where it is clear that plaintiff can secure all the relief to which he is entitled in the first action."[69]

Haroldo Valladão harshly criticizes the Brazilian Code of Civil Procedure for not having extended to the international field the staying effect that the Code

---

[63] Law No. 5.746 of 1929, arts. 160, 164 and 165.

[64] Article 7 of the present bankruptcy law, Decree-Law No. 7.661 of 1945, provides that the competent court to declare bankruptcy is the one in whose jurisdiction the debtor's main business establishment or branch (if a foreign-domiciled company) is located.

[65] See Batiffol, *supra* note 13, at 461.

[66] See F. Juenger, *supra* note 20, at 25.

[67] Decree of Dec. 22, 1967. Dieter Martiny, "Recognition and Enforcement of Foreign Money Judgments in the Federal Republic of Germany," 35 *American Journal of Comparative Law* 744 (1987).

[68] See Batiffol, *supra* note 13, at 468.

[69] *Restatement Conflicts* 2d § 86 and Comment b.

362

accords to domestic parallel litigation,[70] a result that is inconsistent with the Bustamante Code.[71] Other authorities accept the position of Article 90, permitting an action to be brought before a Brazilian court despite the existence of a prior action on the same matter between the same parties in a court of another country.[72]

According to Barbi, the main reason for not considering a foreign action is that it would require Brazilian judges to determine whether a future foreign judgment would fulfill the requirements for recognition in Brazil, an examination that the Constitution places in the exclusive domain of the Brazilian Supreme Court. In order to grant a stay of *lis pendens* for a pending foreign suit, a lower court would have to make a provisional determination on a scanty record of a question that falls within the exclusive competence of the Supreme Court. Barbi also notes that the rule of Article 90 does not apply to an action where the Bustamante Code applies, i.e. a suit pending before a court of a country that has ratified the Code.

Barbosa Moreira sets out the following propositions concerning *lis pendens* and *res judicata*:

1. If a foreign judgment is duly recognized by the Federal Supreme Court, one cannot start an action in the Brazilian courts on the same matter.

2. An action pending before a Brazilian court is no obstacle to the request for recognition of a foreign judgment before the Federal Supreme Court;

3. If the foreign judgment is duly recognized by the Brazilian Supreme Court, any pending action involving the same case before a regular Brazilian court is extinguished.

4. If the Brazilian action is duly adjudicated and the judgment becomes final, a request for recognition of any foreign judgment in the same case will be denied.

5. One may start a new action before a Brazilian court after a request for recognition of a foreign judgment in the same case has been made, but the new action will only be decisive if it reaches final judgment before the recognition procedure is concluded.[73]

This is typically the "first in time" solution, but the priority is here determined by finality. Barbosa Moreira's position conflicts with Juenger's suggestion that "first in time" should be determined by date the of filing or service, instead of the date of rendition or finality.[74]

---

[70] Haroldo Valladão, *supra* note 22, at 141-2, 143. A court should stay a case that attempts to relitigate a case that is already being litigated in another court. Code of Civil Procedure, art. 267 (V) and § 3.

[71] Article 394 of the Bustamante Code provides: "Litispendencia (lis pendens) by reason of a suit in another of the contracting states may be pleaded in civil matters when the judgment rendered in one of them is to take effect in the other as res judicata." Article 7 of the 1965 Hague Convention on Choice of Court establishes a similar rule.

[72] See Celso Agrícola Barbi, *supra* note 21, at 402; Hélio Tornaghi, *supra* note 11, at 310.

[73] José Carlos Barbosa Moreira, "Relações entre processos instaurados sobre a mesma lide civil no Brasil e em país estrangeiro," *Estudos Jurídicos em Homenagem ao Professor Oscar Tenório* 363 (1977).

363

Brazil's Supreme Court has not yet taken a firm position, as can be seen from the following two decisions. In the first case, decided in 1981, a foreign judgment was submitted to the Federal Supreme Court for recognition while a case involving the same matter was pending trial in a Brazilian court. The Supreme Court granted recognition,[75] which appears to confirm Barbosa Moreira's second and third propositions. In a 1987 decision, however, a foreign judgment awarding custody of minor children to the father was denied recognition because a prior Brazilian judgment had already awarded custody to the mother. Apparently the Brazilian judgment had not become final in the sense of *res judicata*, but the Supreme Court said that to give effect to a foreign judgment when there is a Brazilian decision on the same matter would be tantamount to offending national sovereignty.[76] The 1981 decision is more in conformity with a coherent policy in matters concerning international parallel litigation. In a recent decision by the Supreme Court,[77] a Brazilian case, not yet concluded, did not prevent recognition of a final Swiss judgment, following the same line as the Supreme Court's 1981 decision.

## I. REPRESENTATION OF FOREIGN LEGAL ENTITIES

The representation of foreign entities that conduct activities in Brazil is subject to rules contained in the Civil Code,[78] the Corporation Law[79] and the Code of Civil Procedure. The Civil Code provides that legal entities whose administration or board of directors functions in a foreign country but conduct business and undertake obligations in Brazil, will be considered domiciled at the location of its establishment in Brazil that undertakes the obligation.[80]

The Corporation Law requires foreign companies doing business in Brazil to maintain a permanent agent in the country, with full powers to settle any matters and to receive service of process in the name of the foreign company.[81] Only after the foreign company's designation of its agent has been duly filed at the Commercial Registry can the agent act in the name of the company.[82] Foreign companies are subject to Brazilian laws and to Brazilian courts with respect to operations performed in Brazil.[83] Any person domiciled or resident abroad who is a

---

[74] Juenger, *supra* note 20, at 25. See also Barbosa Moreira, *supra* note 1, at 206-7.

[75] SE No. 2727, 97 RTJ 1005 (1981).

[76] SE No. 3457, 123 RTJ 444 (1987).

[77] SE No. 3.862, Diário de Justiça, Mar. 9, 1990.

[78] *Código Civil*, approved by Law No. 3.071 of Jan. 1, 1916, in force since Jan. 1, 1917.

[79] *Sociedades por Ações*, Law No. 6.404 of Dec. 15, 1976. This Law has maintained in force the rules of Decree No. 2.627 of 1940 concerning foreign companies.

[80] Art. 35, § 4. See also Brussels Convention, art. 5 (5).

[81] Law No. 6.404 of Dec. 15, 1976, art. 67.

[82] *Id.* at art. 67, sole §.

364

shareholder in a Brazilian corporation must have a representative in Brazil with powers to receive service of process in cases arising under the Corporation Law, and any act performed for a foreign domiciled shareholder by his representative or agent automatically bestows on him the power to receive service for the foreign shareholder.[84]

The 1973 Code of Civil Procedure contains several provisions on foreign companies that complement the Civil Code and the Corporation Law. Thus foreign legal entities are to be represented before the Brazilian courts by the manager, representative or administrator of the branch, agency, or establishment in Brazil.[85] The manager of the branch or the agency is presumptively authorized by the foreign legal entity to receive service of process for any kind of legal action.[86] For purposes of domicile, any foreign entity that has an agency, a branch, or an establishment in Brazil, is presumed domiciled in Brazil.[87] These provisions do not mean, however, that a mere commercial representative of a foreign company can be sued as the actual defendant.[88] On the other hand, a company that represents the foreign corporation may be sued together with the foreign defendant if one can prove that the Brazilian representative participated in the transaction on its own account and not merely as an agent.[89]

## III. RECOGNITION OF FOREIGN JUDGMENTS

The 1988 Constitution retained the Brazilian tradition of conferring on the Federal Supreme Court exclusive jurisdiction to recognize (homologate) foreign judgments.[90] Brazil has a long-standing tradition of recognizing and enforcing foreign judgments, a fact that is frequently ignored abroad. For example, in *Hilton v. Guyot*,[91] the U.S. Supreme Court stated:

> In the great majority of the countries on the continent of Europe, — in Belgium, Holland, Denmark, Sweden, Germany, in many cantons of Switzerland, and in Russia and Poland, in Roumania, in Austria and Hungary

---

[83] *Id.* at art. 68.

[84] *Id.* at art. 119.

[85] Law No. 5.869 of Jan. 11, 1973, art. 12 (VIII).

[86] *Id.* at art. 12 § 3.

[87] *Id.* at art. 88, sole §, set out as the text to note 4 *supra*. This provision corresponds to Article 35 § 4 of the Civil Code.

[88] See Recurso Extraordinário No. 92.060, 99 RTJ 315 (1980).

[89] See Apelação Cível No. 841, 27 *Revista de Direito Mercantil* 115 (2d Cham. Tribunal of Justice Rio de Janeiro 1975). This decision was confirmed by the Supreme Court, which observed that the Tribunal of Justice had applied the U.S. doctrine of "disregard." RE No. 86.048, 85 RTJ 247 (1977).

[90] Const. of 1988, art. 102 (I) (h).

[91] 159 U.S. 113 (1895).

---

365

(perhaps in Italy), and in Spain, — as well as in Egypt, in Mexico, and *in a great part of South America*, the judgment rendered in a foreign country is allowed the same effect only as the courts of that country allow to the judgments of the country in which the judgment in question is sought to be executed. . . . [T]he rule of reciprocity has worked itself firmly into the structure of international jurisprudence. [emphasis added]"[92]

Very recently, Friedrich K. Juenger observed:

> There are three basic approaches to the question whether judgments rendered abroad should be given effect locally: (1) the forum may simply disregard foreign decisions; (2) it may recognize only those rendered in states that honor the forum's judgments; (3) it may recognize any foreign judgment that meets certain procedural and substantive standards. *Historically, civil law countries have favored the first two approaches, whereas common law jurisdictions have tended to opt for the third.* [emphasis added].[93]

Long before the U.S. and other common law countries opted for the third approach, Brazil had abolished the reciprocity requirement. Decree No. 6982 of July 27, 1878, provided that recognition would be given to foreign judgments without reexamination of the merits. Decree No. 7777 of July 27, 1880, followed by Law No. 221 of November 20, 1894 and Decree No. 3084 of November 5, 1898, all permitted foreign judgment recognition without conditioning it on reciprocity.[94]

As early as 1898, the Federal Supreme Court recognized a foreign judgment in a matter of inheritance, expressly stating:

> "Foreign judgments are enforceable in Brazil even if there is no reciprocity."[95] This case was decided just three years after *Hilton v. Guyot*[96] demanded reciprocity, which remained the policy of U.S. courts for the better part of the 20th century. In England, a 1933 statute established the requirement of reciprocity. In Germany, reciprocity was required by the ZPO, article 328 § 1, no. 5.[97]

Brazil followed the Italian system of *giudizio di delibazione* with respect to criteria of recognition, thus limiting the scope of judicial inquiry into foreign judgments to form but not substance. The Supreme Court only reviews foreign judgments for their external, formal requisites without any kind of reexamination of the merits of the foreign judgment. There is no *révision au fond*.[98] While Italian

---

[92] *Id.* at 227.

[93] *Supra* note 20, at 5.

[94] See Haroldo Valladão, *supra* note 22, at 186-7; Paul Griffith Garland, *supra* note 1, at 93; Keith S. Rosenn, *supra* note 1, at 503.

[95] See Rodrigo Otávio, *Dicionário de Direito Internacional Privado* 310 (1933).

[96] See *supra* note 91.

[97] See Martiny, *supra* note 67, at 749.

courts will reexamine the merits of a foreign default judgment,[99] Brazil has remained entirely loyal to the *delibazione* system and will never retry cases that have been decided abroad by a proper jurisdiction.

Recognition of foreign judgments, called "*homologação de sentença estrangeira*" — does not require that the foreign tribunal apply the law indicated by Brazilian choice of law rules to the merits of the case, as the French do.[100] The Brazilian system coincides with Article 7 of the Hague Convention on Recognition and Enforcement of Foreign Judgments in Civil and Commercial Matters, which provides: "Recognition and enforcement may not be refused for the sole reason that the court of the State of origin has applied a law other than that which would have been applicable according to the rules of Private International Law of the State addressed."[101]

The rules concerning recognition of foreign judgments are set out in Article 15 of the Law of Introduction to the Civil Code and in Articles 483 and 484 of the Code of Civil Procedure,[102] as well in the Internal Regulations (*regimento*) of the Federal Supreme Court.

Article 15 of the Law of the Introduction provides:

A judgment rendered abroad shall be enforced in Brazil provided it meets the following requirements:

a) the judgment was rendered by a judge with jurisdiction;

b) the parties were duly notified or the default is legally established;[103]

c) the judgment is final and nonappealable and contains the necessary formalities for enforcement where it was rendered;

d) the judgment has been translated by an authorized translator;

e) the judgment has been homologated by the Federal Supreme Court.[104]

Actually the Article should be read to mean that a foreign judgment can be enforced in Brazil after Supreme Court recognition (item *e*), which will be accorded to judgments that meet the requirements of *a, b, c,* and *d*.

---

[98] See Brussels Convention, art. 29. On the French history of *révision au fond*, see Batiffol, *supra* note 13, at 593.

[99] Codico de Procedure Civile, art. 798 (1940), in effect since 1942.

[100] See Batiffol, *supra* note 13, at 561, 582. Juenger calls this a "limited *révision au fond*". *Supra* note 20, at 34.

[101] The Convention is reproduced in 5 *I.L.M.* 636 (1966) and in 15 *Am. J. Comp. L.* 362 (1967).

[102] See *supra* notes 2 and 3.

[103] The exact meaning of this subsection is that the defendant has been properly served and has either taken part in the action or allowed the judgment to be obtained by default.

[104] See Garland, *supra* note 1, at 93.

---

Article 17 of the Law of Introduction states: "Laws, acts and judgments of another country, as well as any kind of private acts, shall not be effective in Brazil if they offend national sovereignty, public policy and good morals."[105] Articles 483 and 484 of the Code of Civil Procedure provide:

Article 483 — A judgment rendered by a foreign court will only have force in Brazil after recognition by the Federal Supreme Court.

Sole paragraph — The recognition procedure will follow the Federal Supreme Court's Internal Regulations.

Article 484 — Enforcement will be effectuated through a judgment order issued from the recognition proceedings and will obey the established rules for the enforcement of municipal judgments of the same nature.

Article 109 of the 1988 Constitution provides that federal judges will enforce foreign judgments after their homologation, and execute rogatory letters after the *exequatur* has been conceded.[106]

The two most important requisites for the recognition of foreign judgments, which are usually the basis for denial of recognition, are jurisdiction and correct service of process.

## A. JURISDICTION

International judicial jurisdiction is governed by Article 12 of the Law of Introduction and by articles 88-89 of the Code of Civil Procedure.[107] The requirement that a judgment be rendered by a court with proper jurisdiction[108] has been interpreted to mean jurisdiction in a private international law sense. The distinction made is between "general or international competence" and "internal or special competence." The latter refers to the competence of courts in each State to deal with specific cases. Some authorities refer to "jurisdiction in the international sense" and "jurisdiction in the domestic sense".[109]

The Brazilian Supreme Court will not look into matters of "internal or special competence." In recognition proceedings, one cannot question whether the adjudicating foreign court actually was the proper court to hear the case according to that State's rules of procedure, for this is an internal matter of the foreign State.[110] The Brazilian Supreme Court will not delve into the subject-matter

---

[105] This rule can be compared to section 4 (b) (3) of the Uniform Foreign Money — Judgment Recognition Act.

[106] Whereas in France and in other civil law countries, *exequatur* relates to recognition of foreign judgments, in Brazil it refers exclusively to the order signed by the President of the Supreme Court to comply with a foreign letter rogatory. The recognition of foreign judgments is called homologation (*homologação de sentença estrangeira*).

[107] See *supra* notes 2 and 3 and accompanying text.

[108] Law of Introduction to the Civil Code, art. 15(a).

[109] See Casad, *supra* note 18, at 13.

jurisdiction of the rendering court as the U.S. Uniform Foreign Money — Judgment Recognition Act demands in Article 4 (a) (3).[110] The Brazilian Supreme Court will only examine the "general or international jurisdiction," which amounts to considering whether Brazil has exclusive jurisdiction over the action according to Article 89 of the Code of Civil Procedure. If that is the case, recognition will be denied.

The most recent case is *Fundação Elisio Ferreira Afonso*,[112] where the Supreme Court denied recognition to a Portuguese judgment that decided in favor of the sale of Brazilian real estate belonging to a Portuguese foundation. Because disposition of real property located on Brazilian territory is a matter of exclusive Brazilian judicial jurisdiction, no foreign decision will be recognized.

When Brazilian jurisdiction is concurrent under any of the situations set out in Article 88 of the Code of Civil Procedure, Brazil will recognize a foreign judgment, provided the party that was entitled to Brazilian jurisdiction has chosen the foreign jurisdiction either in the original agreement between the parties, or has submitted willingly to the foreign jurisdiction, or, if neither is the case, provided that the party who could move for denial of recognition agrees to it. When a Brazilian-domiciled plaintiff sues another party in a foreign court, his submission to foreign jurisdiction is clear and explicit.

How can one establish a defendant's implicit submission to a foreign jurisdiction? The Supreme Court[113] has invoked Article 322 of the Bustamante Code.[114] Thus, in *Mariana Albertina Gonçalves v. Mateus Varela*,[115] the Supreme Court denied recognition to an Angolan judgment because the defendant, who was domiciled in Brazil and duly served by the foreign court by letter rogatory, did not present any defense in the Angolan court. He lost by default, which does not amount to submission to a foreign court. In *Società Geconf S.P.A. v. Fiação Amparo S.A.*,[116] a judgment by the Italian court of Treviso, upheld by the Court of Appeals of Venice, was denied recognition by the Brazilian Supreme Court because defendant, a company domiciled in Brazil, only appeared in the Italian courts in order to contest Italian jurisdiction. The Brazilian Supreme Court decided that this did not amount to submission to the foreign court. Under Brazilian law, a

Brazilian domiciliary may challenge a foreign court's jurisdiction over him, and, if this challenge is denied, he may withdraw from the foreign litigation and renew his challenge to the jurisdiction of the foreign court at the recognition procedure before the Brazilian Supreme Court.[117]

## B. NOTICE

The lack of appropriate notice to appear is the most common reason for denial of recognition of foreign judgments.[118] Foreign courts, and particularly foreign lawyers, continually repeat the mistake of serving defendants domiciled in Brazil by mail or through their consulates in Brazil. Both types of service are totally unacceptable to Brazilian rules of civil procedure.

If the defendant appears before the foreign court and presents any kind of defense, his claim at the recognition procedure that he has not been properly served will be rejected.[119] If a default judgment has been entered, however, the procedure by which the foreign court served the defendant becomes fundamental and decisive, especially when there has been a prior contractual agreement about the foreign court's jurisdiction. A choice of forum clause electing the foreign jurisdiction will bar a Brazilian domiciled defendant from pleading that the foreign court had no jurisdiction.

The basic rule is that no other service is acceptable but personal delivery of the summons by a Brazilian court officer in compliance with a request of the foreign court through a letter rogatory. The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters of November 15, 1965,[120] states in Article 10: "Provided the state of destination does not object, the present Convention shall not interfere with the freedom to send judicial documents by postal channels, directly to persons abroad." Brazil is not a party to the Convention, and it strongly objects to foreign judicial documents sent to Brazil by postal or consular channels. Foreign practitioners should realize that the only way to secure recognition in Brazil of foreign judgments against defendants domiciled in Brazil is to serve them initially via letter rogatory and to make sure that the foreign court has jurisdiction in accordance with the Brazilian rules.

---

[110] See Garland, *supra* note 1, at 94; Barbosa Moreira, *supra* note 1, at 209, no. 3.8.2.

[111] See Juenger, *supra* note 20, at 18 and critique at 38. See also *Restatement Conflicts 2d* § 105; *Restatement For. Rel. 3d* § 482 (2) (a).

[112] SE No. 3.989, 123 RTJ 893 (1987); 124 RTJ 905 (1988); 125 RTJ 80 (1988).

[113] Cesar Yazigi and Herbert S. Burr v. M. Dedini S.A. Metalúrgica et al, SE No. 2114, 87 RTJ 384 (1974).

[114] See *supra* note 24. Article 322 of the Bustamante Code is similar to the U.S. Uniform Foreign Judgments Recognition Act § 5 (a) 2, 13 U.L.A. 419 (1962), which indicates that an appearance by a defendant merely to contest the jurisdiction of the court over him will not give the foreign court personal jurisdiction.

[115] SE No. 2.227, 74 RTJ 336 (1975).

[116] SE No. 3.587, 117 RTJ 996 (1986).

---

[117] See Lowenfeld, *supra* note 6, at 362-3.

[118] See Dolinger, *supra* note 1, at 861-864, discussing various decisions of the Supreme Court denying confirmation to foreign judgments between 1925 and 1981 because of lack of personal service by a Brazilian court officer in compliance with a request of the foreign court through a letter rogatory. This policy of the highest court has been maintained throughout the 1980s in a long series of decisions. *E.g.*, SE No. 3.448, 115 RTJ 611 (1985); SE No. 3.262, 119 RTJ 597 (1986); SE No. 3.534, 117 RTJ 57 (1986); SE No. 3.889, 125 RTJ 76 (1987); SE No. 3.457, 123 RTJ 444 (1987); SE No. 3.816, 127 RTJ 94 (1988).

[119] Code of Civil Procedure, art. 214 § 1 provides that spontaneous appearance in court cures lack of notice.

[120] 20 U.S.T. 361, T.I.A.S. 6638, to which the U.S. is a party.

The Federal Supreme Court has said that carrying out a procedural act in Brazilian territory, in compliance with a foreign court's order and in accordance with foreign rules of procedure, is tantamount to a disregard of Brazilian sovereignty and is against public policy.[121] Service by mail is only acceptable in Brazil when both plaintiff and defendant are domiciled in Brazil, and the case is brought before a Brazilian court.[122]

Article 388 of the Bustamante Code states that "Every judicial step which a contracting State has to take in another shall be effected by means of letters requisitorial or rogatory letters, transmitted through the diplomatic channels. Nevertheless, the contracting States may agree upon or accept as between themselves any other form of transmission in respect to civil or criminal matters."

## C. UNFOUNDED FOREIGN JUDGMENTS

The Federal Supreme Court denied recognition to a German judgment in *Dr. Karl F. Nägele Feinmaschinenbau GMBH v. Herbert Alberts*[123] because it deemed the decision unfounded. In a few other cases, this reason was raised by the Supreme Court but other reasons for refusing recognition were also present.[124]

The author has reported the reasons given by Justice Antonio Neder, when he was President of the Federal Supreme Court,[125] for refusing recognition of SE No. 2521[126] and has criticized this orientation.[127] Nothing has been added by the Supreme Court in two subsequent cases, in which Justice Neder's arguments were invoked: SE No. 2766 and SE No. 3262.[128] Hence, I reiterate that the *ordre public* reason for considering the grounds of a judgment referred to by Justice Neder, who invoked the authority of various Brazilian jurists,[129] is a matter of internal,

municipal public policy, not of international public policy that should affect recognition of a foreign judgment.[130]

## D. LETTERS ROGATORY

Letters rogatory from foreign courts have been complied with by Brazil since 1847, without any condition of reciprocity,[131] for procedural matters, such as court summons, deposing witnesses, search and examination of documents, appraisals and any other discovery matter. No letter rogatory for purposes of any kind of compulsory adjudication, seizure or attachment is complied with, for this requires enforcement of a foreign decision.[132]

Article 12 § 2 of the Law of Introduction to the Brazilian Civil Code provides:

> Brazilian judicial authorities will comply with actions requested by a competent foreign authority, observing the law of the latter as to the subject of the actions, by granting the *exequatur*, in accordance with Brazilian law as to the form of the execution.

As with the recognition procedures, the *exequatur* of letters rogatory is within the exclusive jurisdiction of the Federal Supreme Court.[133] It is common for Brazilian domiciliaries served by foreign courts through letters rogatory to appeal to the Supreme Court for revocation of the letters rogatory[134] on the ground that they have not agreed to submit nor have they submitted to a foreign jurisdiction.

During the 1960s and 1970s, the Supreme Court had no firm position on this issue. Some *exequaturs* were revoked,[135] but there was at least one case where the Supreme Court *en banc*, after the Chief Justice's revocation of his earlier grant, reversed his second decision and ordered compliance with the letter rogatory

---

[121] SE No. 3448, 115 RTJ 611 (1985).

[122] Moreover, article 222 of the Code of Civil Procedure permits service by mail only if the defendant is a businessman or an industrialist.

[123] SE No. 2.521, 95 RTJ 34 (1980).

[124] Anderson, Clayton & Co. v. Irohusa Indústrias Reunidas Octaviano Duarte S/A., SE No. 2.766, 107 RTJ 563 (1983), where the Supreme Court found that there was no proof that the judgment of the British court was final; The First National Bank of Clayton v. Bell Leiser, SE No. 3262, 119 RTJ 597 (1986), where the New York judgment did not make any reference to the way the defendant had been served. In both cases, lack of legal cause was also referred to in the Court's decision as a reason for denying recognition.

[125] The power to decide whether to recognize a foreign judgment has been given to the President of the Supreme Court. An appeal from his decision lies to the entire Supreme Court under Article 223 of the Court's Internal Rules.

[126] See *supra* note 123.

[127] *Supra* note 1, at 867-870.

[128] *Supra* note 124.

[129] L. da Costa, *Direito Processual Civil Brasileiro* 22, no. 14 (1945); José Frederico Marques, 3 *Instituições de Direito Processual Civil* 522, no. 847 (1959); Moacyr Amaral Santos, 4 *Comentários ao Código de Processo Civil* 436, no. 324 (1977); José Carlos Barbosa Moreira, 5 *Comentários ao Código de Processo Civil* no. 64 (3d ed. 1978).

[130] See Batiffol, *supra* note 13, at 581; Juenger, *supra* note 20, at 22. For the distinction between municipal and international public policy, see J. Dolinger, "World Public Policy: Real International Public Policy in the Conflict of Laws," 17 *Texas Int'l L.J.* 167. For French decisions on unfounded foreign judgments see 66 *Revue Critique de Droit International Privé* 831, 832 (1977); 70 *Revue Critique de Droit International Privé* 113 (1981). See also Loussouarn and Bourel, *Droit International Privé* 628 no. 6 (1978); Pierre Mayer, *Droit International Privé* 277 (1977); J. Dolinger, *A Evolução da Ordem Pública no Direito Internacional Privado* 191 (1979).

[131] Aviso N. 1, of Oct. 1, 1847. See Amilcar de Castro, *supra* note 10, at 550; Haroldo Valladão, *supra* note 22, at 177.

[132] See Haroldo Valladão, *supra* note 22, at 176. See *Exequatur* No. 3.237 from Argentina, 95 RTJ 46 (1980).

[133] Const. of 1988, art. 102 (I) (h).

[134] The Internal Regulations of the Supreme Court allow the type of appeal called an *agravo regimental*. Art. 227, sole §.

[135] *Exequatur* No. 1.328 from Luxembourg, 45 RTJ 317 (1968); *Exequatur* No. 1.835 from Uruguay, 60 RTJ 323 (1971).

372

regardless of jurisdictional considerations.[136] During Justice Antonio Neder's Presidency of the Supreme Court (1979-1980), the jurisdictional argument was accepted in various appeals where the defendants requested *exequatur* revocation.[137] Justice Neder's main argument was that matters of jurisdiction have a public policy character; therefore, a motion of improper jurisdiction can be raised and accepted in a letter rogatory procedure. This trend was changed under the Presidency of Justice Xavier de Albuquerque (1981-1982), who held that the "incompetence" of a foreign jurisdiction will only bar compliance with a letter rogatory if it is a case of "absolute incompetency", such as when the subject matter is real estate located in Brazilian territory, which, under Brazilian law falls within the exclusive jurisdiction of the Brazilian courts. Since then, the Federal Supreme Court has steadily maintained that letters rogatory may only be denied if the matter falls within the exclusive jurisdiction of the Brazilian judiciary or if there is any objection from the Brazilian sovereignty/*ordre public* point of view.[138]

The limitation of *ordre public* is in accordance with the principle established in Article 13 of the 1965 Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters.[139] But the first limitation — exclusive local jurisdiction — does not coincide with the second part of article 13 of the Hague Convention, which provides that "It may not refuse to comply solely on the ground that, under its internal law, it claims exclusive jurisdiction over the subject of the action...."

In at least one rogatory letter proceeding the Supreme Court considered that a choice of Brazilian forum in the original contract justified denial of *exequatur*.[140] This was later confirmed by an *obiter dictum* in another *exequatur*.[141]

An interesting position taken by the Brazilian highest court is to order that the duly complied with letter rogatory should be returned to the requesting foreign court with the information that the Brazilian-domiciled defendant has declared that

---

[136] *Exequatur* No. 1.408 from Switzerland, 52 RTJ 299 (1969).

[137] *Exequatur* No. 3.166 from Uruguay, 93 RTJ 969 (1980) and 95 RTJ 42 (1980); *Exequatur* No. 3.054 from the Federal Republic of Germany, 96 RTJ 61 (1980); *Exequatur* No. 3.119 from Argentina, 97 RTJ 69 (1980).

[138] *Exequatur* No. 3.268, from Paraguay, 98 RTJ 47 (1981); *Exequatur* No. 3.481, from France, 103 RTJ 536 (1962); *Exequatur* No. 3.538, from Portugal, 110 RTJ 47 (1983); *Exequatur* No. 3.855, from the U.S., 110 RTJ 55 (1984); *Exequatur* No. 3.680, from Romania, 111 RTJ 175 (1984); *Exequatur* Nº 3.950, from the U.S., 110 RTJ 1003 (1984); *Exequatur* No. 3.553, from the U.S., 114 RTJ 500 (1985); *Exequatur* No. 3.533 from Japan, 119 RTJ 991 (1986); *Exequatur* No. 4.450, from Japan, 124 RTJ 475 (1986); *Exequatur* No. 4.539 from Switzerland, 124 RTJ 909 (1986); *Exequatur* No. 4.288 from Great Britain, Diário de Justiça, Apr. 4, 1986; *Exequatur* No. 4.707 from Great Britain, 126 RTJ 86 (1988).

[139] "Where a request for service complies with the terms of the present Convention, the State addressed may refuse to comply therewith only if it deems that compliance would infringe its sovereignty or security." Hague Conference on Private International Law, Collection of Conventions 81 (1951-1988) (Permanent Bureau of the Conference ed.).

[140] *Exequatur* No. 3.166, *supra* note 137.

[141] *Exequatur* No. 3.538, *supra* note 138, at 54. On judgments rendered in disregard of forum-selection clauses, see Juenger, *supra* note 20, at 19.

---

373

he does not submit to the foreign jurisdiction. This position may have subsequent implications at the enforcement stage. Does it imply that when the final judgment of the foreign court is presented to Supreme Court for recognition that it will not be able to refuse the foreign state's jurisdiction? Wilson de Souza Campos Batalha wrote that if the full Supreme Court decides an appeal confirming an exequatur granted by the President of the Court, it recognizes the jurisdiction of the foreign court and cannot decide otherwise in the request for recognition of the final judgment from the same foreign court.[142] The Supreme Court has not accepted this theory, taking the position that compliance with the letter rogatory does not imply future recognition of the foreign judgment. This is in accord with Article 9 of Inter-American Convention on Letters Rogatory[143] (to which Brazil is not a party) which states: "Execution of a letter rogatory shall not imply ultimate recognition of the jurisdiction of the authority issuing the letter rogatory or a commitment to recognize the validity of the judgment it may render or to execute it."

In one unusual letter rogatory case, the defendant claimed that the foreign court's request should be denied because the same matter was being litigated in Brazil. The Supreme Court decided that there is no place for this kind of claim in *exequatur* proceedings, and that the issue of *lis pendens* can only be raised in foreign judgment recognition proceedings.[144]

Articles 201, 202 and 210 of the Code of Civil Procedure contain rules about Letters Rogatory that are to be sent by the Brazilian courts to foreign courts in order to effect abroad procedural acts needed for local litigation. The 3rd Chamber of the Tribunal of Justice of Rio de Janeiro State has decided that a Brazilian judge may not request that a foreign company that litigates in Brazil bring its corporate books to be examined, together with the other party's corporate books, by court experts. The judge should have the Brazilian party's books examined. If the foreign party's books also need to be examined, the judge will have to request that this be done by the courts of the jurisdiction where the foreign corporation has its head office.[145]

An interesting point was raised in the 77th Annual Meeting of the American Society of International Law in a discussion of "Transnational Litigation: Discovery Abroad." After explaining the Brazilian system of disqualification of parties' relatives from testifying, Mr. Luiz Dilermando de Castello Cruz reported that he had seen a case in which a request from a foreign court to depose a witness in Brazil was not complied with because the judge granted the witness' request to be excused from testifying on the ground that he was the brother-in-law of the defendant. Mr. Cruz then raised the following argument:

---

[142] Wilson de Souza Campos Batalha, 2 *Direito Internacional Privado* 324 (1961).

[143] 14 I.L.M. 339 (1975), approved by the Inter-American Specialized Conference on Private International Law, held in Panama City, Jan. 1975.

[144] *Exequatur* No. 3.106, from Panamá, 95 RTJ 518 (1980).

[145] Agravo de Instrumento No. 9.881, Computer Associates International Inc. v. William Joyce Associados Ltda., *Boletim Adcoas* No. 109.776 (1986).

374

If I had been the attorney for the plaintiff, I would have pointed out to the judge that the applicable law should be that of the requesting country where the man was a proper witness. Absent a strong public policy in our country barring the application of that country's law in that case, the man should have been required to submit to the deposition. I think this may be an avenue which can be pursued with respect to documents of corporation as well.[146]

This argument can actually be based on Article 13 of the Law of Introduction to the Civil Code, which states: "Proof of facts taking place in a foreign country is governed by the law in force there with regard to the burden and the means of producing the proof, but Brazilian court shall not admit proofs that are unknown in Brazilian law." "Unknown" has been interpreted as objectionable from a public policy point of view.

### E. FOREIGN DISCOVERY REQUESTS

The 1988 Constitution introduced a novel rule in Article 181, which states: "Response to a requisition of a document or of information of a commercial nature, made by a foreign administrative or judicial authority to an individual or legal entity resident or domiciled in the country, needs authorization from the proper branch of the government."[147]

Precisely what the Framers had in mind with this rule is unclear. Whenever a foreign court wishes to have a document or any other information of commercial nature, the letter rogatory is the best channel. The Supreme Court will invariably comply with the foreign requisition, unless it contains something highly shocking to Brazilian public policy. One cannot conceive the need of authorization of any other governmental branch, for the jurisdiction of the Supreme Court to enforce foreign letters rogatory is a constitutional rule.

A foreign administrative authority's direct request to the party domiciled in Brazil — without resorting to its courts for expedition of a rogatory letter — will probably fall under the new constitutional provision of Article 181. This is reflected in the Restatement of the Foreign Relations Law of the United States concerning foreign legal impediments to comply with requests of U.S. governmental agencies.[148] The novel provision in the 1988 Brazilian Constitution resembles the U.K. 1980 Protection of Trading Interest Act which, among other measures, extended the power of the British government to forbid compliance by British citizens and business with orders of foreign authorities, where those orders have extraterritorial effect and prejudice British trading interests.[149] The rule of Article 181 also resembles various cases in which discovery requests before U.S.

---

[146] Proceedings of the 77th Annual Meeting, American Society of International Law 73-4 (1983).

[147] Translation of Professor Keith S. Rosenn, as published in this "Panorama".

[148] *Restatement For. Rel. 3d* §§ 441 (1) (a), 442, 473 and 474.

[149] See A.V. Lowe, "Blocking Extraterritorial Jurisdiction: The British Protection of Trading Interest Act, 1980," 75 *American Journal of International Law* 257 (1981).

375

courts were rejected by European parent companies based on blocking statutes of their national legislation.[150]

### CONCLUSION

The Congress and Executive have been very hesitant about Brazil's participation in the progress of private international law. Brazil left the Hague Conference on Private International Law without any justifiable reason. During the period it was a member of the Hague Conference, Brazil did not ratify any of the Conference's conventions. Brazil has signed some of the Inter-American Conventions approved at the conferences held in 1975 (Panamá), 1979 (Montevidéo), 1984 (La Paz) and 1989 (Montevidéo), but it has not yet ratified any of them. Nor has Brazil approved the New York 1958 Convention on Recognition and Enforcement of Foreign Arbitral Awards or the 1961 Geneva Convention on Commercial International Arbitration.

Brazil's Judiciary has a completely different attitude. All levels of state and federal courts are ready to apply foreign law whenever indicated by the rules of Private International Law. Brazilian judges have been careful to apply foreign law in accordance with the effective practice of the *lex causae*, diligently searching for the proper construction of foreign law in the treatises written by the authorities on the law to be applied.[151]

In the field of international judicial cooperation — extradition, recognition of foreign judgments and compliance with letters rogatory — the Federal Supreme Court has maintained the Brazilian tradition of recognition of vested rights and of utmost cooperation with the judiciaries of other States. Brazil was a pioneer in liberalizing foreign judgment recognition, eliminating the reciprocity requirement over a century ago, never demanding *révision au fond*, applying the system of *giudizio di delibazione* with fewer exceptions than the Italians, and ignoring whether the foreign court applied the law indicated by Brazilian rules of conflict of laws.

It is to be hoped that in the future the Brazilian Supreme Court will reexamine its customary *ordre public* approach in matters such as foreign judgments without an opinion (unfounded judgments) to permit their recognition, provided they fulfill all the legal requisites.

---

[150] See e.g., Remington Products Inc. v. North American Phillips Corp., 107 F.R.D. 642 (D. Conn. 1985). See also *Restatement For. Rel. 3d* §§ 441 and 442.

Professor Detlev Vagts has written — this author does not recall where — that instructions from the U.S. government should be complied with by foreign subsidiaries of American companies as long as those instructions do not collide with contrary orders from the government. Hopefully, we shall see the day in which transnational interests of multinational enterprises and jurisdictional conflicts will be intelligently settled in good will and harmony.

[151] See Recurso Extraordinário 93.131, Banco do Brasil S/A. V. Antonio Champalimaud, 101 RTJ, 1149 (1982).