IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CHRIS P. CARTER,

Individually and on behalf of all
others similarly situated,

*Plaintiff*,

      v.

FORJAS TAURUS S.A.,
TAURUS INTERNATIONAL
MANUFACTURING, INC., and
TAURUS HOLDINGS, INC.,

*Defendants*.

Case No. 1:13-cv-24583-PAS

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## FIRST AMENDED CLASS ACTION COMPLAINT

Comes Now, the Plaintiff CHRIS P. CARTER a/k/a CHRISTOPHER PHILLIP CARTER ("Plaintiff"), pursuant to the Court's Scheduling Orders [Docs. 50 and 72], individually and on behalf of all others similarly situated, and amends his class action complaint against Defendants Forjas Taurus, S.A., Taurus International Manufacturing, Inc. and Taurus Holdings, Inc. (collectively, "Taurus" or the "Taurus Defendants"), alleges upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters based upon, inter alia, the investigation made by and through his attorneys, as follows:

### INTRODUCTION

1.     Plaintiff brings this nationwide class action on behalf of himself and all other individuals who own certain Pistols (the "Class" and "Class Pistols" as hereinafter defined) which were designed, manufactured, assembled, imported, and marketed by the Taurus

Defendants in Florida and distributed or sold by the Taurus Defendants in Florida and throughout the United States.  For the purposes of the claims made herein, the Class Pistols are considered an inherently dangerous commodity.

2.      All of the Class Pistols contain at least two defects which render the pistols unreasonably dangerous and unfit for their intended use.  First, the triggers on the Class Pistols move rearward when the pistols are subject to impact, creating a similar condition similar to those that occur as when the trigger is pulled by the shooter (the "Drop-Fire Defect").  Second, the Class Pistols can enter a "false safety" condition in which the pistol's "manual safety latch" appears to be in the "on" or "safe" position, but the pistol will still fire if the trigger is pulled (the "False Safety Defect").  Both of these defects (together, the "Safety Defects" or the "Defects") can result in the Class Pistols firing unexpectedly and against the intentions of the pistol's handler.  Upon information and belief, and based on reasonable investigation, the Safety Defects will repeatedly and verifiably manifest in the Class Pistols.

3.      In filing this lawsuit, Plaintiff and the Class Members do not disparage the Second Amendment's right to bear arms. Rather, Plaintiff and the Class Members seek to hold accountable the Taurus Defendants for the design, lack of testing, manufacture, assembly, marketing, supply, warranty, distribution, misrepresentation, and sales of the Class Pistols which are defective and unreasonably dangerous as described herein.  Instead of impinging upon the Second Amendment, this lawsuit is brought by and on behalf of individuals who have lawfully exercised their Second Amendment right to bear arms.

4.      This class action alleges, among other things, violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201 et seq., negligence, strict liability, breach of express warranties, breach of implied warranties, violation of the Magnuson-

Moss Warranty Act ("MMWA"), fraudulent inducement, suppression, negligent failure to disclose, failure to warn, concealment, misrepresentation, damages and declaratory relief in connection with the Safety Defects which are common to the Class Pistols. The Taurus Defendants' conduct which gives rise to these causes of action encompasses the design, testing, manufacture, assembly, marketing, supply, warranty, misrepresentation, concealment, distribution and/or sales of the Class Pistols.

5.      The Class Pistols are defective and unreasonably dangerous because the common design of the Class Pistols will not prevent and has not prevented the unintended discharge of the Class Pistols.  The Safety Defects result from the inadequate design, manufacturing, and testing of the Class Pistols, and the continued failure of the Defendants to remedy the Safety Defects. The Safety Defects have created an unreasonably dangerous situation for a person owning and/or possessing a Class Pistol, and have substantially reduced or eliminated completely, the value of the Class Pistols.

6.      Despite actual knowledge of the Safety Defects, Taurus has never remedied either Defect, has never issued an effective and complete warning to the public or recall of the Class Pistols and Taurus continues to falsely represent to the public that the Class Pistols are safe and reliable. In fact, Taurus is aware that individuals have been seriously injured as result of the Safety Defects, and it is only a matter of time before more individuals are seriously injured or killed.

7.      At all times relevant to this action, the Taurus Defendants had a duty to disclose and warn Plaintiff and Class Members truthfully and accurately, and not to conceal or misrepresent such truth, about the Safety Defects.  Notwithstanding this duty, and in violation thereof, the Taurus Defendants carelessly and negligently failed to disclose to and warn Plaintiff

and Class Members, and concealed and misrepresented the truth, about the Class Pistols and the Safety Defects.

8.      At all relevant times to this action, the Taurus Defendants fraudulently concealed and intentionally failed to warn Plaintiff and Class Members of the Safety Defects with the intent to deceive the Plaintiff, Class Members, and general public without knowledge of the Defects. The Taurus Defendants falsely and fraudulently represented to Plaintiff and Class Members that their Class Pistols were safe for normal and intended use, when in fact their Class Pistols were not safe for normal and intended use.

9.      At all relevant times to this action, the Taurus Defendants have willfully, knowingly, and/or recklessly committed unfair or deceptive acts or practices in Florida for the express willful purpose of wrongfully concealing the Safety  Defects and their knowledge of it in violation of the FDUTPA.

10.     At all times relevant to this action, Defendants conspired among themselves and with others to conceal from the public, Plaintiff, and Class Members the Safety Defects and Defendants' efforts to understate or misrepresent the nature of the risk created by the Defects.

11.     The Safety Defects are latent defects and the Class Pistols are defective in a way that would not be apparent to Plaintiff and Class Members. Further, the cause of the Safety Defects originates from the common design and manufacture of the Class Pistols and Plaintiff and Class Members would not and could not know of the Defects by the exercise of reasonable diligence.

<u>JURISDICTION AND VENUE</u>

12.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) in that the amount in controversy exceeds $5,000,000,

exclusive of interest and costs and diversity of citizenship exists between the named Plaintiff and Defendants.  This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367.

13.     Diversity of citizenship exists in this case for purposes of subject matter jurisdiction.  The named Plaintiff is a citizen of Iowa and none of the Taurus Defendants are citizens of Iowa. Defendants Taurus International Manufacturing, Inc. ("Taurus Manufacturing") and Taurus Holdings, Inc. ("Taurus Holdings") are citizens of Florida as they are Florida corporations with their headquarters and/or principal places of business in Miami, Florida. Forjas Taurus, S.A. ("Forjas Taurus") is a citizen of Brazil as it is a Brazilian corporation with its principal place of business at Avenida de Forte, 511, Porto Alegre/RS, Brazil.

14.     This Court has personal jurisdiction over each of the Taurus Defendants.

15.     This Court has personal jurisdiction over Defendants Taurus Manufacturing and Taurus Holdings because these Defendants are Florida corporations, have their headquarters and/or principal places of business in Miami, Florida and are engaged directly and through their agents in systematic and ongoing business transactions in the State of Florida and within this District, including but not limited to, the design, testing, manufacture, import, assembly, marketing, supply, warranty, distribution, misrepresentation, and sales of the Class Pistols as well as other conduct in Florida as described herein.

16.     This Court has specific and general personal jurisdiction over Defendant Forjas Taurus pursuant to the Florida long-arm statute, Fla. Stat. §§ 48.193(1)(a) & (2) (2013). Defendant Forjas Taurus, directly and by and through its agents, including but not limited to Defendants Taurus Manufacturing and Taurus Holdings, has engaged in systematic and ongoing business transactions in the State of Florida and within this District.  Defendant Forjas Taurus,

directly and by and through its agents, including but not limited to Defendants Taurus Manufacturing and Taurus Holdings, has had continuous and substantial business connections in the State of Florida, including, upon information and belief, conducting business with individuals located in this District.

17.     This Court has specific personal jurisdiction over Defendant Forjas Taurus because Defendant Forjas Taurus, directly and by and through its agents, including but not limited to Defendants Taurus Manufacturing and Taurus Holdings, as more fully described herein, has:

(a)     operated, conducted, engaged in, or carried out a business venture in the State of Florida, including but not limited to, manufacturing the Class Pistols and other firearms in Brazil under the "Taurus" brand name, importing the Class Pistols and other firearms under the "Taurus" brand name from Brazil into the State of Florida, distributing the Class Pistols and other firearms in Florida and throughout the United States under the "Taurus" brand name, and receiving revenues from such importation and distribution of the Class Pistols and other firearms under the "Taurus" brand name, such that specific personal jurisdiction arises under Fla. Stat. § 48.193(1)(a)(1);

(b)     committed various tortious acts within the State of Florida, including but not limited to, intentionally concealing the Safety Device Defect from Plaintiff and Class Members residing inside and outside of Florida, such that specific personal jurisdiction arises under Fla. Stat. § 48.193(1)(a)(2);

(c)     caused injury to persons within the State of Florida while it was engaged in solicitation of service activities within the State of Florida, including but not limited to, injury to Class Members in Florida caused by the Safety Device Defect while Defendant Forjas Taurus

6

solicited service activities within Florida, such that specific personal jurisdiction arises under Fla. Stat. § 48.193(1)(a)(6)(a); and

(d)     caused injury to persons within the State of Florida arising out of an act or omission by it outside of the State of Florida while products, materials, or things processed, serviced, or manufactured by it in Brazil and elsewhere were used or consumed within the State of Florida in the ordinary course of commerce, trade, or use, including but not limited to, causing injuries to Class Members residing in Florida arising out of the design, manufacture, distribution, and marketing of Class Pistols outside of Florida while Class Pistols processed, serviced, or manufactured by Defendant Forjas Taurus in Brazil and elsewhere were used or consumed within Florida in the ordinary course of commerce, trade, or use, such that specific personal jurisdiction arises under Fla. Stat. § 48.193(1)(a)(6)(b).

18.     This Court has general personal jurisdiction over Defendant Forjas Taurus because, as described more fully herein, it has engaged in substantial and not isolated activity within the State of Florida, including but not limited to, the continuous, ongoing, extensive importation of thousands of Class Pistols and other firearms into the State of Florida from Brazil under the "Taurus" brand name and distributing the Class Pistols and other firearms in Florida and throughout the United States under the "Taurus" brand name, such that general personal jurisdiction arises under Fla. Stat. § 48.193(2).

19.     Plaintiff believes that it may require further discovery as pertains to any challenge to personal jurisdiction in this action.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) as to Defendants Taurus Manufacturing and Taurus Holdings because they reside in this judicial district.  Venue is further proper in this District pursuant to 28 U.S.C. § 1391(b)(2), as to all the

Taurus Defendants because as described herein a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.  The Taurus Defendants regularly and systematically conduct business in Florida and in this judicial district, including but not limited to, the continuous, ongoing, extensive importation of thousands of Class Pistols and other firearms into the State of Florida from Brazil under the "Taurus" brand name and distributing the Class Pistols and other firearms in Florida and throughout the United States under the "Taurus" brand name.  Moreover, upon and information belief, much of the challenged conduct surrounding the Taurus Defendants' defective Class Pistols occurred or emanated from Florida. Upon information and belief, the fraud, deception, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material facts in the distribution, sale, and/or advertisement of the Class Pistols have their origins in Florida. Upon information and belief, the corporate decision not to disclose, but rather to misrepresent, the known Safety Device Defect was made by the Taurus Defendants in Florida. In addition, venue is proper for the claims arising out of Florida's Deceptive and Unfair Trade Practices Act because the statute applies to any company engaging in any of the activities regulated by the FDUPTA within the State of Florida and as alleged herein each of the Taurus Defendants engaged in such activities within Florida.  Venue is further proper in this District as to Defendant Forjas Taurus pursuant to 28 U.S.C. § 1391(c)(3) because it is a Brazilian corporation and a defendant not resident in the United States may be sued in any judicial district.

## PARTIES

21.     Plaintiff CHRIS P. CARTER ("Plaintiff" or "Plaintiff Carter") is over the age of 21 and is a citizen of Scott County, Iowa.  CHRIS P. CARTER owns a Class Pistol, in particular a Model PT-140PRO Pistol which was designed, manufactured, assembled, to be tested,

marketed, imported, warranted, distributed, and sold by the Taurus Defendants.  A true and accurate photograph of Plaintiff's Class Pistol is attached hereto as Exhibit A.

22.     Defendant Forjas Taurus is a Brazilian corporation with its principal place of business at Avenida de Forte, 511, Porto Alegre/RS, Brazil and Forjas Taurus manufactures the Class Pistols and other firearms in Brazil under the "Taurus" brand name and distributes the Class Pistols and other firearms in Florida and throughout the United States under the "Taurus" brand name via Defendants Taurus Manufacturing and Taurus Holdings.

23.     Defendant Taurus Manufacturing and Taurus Holdings are Florida corporations, operating and conducting business in Florida. Defendants Taurus Manufacturing and Taurus Holding's principal place of business is in Miami, Florida. Taurus Holdings is the one hundred percent stockholder of Taurus Manufacturing and they are both in the business of manufacturing, selling, and distributing firearms, including the Class Pistols, in Florida and throughout the United States. In addition, Taurus Manufacturing and Taurus Holdings assembled, marketed, imported, and distributed the Class Pistols in Florida and elsewhere.

24.     The Taurus Defendants are so intertwined contractually for each other's liabilities that they are essentially one entity with regard to the allegations in this Complaint.

## COMMON FACTUAL ALLEGATIONS

25.     According to the Taurus Defendants' website, Forjas Taurus S.A. has been producing small arms in Brazil since 1941.  In 1968, Forjas Taurus ventured into the U.S. market "by employing the services of a succession of U.S. distributors," but "[t]heir efforts met with only marginal success."  As a result, the management of Forjas Taurus made the decision in 1982 to "take the bull by the horns" and open an affiliated United States company in Miami, namely, Defendant Taurus International Manufacturing, Inc.   In 1982, when Forjas Taurus began

distributing and selling its pistols here in the United States, it considered its brand of firearms to be "an unknown commodity in the United States" and "sales that first year in the United States were limited as a solid distribution system had to be established."  In 1984, the Taurus Defendants decided to offer an "unqualified LIFETIME REPAIR POLICY."  This "one brilliant piece of marketing changed the course of the company in this market" and "made everyone sit up and take notice of Taurus Firearms."  As a result, according to the Taurus Defendants, the "U.S. company has posted record years ever since."  The location of the website providing the history of the Taurus Defendants, including Defendant Forjas Taurus' decision to open an affiliated company in Miami, Florida to import and distribute the Class Pistols and other firearms under the "Taurus" brand name in Florida and throughout the United States is http://www.taurususa.com/history.cfm and a copy of the "Taurus History and Background Information" from the Taurus Defendants' website is attached hereto as Exhibit B.

26.     The Taurus Defendants openly represent to the public that they "genuinely believe [they] manufacture firearms better than anyone else. Unlike other competitors that are merely 'assemblers' of firearms, **we manufacture everything: from the firing pins** to the magazines to the cutting tools. **Every piece and every part are owned by Taurus**. This results in higher tolerances, lower costs, faster prototypes and breakthrough innovations."  See Taurus 2013 Product Catalog at 4, http://www.taurususa.com/pdf/2013_taurus_catalog.pdf (emphasis added) (last visited December 19, 2013).

The Class Pistols

27.     The "Class Pistols" are  (i) Taurus-branded, (ii) semi-automatic, (iii) striker-fired and (iv) do not contain a flanged or "blade-type" safety device on the trigger. A semi-automatic pistol is a firearm which fires, extracts, ejects and reloads once for each pull and release of the

10

trigger. A striker-fired pistol is a semi-automatic pistol with a rod-like firing-pin or a separate component which impinges on the firing-pin and strikes the primer to fire a cartridge. A flanged, or "blade-type" trigger safety device is a separate component of the weapon's trigger mechanism that moves independently of the primary trigger and is intended to prevent rearward movement of the trigger unless there is pressure on the face of the blade or flange from, for example, the shooter's finger. The Class Pistols include, but are not limited to the following models/series: Millennium, Millennium Pro, Millennium Pro Compact, Millennium Pro Sub-Compact, 24/7, 24/7 Pro, 24/7 Pro DS, 24/7 OSS, 609TI-Pro, and 638 Pro Compact.

The Defects

28.     **The False Safety Defect.**  The manual safety levers on the Class Pistols operate such that if the handler attempts to put the lever in the "on" or "safe" position when the trigger is not in its fully forward position, the safety lever will move into and stay in an apparent "on" or "safe" position, but the weapon will nevertheless fire if the trigger moves rearward.

29.     **The Drop-Fire Defect.**  Class Pistols are designed and manufactured such that an impact (for example, if the weapon is dropped) to the pistol can and will cause the weapon's trigger to move.  In addition, upon information and belief, impact to the Class Pistols can and does cause certain internal parts of the trigger mechanism to move independently of the trigger. The motion of the trigger, and/or the internal parts of the trigger mechanism, can cause the Class Pistols to fire when impacted.  Upon and information and belief the rearward motion of the trigger defeats the "Firing Pin Block" which Taurus describes as "designed to prevent the firing pin from going forward and striking the primer, [is] engaged until the trigger is in its final rearward position" and is "designed to preclude an accidental discharge should the firearm be dropped."  The Class Pistols are defective because, among other things, the very event (the

weapon being dropped) that the Firing Pin Block is intended to protect against, will also defeat this purported failsafe.

<u>Defendants' False Statements Concerning the Defects</u>

30.     Defendants claim in their user manuals that the Class Pistols are equipped with certain "SAFETY DEVICES," including, a "Trigger Lock" and/or internal "Trigger Safety" and "Firing Pin Block."  According to Taurus, the  "Trigger Lock" and/or internal "Trigger Safety" is "designed to preclude the backward movement of the trigger [or trigger bar] so as to prevent an accidental discharge in case the firearm is dropped" and "[t]he system is disengaged when the trigger is pulled to the rear."  The "Firing Pin Block" is described as being "designed to prevent the firing pin from going forward and striking the primer, is engaged until the trigger is in its final rearward position" and "is designed to preclude an accidental discharge should the firearm be dropped."   According to Taurus, these particular Models or Series are equipped with certain "SAFETY DEVICES" which are described  and illustrated by Taurus as follows:

### Firing Pin Block



The firing pin block, which is designed to prevent the firing pin from going forward and striking the primer is engaged until the trigger is in its final rearward position. This device is designed to preclude an accidental discharge should the firearm be dropped.

### Manual Safety Lever



By moving the safety upward you will block the firing mechanism. Keep the safety on while not using the pistol.

**WARNING:** To properly apply the manual safety lever, the trigger **must be** in its forward-most position, otherwise the lever can be moved upwards, but will **not be fully engaged.**

**Keep your finger off the trigger while moving the lever upward.**

See attached Exhibit C - <u>Taurus Polymer Pistols General Safety, Operating Instructions and Limited Warranty</u> (the "Taurus Manual") at 19.[1]

31.     According to Taurus, "[i]f dropped from a height at which the pistol is normally used, the manual safety and automatic safety [i.e. the firing pin block] together provide double strong resistance against accidental firing caused by such impact."  Exhibit C at 17.  This statement is false with regard to the Class Pistols. Taurus also refers to the "Firing Pin Block" as the "Automatic Safety" and/or "Automatic Firing Pin Block Safety."  The Firing Pin Block, Automatic Safety, and Automatic Firing Pin Block Safety are referenced collectively throughout this Complaint as the "Firing Pin Block."

32.     The common design of the Class Pistols as described is defective and as a result there is no effective safety device to prevent an unintended discharge, even when the Manual Safety Lever is turned on and the Class Pistols are dropped from a height at which the Class Pistols are normally used.

33.     Since the design of the Safety Defects is common to all Class Pistols and is defective in all Class Pistols, the use and/or maintenance of the Class Pistols by Plaintiff and Class Members have no effect on the defective design of the Class Pistols and the damages resulting from the defective design.

34.     The Class Pistols have common latent design defects, namely the Safety Defects, such that if the Class Pistols work as designed they are still defective and Plaintiff and Class Members would still be due relief.

---

[1] The Taurus Manual is the manual that the Taurus Defendants provided with Plaintiff's Class Pistol.

Defendants' Knowledge of the Safety Defects

35.     For years, the Taurus Defendants have knowingly manufactured, marketed, and sold thousands of defective Class Pistols with the Safety Defects to consumers throughout Florida and the United States.

36.     Despite knowing about the Safety Defects for years, the Taurus Defendants consciously and intentionally decided not to recall and/or retrofit the defective Class Pistols which they know are unreasonably dangerous and defective.

37.     It is undisputed that the Taurus Defendants were aware of both of the Safety Defects on or before 2007.   Further, upon information and belief, discovery of internal documents from Taurus will show that Taurus has been aware of the problems with Safety Defects since the early production of the Class Pistols and such discovery will most likely reveal that Taurus has been aware of the Defects since the Class Pistols were first designed, manufactured, imported, tested, produced, and distributed in the United States.

38.     Defendants have been aware of the False Safety Defect since at least 2007, when they began mentioning it in their user manuals for the Class Pistols.   For example, a manual published in 2007 for the Class Pistols states "WARNING: To properly apply the manual safety lever, the trigger must be in its forward-most position, otherwise the lever can be moved upwards, but will not be fully engaged."   This statement and similar statements contained in the user manuals is insufficient to protect users of the Class Pistols from the False Safety Defect and reasonable alternative designs exist that would prevent the False Safety Defect.

39.     The Taurus Defendants have been aware of the Drop-Fire Defect since at least 2007. Defendants, for example, have settled cases which involve the Drop-Fire Defect and despite an ever-growing number of grievous injuries and settlements, Defendants refuse to

acknowledge that the Class Pistols are defective, much less take any steps to warn consumers in Florida or elsewhere in the United States about the dangers of using the Class Pistols. Instead, the Taurus Defendants continue to ignore indisputable evidence of the Drop-Fire Defect.

40.     In 2007, the Taurus Defendants were made aware of the Safety Defects when Taurus Manufacturing was named as a Defendant in a lawsuit filed in the Circuit Court of Etowah County, Alabama, styled Adam Maroney v. Taurus International Manufacturing, Inc., CV-07-073-ACH (the "Maroney" case). The Maroney case arose from the following facts. In February 2005, Adam Maroney's Taurus Pistol fell out of his pocket onto the garage floor and discharged, sending a bullet up through Mr. Maroney's pancreas, spleen, diaphragm, and lungs. Mr. Maroney's Taurus Pistol was a PT 111, which is a Class Pistol. Mr. Maroney had the Manual Safety in the "on" or "safe" position at the time his Taurus Pistol dropped to the garage floor. In the Maroney case, Taurus admitted that a Taurus PT 111 Pistol can discharge if it is dropped from a height at which the pistol is normally used. See Trial Testimony of Mr. Morrison, Trial Tr. at 124, Maroney v. Taurus International Manufacturing, Inc., Case No. 07-73 (Ala. Cir. Ct. dismissed 2009), attached hereto as Exhibit D.

41.     In the Maroney case, Taurus retained their own expert (James C. Hutton) who conducted drop tests (the "Taurus Drop Test") on "brand new" Taurus Class Pistols. The Taurus Drop Test was an attempt, **albeit a failed attempt**, to prove that the common design of the pistol was not defective and that the design of the Class Pistols served the purpose of preventing the "Firing Pin" from going forward and striking the primer when the Class Pistols are dropped. The results of the Taurus Drop Test confirmed what Taurus already knew -- that the Class Pistols are defective in design and purpose. Specifically, the expert witness for Taurus admitted in the Maroney case that the Taurus Drop Test showed an indent in the primer came from the Firing

15

Pin going forward and striking the primer.  In other words, Mr. Hutton admitted that the design of the Class Pistols does not prevent the Firing Pin from going forward and striking the primer when the weapon is dropped, and further that the design of the Class Pistols will not preclude an unintended discharge should the Class Pistols be dropped from a height at which they are normally used.

42.     The Safety Defects have manifested several times, sometimes causing serious bodily injury.   The Defendants are and were aware of those manifestations (and upon information and belief, Defendants are and were aware of many more), but have refused to remedy the Safety Defects.

43.     Robert G. Morrison,[2] the CEO for Taurus Manufacturing, testified under oath, to the following in the Maroney trial: "My answer to the question if you are referring to all PT 111s, it is I believe that they can go off if dropped."  Further, Mr. Morrison testified that it is also foreseeable that the ultimate consumer of a Class Pistol, such as the Model PT 111 Pistol, may drop it. Exhibit D at 124.

44.     There was ample evidence in the Maroney case to support a verdict against Taurus Manufacturing for its explicit desire to achieve profits at the expense of public safety and the safety of individuals who own a Class Pistol.  The jury in Maroney returned a verdict against Defendant Taurus Manufacturing for $1,250,000.00. Taurus Manufacturing did not appeal the jury's verdict, and the case was settled for a confidential amount.

45.     In 2009, Ms. Judy Price was severely injured when her Taurus Pistol Model PT-140 discharged, with the Manual Safety Lever in the "on" or "safe" position, after she accidently dropped her Taurus Pistol from a height at which it is normally intended to be used.  The bullet

---

[2]  Robert G.  Morrison has worked for Defendant Taurus Manufacturing since 1997 and began serving as its President and CEO in 2004. Mr. Morrison also served as the Executive Vice-President and COO of Defendant Taurus Holdings.

entered her thigh, and then went through her colon and intestines and the bullet remains lodged in her liver.  Ms. Price had months of complications and surgeries.  Taurus entered into a settlement agreement with Ms. Price in 2011 and the amount she received pursuant to the settlement agreement remains confidential.  Although Ms. Price would not be a Class Member because she suffered personal injury, the Taurus Pistol Model PT-140 she owned is a Class Pistol.

46.     On or about September 2013, the Sao Paulo State Military Police in Brazil recalled all 98,000 of the .40 caliber S&W Taurus 24/7 Pistols issued to their personnel after discovering that the Taurus Pistols could be discharged without the trigger being pulled. The Sao Paulo State Military Police is the largest state police force in Brazil. According to information publicly available on the Internet, Taurus is investigating the problem and has promised an official comment.  Further, an Internet website describing the recall by the Sao Paulo Military Police features a video showing the discharge of the .40 caliber S&W Taurus 24/7 Pistol without the trigger being pulled.[3]  The similar .40 caliber S&W Taurus 24/7 Pistols imported, distributed and sold in the United States are Class Pistols as defined herein since these Taurus model pistols have the common design of the Safety Defects.

47.     Despite all of the information Taurus has in connection with the defective design of the Class Pistols as described herein, Taurus has not undertaken any effort to inform the public and/or individuals who own Class Pistols about the Defects, or to issue any recalls and replace and/or repair and/or retrofit the Class Pistols.

48.     Plaintiff  has filed this nationwide Class Action Complaint in order to seek declaratory relief and compensation for the damages of Plaintiff and the proposed Class and to

---

[3]  The URL for the website is http://fnforum.net/forums/handgun-room/49803-brazilian-police-recall-98-000-taurus-24-7-ds-pistols.html (last visited Dec. 16, 2013).

force the Taurus Defendants to act as responsible corporate citizens by educating their customers, the lawful possessors of the Class Pistols and the public about the dangers of the Class Pistols, repairing the Defects in the Class Pistols, or paying to allow the Plaintiff and the proposed Class to replace the Class Pistols and/or repair and replace the Defects in the Class Pistols on their own.

49.     The allegations in this Complaint are well-supported by the troublesome history of the Class Pistols, the harmful, sometimes life-threatening, consequences of their use by consumers, as well as the Taurus Defendants' continuing denial or failure to acknowledge the Defects.  These critical facts about the Class Pistols and the Defects have been hidden from the public by the Taurus Defendants' pattern of concealing the Defects and refusing to warn the public despite the Taurus Defendants' knowledge of the Defects.

50.     Simply stated, the Class Pistols are defective and inherently dangerous, and Taurus has known about the Defects for years, but has allowed the Class Pistols to remain in the hands of unsuspecting gun owners to the imminent risk of harm to the owners of the Class Pistols and the public.

## PLAINTIFF CHRIS CARTER FACTS

51.     Plaintiff Carter owns a Class Pistol that is a Taurus Model PT-140PRO which was purchased new on or about December 21, 2009 for $426.93.  Plaintiff's Class Pistol has the Safety Defects that are common to every other Class Pistol.

52.     On or about July 29, 2013, while employed as a deputy with the Scott County, Iowa Sheriff's Department and working as a narcotics agent with the Quad City Metropolitan Enforcement Group, Plaintiff Carter was attempting take a suspect into custody when the suspect made an evasive move and Plaintiff Carter attempted to apprehend the suspect.  Plaintiff Carter

was carrying his Class Pistol in a holster at his waist with the Manual Safety Lever in the "on" or "safe" position.  At this point, Plaintiff Carter was pursuing the suspect on foot and his Class Pistol dropped on the ground.  When Plaintiff Carter's Class Pistol came into contact with the ground, his Class Pistol discharged, resulting in a single shot firing from the Class Pistol. Plaintiff Carter had not touched the trigger of his Class Pistol before the Class Pistol dropped to the ground. Plaintiff Carter immediately picked up and secured the Class Pistol.  Other law enforcement agents continued with pursuit of the suspect.  Plaintiff Carter inspected the Class Pistol and observed that the Manual Safety Lever was still in the "on" position and that the spent round or empty casing had failed to eject from the Class Pistol.  Plaintiff Carter followed the protocol of his law enforcement agency and notified his shift Sergeant of the accidental discharge of the Class Pistol. Fortunately, the bullet or projectile from the Class Pistol struck an automobile and no human being was injured from this discharge of Plaintiff Carter's Class Pistol.

53.     Despite the fact that the Manual Safety Lever was in the "on" or "safe" position when Plaintiff Carter's Class Pistol dropped from a height at which the Class Pistol is normally used, the weapon still fired.

54.     The design of Plaintiff Carter's Pistol as it relates to the Safety Defects is defective and common to all Class Pistols, and as a result it did not prevent an unintended discharge when it was dropped from a height at which the Class Pistol is normally used even though the Manual Safety Lever was turned to the "on" or "safe" position.

## CLASS DEFINITION AND CLASS ACTION ALLEGATIONS

55.     Plaintiff brings this suit as a nationwide class action on behalf of himself and all others similarly situated pursuant to Rules 23(a), 23(b)(2), and/or 23(b)(3) of the Federal Rule of Civil Procedure. The Class that Plaintiff seeks to represent is defined as follows:

**All individuals in the United States who own a Class Pistol.**

56.     Subject to additional information obtained through further investigation and discovery to be conducted, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.  Specifically excluded from the Class are the Taurus Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by the Taurus Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with the Taurus Defendants and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family; and persons who have suffered or claimed to have suffered physical injury as a result of a defective Class Pistol.

57.     Numerosity:   The Class is composed of thousands of persons across the United States, the joinder of whom in one action is impractical.  While the exact number and identity of Class Members are not presently known, they can be identified through the review of records in the Taurus Defendants' possession, custody and control, and/or through other formal discovery. Plaintiff is informed and believes that thousands of Class Pistols with the Defects have been manufactured and sold in Florida and throughout the United States.  In fact, the CEO of Defendant Taurus Manufacturing has testified under oath that approximately one hundred thousand Model PT 111's Pistols have been sold in the United States and these sales numbers

only include the PT 111 model,[4] which is only one of many Taurus Models manufactured, imported to Florida, distributed, marketed, and sold with the Defects.  Consequently, the individuals in the Class are so numerous, consisting of at least one hundred thousand Class Members, that the sheer number of aggrieved persons makes joinder of all such persons impracticable, and the disposition of their claims in a class action, rather than in individual actions, will benefit the parties and the Court and is the most efficient and fair way to resolve the controversy.

58.    <u>Commonality</u>:  Defendants have engaged in a standardized course of conduct that affects all Class Members. The critical question of law and fact common to the Plaintiff Class that will materially advance the litigation is whether the Class Pistols are inherently defective, contrary to the expectations imparted by Taurus through their representations, omissions, and suppression.  Furthermore, other questions of law and fact common to the Class exist as to all members of the Class and predominate over any questions affecting only individual members of the Class include the following:

a.   Whether the common design of the Class Pistols as described is defective;

b.   Whether the common design of the Class Pistols as described prevents the Firing Pin from going forward should the Class Pistol be dropped;

c.   Whether the Class Pistols are defective because they will fire the manual safety lever in the "on" or "safe" position;

d.   Whether the Firing Pin Block is only released until the trigger is pulled completely to the rear and/or the trigger is in the final rearward position;

e.   Whether Taurus violated the Florida Deceptive and Unfair Trade Practices Act by, among other things, engaging in unfair, unlawful, or fraudulent practices in

---

[4] Exhibit D at 133.

connection with the failure to disclose the material and life-threatening Defect in the Class Pistols;

f.   Whether Taurus has been wrongfully and/or unjustly enriched as a result of the conduct set forth in the Complaint;

g.   Whether Plaintiff and the Class are entitled to equitable relief, including but not limited to restitution;

h.   Whether the design or manufacturing of the Class Pistols can cause the Defects, and thus the Class Pistols are not suitable for their intended use;

i.   Whether Taurus knew or should have known that the Class Pistols were defective;

j.   Whether Taurus had a duty to Plaintiff and the Class to disclose the true nature of the Class Pistols;

k.   Whether Taurus had a duty to recall the Class Pistols;

l.   Whether Taurus falsely represented that the Class Pistols were of a certain standard, quality, and grade, when in fact, they were not;

m.   Whether Taurus suppressed and concealed material information regarding the true characteristics and defective nature of the Class Pistols;

n.   Whether Taurus' false representations and suppression of the Defects was knowing, intentional, reckless, and/or malicious;

o.   Whether Plaintiff and the Class Members are entitled to compensatory, statutory, punitive, exemplary, and/or other forms of damages, and/or other monetary relief and, if so, in what amount;

p.   Whether Taurus breached their Express Warranties to Plaintiff and the Class;

q.  Whether the scope of the Taurus Unlimited Lifetime Repair Policy™ requires Taurus to notify the owners of Class Pistols regarding the Defects and repair and/or retrofit the Class Pistols;

r.  Whether Taurus breached their Implied Warranties to Plaintiff and the Class; and

s.  Whether Plaintiff and the Class members are entitled to an order (1) permanently enjoining Taurus from manufacturing, assembling, importing, marketing, advertising, distributing, and selling Class Pistols, (2) and requiring Taurus to recall all Class Pistols, and (3) requiring Taurus to compensate Plaintiff and Class Members.

59.     <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the members of the Class, as all such claims arise out of the Taurus Defendants' conduct in designing, manufacturing, testing, marketing, advertising, warranting and selling the defective Class Pistols. The Defects of the Class Pistols renders each Class Member's claims, legal theory, and injury common and typical.

60.     <u>Adequate Representation</u>:  Plaintiff will fairly and adequately protect the interests of the members of the Class and has no interests antagonistic to those of the Class. Plaintiff has retained counsel and law firms that are experienced in the prosecution of complex class actions.

61.     <u>Predominance and Superiority</u>:  The class action in this instance is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and this Class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of the Class is impracticable.  The common liability issues in this Class Action may be resolved efficiently on a class-wide basis.  Should individual Class Members be required to bring

separate actions, **assuming Class Members were aware of the latent Defects**, this Court and/or courts throughout the nation would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court. The common design Defects of the Class Pistols are latent defects and the Class Pistols are defective in a way that would not be apparent to Plaintiff and Class Members.  As a result, Class Members are unaware of the Defects and their claims against Defendants as a result of the latent Defects; therefore, without notice of the Defects, a failure of justice will occur in the absence of a class action.

62.    Declaratory and Injunctive Relief:  The class action is also appropriate because the Taurus Defendants have acted or refused to act on grounds generally applicable to the class, and the Plaintiff and putative class seek, inter alia, equitable remedies with respect to the class as a whole.  Indeed, the prosecution of separate actions for injunctive relief would create the risk of establishing incompatible standards of conduct for the Taurus Defendants.   In addition, individual actions for injunctive relief may, as a practical matter, be dispositive of the interests of class members, who would not be party to those actions.

**ESTOPPEL AND TOLLING OF STATUTE OF LIMITATIONS**

63.    The Taurus Defendants are estopped from relying on any statutes of limitation or repose by virtue of their acts of fraudulent concealment, which include the Taurus Defendants' intentional concealment from Plaintiff, Class Members, and the general public that the Class

Pistols are defective, while continually marketing the Class Pistols with the Safety Defects described herein.

64.     Given the Taurus Defendants' affirmative actions of concealment by failing to disclose this known but non-public information about the Safety Defects – information over which the Taurus Defendants had exclusive control – and because Plaintiff and Class Members therefore could not reasonably have known that the Class Pistols were defective, Defendants are estopped from relying on any statutes of limitations or repose that might otherwise be applicable to the claims asserted herein.

## CAUSES OF ACTION AND CLAIMS FOR RELIEF

### Count One
### Violation of the Florida Deceptive and Unfair Trade Practices Act

65.     Plaintiff, individually, and on behalf of all others similarly situated, incorporates by reference paragraphs 1 through 63 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

66.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 et seq. (the "Act" or "FDUTPA").  The stated purpose of the Act is to "protect the consuming public. . .  from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

67.     Plaintiff and all Class Members are "consumers" and the transactions at issue in this Complaint constitute "'trade or commerce" as defined by Florida Statutes §§ 501.203(7) and (8), respectively.

68.     Florida Statute § 501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

69.     Consumers and the consuming public under the FDUTPA include Florida residents and non-residents of Florida and Florida has a strong interest in regulating the conduct of corporations headquartered within the state. There are no geographical or residential restrictions contained within the express language of the FDUTPA and the Act applies to Taurus Defendants regardless of where the distribution and/or sale of Class Pistols occurred.

70.     In violation of the FDUTPA, the Taurus Defendants employed fraud, deception, false promise, misrepresentation and the knowing concealment, suppression, or omission of material facts in their distribution, sale, marketing, and/or advertisement of the Class Pistols, including information in the Taurus Manuals, on the website of the Taurus Defendants, and the material facts as set forth in the following paragraph.

71.     Prior to and at the time the Taurus Defendants distributed the Class Pistols from their headquarters in Florida for sale to the public they engaged in fraud, deception, false promises, misrepresentations, concealment, suppression, or omission of material facts in violation of the FDUTPA in the following ways:  (a) represented that the "Taurus pistols were manufactured to perform properly with the original parts as designed;" (b) represented that there is "SAFETY AGAINST ACCIDENTAL FIRING FROM DROPPING;" (c) represented that "[i]f dropped from a height at which the pistol is normally used, the manual safety and automatic safety together provide double strong resistance against accidental firing caused by such impact;" (d) represented that the Class Pistols were safe against accidental firing from being dropped from a height at which the pistol is normally used when the Taurus Defendants lacked credible

evidence to support those claims, and/or knew that the Class Pistols were, in fact, defective and not suitable to be used for their intended purpose; (e) represented that "[t]he firing pin block" is "designed to prevent the firing pin from going forward and striking the primer . . . until the trigger is in its final rearward position;" (f) represented that the Class Pistols were "designed to preclude an accidental discharge should the firearm be dropped;" (g) represented that "[b]y moving the safety upward you will block the firing mechanism;" (h) represented that the Class Pistols "[were] carefully inspected and test fired in order to ensure that it conformed to our specifications and standards;" (i) represented that the Class Pistols are "free from defects in material and workmanship;" (j) that Taurus is "totally committed to the very highest standards of quality, [and] dependability;"  (k) omitted information which they knew or should have known involve the safety of the Class Pistols.  Specifically, the Taurus Defendants concealed the Safety Defects from the public; and (l) by distributing and/or selling the Class Pistols, Taurus impliedly represented to Plaintiff and Class Members that the Class Pistols are fit for the purpose for which they are intended and safe to use. See Exhibit C at 6, 17, 19, 24; Exhibit E, Taurus Limited Warranty[5]; Exhibit G, Screenshot of TaurusUSA.com, Taurus Unlimited Lifetime Repair Policy, http://www.taurususa.com/repair-policy.cfm (last visited December 19, 2013).

72.     The misrepresentations, deception, false promises, knowing concealment, suppression, omission of material facts in their distribution, sale, marketing, and/or advertisement of the Class Pistols, including information in the Taurus Manuals and on the website of the Taurus Defendants were uniform as to Plaintiff and each class member and the decisions involving misrepresentations, deception, false promises, knowing concealment, suppression, and omission of material facts were made by Taurus Defendants in Florida

_____

[5] This is the Limited Warranty that was provided by Taurus with Plaintiff's Class Pistol.

73.     The Taurus Defendants violated the FDUPTA by failing to disclose to and concealing from Plaintiff, Class Members, prospective purchasers, and the public the Safety Defects in the Class Pistols.

74.     The Taurus Defendants engaged in the concealment, suppression, or omission of the aforementioned material facts with the intent that others, such as Plaintiff, Class Members, and/or the general public would rely upon the concealment, suppression, or omission of such material facts.

75.     These misrepresentations, practices, and omissions of the material facts are likely to affect a consumer's choice of or conduct regarding the ownership and/or use of the Class Pistols and the issue is not whether Plaintiff and Class Members relied on the misrepresentations, practices, concealment, and omissions of the material facts, but whether the misrepresentations, practices, concealment, and omissions of the material facts were likely to deceive a consumer acting reasonably in the same circumstances and Plaintiff and Class Members need not prove individual reliance.   Since proof of reliance is not necessary, issues relating to causation and damages will be common to Plaintiff and all Class Members.   To the extent reliance is required by law, reliance and damages are sufficiently shown by the fact that Plaintiff and Class Members own and/or use a Class Pistol.

76.     The Taurus Defendants' concealment, suppression, or omission of material facts as alleged herein constitutes unfair, deceptive and fraudulent business practices within the meaning of the FDUTPA.

77.     The Taurus Defendants either knew, or should have known, that the Class Pistols are defectively designed and/or manufactured and were not safe against accidental discharge and that serious injury or death could occur when a Class Pistol is dropped from a height at which a

Class Pistol is normally used. All of the Taurus Defendants unfair or deceptive acts relate to their involvement in placing the Class Pistols into the stream of commerce from their headquarters in Florida, knowing the Class Pistols were not safe and that serious injury or death could occur because of the Safety Defects.

78. Upon information and belief, the Taurus Defendants knew that at the time the Class Pistols left the Taurus Defendants' control the Class Pistols contained the Defect described herein. At the time of manufacture, distribution, and/or sale, the Class Pistols contained the common design Safety Defects. The Defects reduced the effectiveness and performance of the Class Pistols and rendered them unable to perform the ordinary purposes for which they were used as well as caused the resulting damage described herein.

79. As a direct and proximate cause of the violation of the FDUTPA, described herein, Plaintiff and Class Members have been injured in that they own and/or use Class Pistols with the Safety Defects based on nondisclosure of the material facts alleged herein, including but not limited to, nondisclosure of the Safety Defects.

80. The Taurus Defendants' unlawful conduct is continuing, with no indication that the Taurus Defendants' unlawful conduct will cease.

81. The Taurus Defendants' actions in connection with the designing, manufacturing, marketing, testing, and distributing of the Class Pistols as set forth herein evidences a lack of good faith, honesty in fact, and observance of fair dealing so as to constitute unconscionable commercial practices, in violation of the FDUTPA, Fla. Stats. §§ 501.201, et seq.

82. The Taurus Defendants acted willfully, knowingly, intentionally, unconscionably and with reckless indifference when it committed these acts of consumer fraud described herein.

83.    Said acts and practices on the part of the Taurus Defendants were and are illegal and unlawful pursuant to Florida Statute § 501.204.

84.    As direct result and proximate result of the Taurus Defendants' violations of the FDUTPA, Plaintiff and Class Members have suffered damages, regardless of whether the Class Pistols have malfunctioned or manifested the Safety Defects in some way.  Plaintiff and the Class Members are entitled to compensatory damages, including damages for the diminished value of the Class Pistols. Further, Plaintiff and Class Members are entitled to equitable and declaratory relief, damages allowed under FDUTPA, costs, the establishment of a common fund if necessary, and statutory attorney fees.

## Count Two
## Negligence

85.    Plaintiff, individually, and on behalf of all others similarly situated, incorporates by reference paragraphs 1 through 63 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

86.    At all times relevant to this action, the Taurus Defendants had the duty to exercise that degree of care that a reasonably prudent firearm manufacturer and/or distributor should use in the design, testing, selection, manufacture, assembly, marketing, supply, distribution and sales of Class Pistols.  Notwithstanding this duty, and in violation thereof, the Taurus Defendants negligently and carelessly designed, tested, selected, manufactured, assembled, marketed, supplied, distributed, and sold Class Pistols with the Safety Defects.  As a direct and proximate result of this breach of duty, individuals who own a Class Pistol are exposed to a substantial, clear, and unreasonable risk of serious injury or death.

87.     Plaintiff, on behalf of himself, and the Class, demands judgment against the Taurus Defendants for compensatory damages for himself and each member of the Class, for the establishment of a common fund, plus attorney's fees, interest and costs.

## Count Three
## Strict Liability In Tort – Restatement (Second) Of Torts § 402A

88.     Plaintiff, individually, and on behalf of all others similarly situated, incorporates by reference paragraphs 1 through 63 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

89.     The Taurus Defendants designed the Class Pistols with the Safety Device Defect, rendering the Class Pistols inherently dangerous and creating a substantial, clear, extreme and unreasonable risk of serious injury or death to Plaintiff and Class Members.  The Taurus Defendants manufactured, assembled, marketed, distributed, and sold the Class Pistols with the Safety Defects.  The Class Pistols were in the same defective condition due to the Safety Defects from the time they left the Taurus Defendants' control until they reached the Plaintiff and Class Members, all of whom use the Class Pistols in the manner intended by the Taurus Defendants.

90.     The Class Pistols were sold in substantial and unreasonably dangerous condition to an extent beyond that which would be contemplated by the ordinary consumer, including, Plaintiff and Class Members.

91.     As a direct and proximate result of the facts alleged above, Plaintiff and Class Members are exposed to a clear, substantial, and unreasonable risk of serious injury or death from the Safety Defects and the Class Pistols.

92.     The Taurus Defendants are strictly liable in tort for all injuries, damages, and losses that have or may result from the unintentional and unwanted discharge of a Class Pistol, and for the cost of rendering the Class Pistols safe.

93.     Plaintiff, on behalf of himself, and the Class, demands judgment against the Taurus Defendants for compensatory and punitive damages for himself and each member of the Class, for the establishment of a common fund, plus attorney's fees, interest and costs.

**Count Four**
**Breach Of Express Warranty**

94.     Plaintiff, individually, and on behalf of all others similarly situated, incorporates by reference paragraphs 1 through 63 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

95.     The Taurus Defendants provide with each of the Class Pistols express warranties which are made to every owner of a Class Pistol, including Plaintiff and Class Members. The Taurus Defendants have memorialized these express warranties in writing.   These express warranties are set forth in the Taurus Manual, the "Limited Warranty," the "The Taurus Lifetime Repair Policy," and the "Taurus Unlimited Lifetime Repair Policy™" --- written documents which are provided with the Class Pistols and/or which are also published on the public website of the Taurus Defendants.   Each of the express warranties set forth in the Taurus Manual, the "Limited Warranty," the "The Taurus Lifetime Repair Policy," and the "Taurus Unlimited Lifetime Repair Policy™" is a separate and independent express warranty made to Plaintiff and Class Members.

96.     The express warranties made to the Plaintiff and Class Members and set forth in the Taurus Manual, include the following: (a) that the "Taurus pistols were manufactured to perform properly with the original parts as designed;" (b) that there is "SAFETY AGAINST ACCIDENTAL FIRING FROM DROPPING;" (c) that "[i]f dropped from a height at which the pistol is normally used, the manual safety and automatic safety together provide double strong

resistance against accidental firing caused by such impact;"  (d) that "[t]he firing pin block" is "designed to prevent the firing pin from going forward and striking the primer . . . until the trigger is in its final rearward position;" (e) that the Class Pistols were "designed to preclude an accidental discharge should the firearm be dropped;"  (f) that "[b]y moving the safety upward you will block the firing mechanism;"  (g) that the Class Pistols were "carefully inspected and test fired in order to ensure that it conformed to our specifications and standards."  Exhibit C at 6, 17, 19, 24; Exhibit G.  The Taurus Defendants breached these express warranties by not providing a product which could provide the benefits described in this paragraph and as a result of the Taurus Defendants' breach of these express warranties, Plaintiff and Class Members have been damaged.

97.     The express warranties made to the Plaintiff and Class Members and set forth in the "Limited Warranty," include the following: (a) that "[h]andguns manufactured by Taurus are warranted to be free from defects in material and workmanship;" and (b) that it "extends to any owner of a Taurus handgun manufactured after July 3, 1975." See Exhibit E.  Plaintiff and Class Members are in privity of contract with the Taurus Defendants and/or are the express beneficiaries of the express warranties set forth in the "Limited Warranty" and these express warranties became part of the basis of the bargain. The Taurus Defendants breached these express warranties by not providing a product which could provide the benefits described in this paragraph and as a result of the Taurus Defendants' breach of these express warranties, Plaintiff and Class Members have been damaged.  Notwithstanding the express warranties described in this paragraph, Plaintiff and the Class Members were denied the full benefit of the bargain.

98.     The express warranties made to the Plaintiff and Class Members and set forth in the "The Taurus Lifetime Repair Policy" include that Taurus "will repair, free of charge, any

weapon manufactured or distributed by Taurus International." <u>See</u> The Taurus Lifetime Repair Policy, attached hereto as Exhibit F.[6]

99.     The express warranties made to the Plaintiff and Class Members and set forth in the "Taurus Unlimited Lifetime Repair Policy,™" include the following: (a) the "Taurus Unlimited Lifetime Repair Policy™" is for the "lifetime of the gun . . . not the buyer;" (b) that the Taurus Defendants "stand behind [their firearms] for a lifetime;" (c) that the Taurus Defendants' "unprecedented repair policy stands firmly behind every firearm imported or manufactured by Taurus International;" (d) that the "full terms" of the Taurus Unlimited Lifetime Repair Policy™ are that the Taurus Defendants "will repair your Taurus firearm FREE OF CHARGE for the lifetime of the firearm;" and (e) that the Taurus Defendants are "totally committed to the very highest standards of quality, dependability, and most of all, customer satisfaction." <u>See</u> Exhibit G.[7]  The Taurus Defendants breached these express warranties by not providing a product which could provide "the very highest standards of quality, dependability, and most of all, customer satisfaction" and as a result of the Taurus Defendants' breach of these express warranties, Plaintiff and Class Members have been damaged.

100.    The Taurus Defendants provided the express warranties described in paragraphs 94 through 98 to Plaintiff and Class Members.

101.    Plaintiff and Class Members are the express beneficiaries of the express warranties described in paragraphs 94 through 98. To the extent required by law, the Taurus Defendants have expressly waived privity of contract as a requirement to the enforceability of any of their express warranties.

---

[6] This is the Taurus Lifetime Repair Policy that was provided by Taurus with Plaintiff's Class Pistol.
[7] The Taurus Unlimited Lifetime Repair Policy™ is published to Plaintiff, Class Members, and the general public via Taurus USA website.

102.    Notwithstanding these express warranties, and in breach thereof, the Taurus Defendants designed the Class Pistols with the Defect, which rendered the Class Pistols in breach of the express warranties, unmerchantable, nonconforming, and unsafe for normal use and created a clear, substantial, and unreasonable risk of serious injury or death to Plaintiff and Class Members.

103.    The breach of the express warranties described in paragraphs 94 through 98 is a proximate cause of the Plaintiff's and the Class Members' injuries and the warranties have failed in their essential purpose

104.    Plaintiff, on behalf of himself, and the Class, demands judgment against the Taurus Defendants for compensatory damages for himself and each member of the Class, for the establishment of a common fund, plus attorney's fees, interest and costs.

## Count Five
## Breach Of Implied Warranty Of Merchantability

105.    Plaintiff, individually, and on behalf of all others similarly situated, incorporates by reference paragraphs 1 through 63 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

106.    At all times mentioned herein, the Taurus Defendants designed, manufactured, marketed, distributed, and sold the Class Pistols with the Safety Defects, and prior to ownership of the Class Pistols by Plaintiff and Class Members, the Taurus Defendants impliedly warranted to Plaintiff and Class Members that the Class Pistols were of quality and fit for the use for which they were intended, that the Class Pistols were merchantable, would operate effectively, were safe for normal use, suitable for the ordinary and usual purposes for which they were intended, and would not create an unreasonable risk of injury to consumers.

107.    Plaintiff and Class Members, in owning and/or using the Class Pistols, relied upon the skill and judgment of the Taurus Defendants.

108.    The Class Pistols are unfit for their intended use and are not of merchantable quality, as warranted by the Taurus Defendants, in that they had and/or have the propensities to fail to perform and protect, including but not limited to, accidentally discharging when dropped from a normal height of intended use and the Manual Safety Lever is in the "on" position to prevent an unintended discharge, when put to their intended use and. the manual safety levers on the Class Pistols operate such that if the handler put the lever in the "on" or "safe" position when the trigger is not in its fully forward position, the safety lever will move into and stay in an apparent "safe" position, but the weapon is not in a "safe" condition and will  fire if the trigger moves rearward. Plaintiff's Class Pistol caused Plaintiff to sustain damages as herein alleged.

109.    The Taurus Defendants designed and manufactured the Class Pistols with the Safety Defects.  The Taurus Defendants designed, manufactured, marketed, distributed, and placed the Class Pistols into the stream of commerce knowing and expecting that the Class Pistols would be used by consumers and around the general public and by distributing the Class Pistols, Taurus impliedly represented to Plaintiff and Class Members that the Class Pistols were merchantable, would operate effectively, were safe for normal use, suitable for the ordinary and usual purposes for which they were intended, and would not create an unreasonable risk of injury to consumers.

110.    The Taurus Defendants were on notice of the breach of implied warranties at the time the Class Pistols were manufactured and distributed by Taurus.  The Taurus Defendants knew, or should have known about the Safety Defects.

111.    The Taurus Defendants failed to provide an adequate remedy and caused their implied warranties to fail of their essential purpose, thereby permitting remedy under the implied warranties to Plaintiff and others similarly situated.

112.    As a direct and proximate result of the breach of said warranties, Plaintiff and Class Members have suffered and will continue to suffer a loss as alleged herein in an amount to be determined at trial.

113.    Plaintiff, on behalf of himself and all others similarly situated, demand judgment against the Taurus Defendants for compensatory damages for himself and each member of the Class, for the establishment of a common fund, plus attorney's fees, interest and costs.

<u>Count Six</u>
<u>Magnuson-Moss Warranty Act</u>

114.    Plaintiff, individually, and on behalf of all others similarly situated, incorporates by reference paragraphs 1 through 63 and Counts Four and Five and all Exhibits attached hereto as though expressly stated herein in this paragraph.

115.    The express and implied warranties as described in Counts Four and Five are subject to the provisions and regulations of the Magnuson-Moss Warranty Act, 15 U.S.C. 2301, *et seq.*

116.    To the extent required by law, the Taurus Defendants have expressly waived any basis of the bargain requirement as to Plaintiff and Class Members by extending the express and implied warranties described in Counts Four and Five to any owner of a Class Pistol and not restricting these warranties solely to the buyer of a Class Pistol.

117.    Plaintiff and Class Members are "consumers" as defined in the MMWA. Defendants are "suppliers" and "warrantors" as defined by the MMWA.

118.    The Class Pistols in question are "consumer products" as defined in the MMWA and the Class Pistols were manufactured and sold after July 4, 1975. The express warranties provided by the Taurus Defendants and/or required by statute to be provided by the Taurus Defendants are a full "written warranty" as defined in the MMWA.

119.    The Taurus Defendants breached the express and implied warranties as described in Counts Four and Five.

120.    The Taurus Defendants had sufficient notice because they were aware or should have been aware of the Safety Defects at the time of the manufacture and/or sale of the Class Pistols.

121.    The Taurus Defendants' conduct described herein is a violation of the MMWA.

122.    By virtue of the foregoing, Plaintiff and Class Members are entitled to an award of damages and other appropriate relief, including attorneys' fees and costs, as allowed by the MMWA.   Further, the MMWA provisions allowing recovery of attorneys' fees, costs, and expenses, applies to any consumer who prevails on any warranty affected by the MMWA, whether express and/or implied warranties.

**Count Seven**
**Negligent Failure To Disclose, Failure To Warn, Concealment And Misrepresentation**

123.    Plaintiff, individually, and on behalf of all others similarly situated, incorporates by reference paragraphs 1 through 63 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

124.    The Class Pistols are an inherently dangerous commodity and the Taurus Defendants at all times relevant had a duty to disclose to and warn Plaintiff and Class Members truthfully and accurately, and not to conceal or misrepresent such truth, about the Safety Device

Defect, and a duty to provide a fair and adequate warning of the dangerous potentiality of the Class Pistols due to the Defects.

125.    By the Taurus Defendants designing, manufacturing, failing to test, marketing, distributing, and placing an inherently dangerous commodity such as the Class Pistols in the channels of trade, then by the very nature of their commercial activity, the Taurus Defendants have a duty to provide a fair and adequate warning of the dangerous potentiality of the Class Pistols due to the Defects.

126.    The Taurus Defendants could foresee that the Class Pistols, due to the latent Defects, posed a clear, substantial and unreasonable risk of personal injury and death.   The proper measure of duty for the Taurus Defendants in designing, manufacturing, testing, selling, marketing, and distributing an inherently dangerous commodity such as the Class Pistols is the reasonable foreseeability that serious injury or death might result from the use of the commodity.

127.    Notwithstanding this duty, and in violation thereof, the Taurus Defendants carelessly and negligently failed to disclose to and warn Plaintiff and Class Members, and concealed and misrepresented the truth, about the latent Safety Defects which posed a clear, substantial and unreasonable risk of personal injury and death.

128.    Because Plaintiff and Class Members did not have an equal opportunity to discover such truth about the Taurus Defendants' defectively designed Class Pistols, Plaintiff and Class Members own and/or use the Class Pistols in the reasonable, but, unbeknownst to them, false belief they were fit for use, merchantable, and reasonably safe for their intended purposes.

129.    Because the Class Pistols were not in fact fit for use, merchantable, and reasonably safe for their intended purposes, and because of the Taurus Defendants' negligent

failure to disclose and warn and their concealment and misrepresentation of such facts, as a direct and proximate result Plaintiff and Class Members have been exposed to a clear, substantial and unreasonable risk of serious injury and death.

130.    Plaintiff, on behalf of himself, and the Class, demands judgment against Taurus for damages for himself and each member of the Class, for the establishment of a common fund, plus attorney's fees, interest and costs.

**Count Eight**
**Fraudulent Concealment And Intentional Failure To Warn**

131.    Plaintiff, individually, and on behalf of all others similarly situated, incorporates by reference paragraphs 1 through 63 and all Exhibits attached hereto as though expressly stated herein in this paragraph.

132.    The Taurus Defendants fraudulently concealed and intentionally failed to warn Plaintiff and Class Members of the Safety Defects with the intent to deceive Plaintiff and Class Members into ownership and/or use Class Pistols without knowledge of the Defects which poses a clear, substantial and unreasonable risk of personal injury and death.

133.    The Taurus Defendants falsely and fraudulently represented to Plaintiff and Class Members that their Class Pistols were safe for normal use.

134.    Plaintiff and Class Members reasonably and justifiably relied on the Taurus Defendants' false and fraudulent representations, and on the Taurus Defendants' deliberate silence, concerning the highly significant and material fact that the Class Pistols were not safe for normal use, as a result of which, to their detriment, they elected to own and/or use Class Pistols without knowledge of such fact.  There were no reasonable means for Plaintiff or Class Members

to make themselves aware of such fact, since the Taurus Defendants have retained tight control of the relevant information concerning the Safety Defects.

135.    As a direct and proximate result of the Taurus Defendants' fraudulent conduct, of both commission and omission, Plaintiff and Class Members have been exposed to a clear, substantial and unreasonable risk of personal injury and death during their lawful possession and normal use of their Class Pistols.

136.    Plaintiff, on behalf of himself, and the Class, demands judgment against the Taurus Defendants for compensatory and punitive damages for himself and each member of the Class, for the establishment of a common fund, plus attorney's fees, interest and costs.

## Count Nine
## Declaratory Relief

137.    Plaintiff, individually, and on behalf of all others similarly situated, incorporates by reference all preceding paragraphs and all Exhibits attached hereto as though expressly stated herein in this paragraph.

138.    The Taurus Defendants acted or refused to act on grounds that apply generally to the Plaintiff and Class Members, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23(b)(2). There is an actual controversy between Plaintiff and the Taurus Defendants concerning the Safety Defects in the Class Pistols. The Safety Defects have diminished the value of the Class Pistols and create a definite threat of future injury to Plaintiff and Class Members.

139.    Accordingly, Plaintiff seeks a declaration that:  (1) all Class Pistols with the Safety Defects have common design defects in workmanship and material that allow  the Pistols

to fire unexpectedly and against the intention of the handler; and (2) the Taurus Defendants knew of the Safety Defects in Class Pistols and failed to disclose material facts about the Defects.

140.    Further, Plaintiff seeks injunctive relief requiring the Taurus Defendants to issue a recall of all Class Pistols with the Safety Defects.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, pray for a judgment against the Taurus Defendants as follows:

a.    Enter an Order certifying this action to proceed as a class action, and naming Plaintiff as the representative for the Class and his counsel as counsel for the Class;

b.    Enter an award in favor of Plaintiff and the Class that includes compensatory, exemplary or punitive damages, treble damages, and statutory damages, including interest thereon, in an amount to be proven at trial;

c.    Enter an award in favor of Plaintiff and the Class for compensatory damages that includes the cost of repair, replacement or modification of the Safety Defects to render safe the Class Pistols;

d.    Declare that the Taurus Defendants are financially responsible for notifying all Class Members of the Safety Defects with the Class Pistols;

e.    Enter an Order enjoining the Taurus Defendants from further deceptive advertising, marketing, distribution, and sales practices with respect to the Class Pistols and requiring the Taurus Defendants to repair and/or replace Plaintiff's Class Pistol and Class Members' Class Pistols with a suitable alternative Pistol of Plaintiff's and Class Members' choosing.

f.       Declare that the Taurus Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of the Class Pistols, or order the Taurus Defendants to make full restitution to Plaintiff and Class Members.

g.       Enter an Order permanently enjoining the Taurus Defendants from continuing to engage in the unlawful and inequitable conduct alleged herein;

h.       Granting Plaintiff and the Class all equitable remedies permitted by law against the Taurus Defendants;

i.       Enter an award of attorneys' fees and costs, as allowed by law;

j.       Enter an award of pre-judgment and post-judgment interest, as provided by law;

k.       Grant Plaintiff and the Class leave to amend the Complaint to conform to the evidence produced at trial; and

l.       Grant such other relief against the Taurus Defendants as the Court may deem just and proper under the circumstances and applicable law.


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.


Respectfully submitted, this 22nd day of September, 2014


/s/ *David L. Selby, II*
David L. Selby, II *(admitted pro hac vice)*
BAILEY & GLASSER, LLP
3000 Riverchase Galleria, Suite 905
Birmingham, Alabama 35244
Tel.:       (205) 988-9253
Email:       dselby@baileyglasser.com

John W. Barrett *(admitted pro hac vice)*
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, West Virginia  25301
Tel.:      (304) 345-6555
Email:      jbarrett@baileyglasser.com

Todd Wheeles *(admitted pro hac vice)*
MORRIS, HAYNES, HORNSBY & WHEELES
3500 Colonnade Parkway, Suite 100
Birmingham, AL 35243
Email:      twheeles@mhhlaw.net

Angelo Marino, Jr. (FBN 151934)
ANGELO MARINO, JR., P.A.
645 S.E. 5th Terrace
Ft. Lauderdale, Florida  33301
Tel.:      (954) 765-0537
Fax:      (954) 765-0545
Email:      amjrpamail@aol.com

Carol Finklehoffe (FBN: 15903)
Thomas Scolaro (FBN: 178276)
Ira H. Leesfield (FBN: 140270)
LEESFIELD & PARTNERS, P.A.
2350 South Dixie Highway
Miami, Florida  33131
Tel.:      (305) 854-4900
Fax:      (305) 85498266
Email:      finklehoffe@leesfield.com
            scolaro@leesfield.com
            leesfield@leesfield.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2014, a true and correct copy of the foregoing was served upon all counsel of record by filing with the Clerk using the Court's CM/ECF system, which will send notification of such filing and make available the same.

/s/ David L. Selby, II
David L. Selby, II