UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CHRIS P. CARTER,
Individually and on behalf of all others similarly situated,

     *Plaintiff*,

v.

FORJAS TAURUS, S.A.,
TAURUS INTERNATIONAL MANUFACTURING, INC.,
and TAURUS HOLDINGS, INC.,

     *Defendants*.

Case No.
1:13-cv-24583-PAS

**CLASS ACTION**

**DEFENDANTS' MOTION AND SUPPORTING MEMORANDUM
TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

     Defendants, Taurus International Manufacturing, Inc. ("TIMI"), Forjas Taurus, S.A. ("Forjas"), and Taurus Holdings, Inc. ("Holdings"), move to dismiss Plaintiff's First Amended Class Action Complaint (the "Amended Complaint") [DE 73] pursuant to Rules 12(b)(1), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure. The grounds and authority for this motion are set forth in the following supporting memorandum, which is incorporated as part of the motion.

**MEMORANDUM OF LAW**

     TIMI, Forjas and Holdings respectfully submit the following memorandum in support of their Motion to Dismiss Plaintiff's First Amended Complaint.

**Introduction**

     This proposed class action[1] arises out of an alleged unintended discharge of a Taurus model PT-140 pistol owned by Plaintiff, Christopher P. Carter (the "Pistol"). DE 73 ¶52. Mr. Carter was not physically injured and is not seeking damages related to any personal property. *Id.* Rather, he wants to recover an alleged diminution in the value of the Pistol (Count 1, 4-6), and unspecified damages for the future "risk of serious injury or death" associated with his use of the Pistol (Counts 2, 3, 7-8). These alleged damages are both based

---

     [1] TIMI, Forjas and Holdings reserve the right to challenge the sufficiency of Plaintiff's class allegations, and the class treatment of Plaintiff's alleged claims, at the appropriate stage of this case should any claims survive dismissal.

on claims that the Pistol will fire when dropped and that the manual safety will not work properly when the trigger is pulled to the rear.  DE 73 ¶¶28-29.

The Pistol was designed and manufactured by Forjas, and was imported and distributed by TIMI.[2]  DE 54 ¶¶21-22.  Mr. Carter is a deputy with the Scott County Sheriff's Department, and he resides in Scott County, Iowa.  DE 73 ¶21.  He did not purchase the Pistol.  Rather, Mr. Carter's father, who is not a party to this action, purchased the Pistol in 2009 from R&R Sports in Clinton, Iowa,[3] and gave the Pistol to Mr. Carter as a gift.

Mr. Carter alleges that he was chasing a criminal suspect on July 29, 2013, when the Pistol fell out of his waistband and discharged when it hit the ground.  DE 73 ¶52.  Nobody was injured when the Pistol discharged, *id.*, but it was later determined that the bullet lodged in a nearby parked vehicle, and the Scott County Sheriff's Department reimbursed the owner of the vehicle for the damage.[4]

Mr. Carter is now seeking to recover economic damages[5] resulting from the alleged diminished value of the Pistol.  And he is further seeking to bring class claims for alleged damages related to several different and distinct models of pistols, which were manufactured in different ways and at different times over the course of nearly twenty years, and which he has never owned.

**The Amended Complaint**

At the Rule 16(b) Scheduling Conference, the Court directed the parties to review the pleadings and simplify the claims in this case. Rather than simplifying the allegations, the Amended Complaint is now even more ambiguous and unnecessarily complicated.  The Amended Complaint eliminated only two counts from the original Complaint, and now alleges that the Pistol, and numerous other separate and distinct models of Taurus brand firearms, were improperly designed and contain two unexplained defects that 1) permit the trigger to move to the rear when dropped; and 2) preclude the manual safety from operating

---

[2] Holdings is a company that is owned by Forjas, and Holdings is the owner of TIMI and several other companies.

[3] R&R Sports is not a defendant in this lawsuit.

[4] Mr. Carter has not alleged that he is seeking to recover for damage to the vehicle, and presumably has not suffered any damages arising out of the alleged damage to the vehicle.

[5] Mr. Carter has specifically excluded all persons that allegedly incurred personal injury from his proposed class.

properly when the trigger has been pulled to the rear.  DE 73 ¶¶28-29.  Mr. Carter's apparent basis for this alleged defect is that his Pistol fired when it was dropped, but he does not provide any factual basis to explain the alleged defects, does not explain how this caused his purported injuries, and does not identify specific components of his Pistol (or of any other separate and distinct pistols) that are defective.

Nearly a year after filing his original Complaint, Mr. Carter still does not allege precisely what is wrong with his Pistol (or with any other pistols he seeks to include in his proposed class), and is apparently relying on a *res ipsa loquitor* theory of a defect in the Pistol.  Put simply, he claims that the Pistol fired when it was dropped, so it must therefore be defective in some way.  And he further seems to claim that, because his Pistol fired when dropped, literally hundreds of thousands of other different and distinct pistols, manufactured in different ways and at different times over the course of nearly twenty years, must therefore also be defective.

Mr. Carter's entire lawsuit is also premised upon two mechanical characteristics that are plainly explained in the Pistol's manual.  First, Mr. Carter alleges that his Pistol is defective because an impact can cause it to unintentionally fire (the so-called "Drop Defect").  DE 73 ¶29.  To the extent that Mr. Carter can ever demonstrate that this is a result of a design or manufacturing defect, which Defendants dispute, the manual provided with the Pistol conspicuously explained the possibility that the Pistol could discharge if dropped.  In fact, the manual (which is attached to the Amended Complaint), contains two separate warnings, and instructed that Mr. Carter should not keep ammunition in the chamber of the weapon to prevent such an accidental discharge if the weapon is dropped:

4. **WARNING:** Never carry, handle or leave unattended any firearm with the safety not engaged. When the safety is not engaged, it will fire from slight pressure on the trigger. An accidental discharge could easily result if you fall or drop the firearm, or if the firearm is struck or disturbed by someone or something.

It is important to recognize that it is impossible to make any small firearm absolutely foolproof against drop firing under all circumstances, so long as a cartridge is loaded in the chamber.
The risk is virtually eliminated by the simple precaution of leaving the chamber empty until you are ready to shoot. In the event of a severe drop, the pistol should be checked by a competent gunsmith to ensure that no internal damage has occurred which may impair its safety or reliability.

DE 73-3 p. 14, 17.[6]

Likewise, Mr. Carter alleges (again without any factual basis) that the Pistol is defective simply because the manual safety will not work properly when the trigger is depressed (the so-called "False Safety Defect"). DE 73 ¶28. Mr. Carter never alleges that he operated the manual safety in this manner, so it is not clear how this has any bearing on his claims. Regardless, the Pistol's manual, which is attached to the Amended Complaint, contains two very conspicuous instructions that warned Mr. Carter against depressing the trigger when engaging the manual safety:

> **WARNING:** To properly apply the manual safety lever, the trigger **must be** in its forward-most position, otherwise the lever can be moved upwards, but will **not be fully engaged.** (See page 19)

> **WARNING:** To properly apply the manual safety lever, the trigger **must be** in its forward-most position, otherwise the lever can be moved upwards, but will **not be fully engaged.**
>
> **Keep your finger off the trigger while moving the lever upward.**

DE 73 ¶28; 73-3 p. 5, 19. Accordingly, the exhibits to the Amended Complaint show that Mr. Carter was specifically advised about operational aspects of the Pistol that he now claims are "defects." He therefore fails to state a plausible claim that he was misled, deceived or defrauded.

## LEGAL STANDARDS

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the allegations in a complaint. *Speaker v. U.S. Dept. of Health and Human Serv.*, 623 F.3d 1371, 1379 (11th Cir. 2010). While the Court generally accepts factual allegations and construes them in the light most favorable to the Plaintiff, a "complaint must contain sufficient factual allegations, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). This standard requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."

---

[6] The manual and warranty that came with the Pistol are attached to the Amended Complaint. DE 1 ¶28, fn. 1; DE 73 ¶29, fn. 1.

4

*Davila v. Delta Air Lines*, 326 F.3d 1183, 1185 (11th Cir. 2003).  Once this Court "identifies pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," it must determine whether the well-pled facts "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949.

Rule 9(b)'s requirement to plead fraud with particularity is also at issue.  Plaintiff's Amended Complaint was required to set forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001).

Finally, a complaint must be dismissed when a plaintiff lacks Article III standing. Fed. R. Civ. P. 12(b)(1).  Factual allegations are generally accepted as true at this state of the litigation, but it is squarely within this Court's "power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing."  *Warth v. Seldin*, 422 U.S. 490, 501 (1975). To the extent necessary, the Court may also "undertake evidentiary hearings" to evaluate whether standing exists, and this inquiry is appropriate at the motion to dismiss stage. *Bischoff v. Osceola County Florida*, 222 F.3d 874, 878 (11th Cir. 2000).

## ARGUMENT

Mr. Carter is attempting to bring a classic no-injury products liability case.  As other courts have noted, a typical no-injury products liability complaint contains:

> . . . the same [allegation] as in a traditional products liability case: the defendant produced or sold a defective product and/or failed to warn of the product's dangers. . . . [However,] the striking feature of a typical no-injury class is that the plaintiffs have either not yet experienced a malfunction because of the alleged defect or have experienced a malfunction but not been harmed by it. Therefore, the plaintiffs in a no-injury products liability case have not suffered any physical harm or out-of-pocket economic loss.

*Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 455 n. 4 (5th Cir.2001) (emphasis added). Mr. Carter's Amended Complaint attempts to assert the latter type of no-injury products liability case – he claims to have experienced a malfunction, but fails to allege that he has been injured in any cognizable manner.  As with many other plaintiffs that have attempted to bring a no-injury products liability action, Mr. Carter is, among other things, seeking to

circumvent long-standing legal principles precluding recovery of pure economic losses in products liability actions.

Moreover, with the exception of his FDUTPA claim, Mr. Carter has not alleged that any state's substantive laws apply to his various claims. Mr. Carter is an Iowa resident, Holdings and TIMI are both incorporated and have their principal place of business in Florida, and Forjas is a Brazilian company with its principle place of business in that country. Mr. Carter is not contending that Brazilian law applies to any of his controversies because he has not provided the notice required by Fed. R. Civ. P. 44.1. The only two states' laws that could arguably apply to Mr. Carter's various individual claims at this stage of the litigation are either Florida or Iowa, and the Amended Complaint should be dismissed under either state's laws. Accordingly, Defendants take no position at this stage as to which state's laws will ultimately govern Mr. Carter's various individual claims, and reserve the right to fully address that issue at the appropriate stage of this litigation should any claims survive dismissal.

Defendants further assert that the substantive laws applicable to the various claims of any potential class members must be determined according to the governing choice of law principles based upon the individual facts and circumstances applicable to each potential class member. Defendants also reserve the right to raise these arguments at the appropriate stage of this litigation should any claims survive dismissal, and therefore do not agree that either Florida or Iowa law would apply to any such claims.

A. Shotgun Pleading

The Amended Complaint is a perfect example of a "shotgun" complaint prohibited by Fed. R. Civ. P. 8 and 10. A shotgun pleading is one that "begin[s] with a long list of general allegations, most of which are immaterial to most of the claims for relief." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.,* 162 F.3d 1290, 1333 (11th Cir. 1998). It then "incorporate[s] every antecedent allegation by reference into each subsequent claim for relief." *Liebman v. Deutsche Bank Nat. Trust Co.,* 462 Fed. Appx. 876, 879 (11th Cir. 2012) (quoting *Wagner v. First Horizon Pharm. Corp.,* 464 F.3d 1273, 1279 (11th Cir. 2006)). "The result is that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies." *Magluta v. Samples,* 256 F.3d 1282, 1284 (11th Cir. 2001).

The Eleventh Circuit has roundly criticized this manner of pleading on multiple occasions:

> Shotgun pleadings impede the administration of the . . . courts' civil dockets in countless ways. The . . . court, faced with a crowded docket and whose time is constrained by the press of other business, is unable to squeeze the case down to its essentials. It is therefore left to this court to sort out on appeal the meritorious issues from the unmeritorious ones, resulting in a massive waste of judicial and private resources; moreover, the litigants suffer, and society loses confidence in the courts' ability to administer justice.

*Peavy v. Black,* 476 Fed. Appx. 697, 699 (11th Cir. 2012) (alteration, citation, and quotation marks omitted) (quoting *PVC Windoors, Inc. v. Babbitbay Beach Canst., N. V,* 598 F.3d 802, 806 n.4 (11th Cir. 2010)); *see also Serpentfoot v. Rome City Comm* 'n, 426 Fed. Appx. 884, 885 n.1 (11th Cir. 2011) (calling shotgun pleadings a "ubiquitous problem"); *Byrne v. Nezhat,* 261 F.3d 1075, 1130 (11th Cir. 2001) (stating that "shotgun pleadings wreak havoc on the judicial system"), abrogated on other grounds by *Douglas Asphalt Co. v. QORE, Inc.,* 657 F.3d 1146 (11th Cir. 2011).

The Amended Complaint is an improper shotgun complaint for at least two reasons. First, Mr. Carter fails to identify the factual predicates applicable to each individual Defendant.  Rather than identify distinct conduct or omissions applicable to TIMI, Holdings and Forjas, Mr. Carter collectively refers to the three Defendants, which are separate and distinct legal entities, as the "Taurus Defendants."  *See, e.g.*, DE 73 p. 1, ¶¶1, 3, 6-7, 70-74, 86, 89, 95, 106, 116, 124, 132 and 138.  All of the claims against Forjas Taurus, Holdings and TIMI are thus lumped together, making it "virtually impossible[7] to know which allegations of fact are intended to support which claim for relief" or which Defendant.  *Anderson v. Dist. Bd. of Trustees of Cen. Fla. Comm. College*, 77 F.3d 364, 365-66 (11th Cir. 1996).

This manner of "group pleading" in which the allegations are not differentiated among individual Defendants is improper. *Magluta v. Samples,* 256 F.3d 1282, 1284 (11th Cir. 2001) (noting that a fifty-eight page complaint with fourteen defendants, with all defendants charged without any differentiation in each count, was "a quintessential 'shotgun' pleading we have condemned repeatedly."); *see also Pierson v. Orlando Reg'/ Healthcare Sys., Inc.,* 619 F. Supp. 2d 1260, 1273-74 (M.D. Fla. 2009) *aff'd,* 451 F. App'x 862 (11th Cir.

---

[7] In an effort to comply with the Court's direction at the Rule 16(b) scheduling conference to narrow the scope of defenses and denials, Defendants have focused on ways to limit the issues in the litigation, but the continued shotgun nature of the pleadings make it impossible to meet that task.

2012) (holding that lumping together or "the grouping of Defendants . . . does not afford these Defendants fair notice of the basis for the claims against them," particularly in situations where the role of each Defendant in the conduct at issue is not described.); *and Synergy Real Estate of SW Florida, Inc. v. Premier Prop. Mgmt. of SW Florida,* LLC, No. 2: 11-CV -707-FTM-29, 2012 WL 4009534, at *2 (M.D. Fla. Sept. 12, 2012) (holding that "indiscriminately lumping 'defendants' together" fails to comply with Federal Rule of Civil Procedure 8").

Mr. Carter attempts to justify this deficiency by merely asserting the conclusory statement that the Defendants are "so intertwined contractually for each other's liabilities that they are essentially one entity."  DE 73 ¶24.  Mr. Carter is improperly attempting to disregard the corporate existence of these entities, he provides no factual basis for this allegation, and no basis for such a claim exists.

Second, Mr. Carter fails to plead the specific factual predicates for each claim or link specific facts to individual causes of action. *Lampkin-Asam v. Volusia County Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008).  The first eight counts incorporate all of the 63 paragraphs preceding Count I, and the last count incorporates all preceding counts. DE 73 ¶¶65, 85, 88, 94, 105, 114, 123, 131, 137. Accordingly, it is impossible to differentiate and identify the specific allegations in the first 63 paragraphs that apply to each count, and some counts contain only conclusions couched as facts. *See, e.g.*, Count II, Count III and Count VIII. The Amended Complaint is therefore a classic shotgun pleading and each and every count 0should be dismissed.

B.   Count VIII (Fraudulent Concealment and Intentional Failure to Warn)

 Count VIII fails to fails to state a claim as a matter of law, he has not asserted fact that shows he has standing and he fails to plead fraud with the required particularity.

1.   Mr. Carter's fraud claim is barred by the economic loss rule.

Many of Mr. Carter's claims in this litigation, including fraud, are barred by the economic loss rule.  This fundamental principle in products liability actions "prohibits the extension of tort recovery for cases in which a product has damaged only itself and there is no personal injury or property damage." *Florida Power & Lights Co. v. Westinghouse Elec. Corp.*, 510 So.2d 899 (Fla. 1987); *Moransais v. Heathman*, 744 So.2d 973, 979 (Fla. 1999); *accord Tomka v. Hoechst Celanese Corp.,* 528 N.W. 2d 103 (Iowa 1995); *Nelson v. Todd's Ltd.*, 426 N.W. 2d 120, 2125 (Iowa 1988).  In fact, the Florida Supreme Court recently reiterated that the sole purpose of this doctrine is to "limit actions in the product liability

context" and specifically reaffirmed its viability in products liability actions. *Tiara Condominium Ass'n*, 110 So.2d at 407.

The economic loss doctrine bars Mr. Carter's fraud claim in this case because he is not seeking recovery for any personal injury or loss to property. He claims to have been injured by virtue of the fact that he "elected to own and/or use" the Pistol, and that he has been exposed to "*a risk of* personal injury and death," neither of which assert a claim for personal injury or loss to property. DE 73 ¶¶134-35 (emphasis added). To the extent those allegations could ever constitute cognizable injuries and result in actual damages, which Defendants deny, Mr. Carter's fraud claim falls within the classic definition of an economic loss and is barred as a matter of law. It would be futile to permit him to replead and Count VIII should be dismissed with prejudice.

2.      Mr. Carter fails to state a claim for actionable fraud.

Even if Mr. Carter's fraud claim was not precluded by the economic loss rule, Count VIII would still fail to state a claim for fraud under the facts of this case. A fraud claim will only survive a 12(b)(6) motion to dismiss if it contains factual allegations that are "enough to raise a right to relief above the speculative level, on the assumption that all the [factual] allegations in the complaint are true." *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955. The duty to accept the facts in the Amended Complaint does not require the Court to ignore specific facts "in favor of general or conclusory allegations," and when an exhibit considered part of a pleading directly "contradict[s] the general and conclusory allegations" of the pleading, the document governs. *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007).

Count VIII attempts to assert two separate variations of fraud. The first basis asserts that the Defendants "fraudulently concealed and intentionally failed to warn" Mr. Carter about the so-called "Safety Defects" (*i.e.*, fraudulent concealment), and the second asserts that the Defendants affirmatively misrepresented that the Pistol was "safe for normal use" (*i.e.*, fraudulent misrepresentation). DE 73 ¶¶ 132-133. Neither of these conclusory allegations contains sufficient factual allegations to state an actionable fraud claim under the standards set forth in *Iqbal* and *Twombly*, and they are properly dismissed.

(a)   Fraudulent Concealment

A claim for fraudulent concealment requires Mr. Carter to allege and prove that the Defendants: 1) concealed or failed to disclose a material fact; 2) knew or should have known that the material fact should be disclosed and acted in bad faith; 3) knew that Plaintiff would

be induced to act; 4) that Plaintiff suffered damages; and 5) either a legal duty to disclose existed, or that Plaintiff's opportunity to learn was not equal to Defendants. *R.J. Reynolds Tobacco Co. v. Martin*, 53 So.3d 1060 (Fla. 1st DCA 2012); *Parker v. State of Florida Bd. of Regents ex. Rel Florida State University*, 724 So.2d 163 (Fla. 1st DCA 1998); *Ramel v. Chasebrook Const. Co.*, 135 So.2d 876, 882 (Fla. 2nd DCA 1961); *accord Van Sickle Constr. Co. v. Wachovia Comm. Mortg., Inc.*, 783 N.W. 2d 684, 687 (Iowa 2010).  It is well settled that omissions are not actionable as fraud "unless the party omitting the information owes a duty of disclosure to the party receiving the information."  *Berhman v. Allstate Ins. Co.*, 388 F. Supp. 2d 1346, 1351 (S. D. Fla 2005) (Seitz, J.) (*citing TransPetrol Ltd. v. Radulovic*, 764 So.2d 878, 880 (Fla. 4th DCA 2000)); *accord Cornell v. Wunschel*, 408 N.W.2d 369, 374 (Iowa 1987).  That duty only arises "when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them." *Berhman*, 388 F. Supp. at 1351.  "In an arms-length transaction, neither party owes a duty to the other to act for that party's benefit or protection, or to disclose facts that the other party could have discovered through its own diligence."  *Id*. Not only has Mr. Carter not alleged a relationship of trust between the parties, he has not even alleged the he had a relationship, or personally engaged in a transaction, with any of the Defendants. Mr. Carter has not made this allegation because no such relationship existed between the parties.

Likewise, the Amended Complaint shows on its face that nothing was concealed and that Mr. Carter's opportunity to learn of the alleged "defects" was precisely the same as the Defendants. Mr. Carter's manual, which he attached to the Amended Complaint, contained a conspicuous warning that no safety is "foolproof," that his Pistol could fire when dropped and that the manual safety would not work properly if the trigger was moved to the rear. DE 73 ¶¶28, 29; 73-3 p. 5, 14, 17, 19. Mr. Carter cannot possibly succeed on a fraud claim under these circumstances because the law "charges a claimant with knowledge of all facts that he could have learned through diligent inquiry."  *Taylor v. American Honda Motor Co., Inc.*, 555 F. Supp. 59, 64 (M.D. Fla. 1982).  Nothing was concealed.  Mr. Carter cannot conveniently ignore those instructions (which are part of the pleadings) and assert a claim of fraudulent concealment.  He has plead no facts supporting the conclusory allegation that the Defendants "fraudulently concealed and intentionally failed to warn Plaintiff . . . of the Safety Defects" [DE 73 ¶132], and the Court is under no obligation to accept that statement as true in light of the conspicuous warnings contained in the Pistol's manual.

(b) Fraudulent Misrepresentation

Mr. Carter's fraudulent misrepresentation claim, which is based on the vague allegation that someone told him that the Pistol was "safe for normal use," fares no better. In order to state a claim for fraudulent misrepresentation, Mr. Carter must show:

(1) a false statement concerning a material fact;
(2) the representor's knowledge that the representation is false;
(3) an intention that the representation induce another to act on it; and
(4) consequent injury by the party acting in reliance on the representation.

*Washington v. Lasalle Bank Nat'l Ass'n*, 817 F.Supp.2d 1345 (S.D. Fla. 2011) (Seitz, J.) (*citing Butler v. Yusem*, 44 So.3d 102, 105 (Fla. 2010)); *accord Van Sickle Constr. Co. v. Wachovia Comm. Mortg., Inc.*, 783 N.W. 2d 684, 687 (Iowa 2010). Even if Mr. Carter could allege the specifics of when, where, and who allegedly told him that his Pistol was "safe for normal use," which he cannot, such a conclusory allegation cannot form the basis for fraud.

The alleged statement "safe for normal use" is not a statement of an existing material fact. If anything, it is an opinion about a future event that will not support an action for fraud. *Silver v. Countrywide Home Loans Inc.*, 760 F.Supp.2d 1330 (S.D. Fla. 2011) (Seitz, J.) (citing *Wasser v. Sasoni*, 652 So.2d 411 (Fla. 3d DCA 1995)); *see also Gibson v. NCL (Bahamas) Ltd.*, (stating that "the general promise of a 'safe, reliable, licensed, excursion' is not actionable") (Seitz, J.). The fact that Mr. Carter was allegedly using a model of Taurus pistol that was just one of approximately "one hundred thousand" sold to various consumers throughout the United States, that he was using the Pistol during official undercover police activities, while he was chasing and attempting to take a criminal suspect into custody, is just one illustration of why the phrase "safe for normal use" cannot possibly constitute a statement of existing, material fact. DE 73 ¶¶52, 57.

Moreover, Mr. Carter cannot show reliance, injury or damages in this case. He has not alleged (and cannot allege) that he purchased the Pistol. Because he did not purchase the Pistol, Mr. Carter obviously could not have relied upon any alleged statements, or suffered any harm, when the Pistol was purchased. Even if Mr. Carter could plead specific statements or omissions were made directly to him, and that he relied on them, merely alleging that he "elected to own and/or use" the Pistol, and that he was "exposed to a . . . risk of personal injury and death," does not state a cognizable fraud injury or damages. *See, e.g.*, *Martin v. Brown*, 566 So.2d 890 (Fla. 4th DCA 1990) (identifying the two measures of damages permitted in fraudulent representation claims).

3.    Mr. Carter lacks standing to bring his fraud claim under the facts alleged.

Mr. Carter will be at a loss to find any support for the proposition that his future "risk of personal injury or death" states an injury-in-fact sufficient to confer standing for fraud because that alleged future injury is neither actual nor imminent. *Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 884 (11th Cir.2000). In order for standing to exist:

> (1) the plaintiff must have suffered, or must face an imminent and not merely hypothetical prospect of suffering, an invasion of a legally protected interest resulting in a concrete and particularized injury; (2) the plaintiff's injury must have been caused by or be traceable to the defendant's actions; and (3) the injury must be redressable by the court.

*Common Cause/Georgia v. Billups,* 554 F.3d 1340, 1349 (11th Cir.). An injury must be "likely" and not merely "speculative," and it must be "redressed by a favorable decision." *Bouldry v. C.R. Bard, Inc*., 909 F.Supp.2d 1371, 1374 (S.D. Fla. 2012).

The speculative risk of possible future personal injury or death fails to state a cognizable injury. While this Court has found an injury-in-fact in future monitoring cases involving unavoidable exposure to defective medical products, *see Bouldry v. C.R. Bard, Inc.*, 909 F.Supp.2d 1371, 1374-75 (S.D. Fla. 2012), it has not held that the completely speculative chance of a future malfunction of a product, which a person voluntarily uses with full knowledge of an alleged defect, can qualify as a cognizable injury-in-fact. Moreover, Mr. Carter's alleged risk of future personal injury or death, to the extent it could ever be shown to have existed, will not be traceable to any deceptive conduct because Mr. Carter now claims to be fully aware of the alleged defects. Count VIII should therefore be dismissed because Mr. Carter has failed to allege standing.

4.    Mr. Carter fails to plead fraud with particularity.

Even if Mr. Carter's claims were not barred as a matter of law, his fraud claim fails to comply with Fed. R. Civ. P. 9(b). Nearly a year into this litigation, and after being given an opportunity to correct the problems with his original Complaint, Mr. Carter still fails to allege fraud with any particularity. Rule 9(b) "serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants against spurious charges of immoral and fraudulent behavior." *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1371 (11th Cir. 1997). Accordingly, the Eleventh Circuit has noted that Rule 9(b):

> . . . protects litigants from frivolous suits . . . [and w]hen a plaintiff does not specifically plead the minimum elements of their allegation, it enables them to learn the complaint's bare essentials through discovery and may needlessly harm

a defendant's goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, [grounded on] baseless allegations used to extract settlements.

*U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1313 n. 24 (11th Cir. 2002).

Regardless of whether Count VIII is cast as fraudulent concealment or misrepresentation, Mr. Carter was required to identify:

. . . (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud.

*FindWhat Investor Group v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011); *see also Brightstar Corp. v. WSA Distrib., Inc.*, 2010 WL 1027420 (S.D. Fla. 2010) (Sietz, J.); *accord Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006). Stated another way, Mr. Carter must plead "the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008). Count VIII misses this mark by a long shot.

Mr. Carter broadly alleges that Defendants fraudulently concealed the "Safety Defects," and misrepresented that his Pistol was "safe for normal use." DE 73 ¶¶132-33. However, he never alleges the precise representations or omissions, the time and place of the statements or omissions, the person who purportedly made (or did not make) them, the content of the alleged representations or omissions, the manner in which he relied on the statements, and what each Defendant obtained as a consequence of the alleged fraud. He does not identify the omissions or misrepresentations with any particularity because he wants to rely on vague allegations that *someone* failed to disclose the so-called "Safety Defects" at some unspecified point in time, and that *someone* allegedly stated that his Pistol was "safe for normal use" at some unspecified point in time. DE 73 ¶¶122-23.

The allegations in the Amended Complaint are obviously paraphrased conclusions that do not satisfy Rule 9(b). And the simple fact that these alleged "defects" were conspicuously disclosed and explained in the Pistol's manual shows that Mr. Carter cannot state a claim for fraud. Moreover, "in a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Brooks,* 116 F.3d at 1381 (internal quotations omitted). It is impossible to identify the specific statements or omissions applicable to each Defendant because Mr. Carter has lumped

them together as combined allegations against the "Taurus Defendants." DE 73 ¶131-36.  By pleading in this manner, Mr. Carter fails to inform the separate Defendants of the nature of their participation in the alleged fraud. *Brooks,* 116 F.3d at 1381; *Clausen,* 290 F.3d at 1311. Simply put, Mr. Carter has not alleged the "the who, what, when, where, and how" applicable to each individual Defendant.  *Mizzaro*, 544 F.3d at 1237.

This is critically important in this litigation given that the Defendants are separate and distinct legal entities, and Mr. Carter will be unable to allege that their roles in the design, manufacture, export, import, distribution, marketing, and sale of the Pistol, if any, were the same.  Moreover, none of the Defendants had any direct contact with Mr. Carter. Count VIII should be dismissed, and Mr. Carter should not be provided another opportunity to replead because he will not be able to make the necessary allegations to satisfy Rule 9(b).

## C.  Count I (FDUTPA)

Count I, which seeks remedies under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), similarly fails to state a claim.  The Amended Complaint fails to state a FDUTPA claim as a matter of law because it does not allege the required elements.[8]

Mr. Carter fails to state a claim because FDUTPA only applies to actions that occurred within the State of Florida, and the Amended Complaint "does not contain specificity for the location of the conduct giving rise to the FDUTPA claim." *Carnival Corp. v. Rolls-Royce PLC*, Case No. 08-23318, 2009 WL 3861450, *6 (S.D. Fla. 2009) (Seitz, J.); *and Five for Five Entertainment, S.A. v. Rodriguez*, 877 F. Supp. 2d 132, 1330 (S.D. Fla. 2012) (Seitz, J.).  Mr. Carter ambiguously states that representations were "made by [sic] Taurus Defendants in Florida," but no facts supporting that bare conclusion are contained in the Amended Complaint, and his failure to separate the facts pertaining to the individual Defendants has unnecessarily complicated this inquiry. *Id.*

Even if Mr. Carter could identify conduct that occurred within Florida, in order to state a claim under FDUTPA he must still allege: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2d DCA 2006).   Again, Mr. Carter's shotgun pleading does not permit the Defendants to discern which allegations of unfair and deceptive practices apply to a specific Defendant.  But even if it were possible to discern those factual allegations, Mr. Carter has not alleged and cannot

---

[8] Defendants do not concede or agree that Mr. Carter has standing to even bring a FDUTPA claim under the facts of his case.  However, Defendants reserve the right to raise this issue at the appropriate stage of this litigation should any claim survive dismissal.

demonstrate the basic elements of a FDUTPA claim, and the pleadings standards set forth in *Iqbal* and *Twombly* require more than labels and conclusions.

First, Mr. Carter fails to allege deceptive or unfair acts or practices.  Mr. Carter claims that the "Taurus Defendants" deceived consumers by failing to disclose the "Drop Fire Defect" and the "False Safety Defect,"[9]   [DE 73 ¶73], but  the exhibits attached to the Amended Complaint show quite plainly that Mr. Carter was specifically warned about these two alleged "defects." The manual specifically explained that no firearm was foolproof, that his Pistol could discharge if dropped, and that he should keep the chamber unloaded to protect against such a possibility.  DE 73-3 p. 14, 17.  Moreover, the manual specifically explained that pulling the trigger to the rear while attempting to engage the manual safety could cause it to malfunction. DE 73-3 p. 5, 19.

The Court's duty to accept the facts in the Amended Complaint as true does not require the Court to ignore specific facts "in favor of general or conclusory allegations," and when an exhibit attached to a pleading "reveals facts which foreclose recovery as a matter of law, dismissal is appropriate."  *Griffin Industries, Inc. v. Irvin*, 496 F. 3d 1189, 1205-06 (11th Cir. 2007).  Mr. Carter's conclusory allegations are directly contradicted by the documents attached to the Amended Complaint. No reasonable person could have been deceived in light of these conspicuous warnings and instructions.

Second, Mr. Carter has also not sufficiently alleged that any of the deceptive or unfair acts or practices caused his harm.  While the Eleventh Circuit has noted that FDUTPA does not require individual proof of subjective reliance, *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011), Mr. Carter must still allege facts sufficient to infer causation. *Rollins, Inc. v. Butland,* 951 So.2d 860, 869 (Fla. 2nd DCA 2006); *Miami Auto Retail, Inc. v. Baldwin*, 97 So.3d 846, 857 (Fla. 3rd DCA 2012) (noting that "FDUTPA requires proof of each individual plaintiff's actual (not consequential) damages and defendant's causation of damage").  Mr. Carter never alleges that he was exposed to any of the alleged unfair or

---

[9] Mr. Carter also identifies a laundry list of statements allegedly made in the Pistol's manual, the Taurus limited warranty, and the Taurus lifetime repair policy, which he further contends are false or misleading. DE 73, ¶71.  However, a review of those statements reveals nothing that contradicts the two warnings in the Manual.  In fact, even if the Pistol discharged when it was dropped, Mr. Carter cannot show that any of those statements were false or misleading because they are each consistent with the two warnings contained in the Manual. In any event, he has not alleged that any of them were made to him, or that they somehow caused his injuries.  *Gen. Motors Acceptance Corp. v. Laesser*, 718 So. 2d 276, 277 (Fla. 4th DCA 1998) (stating that "to be actionable an unfair or deceptive trade practice must be the cause of the loss or damage to the consumer").

deceptive practices, or misrepresentations, much less that they caused his specific harm, and has failed to plead ultimate facts that establish that he was actually aggrieved by the alleged conduct. *Tuckish v. Pompono Motor Co.*, 337 F. Supp. 2d 1313, 1320 (S.D. Fla. 2004) ("In order to state a cause of action under the DUTPA, the consumer must also allege sufficient facts to show that he has been actually aggrieved by the unfair or deceptive act committed by the seller in the course of trade or commerce."); *see also, Kais v. Mansiana Ocean Residences, L.L.C.*, No. 08-21942-CIV, 2009 WL 825763, at *1-2 (S.D. Fla. Mar. 26, 2009).

Third, Mr. Carter has not alleged actual damages.  The term "actual damages' is not defined by the FDUTPA statute, but Florida courts have defined them as:

> . . . the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract if the parties…[T]his is because FDUTPA is intended to protect a consumer from unfair or deceptive acts or practices which diminish the value or worth of the goods or services purchased by the consumer.

*Rodriguez v. Recovery Performance & Marine, LLC*, 38 So.3d 178, 180 (Fla. 3d DCA 2010); *Rollins, Inc. v. Heller*, 454 So.2d 580, 585 (Fla. 3d DCA 1984).  "Actual damages under FDUTPA must directly flow from the alleged deceptive act or unfair practice. *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012).  "FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." *Butland*, 951 So.2d at 873 (quoting from *Raye v. Fred Oakley Motors, Inc.*, 646 S.W.2d 288, 290 (Tex.App.1983)).  Mr. Carter has not alleged that he overpaid for the Pistol, and he has not alleged that he was actually damaged.  If anyone has been harmed, which Defendants dispute, it was Mr. Carter's father who actually purchased the Pistol. Because Mr. Carter did not purchase the Pistol, he has not suffered actual damages. *See Licul v. Volkswagen Grp. of Am., Inc.*, Case No. 13-CIV-61686, 2013 WL 6328734 (S.D. Fla. 2013).  Accordingly, Mr. Carter fails to allege facts to support the conclusion that he has incurred actual damages.

   D.   Count II (Negligence)

Mr. Carter fails to allege actionable negligence because his claims are barred by the economic loss rule and fail to allege cognizable damages, and he lacks standing because his claimed injury does not allege an injury-in-fact.  And even if that were not the case, Count II does nothing more than recite the elements of negligence, and fails to allege sufficient facts to satisfy by *Iqbal* and *Twombly*.

1.      Count II fails to state a claim as a matter of law.

Count II should be dismissed because the economic loss rule bars recovery in negligence when the plaintiff has suffered only an economic loss. *Florida Power & Lights Co. v. Westinghouse Elec. Corp.*, 510 So.2d 899 (Fla. 1987); *Moransais v. Heathman*, 744 So.2d 973, 979 (Fla. 1999); *accord Arnett Holdings, Inc. v. Kum & Go, L.C.*, 801 N.W.2d 499, 503 (Iowa 2011); *and Neb. Innkeepers, Inc. v. Pittsburgh-Des Moines Corp.*, 345 N.W.2d 124, 126 (Iowa 1984).   When the loss involves the plaintiff's "disappointed expectations due to deterioration, internal breakdown or non-accidental cause," the appropriate remedy lies in contract, and not tort, law.   *Determan v. Johnson*, 613 N.W.2d 259, 262 (Iowa 2000).  Mr. Carter was not physically injured and is not seeking recovery for damage to other property.

Moreover, Mr. Carter has failed to allege cognizable damages.  Count II seeks to recovery unspecified damages due to a future "risk of serious injury or death," but Mr. Carter may not recover damages for the speculative risk of a future injury that has not occurred. *See Eagle-Picher Industries, Inc. v. Cox*, 481 So.2d 517, 11 Fla. L. Weekly 134 (Fla. 3rd DCA 1985). Accordingly, Count II should be dismissed with prejudice.

2.      Mr. Carter lacks standing to assert a negligence claim because he has not asserted facts sufficient to infer standing.

Mr. Carter also lacks individual Article III standing to assert a negligence claim on his own behalf. Unlike the FDUTPA claim, Mr. Carter's sole identified injury is the "*risk of personal injury or death*" associated with his use of the Pistol.  DE 73 ¶84.  Mr. Carter's claim that he was subjected to an increased *possibility* of injury fails to allege cognizable standing because that alleged injury is neither actual or imminent.  *Bischoff v. Osceola Cnty., Fla.*, 222 F.3d 874, 884 (11th Cir.2000).  Mr. Carter claims to be fully aware of the defect, so the future risk of personal injury or death is not imminent.  Rather, it is merely hypothetical and does not describe a concrete and particularized injury.  *Common Cause/Georgia,* 554 F.3d at 1349.  Nor does Count II seek remedies that will provide redress for Mr. Carter's alleged future "risk of personal injury or death." *Id.*

3.      Mr. Carter fails to state a claim for negligence.

Even if Mr. Carter could overcome the economic loss rule and his lack of standing, he still has not alleged actionable negligence.  Count II consists solely of legal conclusions and formulaic recitations of elements that *Iqbal* and *Twombly* plainly preclude.  *Twombly*, 550 U.S. at 555.  Mr. Carter must plead *factual grounds* that demonstrate how each of the

Defendants allegedly breached a duty of care to him, how this caused his injuries and what damages he has incurred and is seeking. He has not met these minimum requirements.

E.    Count III (Strict Liability)

Count III fails because the economic loss rule bars Mr. Carter's strict liability claims. Like negligence, strict liability claims are subject to the economic loss rule. *Tiara Condominium Ass'n, Inc. v. Marsh & McLennan Cos.*, 110 So.2d 399, 407 (2013); *accord Nelson v. Todd's Ltd.*, 426 N.W.2d 120, 123 (Iowa 1988); *and Richards v. Midland Brick Sales Co., Inc.*, 551 N.W.2d 649, 651-52 (Iowa App. 1996). Mr. Carter has not alleged that he was physically injured, or that other property was injured, and he is seeking recover of purely economic losses. Moreover, it would be futile to permit Mr. Carter to replead Count III because "no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

Mr. Carter's strict liability allegations also fail to allege cognizable standing because the future "risk of serious injury or death" does not state an injury-in-fact. DE 73 ¶91. An injury must be "likely" and not merely "speculative." *Bouldry,* 909 F.Supp.2d at 1374. The mere possibility of future risk of personal injury or death due to an allegedly defective product does not rise above the level of speculative. *See Kerin v. Titeflex Corp.*, 770 F.3d 978, 980 (1st Cir. 2014) (discussing the speculative nature of enhanced risk claims in products liability actions).

Finally, Mr. Carter has failed to allege cognizable damages. Count III seeks to recovery only unspecified damages due to a future "risk of serious injury or death," and Mr. Carter may not recover in tort for the enhanced risk of such a future injury. *See Eagle-Picher Industries, Inc. v. Cox*, 481 So.2d 517, 11 Fla. L. Weekly 134 (Fla. 3rd DCA 1985). Mr. Carter's strict liability claims are properly dismissed with prejudice.

F.    Count IV (Express Warranty)

In order to plead a claim for breach of express warranty, "a complaint must allege: (1) the sale of goods; (2) the express warranty; (3) breach of the warranty; (4) notice to seller of the breach; and (5) the injuries sustained by the buyer as a result of the breach of the express warranty." *Jovine v. Abbott Laboratories Inc. D/B/A Abbott Sales*, 795 F.Supp.2d 1331, 1339-40 (S.D. Fla. 2011) (citations omitted); *see also Dunham-Bush, Inc. v. Thermo-Air Servs., Inc.*, 351 So. 2d 351, 353 (Fla. 4th DCA 1977); Fla. Stat. Ann. §672.607(a)(3). "[T]here can be no cause of action for breach of an express limited warranty unless the

consumer can allege and prove that the manufacturer did not comply with the limited express warranty's terms." *Ocana v. Ford Motor Co.*, 992 So.2d 319, 324 (Fla. 3rd DCA 2008) (citing Fla. Stat. Ann. § 672.313).

Count IV fails to state a claim for breach of express warranty for several reasons. First, Mr. Carter does not allege that he notified Defendants of the alleged breach of a warranty. *See Gen. Matters, Inc. v. Paramount Canning Co.*, 382 So.2d 1262, 1263 (Fla. 2nd DCA 1980). Because Mr. Carter never alleges that he notified, and indeed did not notify, any of the Defendants about any issues with the Pistol prior to filing this lawsuit, he has not alleged, and indeed cannot satisfy, compliance with this notice requirement.

Second, Mr. Carter has failed to allege facts sufficient to show that he received the warranty and that it became the basis of the bargain associated with the purchase of the Pistol. *See* Fla. Stat. Ann. § 672.313 (stating that express warranties only arise after some affirmation, description, same or model becomes part of the "basis of the bargain"). Mr. Carter generally alleges that he is a beneficiary of the express warranty and that it "became part of the basis of the bargain," but he asserts no factual basis for that conclusion. DE 73 ¶97. In fact, Mr. Carter does not allege that he purchased the Pistol, or that he even saw or was aware of the terms of the written warranties. Accordingly, Count IV is "devoid of any facts supporting even an inference that the terms of any alleged warranties were received by Plaintiff directly from the [any of the Defendants]." *Penn. Emp. Benefit Trust Fund. v. AstroZenica Pharm., L.P.*, No. 6:09-CV-5003, 2009 WL 2231686, *2-3 (M.D. Fla. July 20, 2009).

Third, Mr. Carter has not alleged that he complied with other express terms of the warranty. The limited warranty is a warranty to remedy defects in material and workmanship without charge. DE 73-5. Among other things, the limited warranty states as follows:

> Warranty claims (in writing) and the gun concerned should be directed (transportation charges prepaid) to Taurus International Manufacturing, Inc. Warranty claims should state the model and serial number of the gun concerned, a discription of the difficulty experienced, and the date, place and proof of purchase. It is recommended that shipments be insured by owner, since Taurus International Manufacturing, Inc. will accept no responsibility for loss or damage in transit.

DE 73-5. In other words, any obligation to repair the Pistol is contingent upon Mr. Carter's obligation to return it to TIMI (and notify TIMI) of the alleged defect. The limited warranty states that:

> Handguns manufactured by Taurus are warranted to be free from defects in material and workmanship. Any such defect should be reported to Taurus International Manufacturing, Inc. by written notice as provided below within twelve months and ten days from te date of first purchase by the original consumer and will be remedied by Taurus International Manufacturing, Inc. without charge.

Mr. Carter has not alleged that he reported these alleged defects in the Pistol. Count IV should therefore be dismissed.

G.    Count V (Implied Warranty).

Count V should be dismissed because Mr. Carter has failed to allege, and indeed cannot allege, that he was in privity with any of the Defendants. Mr. Carter's ability to recover economic losses for breach of implied warranty are limited in the absence of privity. *Mesa v. BMW of N. Am., LLC*, 904 So.2d 450, 458 (Fla. 3rd DCA 2005); *Brophy v. DaimlerChrysler Corp.*, 932 So.2d 272, 274 (Fla. 2nd DCA 2005); Ocana v. Ford Motor Co., 992 So.2d 319, 325 (Fla. 3rd DCA 2008); *see also*, *Karhu v. Vital Pharms., Inc.*, Case No. 13-60768 (S.D. Fla. 2013); *cf. Tomka v. Hoechst Celanese Corp.*, 528 N.W.2d 103, 108 (Iowa 1995) (precluding non-privity buyers from recovering consequential economic damages); *and Wells Dairy, Inc. v. Air*, 762 N.W.2d 463 (Iowa 2009).  Mr. Carter fails to allege that he was in privity with any of the Defendants, and he acknowledges that he was not in privity by asserting that the Defendants have "waived privity of contract." DE 73 ¶101. Accordingly, he has failed to state a claim for breach of the implied warranty of merchantability.  *Bailey v. Monaco Coach Corp.*, 168 F. App'x 893, 895 (11th cir. 2006)). Mr. Carter should not be permitted to proceed with Count V because it does not contain enough factual allegations to "state a claim to relief that is plausible on its face," and Count V should be dismissed. *Iqbal*, 129 S. Ct. at 1949.

H.    Count VI (Magnuson-Moss Warranty Act)

Mr. Carter's Magnuson-Moss Warranty Act ("MMWA") claims fails for the same reasons that his express and implied warranty claims fail.  "[T]he question whether a warrantor has committed a breach of a limited express warranty under the Act is governed by state law."   *Ocana v. Ford Motor Co.*, 992 So.2d 319, 323 (Fla. 3rd DCA 2008). Accordingly, for the reasons stated above in Section F, Mr. Carter's MMWA express warranty claims fail as a matter of law.

Likewise, remedies for breach of implied warranties are governed by state law. *See Ocana*, 922 So.2d at 325.  The MMWA does not supplant state law privity requirements for implied warranty claims." *Id.*  Mr. Carter's implied warranty claims fail under Florida law for lack of privity, so he cannot allege a MMWA claim based on implied warranties.  *Mesa v. BMW of N. Am., LLC*, 904 So.2d 450, 458 (Fla. 3rd DCA 2005).   Count VI should be dismissed with prejudice. *Marshall Cnty. Bd. of Educ.*, 992 F.2d at 1174.

I. <u>Count VII (Negligent Failure to Disclose, Failure to Warn, Concealment and Misrepresentation)</u>

Count VII identifies a laundry list of causes that are purportedly based on the same set of operative facts, but they can be grouped into two sets of claims. Mr. Carter alleges that the Defendants were negligent because they failed to disclose and warn him about the "Safety Defects" (the "negligent failure to warn claims"), and that they negligently concealed and misrepresented the truth about these safety defects (the "negligent misrepresentation claims"). Each of these causes of action fails to state a claim as a matter of law because they are barred by the economic loss rule, and they are barred by a failure to plead under the heightened pleadings standards of Rule 9(b).

1. <u>Mr. Carter fails to state a claim as a matter of law.</u>

Each of the alleged causes of action in Count VII (the negligent failure to warn and negligent misrepresentation claims) are negligence claims and are the direct result of Mr. Carter's failed expectations about the performance of the Pistol. Accordingly, these claims are barred by the economic loss rule. *Florida Power & Lights Co. v. Westinghouse Elec. Corp.*, 510 So.2d 899 (Fla. 1987); *Airport Rent-A-Car, Inc. v. Prevost Car, Inc.*, 660 So.2d 628 (Fla. 1995) (barring negligent failure to warn claims in product liability actions involving economic losses); *and Burns v. Winnebago Indus., Inc.*, 2012 WL 987764 *1 (M.D. Fla. 2013) (explaining that traditional "exceptions to the economic loss rule for fraudulent inducement and negligent misrepresentation do not apply" in a products liability case); *cf. Van Sickle Constr. Co. v. Wachovia Commercial Mortg. Inc.*, 783 N.W.2d 684 (Iowa 2010) (permitting recovery of "(a) the difference in value of what he has received in the transaction and its purchase price or other value given for it; and (b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation").

Even if this were not the case, Mr. Carter's claims fail to allege sufficient facts to meet the pleading requirements of *Iqbal* and *Twombly* because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a cause of action. *Iqbal*, 129 S. Ct. at 1949. Among other things, Count VII fails to allege what was specifically misrepresented or concealed from Mr. Carter. While Count VII generally alleges that the collective Defendants "concealed and misrepresented the truth about the latent safety defects," that statement contains no factual basis for the claims. DE 73 ¶173.

Likewise, Count VII does not plead cognizable damages.  The Amended Complaint generally alleges that Mr. Carter has been "exposed to a clear, substantial and unreasonable risk of serious injury or death," but that enhanced risk of future injury does not state a cause of action for tort damages. *See Eagle-Picher Industries, Inc. v. Cox*, 481 So.2d 517, 11 Fla. L. Weekly 134 (Fla. 3rd DCA 1985).  Accordingly, Count VII should be dismissed.

        2.        <u>Mr. Carter's enhanced risk of future injury fails to allege cognizable standing.</u>

As with Mr. Carter's other tort claims, the allegations in Count VII fail to allege cognizable standing because the enhanced risk of future injury or death does not state an injury-in-fact.  DE 73 ¶135.  An injury must be "likely" and not merely "speculative." *Bouldry,* 909 F.Supp.2d at 1374.  The mere possibility of future risk of personal injury or death does not rise above the level of speculative.  *See Kerin v. Titeflex Corp.*, 770 F.3d 978, 980 (1st Cir. 2014) (discussing the speculative nature of enhanced risk claims in products liability actions).  Count VII fails to assert facts showing that Mr. Carter may proceed.

        3.        <u>Mr. Carter's fails to satisfy Rule 9(b)</u>

Even if Count VII could satisfy the pleadings standards set forth in *Iqbal* and alleged standing, it fails to satisfy the heightened pleading standard required for negligent misrepresentation claims.  Fed. R. Civ. P. 9(b) requires that a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake."  The Eleventh Circuit has not specifically addressed the question of whether Rule 9(b) applies to negligent representation claims, but "[h]istorically, in Florida an action for negligent representation sounds in fraud rather than negligence."  *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1511 (11th Cir. 1993); *see also Pruco Life Ins. Co. v. Brasner*, 2011 U.S. Dist. LEXIS 72752, at *11-*13 (S.D. Fla. July 7, 2011).  Accordingly, Mr. Carter must allege "precisely what statements were made in what documents or oral representations or what omissions were made," plus "the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same," plus "the content of such statements and the manner in which they misled the plaintiff," plus "what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001).

J.    Count IX (Declaratory Relief).

Count IX should be dismissed because it seeks a declaration that the Class Pistols are defective and that the Defendants knew of the defects.  DE  3 ¶139.  Because the first eight counts are subject to dismissal, the case becomes moot, and "[a]ny decision on the merits of a moot case or issue would be an impermissible advisory opinion."  *Fla. Ass'n of Rehab. Facilities v. Fla. Dep't of Health & Rehabilitative Servs.*, 225 F.3d 1208, 1217 (11th Cir.2000).  Count IX should also be dismissed.


                                        Respectfully submitted,


                                        */s/ David A. Mobley*
                                        Timothy A. Bumann, Esq. (*Admitted Pro Hac Vice*)
                                        EMAIL: tbumann@sgrlaw.com
                                        David A. Mobley (FBN 571571)
                                        EMAIL: dmobley@sgrlaw.com
                                        SMITH, GAMBRELL & RUSSELL, LLP
                                        120 Peachtree Street, NE
                                        Promenade, Suite 3100
                                        Atlanta, Georgia 30309
                                        Telephone: (404) 815-3500
                                        Facsimile: (404) 815-3900

                                        John P. Marino (FBN 814539)
                                        EMAIL: jmarino@sgrlaw.com
                                        SMITH, GAMBRELL & RUSSELL, LLP
                                        50 N. Laura Street, Suite 2600
                                        Jacksonville, FL 32202
                                        Telephone: 904-598-6100
                                        Facsimile: 904-598-6300

                                        *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing **Defendants' Motion and Supporting Memorandum to Dismiss Plaintiff's First Amended Complaint** was served via transmission of Notices of Electronic Filing generated by CM/ECF, on this December 19, 2014, on the following counsel of record identified in the service list below.

/s/ David A. Mobley
*Counsel for Defendants*
Florida Bar No. 571571

## SERVICE LIST

**Angelo Marino, Jr.**
645 SE 5th Terrace
Fort Lauderdale, FL 33301-3160
Email: amjrpamail@aol.com
Attorneys for Plaintiff

**Todd Wheeles**
Morris, Haynes, Hornsby & Wheeles
3500 Colonnade Parkway, Suite 100
Birmingham, AL 35243
Email: twheeles@mhhlaw.net
Attorneys for Plaintiff
*Admitted Pro Hac Vice*

**David L. Selby, II**
Bailey & Glasser, LLP
300 Riverchase Galleria, Suite 905
Birmingham, AL 35244
Email: dselby@baileyglasser.com
Attorneys for Plaintiff
*Admitted Pro Hac Vice*

**John W. Barrett**
Bailey & Glasser, LLP
209 Capital Street
Charleston, WV 25301
Email: jbarrett@baileyglasser.com
Attorneys for Plaintiff
*Admitted Pro Hac Vice*

**Thomas Scolaro**
Email: Scolaro@Leesfield.com
**Carol L. Finklehoffe**
Email: Finklehoffe@Leesfield.com
LEESFIELD & PARTNERS, P.A.
2350 South Dixie Highway
Miami, FL 33131
Telephone: (305) 854-4900
Facsimile: (305) 854-8266
Attorneys for Plaintiff
*Admitted Pro Hac Vice*

**Patricia M. Kipinis**
pkipnis@bailyglaser.com
Bailey & Glasser, LLP
135 Kings Highway E.
3d Fl. E.
Haddonfield, NJ 08033
Telephone: (856) 795-0378
Facsimile: (304) 342-1110
Attorneys for Plaintiff
*Admitted Pro Hac Vice*