## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

**CHRIS P. CARTER,**
**Individually and on behalf of all**
**others similarly situated,**

**Plaintiff,**

**v.**

**FORJAS TAURUS S.A.,**
**TAURUS INTERNATIONAL**
**MANUFACTURING, INC., and**
**TAURUS HOLDINGS, INC.,**

**Defendants.**

**Case No.: 1:13-cv-24583-PAS**

**Class Action**

## PLAINTIFF'S RESPONSE TO DEFENDANTS'
## COMBINED MOTION TO DISMISS

David L. Selby, II *(admitted pro hac vice)*
BAILEY & GLASSER, LLP
3000 Riverchase Galleria, Suite 905
Birmingham, Alabama 35244

John W. Barrett *(admitted pro hac vice)*
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, West Virginia 25301

Todd Wheeles *(admitted pro hac vice)*
MORRIS, HAYNES, HORNSBY & WHEELES
3500 Colonnade Parkway, Suite 100
Birmingham, Alabama 35243

Angelo Marino, Jr.
ANGELO MARINO, JR., P.A.
645 S.E. 5th Terrace
Ft. Lauderdale, Florida 33301

## Table of Contents

I.  Introduction ................................................................................................................. 1

II.  Argument .................................................................................................................... 2

    A.  Officer Carter's FDUTPA Claims ......................................................................... 2

    B.  Officer Carter's Tort Claims ................................................................................. 7

        1.  Officer Carter's Tort Claims are Adequately Pled. ....................................... 7

        2.  Officer Carter's Tort Claims are not Barred by the Economic Loss Rule. ............... 11

    C.  Officer Carter's Warranty Claims. ....................................................................... 14

        1.  Officer Carter's Implied Warranty Claim Does Not Fail for Lack of Privity. .......... 14

        2.  Officer Carter's Express Warranty Claims Should not be Dismissed. ...................... 14

III.  Conclusion .............................................................................................................. 16

## Table of Authorities

**Cases**

*80. S. Eighth St. Ltd. P'ship v. Carey-Canada, Inc.*, 486 N.W.2d 393 (Minn. 1992)................... 12

*Am. Fire & Cas. Co. v. Ford Motor Co.*, 588 N.W.2d 437 (Iowa 1999)...................................... 13

*Barnes v. Mac Brown & Co., Inc.*, 342 N.E.2d 619 (Ind. 1976) ................................................ 12

*Barnext Offshore, Ltd. v. Ferretti Group USA, Inc.*, No. 10-23869, 2012 WL 1570057 (S.D. Fla. May 2, 2012) ............................................................................................................ 3, 4

*Behrman v. Allstate Ins. Co.*, 388 F. Supp. 2d 1346 (S.D. Fla. 2005) ........................................ 10

*Bouldry v. C.R. Bard, Inc.*, 909 F. Supp. 2d 1371 (S.D. Fla. 2012) ............................................ 13

*Brueggemann v. NCOA Select, Inc.*, No. 08-80606, 2009 WL 1873651 (S.D. Fla. June 30, 2009)............................................................................................................... 2, 3, 4, 6

*Bustle v. Quint, Ltd.*, 612 F.Supp. 1137 (N.D. Ill. 1985) .............................................................. 13

*Carnival Corp. v. Rolls-Royce PLC,* 2009 WL 3861450 (S.D. Fla. Nov. 17, 2009)...................... 3

*Carriuolo v. General Motors LLC*, No. 14–61429, 2014 WL 7011022  (S.D. Fla. Dec. 11, 2014)............................................................................................................................... 5

*Collins v. DaimlerChrysler Corp.*, 894 So.2d 988 (Fla. Dist. Ct. App. 2004) ......................... 5, 6

*Cooper v. Old Williamsburg Candle Corp.*, 653 F. Supp. 2d 1220 (M.D. Fla. 2009)................... 7

*Council of Co-Owners Atlantis Condominium, Inc. v. Whiting-Turner Contracting Co.*, 517 A.2d 336 (Md. 1986)....................................................................................................... 12

*Davis v. Powertel, Inc.*, 776 So.2d 971 (Fla. Dist. Ct. App. 2000)........................................... 5, 6

*Dudley v. Mae's Discount Fabrics*, 323 So.2d 279 (Fla. Dist. Ct. App. 1975)........................... 14

*East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986) ..................... 11

*Eastern Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 976 (5th Cir. 1976) .......... 14

*F.T.C. v. Info. Mgmt. Forum, Inc.*, No. 6:12-00986, 2013 WL 3323635  (M.D. Fla. June 28, 2013)............................................................................................................................... 4

*Fischetti v. Am. Isuzu Motors, Inc.*, 918 So.2d 974 (Fla. Dist. Ct. App. 2005)........................... 16

*Five for Entertainment S.A. v. Rodriguez*, 877 F. Supp. 2d 1321 (S.D. Fla. 2012)...................... 4

*Garcia v. Kashi Co.*, --- F. Supp. 2d ----, 2014 WL 4392163 (S.D. Fla. Sept. 5, 2014) .............. 10

*Gen. Matters, Inc. v. Paramount Canning Co.*, 382 So.2d 1262 (Fla. Dist. Ct. App. 1980).. 14, 15

*Gladhart v. Oregon Vineyard Supply Co.*, 164 Ore. App. 438 (1999) ......................................... 13

*Harrell v. Branson*, 344 So.2d 604 (Fla. Dist. Ct. App. 1977).................................................... 10

*In re: Chinese Drywall Litig.*, No. 09-200,000, 2009 WL 6408999 (Fla. Cir. Ct. Dec. 18, 2009)................................................................................................................................... 12

*Johnson v. Davis,* 480 So.2d 625 (Fla. 1985) ............................................................................... 6

*La Barre v. Mitchell*, 256 A.D.2d 850 (N.Y. App. Div. 1998)..................................................... 13

*Liason v. Lorillard Tobacco Co.*, No. 8:13-cv-1115, 2013 WL 5970726  (M.D. Fla. Nov. 8, 2013)............................................................................................................................ 9, 10

*Licul v. Volkswagen Grp. Of Am., Inc.*, No. 13-61686, 2013 WL 6328734 (S.D. Fla. Dec. 5, 2013)................................................................................................................................... 6

*Liebman v. Deutsche Bank Nat. Trust Co.*, 462 F. App'x 876 (11th Cir. 2012) ........................... 2

*Millennium Commc'ns & Fulfillment, Inc. v. Office of Attorney Gen., Dep't of Legal Affairs, State of Fla.*, 761 So.2d 1256  (Fla. Dist. Ct. App. 2000)...................................................... 3, 4

*Mt. Lebanon Sch. Dist. v. W.R. Grace & Co.*, 414 Pa. Super. 455 (1992) ................................... 13

*Off Lease Only, Inc. v. Carfax, Inc.*, No. 12-80193-cv, 2012 WL 1966372 (S.D. Fla. May 31, 2012)................................................................................................................................... 9

*Palmeri v. LG Elecs. USA, Inc.*, CIV.A.07-5706, 2008 U.S. Dist. LEXIS 58374 (D.N.J. July 30, 2008)...................................................................................................................... 13

*Philip Morris USA, Inc. v. Naugle*, 103 So.3d 944 (Fla. Dist. Ct. App. 2012)............................ 10

*Quail Hollow E. Condo. Ass'n v. Donald J. Scholz Co.*, 47 N.C. App. 518 (1980) .................... 13

*R.J. Reynolds Tobacco Co. v. Brown*, 70 So.3d 707 (Fla. Dist. Ct. App. 2011) ........................... 8

*Siever v. BWGaskets, Inc.*, 669 F.Supp. 2d 1286 (M.D. Fla. 2009)................................................ 5

*Sithon Maritime Co. v. Holiday Mansion*, 983 F.Supp. 977 (D. Kan. 1997) ............................... 13

*Stires v. Carnival Corp.*, 243 F.Supp. 2d 1313 (M.D. Fla. 2002).................................................. 9

*Suris v. Gilmore Liquidating, Inc.*, 651 So.2d 1282 (Fla. Dist. Ct. App. 1995) ............................ 5

*T.J. Stevenson & Co., Inc. v. 81,193 Bags of Flour*, 629 F.2d 338 (5th Cir. 1980)..................... 14

*TemPay, Inc. v. Biltres Staffing of Tampa Bay*, *LLC,* 945 F. Supp. 2d 1331 (M.D. Fla. 2013) ..... 4

*Tiara Condominium Ass'n v. Marsh & McLennon Companies, Inc.*, 110 So.3d 399 (Fla. 2013) ................................................................................................ 11, 12

*Witherspoon v. Phillip-Morris Inc.*, 964 F. Supp. 455 (D.D.C. 1997) ........................................ 15

*Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194 (11th Cir. 2001) .................................................. 8

**Statutes**

Fla. Stat. § 501.202 ................................................................................................ 3, 6

Fla. Stat. § 672.607 ................................................................................................ 14

**Other Authorities**

*Prosser & Keaton*, The Law of Torts § 96 (5th ed. 1984) .......................................... 13

## I.  Introduction

For years, Taurus has known that many of its handguns contain deadly design defects —
namely, that these Class Pistols fire when dropped from a normal height.[1] Nonetheless, Taurus
continued to manufacture and sell millions of these weapons to American consumers. As a result
of these defects, many of Taurus's customers have been grievously injured, and it is only a
matter of time before someone is killed by a defectively-designed Taurus pistol. This is not, as
Taurus callously characterizes it, a "classic no-injury products liability case." It is a case about a
defective weapon that threatens the lives and safety of millions of Taurus handgun owners, their
families, and others with the misfortune to be nearby when a Taurus pistol is dropped.

Other firearms manufacturers have been confronted with similar defects. Some, like
Ruger, have voluntarily recalled the defective weapons.[2] Others, like Remington, have hidden for
decades behind confidential settlements, leading to injuries and deaths that should have been
prevented.[3] Taurus has chosen the latter course.[4]

Rather than publicly acknowledging the dangerous defects in the Class Pistols and taking
steps to protect its customers, Taurus has filed this motion to dismiss, asserting futile defenses.
Accordingly, as explained below, the Defendants' motion to dismiss must be denied.

---

[1] Capitalized terms are defined in the First Amended Complaint.

[2] See "Ruger SR9 Recall," at http://www.ruger.com/SR9Recall/, last visited December
30, 2014.

[3] *See* "Amid Court Secrecy, Guns Continued to Kill," USA Today, December 28, 2014,
available at http://www.usatoday.com/story/opinion/2014/12/28/sealed-settlements-remington-
rifles-model-700-editorials-debates/20979945/, last visited December 30, 2014.

[4] As explained in his complaint, Officer Carter is aware of recent confidential settlements
in cases alleging serious personal injuries caused by the design defect at issue in this case, and it
is likely that there have been others.

## II.     Argument

Officer Carter's First Amended Complaint ("FAC") alleges nine counts, falling broadly into three categories: statutory claims under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); tort claims; and warranty claims.[5] He also seeks declaratory relief related to his other claims. The Defendants seek dismissal of each count on various and often overlapping grounds, which are addressed below.

### A.     Officer Carter's FDUTPA Claims

The Defendants make four flawed arguments challenging Officer Carter's FDUTPA claims. The Defendants first contend that Officer Carter insufficiently alleged facts connecting Florida to the conduct giving rise to the claim — despite the allegations in the First Amended Complaint ("FAC") that:

- The Taurus Defendants designed, manufactured, assembled, imported, marketed, distributed and sold the Pistols *in Florida.* (FAC ¶ 1.)
- The Taurus Defendants willfully, knowingly, and/or recklessly committed unfair or deceptive acts or practices *in Florida* for the express willful purpose of wrongfully concealing the Safety Defects and their knowledge of the defects in violation of the FDUTPA. (*Id.* at ¶ 9.)
- Taurus Manufacturing and Taurus Holdings are Florida citizens with headquarters and/or principal places of business *in Florida.* (*Id.* at ¶¶ 13, 23.)
- Defendant Forjas Taurus has committed unfair and deceptive acts *within the State of Florida*, including but not limited to intentionally concealing the Safety Device Defect from Plaintiff and Class Members residing inside and outside of Florida. (*Id.* at ¶ 16(b).)

---

[5] Taurus's motion wrongly attempts to characterize Officer Carter's complaint as an impermissible "shotgun pleading." A "shotgun pleading" is one that, by its inscrutable recitation of facts, makes it "virtually impossible to know which allegations of fact are intended to support which claims for relief." See *Liebman v. Deutsche Bank Nat. Trust Co.*, 462 F. App'x 876, 879 (11th Cir. 2012) (unpublished). Despite their broad assertion, the Defendants fail to identify a single aspect of Officer Carter's complaint that they find "virtually impossible" to comprehend. Indeed, allegations of "shotgun pleading" are unwarranted in a case like this, where all of Officer Carter's claims for relief arise from substantially the same operative facts. In any event, the appropriate response to a shotgun pleading is a motion for a more definite statement, not a motion to dismiss with prejudice.

- Defendants engaged in numerous instances of misrepresentation, deception, false promises, knowing concealment, suppression, omission of material facts in their distribution, sale, marketing, and/or advertisement of the Class Pistols, including information in the Taurus Manuals and on the Taurus website, *in Florida*. (*Id.* at ¶ 72.)

It is well settled that the FDUTPA contains "no geographical or residential restrictions." *Millennium Commc'ns & Fulfillment, Inc. v. Office of Attorney Gen., Dep't of Legal Affairs, State of Fla.*, 761 So.2d 1256, 1262 (Fla. Dist. Ct. App. 2000) ("FDUTPA does have applicability to the commercial transactions between Florida corporations and non-resident consumers"); *see also Barnext Offshore, Ltd. v. Ferretti Group USA, Inc*., No. 10-23869, 2012 WL 1570057 at *6 (S.D. Fla. May 2, 2012) (noting FDUTPA is not limited to providing relief only to Florida consumers, nor is it limited to only conduct occurring entirely within Florida); *Brueggemann v. NCOA Select, Inc*., No. 08-80606, 2009 WL 1873651 at *6 (S.D. Fla. June 30, 2009) (denying motion to dismiss California plaintiff's FDUTPA claim for false advertising against Florida defendant). Indeed, the Act is intended "[t]o protect the consuming public and legitimate enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of *any trade or commerce,*" Fla. Stat. § 501.202 (emphasis added), and "trade or commerce" is defined as "the advertising, soliciting, providing, offering, or distributing, whether by sale . . . or otherwise, of any good. . . *wherever situated*." *Id.* § 501.203 (emphasis added).

The Defendants cite *Carnival Corp. v. Rolls-Royce PLC,* which actually supports Officer Carter's FDUTPA claims. *See* 2009 WL 3861450 (S.D. Fla. Nov. 17, 2009) (Seitz, J.). In *Carnival*, this Court relied on *Millenium* to *deny* a motion to dismiss when the plaintiffs' amended complaint "alleged numerous actions that occurred in Florida." *Id.* at * 6 (noting plaintiffs may only proceed on FDUTPA claim based on actions that occurred in Florida). Here, as in *Carnival,* Officer Carter has alleged abundant Florida-based conduct giving rise to his

3

claim. Defendants' reliance on *Five for Entertainment S.A. v. Rodriguez* is similarly unavailing. *See* 877 F. Supp. 2d 1321 (S.D. Fla. 2012). In that case, which involved publication of false representations and other unfair acts, plaintiffs failed to plead the location where the false statements and unfair acts were made. *Id.* at 1330. In contrast, Officer Carter has sufficiently pled that deceptive conduct occurred within this State so as to overcome the Defendants' motion. *See Millenium*, 761 So.2d at 1259, 1262; *Barnext*, 2012 WL 1570057, at *1, *6; *Brueggemann*, 2009 WL 1873651, at *6-*7; *see also F.T.C. v. Info. Mgmt. Forum, Inc.*, No. 6:12-00986, 2013 WL 3323635 at *7 (M.D. Fla. June 28, 2013) (entering judgment on FDUTPA claim when Florida corporation directed false and misleading telephone communications to consumers nationwide).

Second, Defendants contend that Officer Carter failed to allege deceptive or unfair acts or practices — ignoring that he expressly alleged twelve discrete acts of deceptive representation regarding the Class Pistols. (FAC ¶ 71). Defendants' misrepresentations included statements that, *inter alia,* the Taurus pistols were "manufactured to perform properly with the original parts as designed"; that there is "SAFETY AGAINST ACCIDENTAL FIRING FROM DROPPING"; and that the Class Pistols were "designed to preclude an accidental discharge should the firearm be dropped." (*Id*). The Defendants also omitted material safety information about the safety of the Class Pistols, and by distributing the Class Pistols impliedly represented the Pistols' fitness for the purpose for which they are intended and safe to use. (*Id.*)

The "concept of 'unfair and deceptive' conduct [under the FDUTPA] is extremely broad." *TemPay, Inc. v. Biltres Staffing of Tampa Bay*, *LLC,* 945 F. Supp. 2d 1331, 1344 (M.D. Fla. 2013) (citing *Millenium*, 761 So.2d at 1263). The deceptive practice must be one that is likely to mislead consumers. *Id.* (citing *Davis v. Powertel, Inc.*, 776 So.2d 971, 974 (Fla. Dist.

4

Ct. App. 2000)). Courts therefore routinely deny motions to dismiss FDUTPA claims arising

from allegations of false representations about a product's safety or effectiveness. *See Collins v.*

*DaimlerChrysler Corp.*, 894 So.2d 988, 990 (Fla. Dist. Ct. App. 2004) (reversing dismissal

where plaintiff alleged that car manufacturer violated FDUTPA by advertising that a car had

effective seatbelts when in fact it did not); *Davis*, 776 So.2d at 975 (reversing dismissal of

FDUTPA claim alleging defendant's nondisclosure of certain functionality caused diminished

value of cellular telephones); *Carriuolo v. General Motors LLC*, No. 14–61429, 2014 WL

7011022 at *2 (S.D. Fla. Dec. 11, 2014) (allegation of false representation of safety ratings

sufficient at motion to dismiss stage).

  The Defendants pay no attention to Officer Carter's allegations of deception, instead

pointing to the Manual's disclaimers about the potential dangers of the firearm as proof that

"[n]o reasonable person could have been deceived in light of these conspicuous warnings or

instructions." (Def. Br. at 15.) Whether a "reasonable person" would have been deceived by the

Defendants' numerous deceptions and omissions — regardless of the Defendants' apparent

attempt to insulate themselves from any liability by issuing certain blanket disclaimers — is a

fact question inappropriate for resolution at this posture. *Siever v. BWGaskets, Inc.*, 669 F.Supp.

2d 1286, 1293 (M.D. Fla. 2009) ("Whether particular conduct constitutes such an unfair or

deceptive trade practice [under FDUTPA] is a question of fact") (citing *Suris v. Gilmore*

*Liquidating, Inc.*, 651 So.2d 1282, 1283 (Fla. Dist. Ct. App. 1995)). Officer Carter has

adequately pled specific instances of deceptive conduct to proceed with his FDUTPA claim.

  Third, the Defendants challenge Officer Carter's allegations of causation, a contention

refuted by his allegation that his injury arises from his ownership of a Class Pistol with the

Safety Defects, "based on nondisclosure of the material facts alleged herein, including but not

limited to, nondisclosure of the Safety Defects." (FAC ¶ 79). Officer Carter has thus sufficiently alleged harm stemming from the Defendants' deceptive conduct. *See Brueggemann*, 2009 WL 1873651, at *7 (plaintiff's allegation of harm resulting from false advertising adequate to state FDUTPA claim).

Finally, Defendants err in contending that Officer Carter has not alleged actual damages. It is well settled that the diminished value damages sought in the complaint (FAC ¶ 84) are recoverable under FDUTPA. *See Collins*, 894 So.2d at 990; *Davis*, 776 So.2d at 975. The Defendants also rely on information outside the pleadings to argue that Officer Carter has no claim for damages because he received the Pistol as a gift. The FDUTPA, however, contains no such privity requirement. *See generally* Fla. Stat. § 501.202; *see also Barnext*, 2012 WL 1570057 at *10 (denying summary judgment motion based on privity argument upon finding no indication in case law "that privity is required for a FDUTPA claim that does not concern the sale of real property and is not premised on the duties outlined in [*Johnson v. Davis,* 480 So.2d 625 (Fla. 1985) regarding real estate sales]"). Defendants' sole support for the apparent privity proposition, *Licul v. Volkswagen Grp. Of Am., Inc.*, No. 13-61686, 2013 WL 6328734 (S.D. Fla. Dec. 5, 2013), is inapposite; in that case the court refused to find damages when the plaintiff had already resold the defective product at a price that did not take account of the defect, and therefore clearly "did not suffer the loss of any value." *Licul*, at *5. Here, Officer Carter has alleged possession of an unsafe product with diminished value attributed to its safety defects, and the Defendants' motion to dismiss the FDUTPA claim should be denied.

B.      **Officer Carter's Tort Claims**

    1.   **Officer Carter's Tort Claims are Adequately Pled.**

       *Officer Carter has pled a prima facie case for negligence and strict liability*

Defendants wrongly assert that Officer Carter's negligence claim fails to meet the minimal plausibility standard imposed by *Iqbal* and *Twombly*. "To prove any products liability claim sounding in negligence, whether negligent design, negligent manufacture, or the negligent failure to provide adequate warnings or instructions, a plaintiff must establish (1) that the defendant owed a duty of care toward the plaintiff, (2) that the defendant breached that duty, (3) that the breach was the proximate cause of the plaintiff's injury, and (4) that the product was defective or unreasonably dangerous." *Cooper v. Old Williamsburg Candle Corp.*, 653 F. Supp. 2d 1220, 1226 (M.D. Fla. 2009) (citations omitted).

Officer Carter's complaint adequately pleads each of these elements. He alleges, and the Defendants cannot disagree, that as a matter of law the Defendants had "the duty to exercise that degree of care that a reasonably prudent firearm manufacturer and/or distributor should use in the design, testing, selection, manufacture, assembly, marketing, supply, distribution and sales" of firearms. (FAC ¶ 86).  He further alleges numerous details concerning the specific design defects that establish the Defendants' breach of that duty. (*See*, *e.g., id.* ¶¶ 28-29). It is clear, based on the allegations in the complaint, that these defects were the proximate cause of Officer Carter's damages, and there can be no doubt that Officer Carter's Pistol, which fired when dropped from a normal height, was unreasonably dangerous. (*See* FAC ¶ 52).

Similarly, Officer Carter's complaint makes a prima facie case for strict liability, which requires even less than his negligence claim. Strict liability requires proof of only two elements: that the product is defective, and that the defect caused the plaintiff's injury. *R.J. Reynolds*

*Tobacco Co. v. Brown*, 70 So.3d 707, 717 (Fla. Dist. Ct. App. 2011). Thus, for the same reasons

as his negligence claim, Officer Carter's strict liability claim must go forward.

### *Officer Carter's fraud-based claims are pled with sufficient particularity*

The Defendants' attack on the sufficiency of the complaint also fails because Counts VII

(negligent failure to disclose, failure to warn, concealment and misrepresentation) and VIII

(fraudulent concealment and intentional failure to warn), claims grounded in fraud, meet the

particularity pleading standard of Federal Rule of Civil Procedure 9(b). Rule 9(b) is satisfied if

the complaint sets forth "(1) precisely what statements were made in what documents or oral

representations or what omissions were made, and (2) the time and place of each such statement

and the person responsible for making (or, in the case of omissions, not making) same, and (3)

the content of such statements and the manner in which they misled the plaintiff, and (4) what

the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Intern., Inc.*, 256

F.3d 1194, 1202 (11th Cir. 2001). The Eleventh Circuit cautions, however, that "application of

Rule 9(b) . . . must not abrogate the concept of notice pleading." *Id.*

In attacking the sufficiency of Officer Carter's fraud allegations, Defendants neglect to

acknowledge that all of the allegations in the complaint are incorporated into the fraud-based

claims, or to even mention the entire section of the complaint titled "Defendants' False

Statements Concerning the Defects." In that section, Officer Carter alleges that the Taurus

Manual, which is attached to the complaint, describes the Safety Devices at issue and specifically

states that:

- The "Trigger Lock" and/or internal "Trigger Safety" is "designed to preclude the backward movement of the trigger [or trigger bar] so as to prevent an accidental discharge in case the firearm is dropped" and "[t]he system is disengaged when the trigger is pulled to the rear."

- "If dropped from a height at which the pistol is normally used, the manual safety and automatic safety [*i.e.,* the firing pin block] together provide double strong resistance against accidental firing caused by such impact."
- The Class Pistols are equipped with certain "SAFETY DEVICES" described therein, designed to preclude accidental discharge should the firearm be dropped.

(FAC ¶¶ 30-31).[6] Officer Carter explains that these statements are false with regard to the Class Pistols. (*Id.*). He has therefore adequately alleged what statements were made, in what document, at what time, and by whom. *See, e.g. Off Lease Only, Inc. v. Carfax, Inc.*, No. 12-80193-cv, 2012 WL 1966372 at *4 (S.D. Fla. May 31, 2012) (Rule 9(b) met when Plaintiff "provided specific examples of reports containing the allegedly false statements"); *Liason v. Lorillard Tobacco Co.*, No. 8:13-cv-1115, 2013 WL 5970726 at *2 (M.D. Fla. Nov. 8, 2013) (Rule 9(b) met when complaint stated generally that defendants had claimed their products to be safe for decades and concealed material information about dangerous qualities of product; had conspired with other tobacco companies to hide the seriousness and effects of tobacco addiction; and had conducted studies to challenge claims that smoking was dangerous); *Stires v. Carnival Corp.*, 243 F.Supp. 2d 1313, 1320 (M.D. Fla. 2002) (fraud and misrepresentation claim properly pled when plaintiff alleged specific misrepresentations, defendant's knowledge that statements were false when made, where statements occurred and that statements were made to induce reliance, which detrimental reliance occurred).

Officer Carter further alleges that his reasonable and justifiable reliance on the Defendants' false representations and deliberate silence concerning the highly significant and material fact that the Class Pistols were not safe for normal use caused him to elect to own and use the Pistol. (*Id.* at ¶ 134.) This allegation is sufficient to inform Defendants of the manner in which Officer Carter was misled. *See Garcia v. Kashi Co.*, --- F. Supp. 2d ----, 2014 WL

---

[6] Defendants incorrectly assert that the only false statement Plaintiff has alleged is that the Pistols were "safe for normal use." (Def. Br. at 11).

4392163 at *15 (S.D. Fla. Sept. 5, 2014) (finding Rule 9(b) met when complaint alleged that "the labeling on Defendants' products would, and did, mislead a reasonable consumer"); *Liason*, at *2 (Rule 9(b) met when plaintiff asserted that the deceased "believed and relied on [the] misinformation to his detriment.") Accordingly, Officer Carter has sufficiently pled his fraud-based claims under Rule 9(b).

The Defendants also rely on an inapposite negligent hiring case, *Behrman v. Allstate Ins. Co.*, 388 F. Supp. 2d 1346 (S.D. Fla. 2005) to seek dismissal of the fraudulent concealment claim on the baseless ground that no "relationship" existed between the parties such that a duty of disclosure arose. (Def. Br. at 10.) In so arguing, the Defendants disregard the fundamental rule that "[m]anufacturers and sellers have a clear duty to exercise care in making representations as to their products." Am. Jur. Prods. Liab. § 856 (2014). Florida law holds, more specifically, that "[f]raud can occur by omission, and one who undertakes to disclose material information has a duty to disclose that information fully." *Philip Morris USA, Inc. v. Naugle*, 103 So.3d 944 (Fla. Dist. Ct. App. 2012). The Defendants' Manual constitutes an undertaking of the disclosure of material information sufficient to impose this duty. Further, the Defendants need not have made the fraudulent statements directly to Officer Carter, as "it is not necessary that a direct statement be made to the representee in order to give rise to the right to rely upon the statement, for it is immaterial whether it passes through a direct or circuitous channel in reaching him, provided it be made with the intent that it shall reach him and be acted on by the injured party." *Id.* (quoting *Harrell v. Branson*, 344 So.2d 604, 606 (Fla. Dist. Ct. App. 1977)).

Relatedly, the Defendants contend that the fraud-based claims must be dismissed by repeating their assertion that "nothing was concealed" from Officer Carter. (Def. Br. 10.) To the contrary, Officer Carter has alleged that the Defendants concealed the Safety Defects from him

10

and from the public by representing, *inter alia,* that the Pistols "were designed to preclude an accidental discharge should the firearm be dropped;" and were "free from defects in material workmanship." (FAC ¶ 30, citing Manual). Officer Carter has also alleged abundant knowledge of the defects on the Defendants' part, including but not limited to the Defendants' direct involvement in the *Maroney* case, the Judy Price personal injury case, and the Sao Paulo recall. (FAC at ¶¶ 40-46). Whether Defendants' material misrepresentations and omissions of this significant safety information somehow constituted sufficient warnings when coupled with their limited disclaimers is ultimately a jury question not appropriate for resolution at the pleadings stage.

**2.   Officer Carter's Tort Claims are not Barred by the Economic Loss Rule.**

Taurus asserts that Officer Carter's tort claims are barred by the "economic loss rule." The economic loss rule is a judicially-created doctrine that prohibits tort recovery when the only injury arising from a defective product is damage to the product itself. *See Tiara Condominium Ass'n v. Marsh & McLennon Companies, Inc.*, 110 So.3d 399, 401 (Fla. 2013) (citing *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871(1986)). The rationale behind the rule is that such claims involve only "disappointed economic expectations, which are protected by contract law, rather than tort law." *Tiara*, 110 So.2d at 401 (citations and internal quotation marks omitted).

Thus, the economic loss rule applies when a plaintiff seeks to recover "*purely* economic losses." *See Tiara, 110 So.2d* at 403 (emphasis added). Florida courts do not apply the economic loss rule when a plaintiff alleges that a product defect resulted in damage to the product itself *and* some other form of actual damages. For example, by its own terms, the economic loss rule does not apply when a defective product harms itself *and* results in personal injury or damage to

other property. *See id.* at 404. The reason is plain: in such cases, contract and warranty law do not provide an adequate basis for recovering anything other than diminution of value damages.

Here, Officer Carter has not alleged a claim for pure economic loss. He pleads not only that his defective pistol has damaged itself, but that he, his family, and the families of millions of other Taurus handgun owners face a substantial risk of death or serious injury as a result of the Defendants' defective product. And he seeks not only damages for diminished value, but also for injunctive and other relief, representing the only means for removing this gravely dangerous product from the marketplace.

Along these lines, Florida courts have adopted the modern and sensible stance that a product liability claim is outside the scope of the economic loss rule when the defective product at issue poses a serious risk to public safety. *See In re: Chinese Drywall Litig.*, No. 09-200,000, 2009 WL 6408999 (Fla. Cir. Ct. Dec. 18, 2009) (concluding that economic loss rule did not bar tort claims against manufacturer whose defective product "created an unreasonable risk of harm").  In so concluding, Florida follows the lead of such cases as *Council of Co-Owners Atlantis Condominium, Inc. v. Whiting-Turner Contracting Co.*, in which the Maryland Supreme Court held the economic loss rule did not apply because a plaintiff's ability to recover in tort for defectively-designed products "should depend on the risk generated by the negligent conduct, rather than upon the fortuitous circumstance of the nature of the resultant damage." 517 A.2d 336, 345 (Md. 1986).[7]

_____

[7] Numerous other courts have similarly declined to apply the economic loss rule in cases where substantial safety risks exist. *See, e.g.*, *80. S. Eighth St. Ltd. P'ship v. Carey-Canada, Inc.*, 486 N.W.2d 393, 397 (Minn. 1992) (claim not barred by the economic loss rule because "[Plaintiff] is not seeking the enforcement of the benefit of their bargain regarding the . . . [intended] performance of the [product]. In seeking the costs of maintenance, removal and replacement, [plaintiff] seeks the costs of eliminating the risks of injury and of making the building safe . . . ."); *Barnes v. Mac Brown & Co., Inc.*, 342 N.E.2d 619, 621 (Ind. 1976) (asking

A classic, "pure" economic loss case involves a product that is merely ineffective. In such cases, it makes perfect sense to restrict a plaintiff to warranty relief. But in cases such as this, where the defective Class Pistols pose a "substantial, clear, and unreasonable risk of serious injury or death," FAC ¶ 86, the economic loss rule does not deny a plaintiff (or class of plaintiffs) relief simply because not enough people have died yet. Accordingly, the economic loss rule poses no obstacle to Officer Carter's tort claims.[8]

---

rhetorically "[i]f there is a defect in a stairway and the purchaser repairs the defect and suffers an economic loss, should he fail to recover because he did not wait until he or some member of his family fell down the stairs and broke his neck? Does the law penalize those who are alert and prevent injury?"); *Am. Fire & Cas. Co. v. Ford Motor Co*., 588 N.W.2d 437, 439-40 (Iowa 1999) (reversing dismissal of plaintiff's case involving truck that caught fire, damaging only itself); *Quail Hollow E. Condo. Ass'n v. Donald J. Scholz Co*., 47 N.C. App. 518, 525 (1980) (negligence claim not barred by economic loss rule when it was "foreseeable that any defect in design . . . may bring harm to the homeowner," even though the harm had yet to materialize); *Bustle v. Quint, Ltd*., 612 F.Supp. 1137, 1139 (N.D. Ill. 1985) (negligence claim not barred because "[f]ailing to properly replace an oil drain plug on a semitractor constitutes a safety hazard that poses a serious risk of harm to people and property."); *Palmeri v. LG Elecs. USA, Inc*., CIV.A.07-5706, 2008 U.S. Dist. LEXIS 58374, at * 11 (D.N.J. July 30, 2008) (tort action not barred when a "defective product poses a serious risk to persons"); *Sithon Maritime Co. v. Holiday Mansion*, 983 F.Supp. 977, 991-92 (D. Kan. 1997) (same); *Gladhart v. Oregon Vineyard Supply Co*., 164 Ore. App. 438, 453 (1999) (same); *La Barre v. Mitchell*, 256 A.D.2d 850, 851-853 (N.Y. App. Div. 1998) (plaintiff can recover economic losses for product whose design creates unreasonable risk of failure, rendering it dangerously defective); *Mt. Lebanon Sch. Dist. v. W.R. Grace & Co*., 414 Pa. Super. 455, 470 (1992) (allowing tort recovery of economic loss where product defect is "its capacity to expose individuals to a potentially life threatening safety risk"); *see also Prosser & Keaton*, The Law of Torts § 96 (5th ed. 1984), p. 683-84 & n.26-27 ("The rule that has finally emerged is that the seller is liable for negligence in the manufacture or sale of any product which may reasonably be expected to be capable of inflicting substantial harm if it is defective. Since the liability is to be based on negligence, the defendant is required to exercise the care of a reasonable person under the circumstances.").

[8] Relatedly, the Defendants' flawed assertion that Officer Carter lacks standing to pursue tort claims based on the substantial risk of future injury is undercut by recent authority from this very district. *See Bouldry v. C.R. Bard, Inc.*, 909 F. Supp. 2d 1371, 1374 (S.D. Fla. 2012) (holding that "federal courts nationwide have concluded that such risk is sufficient to confer standing under Article III").

### C.     Officer Carter's Warranty Claims

#### 1.     Officer Carter's Implied Warranty Claim Does Not Fail for Lack of Privity.

The Defendants' only argument in favor of dismissing Officer Carter's implied warranty claim is that he failed to allege privity of contract. Under Florida law, however, a plaintiff need not be in privity of contract with a defendant in order to maintain a cause of action for breach of an implied warranty if the plaintiff can prove that the product in question was inherently dangerous. *See, e.g., Dudley v. Mae's Discount Fabrics*, 323 So.2d 279, 280 (Fla. Dist. Ct. App. 1975). Because handguns like the Class Pistols are inherently dangerous products, privity is not required.

#### 2.     Officer Carter's Express Warranty Claims Should not be Dismissed.

The Defendants first contend that Officer Carter's express warranty claims must be dismissed because he failed to provide adequate notice of the alleged breach. *See* Fla. Stat. § 672.607(a)(3). The purpose of the notice requirement is to allow the manufacturer of a product an opportunity to honor its warranty prior to the commencement of a lawsuit. *See Gen. Matters, Inc. v. Paramount Canning Co.*, 382 So.2d 1262, 1264 (Fla. Dist. Ct. App. 1980). Florida law permits a great degree of flexibility with respect to the form of notice given; there are no magic words, and whether adequate notice has been provided depends on the particular facts and circumstances of each case. *See Eastern Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957, 976 (5th Cir.) (under Florida law, "notice under section 2-607 need not be a specific claim for damages or an assertion of legal rights"); *see also T.J. Stevenson & Co., Inc. v. 81,193 Bags of Flour*, 629 F.2d 338, 361 (5th Cir. 1980) (Notice under UCC § 607(3)(a) need not be in any particular words and is ordinarily a question of fact looking to all circumstances of case). Indeed, the sufficiency of notice "must be evaluated from the perspective of the policies which it seeks to

14

encourage: compromise by the parties; and conduct within the bounds of commercial good faith." *T.J. Stevenson & Co.*, 629 F.2d at 361. Consistent with this approach, Florida courts have considered whether the form of notice caused the defendant actual prejudice. *See Gen. Matters*, 382 So.2d at 1264 (dismissing breach of warranty claim for lack of notice because plaintiff impaired defendant's ability to determine if goods were marketable).

In light of these principles, Officer Carter's complaint soundly establishes that the Defendants had adequate notice that his pistol was defective. As discussed above, Officer Carter alleges that the Defendants were well-aware of the dangerous flaws in the handguns they manufactured and sold. Such actual knowledge accomplished the purpose of § 607(3)(a) by providing the defendants with ample opportunity to resolve Officer Carter's warranty claim prior to the initiation of this suit — just as other handgun manufacturers have done under similar circumstances.[9] Here, the Defendants should not be relieved of their warranty obligations when they were aware of but deliberately concealed a dangerous product defect. *See Witherspoon v. Phillip-Morris Inc.*, 964 F. Supp. 455, 465 (D.D.C. 1997) ("When a seller willfully fails to disclose a defect, failure to notify cannot be raised as a defense.").

Next, the Defendants assert that Officer Carter alleges no facts supporting the conclusion that the express warranties formed part of the "basis for the bargain" associated with the purchase of his handgun. Yet, as the complaint alleges, Taurus's unlimited lifetime repair warranty is a focal point of Taurus's marketing strategy. (*See* FAC ¶ 25 (noting Taurus's public boast that its lifetime repair warranty was a "brilliant piece of marketing that changed the course of the company")). Based on that fact, Officer Carter is entitled to the inference that this "brilliant piece of marketing" played a substantial role in the purchase of his Pistol. The

---

[9] *See supra* n.1.

Defendants also contend that the warranties could not have formed the basis of the bargain because Officer Carter received the Pistol as a gift (a fact not alleged in the complaint). This is simply a privity argument in disguise, and Florida no longer requires horizontal or vertical privity in order to maintain a cause of action for breach of an express warranty. *See Fischetti v. Am. Isuzu Motors, Inc.*, 918 So.2d 974 (Fla. Dist. Ct. App. 2005) (manufacturer cannot assert privity as defense to claim based on express warranty that explicitly extends to retail purchaser and subsequent owners).

Finally, the Defendants contend (without support) that Officer Carter's express warranty claims must fail because Taurus's warranty obligations were "contingent upon" Officer Carter's duty to ship the pistol to Taurus. To a great extent, this contention is duplicative of the Defendants' notice argument, and should be similarly disregarded. But it also fails for independent reasons. The Defendants' argument focuses entirely on Officer Carter's alleged duty arising under a single "limited warranty." This ignores the fact that the complaint alleges the breach of *numerous* express warranties made in several different documents provided with the pistol. Thus, even if Officer Carter were unable to enforce the "limited warranty" due to non-compliance, the Defendants provide no reason why he has not stated a claim under the various other express warranties alleged in the complaint. Accordingly, dismissal is not warranted.[10]

### III.    Conclusion

This is not a "no-injury products liability case." The Defendants' defective handguns pose a substantial risk to public safety, a risk that the Defendants have concealed and refuse to acknowledge. As a result, Officer Carter brings this action to compensate the Defendants' customers for the pistols' diminished value and, more importantly, to mitigate the deadly risk

---

[10] Because the Defendants concede that Officer Carter's Magnuson-Moss Warranty Act claims depend on the interpretation of Florida law, those claims must also be allowed to proceed.

they pose. The Defendants have raised no meritorious defenses, and as a result, their motion to dismiss should be denied.

Date:  January 15, 2015                    Respectfully submitted,

/s/ *Angelo Marino, Jr.*
Angelo Marino, Jr. (FBN 151934)
ANGELO MARINO, JR., P.A.
645 S.E. 5th Terrace
Ft. Lauderdale, Florida  33301
Tel.:   (954) 765-0537
Fax:    (954) 765-0545
Email: amjrpamail@aol.com

David L. Selby, II *(admitted pro hac vice)*
BAILEY & GLASSER, LLP
3000 Riverchase Galleria, Suite 905
Birmingham, Alabama 35244
Tel.:   (205) 988-9253
Email:  dselby@baileyglasser.com

John W. Barrett *(admitted pro hac vice)*
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, West Virginia  25301
Tel.:   (304) 345-6555
Email: jbarrett@baileyglasser.com

Todd Wheeles *(admitted pro hac vice)*
MORRIS, HAYNES, HORNSBY & WHEELES
3500 Colonnade Parkway, Suite 100
Birmingham, AL 35243
Email:  twheeles@mhhlaw.net

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing "**PLAINTIFF'S RESPONSE TO DEFENDANTS' COMBINED MOTION TO DISMISS**" is being served on the counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF this 15th day of January, 2015.

/s/ *Angelo Marino, Jr.*
Angelo Marino, Jr. (FBN 151934)

17