```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                           MIAMI DIVISION
                      CASE NO. 13-24583-CIVIL-SEITZ
 3

 4      CHRIS P. CARTER, individually      Miami, Florida
        and on behalf of all others
 5      similarly situated,

 6                   Plaintiff,            February 26, 2015

 7             vs.                         2:17 p.m.

 8      FORJAS TAURUS, S.A., et al.,

 9                   Defendants.           Pages 1 to 31
        _____

10

11                         DISCOVERY HEARING
              BEFORE THE HONORABLE WILLIAM C. TURNOFF,
12                 UNITED STATES MAGISTRATE JUDGE
              (TRANSCRIBED FROM THE DIGITAL AUDIO RECORDING)
13

        APPEARANCES:
14

15      FOR THE PLAINTIFF:        DAVID L. SELBY, ESQ.
                                  BAILEY & GLASSER, LLP
16                                300 Riverchase Galleria
                                  Suite 905
17                                Birmingham, Alabama 35244

18                                TODD WHEELES, ESQ.
                                  MORRIS, HAYNES, HORNSBY & WHEELES
19                                3500 Colonnade Parkway
                                  Suite 100
20                                Birmingham, Alabama 35243

21                                CAROL FINKLEHOFF, ESQ.
                                  LEESFIELD & PARTNERS, P.A.
22                                2350 South Dixie Highway
                                  Miami, Florida 33133
23
                                  ANGELO MARINO, JR., ESQ.
24                                645 Southeast Fifth Terrace
                                  Fort Lauderdale, Florida 33301
25
```

```
 1   APPEARANCES, CONT'D:

 2

     FOR THE DEFENDANTS:      TIMOTHY A. BUMANN, ESQ.
 3                            JOHN MARINO, ESQ.
                              JOHN WEEKS, ESQ.
 4                            SMITH, GAMBRELL & RUSSELL, LLP
                              1230 Peachtree Street NE
 5                            Atlanta, Georgia 30309

 6

     TRANSCRIBED BY:          LISA EDWARDS, RDR, CRR
 7                            Official Court Reporter
                              United States District Court
 8                            400 North Miami Avenue
                              Twelfth Floor
 9                            Miami, Florida 33128
                              (305) 523-5499
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              THE COURT:  Carter versus Forjas Taurus.

 2              Everyone needs to speak into the microphone.

 3    Everything is being recorded, and I have to hear you.  You can

 4    sit down, but just put the microphone close to your mouth.

 5              All right.  Let's have appearances, starting with the

 6    Plaintiff.

 7              MR. SELBY:  David Selby on behalf of the Plaintiff.

 8              THE COURT:  Louder, into the microphone.

 9              MR. SELBY:  David Selby on behalf of the Plaintiff.

10              MR. WHEELES:  Todd Wheeles on behalf of the Plaintiff.

11              MR. ANGELO MARINO:  Anglo Marino on behalf of the

12    Plaintiff.

13              MS. FINKLEHOFFE:  Carol Finklehoffe on behalf of the

14    Plaintiff.

15              THE COURT:  Defendant?

16              MR. BUMANN:  Tim Bumann on behalf of the Defendants.

17              MR. JOHN MARINO:  John Marino for the Defendants.

18              MR. WEEKS:  John Weeks for the Defendants.

19              THE COURT:  Okay.  All right, folks.  We're here on the

20    discovery calendar.  It looks like the Defendant doesn't want

21    to respond to the request for production.

22              Is that about it, Plaintiff?

23              MR. SELBY:  Yes, your Honor.

24              THE COURT:  Okay.

25              MR. SELBY:  And --
```

```
 1              THE COURT:  Why don't you come to the podium and speak
 2    into the microphone there.  It's easier.
 3              MR. SELBY:  Okay.
 4              THE COURT:  And tell us why you're here.
 5              MR. SELBY:  Yes, your Honor.  That's correct.  And it's
 6    a refusal to respond to the discovery and also being told
 7    that -- you know, by counsel that they will not participate in
 8    depositions.  We have not noticed depositions for that reason.
 9    But that's our understanding as well.
10              Your Honor, our position is very simple.  Forjas
11    Taurus, the Brazilian company -- we were before Judge Seitz at
12    a Rule 16 hearing.  At that Rule 16 hearing, the Plaintiffs had
13    already filed at that point --
14              THE COURT:  What's a Rule 16 hearing?
15              MR. SELBY:  When was it?
16              THE COURT:  You have to remember, I'm from Mars,
17    looking at this record.
18              MR. SELBY:  Okay.  The Rule 16 hearing was in early --
19              THE COURT:  What is a Rule 16 hearing?
20              MR. SELBY:  At the Rule 16 hearing, your Honor, we sat
21    down with Judge Seitz.  We went through scheduling issues and
22    so forth, pending motions.
23              At the time, your Honor, the pending motion before the
24    Court was -- to give you a background, prior to that, we had
25    filed a motion for alternative service pursuant to Rule 4 to
```

```
 1    allow us to serve, as Rule 4 allows, for foreign corporations.
 2    That motion was granted.
 3          We perfected service by way of that motion by way of
 4    Federal Express and by e-mail in Brazil.  Once that happened,
 5    Forjas challenged that.  We went before the Court; and that
 6    motion -- both sides briefed that on the very issues that are
 7    again here, with letters rogatory issues.
 8          We briefed those issues.  Judge Seitz implored the
 9    Defendants to do the voluntary service at the Rule 16 hearing.
10    Following the Rule 16 hearing, Judge Seitz entered an order
11    stating -- giving the Defendants so many days to whether or not
12    they were going to accept voluntary service and, if voluntary
13    service was accepted, extending the deadline for us to amend
14    our scheduling report.
15          Forjas did voluntarily submit to service.
16          We then went ahead and did our scheduling reports,
17    parties' planning meeting and then entered into an amended
18    scheduling report.
19          THE COURT:  Well, first of all, you filed the
20    complaint.  Right?
21          MR. SELBY:  Yes, your Honor.
22          THE COURT:  At what point did they answer it:  after
23    your hearing or before?
24          MR. SELBY:  After the Rule 16 hearing, you mean?
25          THE COURT:  Okay.  After Judge Seitz got -- and they
```

```
 1   agreed that they would accept service.  Right?
 2        MR. SELBY:  It was after.
 3        THE COURT:  Okay.  And then they filed their answer.
 4   Right?
 5        MR. SELBY:  Correct.
 6        THE COURT:  All right.
 7        MR. SELBY:  And then we also -- the parties sat down,
 8   participated in a case management deadline, came up with that.
 9   None of this was ever mentioned about the issue of letters
10   rogatory.  In fact, Forjas even provided --
11        THE COURT:  Nothing was ever mentioned about them not
12   complying with the normal discovery?
13        MR. SELBY:  Correct.  About saying, you know, "We're
14   not going to submit to the process of discovery."  I mean,
15   ironically, they -- when we initiated the discovery protocol,
16   we all participated in the Rule 26 hearing.  There was no
17   mention of it.
18        And further, Forjas also submitted initial disclosures,
19   which is, as your Honor knows, part of the discovery process
20   under Rule 26.  And when they provided those initial
21   disclosures, specifically said that at this time there were not
22   documents available, said nothing about the letters rogatory
23   and in fact said the documents that would be available were at
24   counsel --
25        THE COURT:  You've got to slow down.  Remember, you're
```

1     making a record here.  Okay?

2         MR. SELBY:  I apologize.

3         THE COURT:  And also, I'm a generalist, not a

4     specialist.  I've looked at the file.  You understand?

5         MR. SELBY:  I understand.

6         THE COURT:  So they were cooperating with the discovery

7     process.  When you say "letters rogatory," what you mean was

8     there was no mention of there was going to be a need to handle

9     this differently than normal discovery as opposed to going

10     through a procedure when you're dealing with a foreign nation

11     or something like that in certain kinds of cases?

12         MR. SELBY:  Correct.

13         THE COURT:  Is that what you mean?

14         MR. SELBY:  That's correct, your Honor.

15         And the point being there is, it's not a situation

16     where someone says, "Well, I don't have to raise an objection

17     at this point."  This is a situation where you're participating

18     and telling the Court and the parties that "We're willing to

19     participate in the discovery process."

20         Obviously, had Judge Seitz known and had we known

21     following all the Rule 16 hearing and then the parties'

22     planning meeting and the Rule 26 hearing, had we known this was

23     at issue, we would have taken that up way before now.

24         So once -- and to go back --

25         THE COURT:  What would you have done?  If they had

```
 1   refused, you would have filed a motion to compel.  Is that
 2   correct?
 3          MR. SELBY:  Well, what we would have done, it would
 4   have been part of the Rule 26.  Before all the deadlines and
 5   everything was scheduled, it would have been a part of that.
 6          THE COURT:  What would you have done?  How would you
 7   have done it?
 8          MR. SELBY:  We would have asked Judge Seitz
 9   specifically at that point and said, "We've got to address this
10   issue before we start having discovery deadlines running."
11          THE COURT:  And then what would you have said?  What
12   relief would you request?
13          MR. SELBY:  Well, at that point, we'd have said the
14   same thing we're saying today.  I mean, at this point, they had
15   already submitted themselves to the jurisdiction of the Court.
16          THE COURT:  So you would have in effect filed orally or
17   in writing a motion to compel?  I don't want to put words in
18   your mouth, but we've got to --
19          MR. SELBY:  A similar motion.  Yes, your Honor.
20          THE COURT:  You would not have -- I don't want to put
21   words in your mouth.  But you would not have followed the
22   procedure under some international treaty?
23          MR. SELBY:  Well, what we wouldn't have done -- that's
24   right, your Honor.  What we wouldn't have done also is said
25   that -- you know, "Everybody sign off on the scheduling order,"
```

```
 1    assuming that everything was to go forward, not --

 2         THE COURT:  I get that point.  I'm trying to nail this

 3    down so we put this in, like, you know, declarative sentences

 4    here, without putting words in your mouth.

 5         Your view is that the normal rules of discovery apply.

 6    They've consented to service.  They filed an answer.  Correct?

 7         MR. SELBY:  Correct.

 8         THE COURT:  Under this jurisdiction, it would be raised

 9    at any time.  There's no motion to dismiss pending at this

10    time.  Correct?

11         MR. SELBY:  Correct.  The --

12         THE COURT:  I don't want to put words in your mouth.

13    But consistent with giving me a direct answer -- I'm not

14    criticizing -- is it your position that at the first hint of

15    this problem coming up, particularly if the answer's been

16    filed, you would have filed a motion to compel or its

17    equivalent before Judge Seitz at the earliest opportunity?

18         MR. SELBY:  Yes, your Honor.  We would have sought

19    relief with the Court at that moment, as soon as we --

20         THE COURT:  By a motion to compel or its equivalent.

21    Right?

22         MR. SELBY:  Correct.

23         THE COURT:  All I'm trying to get at -- you know, I'm

24    just trying to make things understandable to me and everybody

25    else so we know what we're talking about here.  Right?
```

```
 1              So you're not conceding that you've got to proceed

 2    under any international treaty.  Your position is, "They've

 3    answered in this jurisdiction.  They sell guns in this

 4    jurisdiction."  Do you follow me?

 5              MR. SELBY:  Yes.

 6              THE COURT:  "And we'll do discovery."  Right?

 7              MR. SELBY:  Yes.

 8              THE COURT:  Plus, there would be laches of a nature.

 9    The question is simple justice and common sense.  Right?

10              MR. SELBY:  Yes, your Honor.

11              THE COURT:  I don't want to put words in your mouth.

12    But that's it, right?

13              MR. SELBY:  Yes.

14              THE COURT:  So your position right now is, they've got

15    to comply with this.  And you're in the actual or constructive

16    procedural posture of addressing a motion to compel from them

17    through response to discovery that's at issue here.  Right?

18              MR. SELBY:  Yes, your Honor.

19              THE COURT:  This is the request to produce.  Right?

20              MR. SELBY:  Yes, your Honor.

21              THE COURT:  Now, am I missing anything?  Am I

22    misstating anything?

23              MR. SELBY:  No, your Honor.  That's -- you've summed it

24    up exactly.  That's --

25              THE COURT:  Let me hear from Defendants.  Don't drop
```

```
 1    anything heavy.  I've read this case.  I've a little nervous.
 2            MR. BUMANN:  Good afternoon, your Honor.  Tim Bumann
 3    for the Defendants.
 4            I will direct the Court's attention to a couple items
 5    that it can take judicial notice of that might inform the Court
 6    on its decision.
 7            First would be the International Convention on Letters
 8    Rogatory.
 9            THE COURT:  Speak into the microphone and loud.
10            MR. BUMANN:  Directing the Court's attention and asking
11    for it to take judicial notice of the International Convention
12    on Letters Rogatory, the notice regarding alternative service,
13    Amdaeus versus Amdaeus [phonetic], 156 FRD 2 -- sorry; I left
14    my glasses --
15            THE COURT:  Don't waste everybody's time by spending
16    your time with the citations.
17            Go ahead.
18            MR. BUMANN:  All right, your Honor.
19            The transcript from the April 23rd hearing before Judge
20    Seitz, particularly directing your attention to Pages 25, 26,
21    28 through 29, 31 and Page 88, as well as the State Department
22    website under Legal Considerations For Dealing With the
23    Judicial Issues With the Republic of Brazil as well as our
24    discovery -- or our reservation of rights that was in the
25    initial disclosures.
```

 1          We have reserved our rights.  We -- first of all, on

 2    the issue of service of process -- which this is not; this is

 3    discovery, not service of process -- during that period, we

 4    negotiated the terms of service.  We did not consent to service

 5    under the Federal Rules of Civil Procedure.  That's important.

 6    And one of the documents that the Court can take judicial

 7    notice of is the document that reserves rights under that

 8    situation.

 9          We are not -- and I have to emphasize, "not" -- saying

10    that we are not going to participate in discovery.

11          What we are saying, as the Court knows through its

12    activities in the Ara Sebestial [phonetic] case, that we cannot

13    participate in discovery except using the means that our

14    government recognizes.

15          Brazil is extremely jealous of its judicial authority.

16    Judge Seitz commented on that several times at the pages that

17    we cited to you a moment ago.  We are happy to respond to

18    discovery and happy to make witnesses available to be deposed.

19    But they need to be -- it needs to be done in accordance with

20    Brazilian law and the International Convention on Letters

21    Rogatory.

22          This issue came up when -- there's been five sets of

23    requests for production served.  The same --

24          THE COURT:  If somebody wanted to buy one of your

25    guns -- and nobody should read anything into my questions or

```
 1    comments at all.  This is my way of fleshing out things.  So if

 2    somebody wants to buy one of these guns that are made in

 3    Brazil -- right? --

 4              MR. BUMANN:  Yes.

 5              THE COURT:  -- they could buy it in Florida.  Right?

 6              MR. BUMANN:  Not from the Defendant.

 7              THE COURT:  The Defendant's guns:  Are they for sale in

 8    the State of Florida?

 9              MR. BUMANN:  Yes, your Honor, but not from this

10    Defendant.

11              THE COURT:  Okay.  But they're manufactured by your

12    client.  Right?

13              MR. BUMANN:  In Brazil.

14              THE COURT:  And sold where?  In Florida, right?

15              MR. BUMANN:  No, sir.  They are sold in Brazil.  They

16    do not have any presence --

17              THE COURT:  They are sold to whom in Brazil?  If I

18    wanted to buy a Taurus gun in Florida, how do I buy one?

19              MR. BUMANN:  You go to a --

20              THE COURT:  Recife?

21              MR. BUMANN:  I'm sorry?

22              THE COURT:  Go ahead.

23              MR. BUMANN:  You go to a federal firearms-licensed

24    dealer.

25              THE COURT:  In Florida?
```

```
1              MR. BUMANN:  In Florida.

2              THE COURT:  Who's legally obtained the guns from a

3     wholesaler or whatever?

4              MR. BUMANN:  In any one of the 50 states.

5              THE COURT:  All right.  Go ahead.  Continue your

6     argument.

7              MR. BUMANN:  All right.  We have -- the client has

8     particular concerns about its dealings with the Brazilian

9     government and not wanting to offend the Brazilian government

10    because of the nature of its industry in Brazil.

11             I guess the point the Court doesn't seem to be that --

12    be concerned with the details, the point that I would make --

13             THE COURT:  Don't posit what the Court thinks or

14    doesn't think.

15             MR. BUMANN:  Okay.  I'll make a note of that, your

16    Honor.

17             THE COURT:  There's nothing to think about.  You know

18    what I mean?  I'm open minded and, you would say, empty minded.

19             MR. BUMANN:  Well --

20             THE COURT:  I'm trying to understand what's going on

21    here to make sure that I understand what's at issue here.

22             MR. BUMANN:  What's at issue, your Honor, is the

23    tension between the international law and the Federal Rules of

24    Civil Procedure.

25             My client is, as my associate said -- often reminds me,
```

```
 1    caught in the pincers between --

 2            THE COURT:  In the what?

 3            MR. BUMANN:  Caught in the pincers between

 4    international law and the Federal Rules of Civil Procedure.

 5            We're not refusing to participate in discovery.  We're

 6    simply asking that we not be put in a position where the -- a

 7    court here forces us to --

 8            THE COURT:  If you just turned over the documents and

 9    honored it, nobody's forcing you to do anything.

10            MR. BUMANN:  According to the US State Department,

11    doing such a thing -- and I'll quote from the State Department

12    papers, if the Court will allow -- puts the party at risk of

13    arrest.

14            THE COURT:  Where is this coming from?

15            MR. BUMANN:  This is the --

16            THE COURT:  Is John Kerry bringing James Taylor over to

17    France?

18            MR. BUMANN:  I'm sorry, your Honor?

19            THE COURT:  What are you quoting from?

20            MR. BUMANN:  I'm -- what I mentioned to you --

21            THE COURT:  The State Department is a big agency that's

22    existed for the 200 years of this Republic.

23            MR. BUMANN:  Yes, your Honor.

24            THE COURT:  What are you quoting from and in what

25    context?
```

```
 1              MR. BUMANN:  Your Honor, this is from the document that

 2   I cited you to and asked you to take judicial notice of, which

 3   is the State Department website concerning the Republic of

 4   Brazil, Legal Considerations.

 5              THE COURT:  Right.

 6              MR. BUMANN:  It says that if we do what the Court

 7   suggests --

 8              THE COURT:  What?  Read what you're reading from and

 9   tell me how it applies to this case.

10              MR. BUMANN:  It applies in this case because the --

11              THE COURT:  Read what you're talking about.  Read the

12   quote.

13              MR. BUMANN:  "If you voluntarily participate --

14   voluntarily participate in discovery" as is described or as

15   done here in the United States, "you risk arrest, detention,

16   expulsion, deportation," et cetera, et cetera.  You can be

17   legally punished.

18              THE COURT:  By whom?

19              MR. BUMANN:  By the Brazilian government.

20              THE COURT:  That's the State Department telling -- an

21   official document --

22              MR. BUMANN:  Warning United States citizens not to

23   do -- not to try and engage in discovery in the Republic of

24   Brazil.

25              THE COURT:  Let me just stop you right there.
```

```
 1            If you have a quick response to that, that's okay.  Do
 2    you have a quick response to that?
 3            MR. SELBY:  Yes, your Honor.
 4            THE COURT:  Let me hear from you from your seat.
 5            MR. SELBY:  Two quick responses, if you don't mind,
 6    your Honor.
 7            One, on the issue of them saying they will agree to
 8    participate in discovery, but we've got to go through this
 9    process, this is the point of -- number one --
10            THE COURT:  No.  A quick response to what he's just
11    read from the State Department's website.
12            MR. SELBY:  Yes, your Honor.  I can.
13            That specifically on that State Department website is
14    talking about lawyers that go to Brazil, American lawyers, and
15    participate without the assistance of a Brazilian judge and
16    then in turn a Brazilian lawyer.
17            At this point, that is not what we're even requesting.
18            THE COURT:  So that's your response?  He's talking
19    about a different context, a different issue?
20            MR. SELBY:  Yes, your Honor.
21            THE COURT:  And you're saying that that website, as
22    liberally interpreted, do you follow me, does not apply to a
23    company that's in a lawsuit that accepted service and has filed
24    an answer in terms of mailing up or e-mailing up responses to
25    your request for production?
```

1          MR. SELBY:  Correct, your Honor.

2          THE COURT:  I don't want to put words in your mouth.

3    Is that correct?

4          MR. SELBY:  Yes.

5          THE COURT:  Counsel?

6          MR. BUMANN:  The State Department's warnings do apply

7    in this case.  We did not voluntarily accept service as

8    anticipated and as normally done within the Rules of Civil

9    Procedure here.

10          And we are not -- and the point -- interestingly

11   enough, the point that counsel made is exactly our point:  If

12   you want to obtain discovery in Brazil, you need to use the

13   good offices of the judiciary in Brazil to do that, which is

14   exactly what counsel --

15          THE COURT:  That's not what he said, but I get your

16   argument.

17          MR. BUMANN:  -- what counsel mentioned.

18          So -- and that's really all we're asking for.

19          Now, interestingly enough as well, counsel in this case

20   have made appearances in another case pending here in state

21   court in Miami-Dade against these same Defendants.  And in the

22   other case, they're using letters rogatory as they're supposed

23   to be used.  But for some reason, they refuse to do it in this

24   case.

25          THE COURT:  Why haven't you raised this issue in lawyer

```
 1    conferences before --

 2              MR. BUMANN:  We have.

 3              THE COURT:  -- in front of Judge Seitz?  Do we have a

 4    transcript?

 5              MR. BUMANN:  Yes, your Honor.  I read to you this --

 6              THE COURT:  Read.

 7              MR. BUMANN:  I read to you the page cites where it was

 8    mentioned.

 9              THE COURT:  Read it.  No.  You told me the page number.

10    Read me the quotes.  Read me the pages.

11              MR. BUMANN:  I apologize.  I'm going to have to get my

12    other glasses.

13              Specifically, at Pages -- I apologize for the glasses,

14    your Honor, but I left my regular glasses at the restaurant.

15    At Pages 20 --

16              THE COURT:  I thought you were going to do a Ray

17    Charles imitation.

18              MR. BUMANN:  I am, perhaps later.

19              At Pages 28 and 29, the quote -- it's referring to

20    Brazil:  "They haven't signed the Hague, for example, so

21    discovery can be a challenge.  But we can work through those

22    challenges.  I just think they realize they have to sort of get

23    with the program."

24              And the Court says -- goes on and recites --

25    acknowledges that and goes to a discussion of Rule 4(d) and
```

1    then notes that they're -- referring again to Brazil:  "They're

2    protective of their sovereignty."

3            Again, the Court acknowledging that, if the service is

4    not by letters regulatory, the Brazilian Supreme Court does not

5    look any further.  The papers simply aren't honored.

6            This is a quote from the Court:  "They are very

7    aggressive," again referring to the government of Brazil.  She

8    was -- lived there apparently twice and notes they're very

9    protective of their sovereignty vis-à-vis their judiciary.

10           And she says that "My concern for the Plaintiff is if I

11   deny the motion, you are all going to have a problem enforcing

12   a judgment in Brazil.  And so my question back to you is:  What

13   prevents you from proceeding with letters rogatory if you want

14   to make this an enforceable judgment?"

15           And the Court recognizes and we -- there --

16           THE COURT:  Stop right there.

17           Counsel?

18           MR. BUMANN:  And we --

19           THE COURT:  Stay right there.

20           MR. SELBY:  Your Honor, that was before they submitted

21   to the jurisdiction of the Court.  And that was what Judge

22   Seitz was leading up to at that Rule 16 conference.  At no

23   point -- it was after that, after they had submitted to the

24   jurisdiction --

25           THE COURT:  So you're saying the context of the

1   discussion was before the issue of service had been resolved.

2   Do you follow me?

3           MR. SELBY:  Correct.

4           THE COURT:  And it does not apply to what would happen

5   if service was accepted or otherwise resolved?

6           MR. SELBY:  That's correct, your Honor.

7           THE COURT:  Counsel?

8           MR. BUMANN:  Discovery was specifically mentioned in

9   what I just read to you.

10          And I would also point out that this document was filed

11  in connection with the agreement on the terms of service.  It

12  is filed 30 April 2014 or served on that date, titled Notice

13  Regarding Alternative Service.  "Defendant Forjas Taurus, S.A.,

14  hereby files this notice with the Court pursuant to" -- it's

15  titled Order Following Hearing, dated April 23rd 2014.  It has

16  the docket cite.

17          "Subject to the additional requirements set forth by

18  the Court in the order and for purposes of this case only,

19  Forjas Taurus will accept service of process in this

20  litigation.  The waiver of service in this case is contrary to

21  company policy and should not be interpreted to the effect the

22  company will not insist on the formalities of international law

23  in the future.

24          "Waiver is being granted in this case for good and

25  valid reasons peculiar to this case and these circumstances."

1          In addition, we -- in the initial disclosures, which

2     were described earlier and the Plaintiffs took the position

3     that constituted a waiver, we -- by us, we also reserved our

4     rights in discovery in that document as well.

5          So is --

6          THE COURT:  Okay.  That's arguable for the sake of

7     discussion.  But why haven't right now -- you can't have a

8     situation -- I'm just thinking out loud -- where you've

9     accepted service or whatever with your reservations, whatever,

10    without getting into the merits of that, but you have pending

11    litigation going on.  And they've made -- they're following the

12    discovery procedures, made a request for production.  There's

13    no motion to dismiss pending.  There's nothing.

14         In other words, so all that they have is, they have an

15    answer and now they're proceeding with discovery.

16         I'll wait until they've conferred.

17         MR. BUMANN:  May I be heard?

18         THE COURT:  I'll wait.  Take all the time you need.

19    Are you done conferring?

20         MR. SELBY:  Yes.

21         THE COURT:  Okay.  I want you to confer.  I need all

22    the help I can get, but you've got to listen to my blathering

23    here.  Okay?

24         So you have litigation pending with discovery cutoff.

25    So they're following the normal procedure.  Okay?

1      You're just saying, Well, we're not going to comply for

2  whatever reason.  But that -- you have to -- there's got to be

3  a motion to dismiss pending or something else pending.  Maybe

4  not.

5      But that's where we are in reality.  The only thing

6  that's pending now is the request for production.  Okay?  And

7  you've accepted service, with whatever reservations you may

8  believe that you have.

9      So what happens?  You just say, "No, no"?  They keep

10  saying, "Give it"?  It doesn't work like that.

11      MR. BUMANN:  That's not what we're suggesting, your

12  Honor.

13      THE COURT:  So -- well, you're putting the ball in

14  their court to make them accept your solution, which is to

15  proceed to simplify things under the treaty or sub-treaty.  Do

16  you follow me?  That's what you want, right, until they comply

17  with that?  That's what you're saying?

18      And they say --

19      MR. BUMANN:  Not exactly.  But --

20      THE COURT:  Not exactly.

21      MR. BUMANN:  But for the sake of argument.

22      THE COURT:  I'm closer than I usually am.

23      So here's what I think we're going to do here:  This is

24  a very important matter.  99 percent of the time, when people

25  come before me like this, we can take care of the matter.  I'm

```
 1    sorely tempted to do it here, but I'm not sure.  You may have a

 2    legitimate position here.

 3            So what I'm going to do is -- but I'll put you on a

 4    fast track on this.  I'm going to require -- bring over counsel

 5    for the record, counsel for Plaintiffs.  You've followed our

 6    practice here in this division with Judge Seitz at least and

 7    you've noticed this for the discovery calendar.  Correct?

 8            MR. SELBY:  Correct.

 9            THE COURT:  Is there not a motion to compel pending?

10    There can't be.  There shouldn't be.

11            MR. SELBY:  There can't.  There's none.  Correct.

12            THE COURT:  If we had a discovery calendar, you would

13    have filed a motion to compel, I take it.  Correct?

14            MR. SELBY:  Correct.

15            THE COURT:  I don't want to put words in your mouth.

16    Is that correct?

17            MR. SELBY:  Correct.

18            THE COURT:  Okay.  You go ahead and file your motion to

19    compel.  The sooner you do it, the better.

20            And thereafter, from the day it's filed, the Defendants

21    will have seven days to file a response, seven calendar days to

22    file a response.

23            Plaintiffs will then have five days or less, but no

24    more than five days, to reply.  Okay?

25            Then it'll be ripe.  We'll take a look at it and either
```

1    rule or if there's a chance we'll bring you back as quickly as

2    we can for argument.  And that way, I'll have the benefit of

3    your authorities, your arguments.  You follow the page

4    limitations and I want microdots.  It makes you work harder

5    because you've got to -- do you understand me?

6         MR. BUMANN:  Yes, sir.

7         THE COURT:  Follow the standard rules with respect to

8    pleadings.  And then I'll have something I can look at and

9    research and read in context.  Do you follow me?

10        We're very busy here, you know.  But in this case, I

11   want to expedite this because I'm unable to rule.  I can rule,

12   but I'm not, because defense has a real argument here,

13   colorable for present purposes.  So I want to take a look at

14   the law.

15        I'll have a chance to see your motion to compel.  And

16   in it, you put appropriately the procedural history here.  You

17   know what they're going to respond to in advance.  But then

18   you'll respond and you'll cite whatever you need to cite and

19   whatever.

20        You'll reply.

21        And I'll either rule on it on the papers after I've

22   researched it or more likely I'll bring you in for oral

23   argument and I'll rule from the bench.  That way, you'll get --

24   but the issue is significant enough that I cannot rule from the

25   bench.  In fact, I'm not sure -- you know, the justice of the

```
 1    matter is, obviously, common sense is, you know, this is
 2    discovery.  I looked at it.  It looked like routine kinds of
 3    questions you would ask in a case like this, a speed read of
 4    the materials.
 5          But your position may be 100 percent correct, you know,
 6    legally and in the context of international relations and so
 7    forth and so on.  So you put it in writing.  Put it in writing
 8    for me to see, for Judge Seitz to see, for the Eleventh Circuit
 9    to see, for the Supreme Court to see, so I'll have something I
10    can look at and read the authorities, the rules and the law,
11    although after 30 years I'll be rereading it.  But you do it in
12    the context of this case.  Okay?
13          I will concede, your position is colorable.  I'm
14    looking at counsel for -- it's colorable.  Do you follow me?
15          MR. BUMANN:  Yes, your Honor.
16          THE COURT:  So -- but nobody should get the wrong
17    message from that, because my instinct is, quite frankly,
18    naturally, you have a complaint.  It's been answered.  There's
19    been at least from Plaintiffs' point no indication there was
20    going to be any problem here.  Maybe a misunderstanding.  Who
21    knows?
22          But we'll put it in writing and we'll do it the way
23    it's normally done in federal court.
24          I don't lightly do that because I try to save people
25    time and money.  But I need this delay, you know, on this
```

1    important matter so I can try to get it right here.

2           Now, that being said, you put on the record, counsel

3    for Defendant -- your position is certainly colorable.  You

4    know what I mean?  And I'm really open minded about this.  I'm

5    going to look at the authority.  But this is implicit in every

6    case, and this applies to Plaintiffs, Defendants, whatever:  I

7    said by speed-reading your request, it looks colorable.  Do you

8    follow me?  But for example, if it was frivolous, there's not a

9    free ride.

10          And the same thing with defense:  Either now or later,

11   if things come up and this looks like this is just delay

12   tactics or something, it's not a free ride.  There are

13   consequences.

14          And I say that to everybody.  And if I don't say it,

15   it's the law.  It's implicit.  I just want everybody to

16   understand and your client to understand that it's not a free

17   ride here.  Do you follow me?  So if the strategy, for example,

18   is delay, stonewall, or whatever, that can come back and bite

19   the client that's doing that.

20          I see no evidence of that here.  But since I'm seeing

21   you at the outset, we'll put that on the record.

22          That is also to be of assistance to your clients in

23   dealing with all these things.

24          So -- but I'm not making any suggestion that that's

25   what's going on here.  In fact, I'm noting that your position

```
 1    is colorable.  I just need to take a look at the authorities

 2    and see what your argument is.  You've got to take time to put

 3    it in writing, you know, in a logical fashion, citing the

 4    authorities and whatever you want to cite in a logical fashion

 5    that I can understand and everybody looking at this record can

 6    understand.

 7          So I think I'm giving you enough time to do that.  And

 8    I'll promise you, God willing and other things -- obviously, we

 9    have a caseload -- we're going to fast track this to the extent

10    it can be fast tracked in a heavy caseload.  That's why I'm

11    giving you a specific number of days to do your filings.  And

12    then we're going to look at it as quickly as we can and make

13    the determination whether we're going to need oral argument or

14    not.

15          Chances are pretty -- don't be shocked if you get an

16    order from me.  But chances are we will, because that will be

17    the basis of -- you can't -- I don't know what my questions are

18    going to be after I look at your documents.  But an issue like

19    this, yes.  Let's put it in writing.  Give me the authorities,

20    also for a higher and wiser authority to see what's going on

21    here, because I think this is an important matter, because this

22    will set the tone, if there's going to be discovery here, how

23    it's going to be done and how quickly.  Do you follow me?

24          So Maria, any objections?

25          THE LAW CLERK:  No.
```

1          THE COURT:  Does anybody have any objection -- I'll

2     start first with counsel for Plaintiff.  Any objections to --

3     counsel for Defendant, any objection to what I am suggesting

4     that we do here?

5          MR. SELBY:  No, your Honor.  No objection.

6          I would point out to your Honor that we are on a pretty

7     tight situation here.

8          THE COURT:  I'm aware of that.

9          MR. SELBY:  I just want to make sure I understand what

10    your Honor is -- we go ahead and file our motion to compel.

11    The Defendants have seven days from the date it's filed to

12    respond.

13         THE COURT:  Calendar days.

14         MR. SELBY:  Calendar days.  And then we would have five

15    days to reply to that?

16         THE COURT:  Calendar days.  Correct.

17         MR. SELBY:  Okay.  Thank you, your Honor.

18         THE COURT:  What the heck was I going to say?  Nothing

19    is going to happen here because I'm doing this as fast -- I

20    can't promise you anything, because we're busy.  And this

21    really may be complicated.  Do you know what I mean?  And we've

22    got to find those little (inaudible) from, you know, Justice

23    Marshall, you know.  But that is my intention.

24         But always there's -- I can't promise you anything, and

25    I hope it doesn't happen.  But you're on a tight schedule based

```
 1   upon the scheduling order.  Correct?

 2           MR. SELBY:  Correct.

 3           THE COURT:  Okay.  Well, you're doing the best you can

 4   to advance it.  Right?

 5           MR. SELBY:  Correct.

 6           THE COURT:  So we're not going to put the cart before

 7   the horse.  But we want this matter resolved on the merits.

 8   I'm not promising you -- I can't speak for Judge Seitz.  Do you

 9   follow me?  But if there's a problem here, that is something

10   that will help you address it with Judge Seitz at the

11   appropriate time.  So it's an issue and you're on top of it.

12   You should be.

13           But we keep a pretty close -- my law clerks, we work

14   together with what's going on here.  But you always have the

15   option if it comes to that -- and I hope it doesn't -- you file

16   a motion for extension.  Okay?

17           MR. SELBY:  Your Honor --

18           THE COURT:  By saying that, I hope it doesn't come to

19   that; and I can't promise what the result would be.  But

20   certainly in a case like this, if there is a problem here, you

21   know, you have your remedies.  That's the best I can do for

22   you.

23           But you're absolutely correct to raise that.  But on

24   the other hand, I'm not going to rule off the top of my head

25   what I think is the fair thing to do here.  That would be
```

```
 1   quick, wouldn't it?  But I could be wrong.  And not only would

 2   it be unfair to the Defendant, but you could get a big victory

 3   six months from now and it'd be reversed because I acted

 4   incorrectly at this point.  Okay?  How's that for peace of

 5   mind?

 6           Don't get your hopes up, because he may be right here.

 7   I don't know.

 8           MR. SELBY:  I understand.

 9           MR. BUMANN:  Your Honor, we appreciate your time and

10   appreciate you letting us brief the issue.

11           (Proceedings concluded.)

12

13

14                    C E R T I F I C A T E

15

16        I hereby certify that the foregoing is an

17   accurate transcription of the proceedings in the

18   above-entitled matter.

19

20                         /s/Lisa Edwards
     _____
21       DATE          LISA EDWARDS, RDR, CRR
                        Official Court Reporter
22                      United States District Court
                        400 North Miami Avenue, Twelfth Floor
23                      Miami, Florida 33128
                        (305) 523-5499
24

25
```