IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| CHRIS P. CARTER, Individually and on behalf of all others similarly situated, | | |
| *Plaintiffs*, | | |
| v. | | Case No. 1:13-cv-24583-PAS |
| FORJAS TAURUS S.A., TAURUS INTERNATIONAL MANUFACTURING, INC., and TAURUS HOLDINGS, INC., | | **CLASS ACTION** |
| *Defendants*. | | |

**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARD AND INTEGRATED MEMORANDUM OF LAW IN SUPPORT**

## TABLE OF CONTENTS

I.   The Court Should Award the Requested Attorneys' Fee. ....................................................... 2

   A.   Eleventh Circuit Law Provides for an Attorneys' Fee Award of a Percentage of the
        Recovery Obtained for the Class. ................................................................................. 2

   B.   The Requested Attorney Fee is Less than the 25% "Benchmark" Routinely
        Awarded in the Eleventh Circuit.................................................................................. 4

        i.   Eleventh Circuit and nationwide case law provide that an appropriate percentage
             of the fund to be used when determining the attorneys' fee award is at
             least 25%. ..................................................................................................................... 4

        ii.  Plaintiff's requested award represents as little as 10.7% of the recovery and no
             more than 22.2%. ......................................................................................................... 6

   C.   The Requested Attorney Fee is Reasonable under the *Johnson* Factors. ..................... 8

        i.    The time, labor and skill required .......................................................................... 9

        ii.   Unique and compelling time limitations in this case weigh in favor of the
              award...................................................................................................................... 11

        iii.  The difficulty of the issues and undesirability of the case..................................... 11

        iv.   The contingent nature of the fee, financial burden carried by Class Counsel,
              and preclusion of other work .............................................................................. 12

        v.    The requested fee reflects the market rate in comparable complex class actions. 13

        vi.   The result achieved for the class, and response by the class ................................. 13

II.  A Service Award of $15,000 is Appropriate. ...................................................................... 14

III. Conclusion ........................................................................................................................ 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allapattah Servs., Inc. v. Exxon Corp.*,
    454 F. Supp. 2d 1185 (S.D. Fla. 2006) ........................................................................4, 5, 14

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ............................................................................................................2

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) ......................................................................................3, 4, 8

*In re Checking Account Overdraft Litig.*,
    830 F. Supp. 2d 1330 (S.D. Fla. 2011) ...............................................................................4, 12

*David v. Am. Suzuki Motor Corp.*,
    No. 08-22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) ................................................3, 14

*Gevaerts v. TD Bank*,
    No. 14-20744, 2015 WL 6751061 (S.D. Fla. Nov. 5, 2015) ................................................4, 14

*Gutter v. E.I. Dupont De Nemours & Co.*,
    No. 95-2152 (S.D. Fla. May 30, 2003) .................................................................................5

*In re International Textile Group Merger Litigation*,
    C.A. No. 2009-cp-23-3346 (Ct. of Common Pleas, Greenville Cty., S.C. 2013)....................5

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir.1974) ...........................................................................................8, 15

*In re: Managed Care Litig. v. Aetna*,
    MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003)............................................5, 7

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*,
    991 F.Supp. 2d 437 (E.D.N.Y. 2014) .................................................................................5

*Pinto v. Princess Cruise Lines, Ltd.*,
    513 F. Supp. 2d 1334 (S.D. Fla. 2007) ...............................................................................5, 14

*Poertner v. Gillette Co.*,
    No. 14-13882, 2015 WL 4310896 (11th Cir. July 16, 2015) (per curiam)............................2

*Ressler v. Jacobson*,
    149 F.R.D. 651 (M.D. Fla. 1992)........................................................................................12

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
297 F.R.D. 683 (S.D. Fla. 2014) .........................................................................2, 3

*In re Sunbeam Sec. Litig.*,
176 F. Supp. 2d 1323 (S.D. Fla. 2001) ...................................................................12

*In re: Terazosin Hydrochloride Antitrust Litigation*,
99-1317 (S.D. Fla. Apr 19, 2005) (Seitz, J.) ...............................................5, 12, 15

*Waters v. Int'l Precious Metals Corp.*,
190 F.3d 1291 (11th Cir. 1999) ...........................................................................3, 4

**Other Authorities**

Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlement and Their Fee
Awards,* 7 JOURNAL OF EMPIRICAL LEGAL STUDIES 811 (2010) ...................................6

Theodore Eisenberg and Geoffrey P. Miller, *Attorney Fees and Expenses in Class
Action Settlements: 1993-2008,* 7 JOURNAL OF EMPIRICAL LEGAL STUDIES 248
(2010) ....................................................................................................................6

Officer Carter and Class Counsel have achieved an extraordinary settlement result for the Class, and the parties have agreed that Defendants will not object to an attorneys' fee award of up to $9,000,000.00, to be paid separately by Defendants. Class Counsel necessarily considered Defendants' financial position in reaching a compromised settlement to allow Defendants to monetize the Enhanced Warranty and Cash Payment settlement benefits for the Class Members. In doing so, Class Counsel utilized a Chartered Accountant with experience in international corporate restructuring and commercial business transactions to fully evaluate Defendants' financial position and help structure a settlement in the best interest of Class.  This endeavor resulted in the parties' agreement that the attorneys' fees will be paid out over a three-year period,[1] with one third of the amount paid on the first anniversary of the Effective Date[2] of the settlement; one third paid on the second anniversary of the Effective Date; and one third paid on the third anniversary of the Effective Date. Defendants further agreed not to object to a service award for Officer Carter that does not exceed $15,000.00.

Granting Plaintiff's application will not diminish the Class's recovery by a penny. It will, however, fairly compensate Class Counsel for their extensive and successful work prior to the filing of the complaint and throughout the pre-trial and settlement phases of this litigation, as well as their significant expenses invested on a risk intensive and difficult case.

---

[1] By agreeing to take fees in three installments over three years, Class Counsel is actually taking a loss. Using Class Counsel's own Cost of Capital rate of 2.787%, the Net Present Value of $9,000,000.00 is actually worth $8,520,704.61.  (Exhibit C, Selby Decl. at ¶ 10).

[2] The Effective Date is the fifth business day after the Final Approval Order has become a final, non-appealable judgment approving the Settlement and no longer subject to review, rehearing, appeal, petition for allowance of appeal, petition for certiorari, or other review of any kind. (Exhibit A, Settlement Agreement and Release, ECF No. 123 at 24.)

For these reasons, Plaintiff respectfully requests that the Court:

1. Award Class Counsel, Bailey & Glasser LLP and Morris, Haynes, Wheeles, Knowles & Nelson, a fee of **$9,000,000.00**, inclusive of litigation expenses, to be paid by Defendants to Class Counsel, which sum, when added to the relief for the class, represents **between 10.7% and 22.2% of the total class recovery**; and

2. Award Chris Carter a service award in the amount of **$15,000.00** in recognition of his service to the Class, also to be paid separately by Defendants.

In so moving, Plaintiff relies on the expert report of University of Texas Professor Charles Silver. Professor Silver has studied, taught, written about, and testified regarding class actions, attorney fees, and legal ethics for almost 30 years. Based on his experience and education, Professor Silver opines that a fee exceeding 25% would be reasonable in this case under Eleventh Circuit law and using actual comparable recoveries as a guide. (Exhibit A, Silver Rpt. at 1). Plaintiff further relies on, *inter alia, Plaintiff's Motion for Final Approval of Class Settlement* and the Exhibits thereto, filed concurrently with this Motion.

For the reasons set forth more particularly below, Plaintiff respectfully requests that the Court grant his Motion.

**I.      The Court Should Award the Requested Attorneys' Fee.**

    A.   <u>Eleventh Circuit Law Provides for an Attorneys' Fee Award of a Percentage of the Recovery Obtained for the Class.</u>

It is well settled that Class Counsel is entitled to an attorneys' fee for the benefit obtained in a class settlement. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980); *Saccoccio v. JP Morgan Chase Bank, N.A.,* 297 F.R.D. 683, 694 (S.D. Fla. 2014). Further, a settlement with ascertainable benefits may be treated as a common fund from which a percentage fee may be awarded. *Poertner v. Gillette Co.,* No. 14-13882, 2015 WL 4310896, at *4 (11th Cir. July 16, 2015) (per curiam) (finding value of nonmonetary relief and cy pres award to be part of the "settlement pie" from which percentage of fund for fee award was calculated). This is true even

if the fee is separately paid by the defendant. *See David v. Am. Suzuki Motor Corp.,* No. 08-22278, 2010 WL 1628362, n.14 (S.D. Fla. Apr. 15, 2010) (citing *Duhaime v. John Hancock Mut. Life Ins. Co.,* 183 F.3d 1, 4 (1st Cir. 1999); Fed. R. Civ. P. 23(h)).

It is further established in the Eleventh Circuit that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case," and therefore, "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 772-775 (11th Cir. 1991) ("*Camden I*"); *see also Saccoccio,* 297 F.R.D. at 694; Ex. A at ¶ 16.

The fees in a class action may be determined based upon the total fund available to the class, not just the actual payout to the class. *Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1295-96 (11th Cir. 1999) (affirming fee award when actual dollars paid out to class members turned out to be "substantially less" than the total fund generated for the settlement); *see also Saccoccio,* 297 F.R.D. at 695. Professor Silver explains in his Report why this is a reasonable approach, recognizing that, "[w]hen reviewing requests for fees in class action settlements with claim processes, judges often wonder how to deal with the possibility that the benefits actually paid out will be worth less than the amount made available because fewer (perhaps far fewer) than all class members will participate." (Ex. A ¶ 59). However, any rule limiting fee awards to a percentage of the actual payout would weaken and possibly destroy lawyers' incentive to file class actions on behalf of persons with small damages claims, which would in turn "prevent the class action from serving the core function identified by the U.S. Supreme Court." (*Id.* ¶ 61, citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617 (1997)). Where a claims type process is unavoidable but well designed, like here, the Court would only

punish Class Counsel for something beyond the lawyers' control if it were to give weight to the number of claims received when setting the fee. (*Id.* ¶¶ 62-65). Accordingly, the Court should rely upon the total amount available to the class here when determining the fee award.  In this case, the total amount available to the class ranges from a low of $29.9 million to a high of $73.6 million.[3]

> B. <u>The Requested Attorney Fee is Less than the 25% "Benchmark" Routinely Awarded in the Eleventh Circuit.</u>

> i. *Eleventh Circuit and nationwide case law provide that an appropriate percentage of the fund to be used when determining the attorneys' fee award is at least 25%.*

In the Eleventh Circuit, the typical common fund fee awarded is between 20% and 30% of the fund, and a 25% "bench mark" which "may be adjusted in accordance with the individual circumstances of each case," is often used. *Camden I,* 946 F.2d at 775. However, "federal district courts across the country have, in the class action settlement context, routinely awarded class counsel fees in excess of the 25% 'benchmark,' even in so-called 'mega-fund' cases. *Allapattah Servs., Inc. v. Exxon Corp.,* 454 F. Supp. 2d 1185, 1210 (S.D. Fla. 2006) (listing examples of fees ranging from 25.4% to 35.1% of multimillion dollar recoveries and finding appropriate percentage in that case was 31 and 1/3 percent); *see also Waters,* 190 F.3d 1291 (affirming award of 33 1/3 percent of fund); *Gevaerts v. TD Bank,* No. 14-20744, 2015 WL 6751061 (S.D. Fla. Nov. 5, 2015) (awarding counsel 30% of $20 million settlement fund); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1358-1359 (S.D. Fla. 2011) (awarding 30% of

---

[3] The total relief negotiated *for* the class is actually $10.5 million *higher* than these figures because it includes the claims administration fee of $1.5 million and the attorneys' fee of $9 million. *See* discussion *infra* at 7.

the recovery net of expenses as fees)[4]; *Pinto v. Princess Cruise Lines, Ltd.,* 513 F. Supp. 2d 1334 (S.D. Fla. 2007) (attorney fee award of 30% was reasonable); *In re: Terazosin Hydrochloride Antitrust Litigation*, 99-1317 (S.D. Fla. Apr 19, 2005) (Seitz, J.) (awarding fees of 33 1/3 % of settlement of over $30 million); *In re: Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement of $100 million); *Gutter v. E.I. Dupont De Nemours & Co*., No. 95-2152 (S.D. Fla. May 30, 2003) (awarding fees of 33 1/3 % of settlement of $77.5 million).

Plaintiff's request is further supported by guidance provided from fee agreements used by "real, sophisticated clients." (Ex. A ¶ 22). As Professor Silver explains in his Report, where clients are sophisticated and experienced and can freely choose their counsel, their agreements provide sound evidence of the value of attorney services in cases like this one, where class members cannot bargain for themselves. (*Id.* ¶¶ 22-26). In Professor Silver's experience and opinion having studied the issue, sophisticated clients often pay 25% - 40% of the recovery as fees in large commercial cases of many types. (*Id.* ¶ 27). This range is consistent among patent cases, pharma antitrust suits, and other commercial lawsuits. (*Id.* ¶¶ 28-49). Professor Silver discusses the details of many such cases in his report. (*Id.*)[5]

The requested fee award is also supported by empirical studies of fee awards in class actions. (*Id.* ¶¶ 50-57). Professor Silver discusses two such peer-reviewed studies in his Report.

---

[4] Professor Silver submitted reports in support of the requested attorney's fees in both *Allapattah* and *Checking Account Overdraft Litigation*. (Ex. A at ¶ 17, 18).

[5] For example, in three recent unrelated class actions Professor Silver studied where sophisticated business clients served as lead plaintiffs, *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation,* 991 F.Supp. 2d 437 (E.D.N.Y. 2014), *In re International Textile Group Merger Litigation,* C.A. No. 2009-cp-23-3346 (Ct. of Common Pleas, Greenville Cty., S.C. 2013), and *U.S. Foodservice, Inc. Pricing Litigation,* Case No. 3:07-md-1894 (AWT) (D. Ct. Dec. 9, 2014), the clients negotiated fees of one-third, 35 percent, and 40 percent respectively. (Ex. A at ¶¶ 45-48).

In the first, the author collected all class action settlements approved by federal judges in 2006 and 2007, a total of 668 reported and unreported decisions, and found that (i) awards ranging from 30% to 35% of the recovery constitute the most common category, and (ii) in the vast majority of cases, awards equaled or exceeded 25%. (*Id.* ¶¶ 51-52, discussing Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlement and Their Fee Awards,* 7 JOURNAL OF EMPIRICAL LEGAL STUDIES 811 (2010)).    In the second study, the authors examined common fund class actions that closed from 1993 to 2008, a total of 689 cases, and found that for cases with settlements in the $38.3 million to $69.6 million range, the mean fee award was 20.5% with a standard deviation of 10%. (*Id.* ¶ 53, discussing Theodore Eisenberg and Geoffrey P. Miller, *Attorney Fees and Expenses in Class Action Settlements: 1993-2008,* 7 JOURNAL OF EMPIRICAL LEGAL STUDIES 248 (2010)). This means that about two-thirds of the class cases in this size range had fee awards between 10.5% and 30.5%, and Plaintiff's fee request here falls squarely in the middle of that range. (*Id.*)

> ii.    *Plaintiff's requested award represents as little as 10.7% of the recovery and no more than 22.2%.*

Plaintiff's motion for approval of final settlement and the exhibits attached thereto comprehensively explain the relief afforded Class Members by the settlement.[6] In sum, the proposed settlement requires Taurus to provide three types of relief: an enhanced warranty, safety training, and cash payments. Under the enhanced warranty benefit, Class Members can return their Class Pistols to Taurus and have it repaired or replaced under the Enhanced Warranty. Because there is no repair currently available for the alleged Safety Defects, Class Members who submit their pistols under the Enhanced Warranty will receive a comparable new

---

[6] *See* Plaintiff's Motion for Final Approval of Class Action Settlement and Incorporated Memorandum of Law.

model pistol, all without cost to the Class Member.  Taurus will provide the new pistol with no

requirement that the owner prove the Safety Defects exist. The safety training program will

consist of materials made available to owners free of charge. The materials will also explain how

pistols should be stored, packed, and shipped to Taurus when cash payment or replacement is

desired.  The cash payments, which are available to class members who choose to send their

weapons back, will range from a high of $200 to, in all likelihood, a low of $150 per pistol,

depending on the number of guns that are returned. The total amount that Taurus must refund in

*cash* is limited to $30 million; however, this does not represent the full value of the settlement.

Class Counsel engaged Recon Research Corporation (RRC), an independent economic

consulting firm, to value the package of relief the proposed settlement makes available to the

class. On behalf of RRC, Dr. Andrew Safir submitted a report in which he describes in detail the

remedies Taurus has agreed to provide and concludes that "the total Settlement value is between

$29.9 million and $73.6 million." (Exhibit B, Safir Decl. ¶ 35). Dr. Safir's estimates *exclude* the

amount that the Defendants will pay in attorneys' fees as well as the claims administration

budget costs of $1.5 million.[7] Because those amounts also qualify as relief for the class in that

they extinguish the class' obligation to pay attorneys' fees and administration costs, they should

be included in the denominator when calculating Class Counsel's fee percentage.  (Ex. A ¶ 14);

*See also In re: Managed Care Litig.,* 2003 WL 22850070, at *6 (adding requested fee award to

---

[7]  The Order Granting Joint Motion for Preliminary Approval of Class Action Settlement,
Preliminarily Approving Class Settlement and Granting Settlement Class Certification, and
Setting Final Approval Hearing (ECF No. 133) provided that all costs of providing notice to the
Settlement Class, processing Claim Forms, making settlement payments, and otherwise
administering the settlement shall be paid "by the Taurus Companies" as provided in the
Settlement Agreement. (ECF No. 133 at ¶ 16). The Court further noted that those costs would be
paid "separate and apart from the benefits made available to Settlement Class Members under the
proposed settlement, and not from a 'common fund.'" (*Id.*) Jeanne Finegan confirmed in her
Declaration that those costs are $1.5 million. (*See* Exhibit D to Plaintiff's Motion for Final
Approval, Finegan Decl. at ¶ 8, *filed simultaneously herewith*).

total benefits given directly to the class to determine the "total settlement benefit"). With the $9 million and $1.5 million added to the figures provided by RRC, the value of the settlement ranges from a low of $40.4 million to a high of $84.1 million, assuming for the sake of analysis that the Court will award the entire $9 million as fees. (Ex. A ¶ 14.)

Plaintiff's request for $9 million in attorneys' fees and expenses therefore equals **22.2% of the $40.4 million recovery and 10.7% of the $84.1 million recovery**. Accordingly, even if the settlement value is ultimately at the very lowest of the expert-estimated range, Class Counsel would still be awarded less than the "benchmark" of 25% of the recovery, which percentage itself is frequently adjusted upward in similar cases.

    C.   The Requested Attorney Fee is Reasonable under the *Johnson* Factors.

Although the Eleventh Circuit is clear that the percentage of the fund approach is to be used in awarding fees in class settlement cases, it further advises that "the *Johnson* factors continue to be appropriately used in evaluating, setting, and reviewing percentage fee awards in common fund cases." *Camden I,* 946 F.2d at 775. Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; (12) awards in similar cases. *Id.* at n.3 (citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir.1974)). Application of the relevant *Johnson* factors confirms that Plaintiff's

fee request is reasonable. [8]

i. *The time, labor and skill required*

The excellent result achieved for the Class only came about because of Class Counsel's extensive efforts. As set forth in the accompanying Declaration of David Selby, Class Counsel and their staff have performed several thousand hours of hours of work and incurred over $400,000 in expenses to identify, investigate, prosecute, and settle the claims in this action. Class Counsel prepared 16 Notices of Deposition, deposed 3 separate Taurus 30(b)(6) representatives, and defended Plaintiff's deposition. They prepared and issued fifteen separate detailed FOIA requests and Rule 45 Subpoenas to laboratories and government agencies. They also prepared approximately 358 separate requests for production of documents that were specifically tailored to this litigation and these defendants. The Taurus defendants produced approximately 24,000 pages of documents which Class Counsel reviewed and utilized in their investigation and preparation for depositions, dispositive motions, and mediation.

In order to fully develop the liability theory, Class Counsel devoted significant time and expense working with three different qualified engineering and firearms experts in Florida, Massachusetts, and Oklahoma. The experts expended close to 500 hours testing and analyzing Taurus pistols. To facilitate their work, Class Counsel purchased dozens of Taurus exemplar class pistols for testing, developed testing protocols, designed and constructed testing equipment specifically for this case, and tested and analyzed the pistols.

Class Counsel spent considerable time and expenses in the travel and extensive preparation necessary for the successful mediation process. They conducted six in-person mediation sessions in Miami, Ft. Lauderdale, Atlanta, Birmingham, and Washington D.C., and

---

[8] The professional relationship factor is not particularly applicable to these circumstances.

engaged in many hours of additional telephone negotiations totaling more than 90 hours of mediation. As part of the mediation process and in an effort to assist with the complicated issues involving a Brazilian entity (Defendant Forjas Taurus, S.A.), Class Counsel hired and utilized a Portuguese-speaking lawyer and a Chartered Accountant with experience in international corporate restructurings and commercial business transactions.

In the months after the parties successfully mediated the case, Class Counsel prepared the Motion for Preliminary Approval of Class Action Settlement as well as the Proposed Final Order and Judgment, and appeared at a hearing regarding the terms of the settlement. In response to the Court's questions about the settlement Class Counsel subsequently prepared a modified proposed Order, which this Court entered July 30, 2015. (ECF No. 133).

In recent months, Class Counsel has spent a great deal of time working with media representatives to achieve maximum exposure of the settlement and its terms. They have also reviewed and responded to class member inquiries about the Settlement, and have prepared a response to the four objections filed. Class Counsel have also been busy working with the claims administrators on the details of notice to the class, and working with Dr. Safir and Professor Silver to prepare the motions for approval of the settlement and for attorneys' fees.

All of these efforts were necessary to achieve these results, and were possible because of Class Counsel's wide ranging skills and experience. Both Mr. Selby and Mr. Barrett concentrate their practices in class actions and consumer fraud cases, and have decades of experience in litigating complex class actions which they brought to bear on this case. Similarly, Mr. Wheeles has thirteen years of experience as plaintiff's counsel in numerous product liability and other personal injury actions, and has served as Plaintiff's Lead Counsel in multiple product liability actions across the United States, including several against Taurus International Manufacturing,

Inc. Mr. Wheeles has been actively litigating "drop-fire" cases against Taurus for the past eight years.  (Exhibit C, Selby Decl. at ¶ 20).

> ii.     *Unique and compelling time limitations in this case weigh in favor of the award*

The Plaintiff's primary goal in bringing this suit was to remove an allegedly dangerous product from the market.   Class Counsel rightfully perceived this litigation as one requiring their full attention, as well as requiring a swift resolution given the nature of the defects and the need to remove the pistols from circulation. The urgency of these unique and compelling time limitations, and the unusual degree of focus and devotion of time and resources to this case, necessarily meant that other work was precluded. Thus, not only would delay of this litigation put the Class Members' potential recoveries at risk, but also their safety and the safety of those around them.

> iii.     *The difficulty of the issues and undesirability of the case*

Class Counsel's work in this case involved numerous complex legal issues. There was substantial friction from a foreign defendant who resisted service and participation in discovery, issues which required substantial briefing and motion practice. (*See* motions and memoranda of law at ECF Nos. 30, 34, 35, 101, 104, 105). Class Counsel researched and briefed an opposition to a motion to dismiss that challenged nine legal theories in multiple jurisdictions. (*See* motion and memoranda of law at ECF Nos. 79, 82). In addition, the potential difficulty in collecting any contested judgment against a Brazilian Defendant (Forjas Taurus) presented tremendous legal hurdles. And with respect to class certification, Class Counsel faced substantial challenges on nearly every Rule 23 requirement, in addition to formidable choice of law issues. The difficulty and complexity of this case has been exacerbated by the fact Defendant Forjas Taurus is a

Brazilian entity and Plaintiff has had to deal with the numerous issues and defenses raised by foreign defendants like Forjas Taurus.

> iv.     The contingent nature of the fee, financial burden carried by Class Counsel, and preclusion of other work

The fact that Class Counsel will not receive a dime of payment until one year after the Effective Date of Settlement, and even then will only receive one-third of the award with the remaining two-thirds paid at subsequent yearlong intervals, must weigh heavily in favor of awarding the requested fee. The negotiated delayed payment schedule, which was necessary in order to achieve the Settlement, demonstrates Class Counsel's commitment to the interests of the Class.

Class Counsel represented Plaintiff and the class on a purely contingent basis and spent time on this case which could have been spent litigating other matters, which factors also weigh in favor of awarding the requested fee. *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1335 (S.D. Fla. 2001) ("A contingency fee arrangement often justifies an increase in the award of attorney's fees.") (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)); *In re Checking Account Overdraft Litig.*, 830 F.Supp. 2d at 1364-65 (same); *Terazosin, supra* at ¶ 21 (recognizing that contingency representation meant that counsel had worked for more than six years without compensation and that this justified an award of more than 25% of the fund); *Ressler v. Jacobson,* 149 F.R.D. 651, 656 (M.D. Fla. 1992) ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award.").

Relatedly, Class Counsel undertook this representation understanding the risk of receiving no compensation whatsoever, a factor which should not be ignored. *See Ressler,* 149 F.R.D. at 656 (noting this risk and stating that, "[i]n evaluating [the contingency] factor the

Court will not ignore the pecuniary loss suffered by plaintiff's counsel in other actions where counsel receive little or no fee.") Class Counsel indeed undertook this representation at a huge risk, and all of their work and expenses could have been for naught had Plaintiff lost this case at some juncture – either at the pleading stage, class certification, dispositive motions, or on appeal. There were many opportunities for this case to founder, and Class Counsel's willingness and ability to bear those risks weigh in favor of the requested award.

       *v.*      *The requested fee reflects the market rate in comparable complex class actions.*

Plaintiff is requesting a fee of $9 million, which represents **22.2% of the $40.4 million recovery and 10.7% of the $84.1 million recovery**. As described above in Section B, this range of potential percentages is below the market rate of recoveries in comparable complex class actions.

       *vi.*     *The result achieved for the class, and response by the class*

The settlement reached in this case is nothing short of extraordinary. As the Court has observed, Officer Carter and his team of lawyers negotiated a settlement that will provide relief that befits the serious nature of the claims. Class members who own certain Taurus pistols can return their pistols to Taurus and, because Taurus has no means of repairing the alleged defects at this time, receive a comparable new model, all without cost. Because of the exhaustive efforts of Officer Carter and Class Counsel, pistol owners need not undertake any scientific testing. And even more critically, pistol owners need not even demonstrate that their pistols have manifested the defects through an unintended discharge incident. Class Members can receive the Enhanced Warranty benefit no questions asked, without having to complete a claim form, and at any time, without regard to a claims period. The settlement also provides safety training, and allows class

members who prefer cash over a new pistol to return their pistol, again free of charge, and receive up to a $200 cash payment.

Further attesting to the strength of the settlement, there were no opt-outs and only four objections, and only two of the Objectors even mention the requested fee award. These four individuals represent .00042% of the 955,796 class members served. That this sizeable class has asserted so few objections supports the fee request. *See Pinto,* 513 F. Supp. 2d at 1343 ("A small number of objections indicates the support of the Class.")

**II.     A Service Award of $15,000 is Appropriate.**

Plaintiff further requests a service award for Officer Carter's work in the amount of $15,000, to be paid by Defendants. Defendants have agreed that they will not object to such an award so long as it does not exceed this amount.

Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Servs. Inc.,* 454 F. Supp. 2d at 1218. Accordingly, "there is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. Am. Suzuki Motor Corp*., 2010 WL 1628362, at *6. As Judge Rosenberg of this Court recently recognized, "[c]ourts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives." *Gevaerts, supra*, 2015 WL 6751061, at *9 (approving requested service awards of $10,000).

The factors for determining a service award include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation. *Id.* at *9 (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). Applying these factors, the requested award of $15,000 is reasonable.

14

First, Officer Carter has taken significant affirmative actions to protect the interests of the class. He has been an active and indispensable part of the initial investigation and then the litigation, and has made himself available to counsel as needed. Second, the excellent settlement achieved demonstrates that the class has benefited from the involvement of this committed class representative. Third, Officer Carter sat for a deposition in February 2015, has spent three days traveling, and has participated in meetings with Class Counsel.

For these reasons, Officer Carter's efforts and contributions to the success of this action should be compensated by an award of $15,000. *See Terazosin, supra* at ¶ 27 (awarding class representatives $75,000 in total for their service to the class).

## III.     Conclusion

Plaintiff's motion for attorneys' fees and costs of $9,000,000 and a service award for Officer Carter of $15,000 is supported by well-settled Eleventh Circuit law requiring an award of a percentage of the class settlement fund, as well as the *Johnson* factors which explore the work done here and the success of the settlement. For all the foregoing reasons, Plaintiff's motion should be granted.


Respectfully submitted, this 6th day of January, 2016.


/s/ *David L. Selby, II*
David L. Selby, II *(admitted pro hac vice)*
BAILEY & GLASSER, LLP
3000 Riverchase Galleria, Suite 905
Birmingham, Alabama 35244
Tel.:       (205) 988-9253
Email:      dselby@baileyglasser.com

John W. Barrett *(admitted pro hac vice)*
Eric B. Snyder *(admitted pro hac vice)*
Patricia M. Kipnis *(admitted pro hac vice)*
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, West Virginia  25301
Tel.:      (304) 345-6555
Email:      jbarrett@baileyglasser.com

Todd Wheeles *(admitted pro hac vice)*
MORRIS, HAYNES, HORNSBY & WHEELES
3500 Colonnade Parkway, Suite 100
Birmingham, AL 35243
Tel.:      (205) 324-4008
Email:      twheeles@mhhlaw.net
Angelo Marino, Jr. (FBN 151934)
ANGELO MARINO, JR., P.A.
645 S.E. 5th Terrace
Ft. Lauderdale, Florida  33301
Tel.:      (954) 765-0537
Email:      amjrpamail@aol.com

Carol Finklehoffe (FBN: 15903)
Thomas Scolaro (FBN: 178276)
Ira H. Leesfield (FBN: 140270)
LEESFIELD & PARTNERS, P.A.
2350 South Dixie Highway
Miami, Florida  33131
Tel.:      (305) 854-4900
Email:      finklehoffe@leesfield.com
             scolaro@leesfield.com
             leesfield@leesfield.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

  I certify that on January 6, 2016, a copy of the foregoing was served upon all counsel of record through filing this document with the Clerk using the Court's CM/ECF system.  I further certify that copies of the foregoing were served by U.S. Certified Mail to:

<table>
<tr><td>

Stephen D. Field, Esq.<br>
**STEPHEN D. FIELD, P.A.**<br>
102 E. 49th Street<br>
Hialeah, FL  33013<br>
Tel.:  (305) 698-3421<br>
Fax:  (305) 698-1930<br>
Email:  steve@field-law.com<br>
Attorney for Objector Pennington

</td><td>

Richard Louis Jordan<br>
2056 Walnut Creek Drive<br>
Flint, Michigan  48532<br>
<br>
Steven A. Glaviano<br>
609 W. William David Pkwy<br>
Suite 102<br>
Metairie, Louisiana  70005

</td></tr>
</table>

Troy Kenneth Scheffler
965 104th Ave. NW
Coon Rapids, Minnesota  55433


             /s/ *David L. Selby, II*
             David L. Selby, II

17