# EXHIBIT  B

Plaintiff's Motion for Attorneys' Fees, Costs and Service Award
and Integrated Memorandum of Law in Support

## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

CHRIS P. CARTER,

Individually and on behalf of all
others similarly situated,

*Plaintiffs*,

　　　　v.

FORJAS TAURUS S.A.,
TAURUS INTERNATIONAL
MANUFACTURING, INC., and
TAURUS HOLDINGS, INC.,

*Defendants*.

**Case No. 1: 13-cv-24583-PAS**

CLASS ACTION

### Declaration of Dr. Andrew Safir

**I, Dr. Andrew Safir**, declare as follows:

### Background

1.     1.     I am the President of Recon Research Corporation, an economic consulting firm that I founded in 1980.  I hold a Ph.D in Economics from Tufts University with a speciality field in econometrics.[1]  I also hold a Masters degree in Economics from Tufts University, and a BA degree in Psychology and Economics from the University of Colorado.

---

[1] "Econometrics" is a term used by my profession to describe the application, analysis, or construction of statistical techniques for quantitative evaluation of economic issues including those relating to the valuation of class action settlements.

2.      Prior to the founding of Recon Research, I held a variety of positions with the Federal and California governments.  In 1972, I was appointed as a staff member to the President's Council of Economic Advisers specializing in international trade policy, and in mid-1973 joined the White House Council on International Economic Policy as a professional member specializing in finance.  In 1974, I moved to the Department of Justice, where I served as the senior economic advisor to the Office of Justice Policy, Planning, and Research.  In late 1975, I was appointed as the Assistant Director of the Office of International Energy Policy at the U.S. Treasury.  I left this position in 1978 to join the Administration of Governor Edmund G. Brown, Jr., as the Chief Business Economist for the State of California.  However, I remained a special advisor to the U.S. General Accounting Office specializing in energy, international finance, and national security issues throughout much of the 1980s.

3.      As the President of Recon Research, I have had extensive experience in valuing warranties and other business service guarantees.  I also have experience in the economic requirements of class action litigation.  During my career, I have been actively involved in a number of class action suits.  I have given testimony by deposition in many of these proceedings, including on the value of class action settlements.  I have also filed declarations in support of class settlements in several of these cases.

4.      A list of my participation in court proceedings, arbitrations and regulatory hearings over the past four years is provided in Exhibit 1.  This Declaration is based upon my personal knowledge.  If called as a witness, I could competently testify to the following:

1                              **Background Regarding the Dispute**

2    5.     Forjas Taurus, S.A., Taurus International Manufacturing, Inc. and Taurus Holdings,

3           Inc. (collectively, "Taurus") design, manufacture and distribute firearms in the state

4           of Florida and throughout the United States and its territories.

5    6.     Plaintiffs contend that certain pistols (collectively "Class Pistols"), designed,

6           manufactured, and distributed by Taurus between the years of 1996 through 2013[2],

7           contained two defects (collectively "Safety Defects") that resulted in Class Pistols

8           unintentionally firing without the Pistols' trigger being pulled.

9    7.     Plaintiffs identify the first Safety Defect as the "drop-fire defect." This defect

10          manifests itself when a Class Pistol is dropped from a height from which the weapon

11          is normally operated and hits the floor with enough force to cause an unintended

12          discharge.

13   8.     Plaintiffs identify the second defect as the "false safety defect". This defect allows a

14          Class Pistol to unintentionally fire even when the manual safety lever is in the "on"

15          or "safe" position.

16   9.     Plaintiffs' contended that as a direct and proximate result of the defective Class

17          Pistols they were damaged in that the Safety Defects created an unreasonably

18          dangerous situation for a person who owned and/or possessed a Class Pistol and

---

[2]  According to Taurus, Class Pistols were not manufactured after 2013.

3

1      moreover, substantially reduced or eliminated completely, the value of the Class

2      Pistols to the Settlement Class.

3  10.    Although the Defendants in this matter deny the material factual allegations and legal

4      claims asserted by the Plaintiffs, Plaintiffs and Defendants have now reached a

5      settlement which provides for the creation of certain economic benefits to the

6      Settlement Class from the Defendants.

7  11.    The "Settlement Class" consists of "All Persons or entities of the United States,

8      Commonwealth of Puerto Rico, U.S. Virgin Islands, and Guam who own one or more

9      of the following Taurus-branded firearms on the date of preliminary approval: PT-111

10      Millennium, PT-132 Millennium; PT-138 Millennium: PT-140 Millennium: PT-145

11      Millennium: PT-745 Millennium; PT-609; PT-640; and PT-24/7."

12  12.    With the approval of this proposed settlement, the economic benefits provided to

13      the various members of the Settlement Class will include the following:

14    (A)  **Enhanced Warranty:**

15         All Settlement Class members will receive an Enhanced Warranty in

16         addition to the existing limited warranty already in effect. The Enhanced

17         Warranty will allow any owner of a Class Pistol to submit a warranty claim,

18         at any time, without proof of any defect or problems, and the Class Pistol

19         will be repaired or replaced with a new generation pistol. Taurus has agreed

20         to waive their minimum $35 labor charge and incur any shipping costs

21         realized when a Class Pistol is shipped to Taurus and when a new

22         replacement pistol is provided to a Class Member.  This Enhanced Warranty

23         is not subject to a time limitation or monetary cap, and shall apply for the

4

1            lifetime of the Class Pistol, for any owner, at any time (even outside of the

2            claims period).

3     (B)    **<u>Cash Payment:</u>**

4            In addition to the Enhanced Warranty, the proposed settlement provides the

5            option for Class Members to return a Class Pistol in exchange for a Cash

6            Payment. The proposed settlement provides the following schedule as an

7            outline for how individual Cash Payments will be calculated:

8          i.      if less than 10,000 Class Pistols are returned, the payment for each

9               returned Class Pistol shall be $200;

10         ii.     if 10,001 to 20,000 Class Pistols are returned, the payment for each

11              returned Class Pistol shall be $175;

12         iii.    if 20,001 to 200,000 Class Pistols are returned, the payment for each

13              returned Class Pistol shall be $150; and

14         iv.    if more than 200,000 Class Pistols are returned, the payment for each

15              returned Class Pistol shall be less than $150 and shall be equal to

16              $30 million divided by the number of Class pistols returned.

17         v.      Individual Cash Payments will be calculated using a weighted

18              average of (i) through (iv). The maximum liability for the cash

19              payments available to Settlement Class Members is capped at $30

20              million to satisfy all Valid Claims. The actual amount paid to

1          Settlement Class Members will depend upon the number of Class
2          Pistols returned as set forth above.

3                                    **Opinions To Be Provided**

4    13.    I have been requested by Class Counsel to review the economic terms and
5           conditions of the proposed settlement.  I was also asked to estimate the monetary
6           value of the proposed settlement to the Settlement Class members and determine if
7           this proposed settlement represents a reasonable outcome given the assumptions
8           provided by Counsel.

9    14.    A summary of my opinions is as follows:

10          (A)    The proposed settlement represents a monetary value that could be as high
11                 as approximately **$73.6 million**;[3] subject to variables which cannot be
12                 precisely predicted.  This also assumes the claims process works smoothly
13                 and actual and forecasted damage claims are in accordance with reasonable
14                 estimates.

15          (B)    The proposed settlement represents an economically reasonable outcome to
16                 Settlement Class members based on the estimated average damage inflicted
17                 on them caused by the alleged combined Safety Defects**.**

18

---

[3]  This monetary value does not take into consideration the value of Class Counsel's fees and expenses and Class Administration costs to be paid by Taurus and not by class members or deducted from any settlement funds.

1    (C)    The proposed settlement also represents an economically reasonable

2           outcome to Settlement Class members based on my review of the economic

3           terms and conditions of other class settlements regarding similar

4           allegations.


5                                    **Basis for Opinion**


6    <u>Estimating number of units for which a claim might be filed</u>:


7    15.    The first step in calculating the monetary value of the settlement is to estimate the

8           number of pistols in the class that would potentially qualify for the benefits under

9           the proposed settlement.  It is my understanding that both Safety Defects result

10          from a common design defect and not a manufacturing defect, and that all Class

11          Pistols are affected.  Therefore the Settlement Class would include all Class Pistols

12          designed, manufactured and distributed by Taurus between the years of 1996-

13          2013.  I understand the number of Class Pistols is 955,796.


14   16.    For settlement agreements in which claims are made, often the likelihood that a

15          claim is made is far less than 100%.  Sources show claims in consumer products

16          settlements range between 2% and 20%.[4]  Claim rates are affected by several

17          factors, including method of class notification, benefit type and value, and ease of

18          filing the claim.[5]

---

[4]   Janowicz, Tiffaney, "Class Action Perspectives: Anticipating Claims Filing Rates in Class Action Settlements," Federation of Defense & Corporate Counsel 2013 Winter Meeting, March 6, 2013.

[5]   Ibid.  See also Zola, Neil L., "Top Five Factors Affecting Participation in Claims-Made, Class Action (continued...)

1    17.    The parties implemented a court-approved notice plan that utilized direct notice
2            via publication targeted to reach at least 80% of the Settlement Class.[6]  Unpaid or
3            earned media – "coverage of a settlement by any newspaper, magazine, website,
4            radio, or television that was not purchased as a part of that settlement's media
5            notice campaign" – will increase claim rates.[7]  The settlement has had a
6            tremendous amount of unpaid or earned media coverage.[8]

7    18.    Another factor which affects claim rates is the benefit value of the settlement.
8            Benefits which have a higher value tend to have higher claim rate.  Both the Cash
9            Payment benefit and the Enhanced Warranty benefit in this settlement are
10           relatively high in value compared to the benefits received in most consumer
11           product settlements.

12   19.    In addition, the ease of filing a claim affects the claim rate.  In this settlement,
13           owners of a Class Pistol simply need only to return their Class Pistol to Taurus and
14           fill out a simple online form.  Taurus will provide information on safely shipping
15           the pistol.  There is no need to find or send proof of purchase, as in many other

---

[5]  (...continued)
Settlements," *The American Lawyer*, 2014.

[6]  Joint Motion and Supporting Memorandum for Preliminary Approval of Class Action Settlement, filed July 30, 2015, Exhibit F, p. 92.

[7]  Janowicz, Tiffaney, "Class Action Perspectives: Anticipating Claims Filing Rates in Class Action Settlements," Federation of Defense & Corporate Counsel 2013 Winter Meeting, March 6, 2013, p. 3-4.

[8]  These include: "Taurus Pistol Settlement Proposed in Class Action Lawsuit," from PR Newswire posted on www.officer.com, October 14, 2015; Terrill, Dennis, "Claims in Taurus Settlement to be Collected in August," Guns.com, July 31, 2015; England, James, "Massive Taurus Settlement Underway – As Many As 100,000 Semi-Auto Pistols Affected," Concealednation.org, July 30, 2015; TaurusArmed.net, http://www.taurusarmed.net/forums/millennium-pro-pistols/150097-taurus-settlement-video.html.

1      commercial product settlements.  There is no cost to the claimant, as the settlement

2      provides for free shipping.  To make shipping easier, Taurus also provides a

3      shipping label.

4    20.    In light of all of the above factors that would suggest a higher than average claim

5         rate, I assume that 10% - 25% of the entire Settlement Class will submit a claim.

6    21.    My understanding is that each Class Member may file a claim for either the

7         Enhanced Warranty or Cash Payment benefit, but not both.  A cash payment

8         generally attracts a higher claim rate, but a claim for a cash payment can only be

9         filed during the Claims Period.  The Enhanced Warranty benefit is available for the

10       life of the Class Pistol, and thus can be claimed even after the Claims Period has

11       ended for the life of the pistol.  The much longer period for filing a claim under the

12       Enhanced Warranty benefit makes it more even with the Cash Payment benefit in

13       terms of the number of expected claims filed.  I understand that calls received so

14       far by Claims Administration in this case indicate more interest in the Extended

15       Warranty benefit than the Cash Payment benefit.  Therefore, I further assume that

16       60% of Class Members will opt for the Enhanced Warranty benefit and 40% will

17       opt for the Cash Payment benefit.  Figure 1 displays this analysis graphically.

18

19

**Figure 1**



Calculating Value of Enhanced Warranty

22.   I understand that there is not currently a repair available for the alleged Safety
      Defects.  The current economic value of the Enhanced Warranty benefit therfore
      lies in the total value to a Class Member of sending a Class Pistol in and receiving
      a replacement.   This consists of the value of exchanging a Class Pistol for a new
      replacement pistol, with no required proof of defect, plus the value of the covered
      shipping of both the Class Pistol and the replacement pistol.  Taurus also offered a
      waiver of the minimum $35 labor charge.  However, I do not include it in the
      current economic value of the Enhanced Warranty, as I understand this charge
      would apply only to repairs and not to replacements.

23.   The value provided to the Settlement Class from exchanging the defective class
      pistol for a replacement pistol can be estimated by the difference between (a) the
      price of a Taurus pistol found to be most similar to and the most likely replacement

1       for the Class Pistol and (b) the current estimated price of a Class Pistol.  This was

2       done in several steps.

3   24.   The first step was to calculate an estimate of the recent price for each type of Class

4       Pistol.  I took the average of the most recent prices for each type of Class Pistols as

5       listed on Gunauction.com.[9]  Because these transactions represent actual sales, they

6       are a good measure of the current values of the Class Pistols.[10]  As most of the

7       auctions occurred after the filing of this Class Action case, at least some of the

8       prices may reflect knowledge of the Safety Defects in the Class Pistols.  However,

9       the Safety Defects are becoming more widely known as reports and videos spread

10      across various media.  Thus, it is likely that the value of the Class Pistols will

11      decrease as the Safety Defects become more widely known.  I decrease the used

12      value of the Class Pistols by 10% to account for this.  Moreover, the sales

13      transactions we used do not take into account whether the buyer and seller are

14      actually aware of the Safety Defects or the Class Action.  The prices which would

15      reflect a purchase transaction in which buyer and seller are both aware of the

16      Safety Defects would most likely be much lower.

---

[9]  I limited the search to auctions with a non-zero number of bids taking place since the Class Action suit was filed on September 22, 2014.  A separate average was calculated for each Class Pistol model.  It should be noted that both Gander Mountain and Bass Pro Shop, two very large and well known gun retailers, no longer stock any of the Class Pistols in their online used gun departments.  This indicates that the defects in the Class Pistols are known and that auction prices should reflect this.  For three models, PT 132 Millennium, PT 138 Millennium and PT640, the most recent auction listing was prior to the filing of this Class Action. For these models, the most recent auction price (from February 2013, August 2013 and July 2014, respectively) was used.  As these auctions occurred prior to the suit, it is very likely that the prices do not reflect knowledge of the Class Defects and are higher than what would have resulted with the Class Defects known, resulting in a lower value of replacement.

[10]  The Blue Book of Gun Values is a commonly used resource for pricing firearms.  According to a video on the bluebookofgunvalues.com website, the estimates are based on national retail sales.  The auctions represent actual retail sales and thus are a more direct measure of gun value.

11

| | A | B | C | D=C*(1-10%) | E | F | G=F-D |
|---|---|---|---|---|---|---|---|
| | | Number Produced | Used Price[3] | Adjusted Used Price | Most Similar/Likely Replacement[1,2] | MSRP[1] | Replacement Value |
| | Class Pistol | | | | | | |
| | PT111 Millennium | 286,190 | $174 | $157 | Taurus 111 G2SS Pistol | $317 | $160 |
| | PT132 Millennium | 4,137 | $271 | $244 | Taurus 140G2SS Pistol | $317 | $73 |
| | PT138 Millennium | 20,520 | $227 | $204 | Taurus 140G2SS Pistol | $317 | $112 |
| | PT 140 Millennium | 159,095 | $196 | $176 | Taurus 140G2SS Pistol | $317 | $140 |
| | PT145 Millennium | 178,622 | $242 | $218 | PT24/7 G2 45acp DA/SA DS STD Pistol | $543 | $326 |
| | PT745 Millennium | 21,365 | $181 | $163 | PT24/7 G2 45acp DA/SA DS STD Pistol | $543 | $381 |
| | PT609 Pro | 21,037 | $216 | $194 | PT24/7 G2 9mm Comp DA/SA DS Pistol | $543 | $349 |
| | PT640 Pro | 5,378 | $181 | $163 | PT24/7 G2 40Cal Comp DA/SA DS Pistol | $543 | $381 |
| | PT24/7 | 259,452 | $267 | $240 | PT24/7 G2 45acp DA/SA DS STD Pistol | $543 | $303 |
| | | 955,796 | | | | | |

**Table 1 Replacement Value Calculation**

**Source 1: Taurus website**
**Source 2: Genitron.com**
**Source 3: Gunauction.com**

**Weighted Average Replacement Value:** $235

1   25.   For each type of Class Pistol, I subtracted the adjusted average auction price from

2          the price of the most likely new Taurus replacement for that pistol type.[11]  This

3          gives an estimated value of replacement for each type of Class Pistol.  I then took

4          the weighted average of this across all Class Pistol types.  The resulting weighted

5          average value to a Claimant of receiving a replacement pistol in exchange for a

6          Class Pistol is $235.  Table 1 shows the details of this calculation.

7   26.   Multiplying this weighted average value of replacement by the current probability

8          that a Class Pistol will need to be replaced (100%) and the number of valid claims

9          expected gives a total current value to the Settlement Class for replacement under

10         the Enhanced Warranty.  This value is between $13.5 million and $33.7 million.

---

[11]  Using information from the Taurus website.

12

1  27.   In addition to replacing Class Pistols, Taurus will cover the cost of shipping the
2        Class Pistol to Taurus and shipping the replacement pistol to the Claimant.  Taurus
3        requires that Class Pistols be shipped via FedEx.  FedEx requires that all guns be
4        shipped "Express Standard Overnight."  Table 2 shows the cost of shipping a
5        package Express Standard Overnight to each Capitol City and territory covered in
6        the settlement.

**Table 2 - Fed Ex Rates for Shipping Guns**

| Capitol City | Zip | Rate | Capitol City | Zip | Rate |
|---|---|---|---|---|---|
| Montgomery | 36001 | $57.67 | Lincoln | 68501 | $66.81 |
| Juneau | 99801 | $46.16 | Carson City | 89701 | $73.23 |
| Phoenix | 85001 | $73.23 | Concord | 03303 | $66.81 |
| Little Rock | 72201 | $60.75 | Trenton | 08608 | $66.81 |
| Sacramento | 94203 | $73.23 | Santa Fe | 87501 | $69.28 |
| Denver | 80201 | $69.28 | Albany | 12201 | $66.81 |
| Hartford | 06101 | $66.81 | Raleigh | 27601 | $60.75 |
| Dover | 19901 | $60.75 | Bismarck | 58501 | $73.23 |
| Washington | 20001 | $60.75 | Columbus | 43201 | $60.75 |
| Tallahassee | 32300 | $57.67 | Oklahoma City | 73101 | $66.81 |
| Atlanta | 30060 | $57.67 | Salem | 97301 | $73.23 |
| Honolulu | 96801 | $53.76 | Harrisburg | 17101 | $60.75 |
| Boise | 83701 | $73.23 | Providence | 02901 | $66.81 |
| Springfield | 62701 | $66.81 | Columbia | 29201 | $57.67 |
| Indianapolis | 46201 | $66.81 | Pierre | 57501 | $69.28 |
| Des Moines | 50301 | $66.81 | Nashville | 37201 | $60.75 |
| Topeka | 66601 | $66.81 | Austin | 78701 | $66.81 |
| Frankfort | 40601 | $60.75 | Salt Lake City | 84101 | $73.23 |
| Baton Rouge | 70821 | $60.75 | Montpelier | 05601 | $66.81 |
| Augusta | 04330 | $66.81 | Richmond | 23173 | $60.75 |
| Annapolis | 21401 | $60.75 | Olympia | 98501 | $73.23 |
| Boston | 02108 | $66.81 | Charleston | 25301 | $60.75 |
| Lansing | 48901 | $66.81 | Madison | 53701 | $66.81 |
| Saint Paul | 55101 | $69.28 | Cheyenne | 82001 | $69.28 |
| Jackson | 39200 | $60.75 | Hagåtña, Guam | 96910 | $80.86 |
| Jefferson City | 65101 | $66.81 | San Juan, PR | 00901 | $50.17 |
| Helena | 59601 | $73.23 | Charlotte Amalie, USVI | 00801 | $42.47 |

**Average Shipping Rate over all Capitol Cities:**       **$64.85**

1    28.    I assume that all Class Pistols are equally dispersed throughout the United States.

2    This gives an estimate of the average consumer's cost of shipping for one direction

3    of $64.85.  Multiplying this by the number of expected claims gives a total value

4    from Taurus covering shipping of between $7.4 million and $18.6 million.

5    29.    Based on the above assumptions and calculations, I estimate that the current value

6    from the Enhanced Warranty benefit provided to the Settlement Class is between

7    $20.9 million and $52.3 million.  Table 3 breaks out the steps in this calculation.

| Table 3 - Value of Enhanced Warranty Benefit | | |
|---|---|---|
| | **Max Value** | **Min Value** |
| # of expected Enhanced Warranty claims | 143,369 | 57,348 |
| **Safety Defects: Drop Defect & False Safety Defect - Replacement of Pistols** | | |
| Adjusted weighted avg. cost to replace | $235 | $235 |
| Prob(Defect) | 100% | 100% |
| Value from replacement of Class Pistols | $33,691,809 | $13,476,724 |
| **Cost of Shipping** | | |
| Avg. cost to ship ($64.85x2) | $129.70 | $129.70 |
| Value from Shipping | $18,595,011 | $7,438,004 |
| **Total Value of Enhanced Warranty benefit** | $52,286,820 | $20,914,728 |

8    <u>Calculating the Value of the Cash Payment option</u>

9    30.    The Cash Payment gives members of the Settlement Class the option to return their

10    pistol in return for cash according to the following schedule:

11    i.    if less than 10,000 Class Pistols are returned, the payment for each

12    returned Class Pistol shall be $200;

14

1              ii.      if 10,001 to 20,000 Class Pistols are returned, the payment for each
2                       returned Class Pistol shall be $175;

3              iii.     if 20,001 to 200,000 Class Pistols are returned, the payment for each
4                       returned Class Pistol shall be $150; and

5              iv.      if more than 200,000 Class Pistols are returned, the payment for each
6                       returned Class Pistol shall be less than $150 and shall be equal to
7                       $30 million divided by the number of Class pistols returned.

8     31.    The benefit will be paid on a weighted average so that all Class Pistols submitted
9            will be paid the same value.  The Cash Payment will have a monetary cap of $30
10           million dollars.

11    32.    The number of expected Cash Payment claims filed is between 38,232 and 95,580.
12           The Cash Payment is a weighted average calculated as follows:  The first 10,000
13           claimants are multiplied by $200 under option i, above.  The next 10,000 are
14           multiplied by $175 under option ii.  The next claimants up to 180,000 are
15           multiplied by $150 under option iii.  Then the sum of these products is divided by
16           the total number of claimants, producing a weighted average.  That average is the
17           payment that all claimants will actually receive.  The equation for the minimum
18           number of valid Cash Payment claim filings is:  ((10,000 x $200) + ((20,000 -
19           10,000) x $175) + ((38,232 - 20,000) x $150) )/ 38,232 = $170.  The resulting
20           payment for the maximum number of valid Cash Payment claim filings is $158.
21           Thus, I expect that each claimant who returns a Class Pistol for Cash Payment will

15

1    receive a payment of  between $158 and $170.  Expected total payments will be

2    between $6.5 million and $15.1 million.

3    33.    In addition, Taurus will cover the cost of shipping the Class Pistol to Taurus.  As

4    calculated above in Table 2 for the Enhanced Warranty benefit, the consumer's

5    cost of shipping for one direction is estimated to cost on average $64.85.  Again, I

6    assume that all Class Pistols are equally dispersed throughout the United States.

7    Multiplying $64.85 by the number of expected claims gives a total value from

8    Taurus covering shipping of between $2.5 million and $6.2 million.,

9    34.    Based on the above assumptions and calculations, I estimate that the value from

10    the Cash Payment benefit provided to the Settlement Class is between $9.0 million

11    and $21.3 million.  Table 4 breaks out the steps in this calculation.

| Table 4 - Value of Cash Payment Benefit | | |
|---|---|---|
| | **Max Value** | **Min Value** |
| # of expected Cash Payment claims | 95,580 | 38,232 |
| **Cash Payment** | | |
| Calculated individual payment | $158 | $170 |
| Value from Cash Payment | $15,101,577 | $6,499,413 |
| **Cost of Shipping** | | |
| Avg. cost to ship ($64.85) | $64.85 | $64.85 |
| Value from Shipping | $6,198,337 | $2,479,335 |
| **Total Value of Cash Payment** | $21,299,914 | $8,978,748 |

12

16

1  35.   The total value of the Settlement is the sum of the value of the Enhanced Warranty

2        benefit and the value of the Cash Payment benefit.[12]  Thus the total Settlement

3        value is between $29.9 million and $73.6 million.

| Table 5 - Total Settlement Value | | |
|---|---|---|
| | **Max Value** | **Min Value** |
| Value from Enhanced Warranty benefit | $52,286,820 | $20,914,728 |
| Value from Cash Payment benefit | $21,299,914 | $8,978,748 |
| Total Value of Settlement | $73,586,734 | $29,893,476 |

4  Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true

5  and correct to the best of my knowledge, information, and belief.

6  Executed on January 6, 2016 in Los Angeles, California.

7

8  _____

9                    Dr. Andrew Safir

---

[12] There is some additional value that the Safety Training videos provide.  A quick online search shows that there are a growing number of videos and discussions about the Class Pistols and their safety issues.  Thus, the additional value of the Taurus-provided videos over and above what is publicly available is unclear and changing, though positive.

17

1      **Exhibit 1**

2      **Testimony or Depositions within the Past Four Years**

3      A list of my testimony experience in deposition, trial or before regulatory bodies since
4      January 2012 is provided below:

5      (A)      Depositions Given as an Expert Witness:

6      *Public Utilities Commission of the State of California (Complainant) v Sellers of Long-term*
7      *Contracts to the California Department of Water Resources (Respondents)* and *California*
8      *Electricity Oversight Board Complainant) v Sellers of Energy and Capacity under Long-term*
9      *Contracts with the California Department of Water Resources (Respondents)*, FERC Docket
10     Nos. EL02-60-007 and EL02-62-006 (Consolidated), Oct. 30, 2015.

11     *Tang Energy Group, Ltd., Soaring Wind Energy, LLC et al. v. AVIC International USA, Inc.*
12     *et al.*, Arbitration No. 01-14-0001-4150; American Arbitration Association, July 29, 2015.

13     *Rockies Express Pipeline LLC v. United States Department of the Interior*, Case No.
14     1821, United States Civilian Board of Contract Appeals, March 30, 2015.

15     *Clemmy's, LLC v. Nestle USA, Inc. and Nestle Dreyer's Ice Cream Company*, Case No:
16     BC500811, Superior Court of the State of California for the County of Los Angeles,
17     February 2, 2015 and May 5, 2015.

18     *Hermosa on Metropole, LLC,  v. City of Avalon, et al.*, United States District Court for
19     the Central District of California, Case No: CV13-02439-ABC (FFMx), June 4, 2014.

20     *Aidan Foley and Double Eagle, Inc., v. Elliot Aintabi, Jason Aintabi, Jesta Digital LLC,*
21     *et al.*, United States District Court for the Central District of California, Western
22     Division, Case No: CV13-3691-DSF (Ssx), March 18, 2014.

18

1   *Rapid Rack Industries, Inc. (Plaintiff) v. China Export & Credit Corp. and Zhejian*
2   *Jiaxing Zhong DA Group Co. (Defendants);* Case No. CV11-07785 SJO (MRW), United
3   States District Court, Central District of California, August 20, 2013.


4   *Comerica Bank (Plaintiff) v University Parc et al. (Cross Complainant)*, Case No: RIC
5   537850, Superior Court for the State of California for the County of Riverside, July 19,
6   2012.


7   *Southern Chemical Corporation v. Celanese Ltd*, District Court of Harris County, Texas,
8   190th Judicial District, Cause No. 2007-25490, April 26, 2012.


9   *Hispano USA, LLC v Azteca Milling, LP and Gruma Corporation*, United States District
10  Court of Bexar County, Texas, 288th Judicial District, Cause No: 2011-CI-01313, March
11  23, 2012.


12  *D'Andrea Brothers LLC v. The United States*, United States District Court of Federal
13  Claims, Case No: 08-286C, January 24, 2012.



14          (B)     Expert Witness Testimony at Trial and Arbitration:


15  *In the Matter of the Arbitration Between BTU Solutions Group, LLC, Individually and*
16  *Derivatively on Behalf of Kemah Ventures, LLC, and Southport Investments, LP, Kemah*
17  *Ventures, LLC, Xtreme Salvage, LLC, David J. Houston, Eric S. Schaeffer and Tyson Voelkel*
18  Before Gary McGowan, Arbitrator, November 14, 2014.


19  *Rapid Rack Industries, Inc. (Plaintiff) v. China Export & Credit Corp. and Zhejian Jiaxing*
20  *Zhong DISTRIBUTION AGREEMENT Group Co. (Defendants);* Case No. CV11-07785 SJO
21  (MRW), United States District Court, Central District of California, September 17, 2013.


22  *D'Andrea Brothers LLC v. The United States*, United States District Court of Federal Claims,
23  Case No: 08-286C, October 23, 2012.

1    *Southern Chemical Corporation v. Celanese Ltd*, District Court of Harris County, Texas,
2    190th Judicial District, Cause No. 2007-25490, July 27, 31, 2012.


3            (C)      Testimony before Regulatory Bodies:


4    *Supplemental Answering Testimony of Dr. Andrew Safir on Behalf of Shell Energy North*
5    *America (US), L.P.* before the FERC regarding the request by the California Public Utilities
6    Commission and California Electricity Oversight Board to have long term power contracts
7    abrogated as unjust and unreasonable, (EL02-60-007, EL02-62-006, Consolidated), July 21,
8    2015.


9    *Declaration of Dr. Andrew Safir regarding the Report of Keith A. Reutter, Ph.D. Addressing*
10   *the Analysis of Recon Research Corporation*, before the FERC regarding Tres Palacios Gas
11   Storage, LLC's application to abandon surplus storage capacity, Docket No. CP14-27-000,
12   February 7, 2014.


13   *Economic Implications of Tres Palacios Gas Storage Request for Redefinition of Working*
14   *Gas Capacity in Project Facilities*; Report by Dr. Andrew Safir and Recon Research
15   Corporation submitted to the FERC regarding Tres Palacios Gas Storage, LLC's application
16   to abandon surplus storage capacity, Docket No. CP14-27-000, January 7, 2014.


17   *Prepared Evidence of Dr. Andrew Safir on Behalf of the Industrial Customers Group* before
18   the British Columbia Utility Commission, Generic Cost of Capital Proceeding, Stage 2,
19   B.C.U.C. Hearing Order G-77-13, October 1, 2013.


20   *Oral Testimony of Dr. Andrew Safir on Behalf of the Industrial Customers Group* before the
21   British Columbia Utility Commission, Generic Cost of Capital Proceeding, B.C.U.C. Hearing
22   Order G-72-12, December 19, 2012.


23   *Prepared Evidence of Dr. Andrew Safir on Behalf of the Industrial Customers Group* before
24   the British Columbia Utility Commission, Generic Cost of Capital Proceeding, B.C.U.C.
25   Hearing Order G-72-12, November 5, 2012.

1   *Oral Testimony of Dr. Andrew Safir on Behalf of the Association of Power Producers of*
2   *Ontario* before the National Energy Board in the Matter of an Application for Approval of
3   Restructuring and Mainline Final Tolls for 2012 and 2013, September 14, October 3, 4, 2012
4   (RH-003-2011).

5   *Updated Reply Evidence of Dr. Andrew Safir on Behalf of the Association of Power*
6   *Producers of Ontario* before the National Energy Board in the Matter of an Application for
7   Approval of Restructuring and Mainline Final Tolls for 2012 and 2013, August 31, 2012
8   (RH-003-2011).

9    *Written Reply Evidence of Dr. Andrew Safir on Behalf of the Association of Power Producers*
10   *of Ontario* before the National Energy Board in the Matter of an Application for Approval
11   of Restructuring and Mainline Final Tolls for 2012 and 2013, May 11, 2012 (RH-003-2011).

12   *Written Evidence of Dr. Andrew Safir on Behalf of the Association of Power Producers of*
13   *Ontario* before the National Energy Board in the Matter of an Application for Approval of
14   Restructuring and Mainline Final Tolls for 2012 and 2013, March 9, 2012 (RH-003-2011).

15   *Oral Testimony of Dr. Andrew Safir on Behalf of Indicated Shippers*, before the FERC
16   regarding a rate proceeding for Enbridge Pipelines (Southern Lights) LLC, January 11, 2012,
17   (IS10-399-000 and IS11-146-000).