IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CHRIS P. CARTER,
Individually and on behalf of all
others similarly situated,

     *Plaintiffs*,

v.

FORJAS TAURUS S.A.,
TAURUS INTERNATIONAL
MANUFACTURING, INC., and
TAURUS HOLDINGS, INC.,

     *Defendants*.

Case No. 1:13-cv-24583-PAS

**CLASS ACTION**

**JOINT RESPONSE IN OPPOSITION
TO OBJECTIONS TO CLASS SETTLEMENT**

## TABLE OF CONTENTS

Argument Summary ........................................................................................................ 1

Response to Objections .................................................................................................. 2

   A.  Objector Glaviano. ........................................................................................... 2

       1.  Mr. Glaviano's criticisms of the settlement do not consider the *Bennett* factors. ........ 2

       2.  Taurus is not required to admit the allegations in the complaint. ................................. 5

       3.  The settlement class was properly certified. ................................................................ 7

       4.  The notice campaign satisfied due process requirements. ........................................... 8

       5.  Mr. Glaviano's criticisms of the Enhanced Warranty misconstrue its benefits.......... 10

       6.  Mr. Glaviano's remaining objections have no merit. ................................................. 11

   B.  Objector Pennington ...................................................................................... 12

       1.  Pennington's objections ignore the plain language of the release. ............................. 13

       2.  Claim form/claims period. ....................................................................................... 15

       3.  Class Counsel's requested fee is reasonable and falls within well-established Eleventh Circuit guidelines.................................................................................... 16

       4.  Objector Pennington does not show how the settlement is unfair, unreasonable, or inadequate. ............................................................................................................. 19

   C.  Objector Scheffler ......................................................................................... 19

   D.  Objector Jordan ............................................................................................. 20

Conclusion .................................................................................................................. 20

TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Apple iPhone 4 Prods. Liab. Litig.*,
  10-MD-2188, 2012 WL 3283432 (N.D. Cal. 2012) .................................................3

*Appleyard v. Wallace*,
  754 F.2d 955 (11th Cir. 1985) .....................................................................7

*Behrens v. Wometco Enters., Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988), *aff'd*, 899 F. 2d 21 (11th Cir. 1990) ....................2

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) ...............................................................1, 2, 6

*Braynen v. Nationstar Mortgage, LLC*,
  2015 WL 6872519 (S.D. Fla. 2015) ....................................................................5

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ...............................................................16, 18

*In re Checking Account Overdraft Litig.*,
  830 F. Supp. 2d 1330 (S.D. Fla. 2011) ....................................................6, 13

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d at 221 ..............................................................................................14

*David v. Am. Suzuki Motor Corp.*,
  No. 08-CV-22278, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010) ...........................17

*Francisco Rene Marty et al. v. Anheuser-Busch Companies, LLC*,
  No. 13-cv-23656-JJO ....................................................................................13

*Fresco v. Auto Data Direct, Inc.*,
  No. 03-61063, 2007 WL 2330895 (S.D. Fla. May 14, 2007) ..................................8

*Gevaerts v. TD Bank*,
  No. 14-20744, 2015 WL 6751061 (S.D. Fla. Nov. 5, 2015) ..................................18

*Greco v. Ginn Dev. Co., LLC*,
  No. 14-11443, 2015 WL 7755673 (11th Cir. Dec. 2, 2015)...............................7, 14

*Handschu v. Special Servs. Div.*,
  605 F. Supp. 1384 (S.D. N.Y. 1985)...................................................................6

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...........................................................................5

*Henderson v. Volvo Cars of N. Am.*,
  No. 09-4146, 2013 WL 1192479 (D. N.J. Mar. 22, 2013) ......................................2

*Hines v. Widnall*,
  334 F.3d 1253 (11th Cir. 2003) ........................................................................7

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
  MDL No. 09–md–2087, 2013 U.S. Dist. LEXIS 133413, 2013 WL 5275618
  (S.D. Cal. Sept. 17, 2013) ..............................................................................13

*Johnson v. Georgia Highway Express, Inc.*,
  488 F.2d 714 (5th Cir. 1974) ..........................................................................18

*Lee v. Ocwen Loan Servicing, LLC*,
  No. 14-cv-60649, 2015 WL 5449813 (S.D. Fla. Sept. 14, 2015) ...........................13

*Mangone v. First USA Bank*,
  206 F.R.D. 222 (S.D. Ill. 2001) .........................................................................5

*Matsushita Elec. Indus. Co. v. Epstein*,
  516 U.S. 367, 116 S. Ct. 873 (1996)..................................................................15

*Nwabueze v. AT&T Inc.*,
  No. 09-01529, 2013 WL 6199596 (N.D. Cal. Nov. 27, 2013) .................................2

*Olden v. LaFarge Corp*,
  472 F. Supp. 2d 922 (E.D. Mich. 2007)..............................................................12

*Perez v. Asurian Corp.*,
  501 F.Supp.2d 1360 (S.D. Fla. 2007) (Seitz, J.) ....................................................3

*Poertner v. Gillette Co.*,
  618 F. App'x 624 (11th Cir. July 16, 2015) (unpublished) ......................................8

*QSGI, Inc. v. IBM Global Financing*,
  No. 11-80880, 2012 WL 1150402 (S.D. Fla. Mar. 14, 2012)....................................3

*Rollins, Inc. v. Butland*,
  951 So.2d 860 (Fla. 2d DCA 2006) .....................................................................3

*Rosen v. J.M. Auto Inc.*,
  No. 07-61234, 2008 WL 9901501 (S.D. Fla. Mar. 6, 2008).....................................3

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
  297 F.R.D. 683 (S.D. Fla. 2014)...................................................................8, 17

*In re: Terazosin Hydrochloride Antitrust Litig.*,
No. 99-1317, ECF No. 1557 .....................................................................................18

*Thomas v. Blue Cross and Blue Shield Ass'n*,
333 F. App'x. 414 (11th Cir. 2009) .........................................................................15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005)........................................................................................14

*Waters v. Int'l Precious Metals Corp.*,
190 F.3d 1291 (11th Cir. 1999) ................................................................................17

**Statutes**

18 U.S.C. § 926..................................................................................................................8

**Other Authorities**

"GunBroker.com Top 5 Best Sellers," *available at*
*http://www.gunbroker.com/Content/Top5 /2015-08-GunBroker-Top-5-*
*Guns.html* ...................................................................................................................4

"NRA Gun of the Week: Taurus Millennium G2 Pistol," *available at*
*http://www.americanrifleman.org/articles/2015 /10/24/nra-gun-of-the-week-*
*taurus-millennium-g2-pistol/* ....................................................................................4

Fed. R. Civ. P. 23(b)(3)(D) ...............................................................................................8

ARGUMENT SUMMARY

On July 30, 2015, the Court preliminarily certified a settlement class comprised of the owners of nearly one million Class Pistols, and directed class notice. After notice, not a single class member opted out of the settlement. No state Attorney General or federal agency, nor any consumer, trade, or public interest organization has objected to the settlement.

Objections were received from four persons — Terry Pennington (ECF No. 141), Troy Kenneth Scheffler (ECF No. 137), Richard Jordan (ECF No. 142), and Steven A. Glaviano (ECF No. 136). None of the objectors have commenced litigation against the Taurus Defendants on claims related to the settlement, and none have proposed an alternative likely to succeed on behalf of a class, or even on their own behalves. Nor do any of the objectors (including the one represented by counsel, Pennington) even mention, much less analyze, Eleventh Circuit law that requires a court reviewing a proposed class action settlement to evaluate its fairness in view of the likelihood of success at trial, the range of possible recovery, the expense and duration of litigation, and other reasonableness considerations. *See Bennett v. Behring Corp.*, 737 F.2d 982, 985 (11th Cir. 1984) (listing the six factors).

Rather, the objections, each of which are addressed below, are based on inaccurate and unsupported statements and assumptions, and appear rooted in the false belief that the objectors could cut a better deal – a belief apparently not shared by nearly one million other settlement class members, none of whom opted out.

**RESPONSE TO OBJECTIONS**

### A. <u>Objector Glaviano.</u>

#### 1. Mr. Glaviano's criticisms of the settlement do not consider the *Bennett* factors.

Mr. Glaviano makes a litany of unsupported and inaccurate assertions in criticizing the settlement. He claims that Taurus's brand-new, G2 pistols are subpar replacements for the allegedly defective Class Pistols. He also takes issue with the calculations underlying the cash payment schedule, and asserts that settlement class members should be compensated for "out of pocket" expenses such as the cost of custom holsters, additional magazines, after-market accessories, and ammunition.

The problem with these complaints is that they are lodged without regard for the legal claims at issue, the range of possible recoveries, or the risks and burdens associated with continued litigation — i.e., the *Bennett* factors by which the Court must judge the fairness of the settlement. As a result, Mr. Glaviano fails to recognize that a reasonable recovery through a class action settlement need not be the perfect recovery, but instead by definition is mitigated by the existence of valid defenses, litigation risk, and the expense and delay of further litigation. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F. 2d 21 (11th Cir. 1990) (noting that "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair and inadequate … A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery[.]"); *Nwabueze v. AT&T Inc.*, No. 09-01529, 2013 WL 6199596, at *8 (N.D. Cal. Nov. 27, 2013) (holding "[t]hat a settlement could potentially have reached a more favorable result for certain individuals in the class does not demonstrate that the agreed-upon settlement is not fair, adequate and reasonable."); *Henderson v. Volvo Cars of N. Am.*, No. 09-

2

4146, 2013 WL 1192479, at *9 (D. N.J. Mar. 22, 2013) (collecting cases rejecting objections that merely complained about the lack of full relief and holding that "[o]bjections based solely on the amount of the award lack merit."); *In re Apple iPhone 4 Prods. Liab. Litig*., 10-MD-2188, 2012 WL 3283432, at *2 (N.D. Cal. 2012) ("[O]bjections seeking a 'better' result are not sufficient to overturn a settlement agreement.").

Mr. Glaviano's challenges to the settlement relief amount to nothing more than a desire for "a better deal." This is not a basis for a valid objection to a proposed settlement. *Perez v. Asurian Corp.*, 501 F.Supp.2d 1360, 1383 (S.D. Fla. 2007) (Seitz, J.). Nor is the "better deal" Mr. Glaviano wants a legal possibility. While he believes he should be compensated for his Class Pistol accessories (such as his holster and spare magazines), consequential damages are simply not available for the settlement class members' primary claims asserted under the Florida Unfair and Deceptive Trade Practices Act. *See Rosen v. J.M. Auto Inc*., No. 07-61234, 2008 WL 9901501, at *5 (S.D. Fla. Mar. 6, 2008) (quoting *Collins v. DaimlerChrysler Corp*., 894 So.2d 988, 990 (Fla. 5th DCA 2004)) (holding that "[u]nder Florida law, 'actual damages' are defined as 'the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered ...' Consequential damages are not recoverable under the FDUTPA."); *Rollins, Inc. v. Butland*, 951 So.2d 860, 869–70 (Fla. 2d DCA 2006) (holding that actual damages under FDUTPA do not include consequential damages, diminution in value damages, or stigma damages); *QSGI, Inc. v. IBM Global Financing*, No. 11-80880, 2012 WL 1150402, at *5 (S.D. Fla. Mar. 14, 2012) (citing *Eclipse Med., Inc. v. Am. Hydro–Surg. Instruments*, *Inc.*, 262 F. Supp. 2d 1334, 1357 (S.D. Fla. 1999)) (holding that "Florida courts specifically reject the recovery of consequential damages under FDUTPA").

Notwithstanding Mr. Glaviano's belief his Class Pistol model is superior and should be repaired rather than replaced, there is no repair currently available for the alleged Safety Defects.[1] And while he may prefer a replacement Class Pistol, Taurus no longer manufactures and distributes the Class Pistols in the United States. The G2 pistols are the closest, best replacement, notwithstanding Mr. Glaviano's idiosyncratic (judging by the lack of similar objections or class member opt-outs) apparent belief that G2s are of inferior quality.[2] Moreover, Mr. Glaviano (and all settlement class members) can choose to select the cash option under the settlement.

In contrast to Mr. Glaviano's objections, the Court should consider that after a substantial and robust notice program, the vast majority of settlement class members (more than 99.9995%) appear to be satisfied with the benefits available to them under the settlement.  As the Ninth Circuit has recognized:

> Settlement is the offspring of compromise; the question we address is not whether the final product could have been prettier, smarter, or snazzier, but whether it is fair, adequate and free from collusion.  In this regard, the fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary to its fairness.

---

[1] Capitalized terms used in this Joint Response have the same meaning assigned in the Settlement Agreement.

[2] With respect to the quality of the G2 pistols, there is strong evidence to the contrary: the G2 PT-111 was Gunbroker.com's top-selling semi-automatic pistol from May-August 2015 (*see* "GunBroker.com Top 5 Best Sellers," *available at http://www.gunbroker.com/Content /Top5/2015-08-GunBroker-Top-5-Guns.html* (last visited Jan. 5, 2016)*;* and in October 2015, the Millennium G2 was named "Gun of the Week" by the NRA (*see* "NRA Gun of the Week: Taurus Millennium G2 Pistol," *available at http://www.americanrifleman.org/articles/2015 /10/24/nra-gun-of-the-week-taurus-millennium-g2-pistol/* (last visited Jan. 5, 2016). Moreover, a lower MSRP is not *ipso facto* evidence of a decline in quality, but is a function of many variables; for example, a change in the cost of materials or a more efficient manufacturing process.

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Braynen v. Nationstar Mortgage, LLC,* 2015 WL 6872519, at *6 (S.D. Fla. 2015) (noting that "[t]his Court, like others, considers the reaction of the class" [and] "[o]bviously, 'a low number of objections suggests that the settlement is reasonable'").

While settlement class members who support the settlement are not typically invited to make their voices heard, to date, more than 6,000 visitors (potential class members) to the settlement website have signed up to receive updates about when to make a claim upon settlement approval —as close to a vote in favor of final approval as it gets.  The settlement class overwhelmingly supports the relief available through the settlement. These voices drown out Mr. Glaviano's grievances and weigh heavily in favor of the settlement.

### 2.   Taurus is not required to admit the allegations in the complaint.

Mr. Glaviano appears to argue that the settlement is somehow unfair because Taurus disputes the allegations and claims at issue in this case.  But that is the very nature of litigation.  Litigation involves disputed claims, and settlements resolve disputed claims.  A fair settlement reflects a balance between the strengths, weakness, likelihood of success and ability to collect.  Given the complexities of the case, the parties entered into an arms' length fair resolution.  Admission of fault or wrong doing does not determine fairness of the settlement.  Instead, the measure will be based upon the objectively reasonable value of the benefits available today versus the uncertainty of litigation and collectability into the future.

It is a common practice in class and other litigation for defendants to enter into a settlement and continue to deny the allegations and claims at issue in this case. *See, e.g., Mangone v. First USA Bank*, 206 F.R.D. 222, 224 (S.D. Ill. 2001) ("It would defeat an important purpose of [a class action] settlement, and therefore render settlements less attractive to the

parties, if the settlement agreement were required to include admissions of wrongdoing by defendants or if the court itself made such findings in connection with a proposed [class action] settlement.") (quoting *Alliance to End Repression v. City of Chicago*, 561 F. Supp. 537, 554 (N.D. Ill. 1982)); *Handschu v. Special Services Div.*, 605 F. Supp. 1384, 1399 (S.D. N.Y. 1985).

The parties in this case did what class litigants do all the time and what courts encourage them to do — they weighed the risks and costs of litigation and concluded that settlement was in both their best interests and the best interests of the settlement class. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1349-50 (S.D. Fla. 2011) (citing *Bennett,* 96 F.R.D. at 349–50) (holding that the parties recognized that the "plaintiffs faced a 'myriad of factual and legal problems' that led to 'great uncertainty as to the fact and amount of damage,' which made it 'unwise [for plaintiffs] to risk the substantial benefits which the settlement confers ... to the vagaries of a trial'").

Moreover, Taurus' agreement to certification of a class for settlement purposes in this case is subject to final Court approval of the settlement. The parties would therefore find themselves back in active litigation and disputing whether certification of a litigation class is appropriate should the Court refuse to approve the proposed class settlement pursuant to Rule 23 and the *Bennett* factors. Accordingly, Taurus is protecting its interests (pursuant to common litigation practice) in continuing to deny the allegations and claims at issue in this case.

Finally, despite the fact that Taurus does not admit the allegations in the complaint, there are no secrets: the Court-approved notice campaign in this case clearly identifies and describes the alleged Safety Defects at issue in this case. Settlement class members have been "given information reasonably necessary to make a decision [whether] to remain a class member and be

6

bound by the final judgment or opt out of the action, though the notice need not include every material fact or be overly detailed." *Greco*, 2015 WL 7755673, at *5.

### 3.   The settlement class was properly certified.

Mr. Glaviano also argues that the Court improperly preliminarily certified the settlement class because, he says, Carter has suffered no injury, and the Class Pistols are not all the same and have different values.

In its preliminary approval order, the Court determined that Carter has standing because he "is a current owner of a Class Pistol, and all Class Pistols allegedly suffer from the same Safety Defects relating to a lack of a trigger blade safety." Prelim. App. Order at 8. These facts also satisfy the certification requirement of typicality, which "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003). In fact, "a strong similarity of legal theories will satisfy the typicality requirement despite the substantial factual differences." *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985).  The fact that Carter owns a pistol that shares the same alleged common design defect as other pistols manufactured by the same company is sufficient to permit him to represent a class of persons who own those pistols.

Mr. Glaviano's objection also ignores that certification in this case is in the settlement context.  As the Court has already noted:

> [B]ecause this action is proposed for settlement, the Court need not consider trial manageability issues that might be presented in this case. As the Supreme Court held in *Amchem*, when confronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems  . . . for the proposal is that there be no trial." 521 U .S. at 620.  *See also Sullivan*, 667 F.3d at 302-03 (holding that the concern for manageability, a central tenet in the certification of a litigation class, is removed from the equation when certification concerns a settlement class); *Smith*, 2010 WL 2401149, at *3 (citing *Amchem*, 521 U.S. at 620); *David v. Am. Suzuki Motor Corp.*, No. 08-CV-22278, 2010 WL 1628362, at *3 (S.D. Fla. Apr.

15, 2010) (in the context of proposed settlement classes, district courts may properly consider that there will be no trial). Even though a settlement class must meet the requirements of Rule 23, the "settlement is a factor in the calculus," and therefore the certification inquiry is not the same in the settlement context as when certification is for the purposes of trial. *See Amchem*, 521 U .S. at 619-22.

Prelim. App. Order at 13-14; *see also Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 690-91 (S.D. Fla. 2014) (holding that "[w]here the district court need only certify the class for the purpose of settlement it 'need not inquire whether the case, if tried, would present intractable management problems, see Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial'").

Thus, despite Mr. Glaviano's complaints, there is no need for the Court to revisit certification of the settlement class.

### 4. The notice campaign satisfied due process requirements.

Mr. Glaviano does not address the details of the notice program or show how, in any particular way, it was inadequate. Nor does he suggest any alternative or show that any better notice was possible. He merely asserts, in conclusory fashion, that "notice by publication is insufficient."

In reality, notice by any other means was simply not possible. There is no government registry of handgun owners, s*ee* 18 U.S.C. § 926 (prohibiting the federal government from maintaining a registry of firearms, firearms owners, or firearms transactions).  As the Court is aware, Taurus has no current and reliable records of current owners of Class Pistols.

Under such circumstances, the Eleventh Circuit and courts in this district have approved notice by publication through national periodicals and popular internet outlets. *Poertner v. Gillette Co.*, 618 F. App'x 624, 626 (11th Cir. July 16, 2015) (unpublished); *Fresco v. Auto Data Direct, Inc.*, No. 03-61063, 2007 WL 2330895, at *7 (S.D. Fla. May 14, 2007) (approving "a

combination of publication and Internet notice designed to reach a significant number of settlement class members").

The robust publication notice adopted and approved by the Court in this case was designed with a modern approach. It incorporated traditional, online, mobile and social media. The Court has preliminarily concluded that:

> The notice given in the form and manner provided in the Settlement Agreement is the best practicable notice and is reasonably calculated, under the circumstances, to apprise the Settlement Class Members: (i) of the pendency and nature of this Action, (ii) of the definition of the Settlement Class preliminarily certified; (iii) of the class claims, issues, and defenses and the terms of the proposed settlement; (iv) of the right to appear and object to the proposed settlement; (v) of the right to exclude themselves from the Settlement Class; (vi) of the time and manner for requesting exclusion from the Settlement Class; and (vii) that any judgment, whether favorable or not, will bind all Settlement Class Members who do not timely and properly exclude themselves from the Settlement Class. The Court further finds that the proposed notice methods, texts and methodology are reasonable, that they constitute due, adequate, and sufficient notice to all persons entitled to be provided with notice, and that they meet the requirements of the Federal Rules of Civil Procedure, the United States Constitution (including Due Process), and all other applicable rules or law.

(*See* ECF No. 133 at 16-17). The Declaration of Jeanne C. Finegan submitted in support of final approval of the proposed settlement confirms that the approved notice program was fully implemented and carried out pursuant to the Court's Preliminary Approval Order. And Ms. Finegan's Declaration further shows that the notice program was even more successful than originally projected. It reached approximately 86 percent of the target audience with an average frequency of five times.

The notice program approved and carried out in this case fully satisfies the requirements of due process and Rule 23.

**5.  Mr. Glaviano's criticisms of the Enhanced Warranty misconstrue its benefits.**

Mr. Glaviano "asks the Court to consider whether this lawsuit is being used by Taurus as a means to terminate its Unlimited Lifetime Repair Warranty" for the Class Pistols. (ECF No. 136 at 2). It is not; the Enhanced Warranty provides all the same benefits of the original warranty, and adds to that warranty.  The supplemental nature of the Enhanced Warranty is made clear in the Preliminary Approval Order, which provides, "[t]he Taurus Companies have agreed to modify the existing Warranty and Repair Policy for all Class Pistols to allow any owner (not just the current owner) to submit a warranty claim *at any time* (even outside the claims period, for the life of the pistol, regardless of whether the person submitting the warranty claim is the original owner) to have the Class Pistol inspected for the alleged Safety Defects and repaired, if possible. If there are defects that cannot be repaired, the Taurus Companies will offer to replace the Class Pistol with a similar new pistol." (ECF No. 133).

Although disparaged by Mr. Glaviano, the Enhanced Warranty provision constitutes a significant modification from Taurus's former policy. Shortly before this settlement was reached, Taurus's chief customer service representative testified that if a Class Pistol owner shipped a pistol back to Taurus because of drop-fire concerns, Taurus would not replace the pistol. (Exhibit A, K. Intagliata Dep., Apr. 7, 2015, at 255-56). Replacement, if a repair is not available, is provided only by means of this class settlement through the *modified* terms of the Enhanced Warranty.

For this reason, Mr. Glaviano's claim that the website chart comparing the Enhanced Warranty to the original warranty is misleading has no merit. Under the original warranty, Taurus did not view the alleged Safety Defects as defects that justified warranty repairs. This gave Taurus the right to assess a $35 minimum labor charge, and did not obligate Taurus to pay

shipping costs. For purposes of the alleged Safety Defects, Class Pistol owners had no warranty rights to transfer. But now, as a result of the Enhanced Warranty settlement benefit, any owner of a Class Pistol at any time has the transferable right to have the Class Pistols repaired or replaced as necessary, without shipping charge. The warranty comparison chart is accurate.

**6. Mr. Glaviano's remaining objections have no merit.**

Mr. Glaviano also raises a host of other conclusory and unsupported objections. He asserts that the cash payment schedule is arbitrary because the amounts decrease sharply with the number of claims, and therefore "one extra pistol cost the first 20,000 class members $500,000." (ECF No. at 24). That is an incorrect characterization of the settlement. To be clear: the cash benefit is to be paid on a weighted average (Exhibit A, Settlement Agreement and Release, ECF No. 123 at 24), meaning that if 20,000 claims are submitted, the first 10,000 claims are worth $200 each, the next 10,000 claims are worth $175, and the total is added up and paid to class members on an equal basis.

Mr. Glaviano criticizes the Taurus safety training videos as simply repeating basic safety maxims and failing to admit to the Safety Defects, but he disregards statements in both the website and publication notice that explain that the lawsuit alleges "that class pistols may unintentionally fire with the safety in the "on" or "safe" position, and may unintentionally fire when dropped or bumped." (Notice of Filing Revised Class Notices, ECF No. 135 at 7 and 15). The Class Notice is the primary form of communicating with settlement class members regarding a class action settlement.

Mr. Glaviano complains about the Court's deadlines, stating that 120 days after final approval is too short. (ECF No. 136 at 17). If Mr. Glaviano had true concerns about the Court's reasonable deadlines and approval process, he would have exercised his right to opt out and

therefore not be bound by the terms of the settlement (including the length of the claims period). However, he did not.  Instead, Mr. Glaviano makes this complaint about a length of time commonly viewed as a reasonable claims period without any legal support or analysis.

Mr. Glaviano further complains that the objection and opt-out deadlines are the same. There is no requirement for his preferred schedule, nor any benefit to the settlement class. "[N]either the public interest nor the interest of the greater class is served by allowing disgruntled members to exercise both options. . . . As long as the dissatisfied class member has the right either to object and attempt to influence the settlement from within the class, or to leave the class and make a separate peace with the defendant, as is the case here, due process is satisfied." *Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922, 935 (E.D. Mich. 2007) (internal citations omitted).

Finally, Mr. Glaviano faults the website's "frequently asked questions" section, stating that the response to the FAQ entitled "How do I tell the Court that I do not like the settlement?" does not include a physical address for the Court – an address that appears prominently on the class notice.

**B.  <u>Objector Pennington</u>**

Misconstruing the plain language of the Settlement, Mr. Pennington first argues that the class release provided under the proposed settlement is overbroad. He next contends that the Settlement is unfair because the claim form that the Court has approved will not be available until the settlement is final and the exact date the 120-day claim period (to seek a cash payment) expires will not be known until the settlement is approved.  Third, like Mr. Glaviano, Mr. Pennington complains about the settlement benefits (without providing any analysis as to why they are inadequate) and protests that the safety videos have no value because Taurus has not

admitted the alleged defects. Finally, he asserts that Class Counsel's requested fee and the requested incentive award to Officer Carter are excessive.

Despite being submitted by counsel,[3] the Pennington Objection contains no more legal analysis (that is, none) than the *pro se* objectors. Nor does Objector Pennington or his counsel provide any evidence to support their inaccurate statements and assumptions on which his objections rely.

### 1. Pennington's objections ignore the plain language of the release.

Objector Pennington's claim that the release applies to future conduct misses the mark and ignores the plain language of the proposed release. The release is specifically limited to facts arising from the design and manufacturing of the Class Pistols. No new Class Pistols are being manufactured and distributed in the United States. The release therefore does not release Taurus for claims for future conduct.

---

[3] Mr. Pennington's attorney, Stephen D. Field, is an attorney who practices and resides in south Florida. The Pennington Objection indicates that Mr. Field has filed objections to two other proposed class settlements. On October 22, 2015, Mr. Field filed an objection to a class settlement approved by this Court in *Francisco Rene Marty et al. v. Anheuser-Busch Companies, LLC*, No. 13-cv-23656-JJO. That objection was overruled, and Mr. Field and his client currently face a Motion for Sanctions (ECF No. 174), alleging that the *Anheuser-Busch* objection was frivolous and was filed only to seek financial compensation in exchange for withdrawal of the objection.

Courts often "consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than putting the interest of the class members first[.]" *Lee v. Ocwen Loan Servicing, LLC*, No. 14-cv-60649, 2015 WL 5449813, at *14 (S.D. Fla. Sept. 14, 2015); *see also In re Hydroxycut Mktg. & Sales Practices Litig.*, MDL No. 09–md–2087, 2013 U.S. Dist. LEXIS 133413, at *71 n.3, 2013 WL 5275618 (S.D. Cal. Sept. 17, 2013) (criticizing objecting counsel for attempting to leverage fees with objection and noting that "this type of abuse of the objection process is not uncommon") (citing MANUAL FOR COMPLEX LITIG. § 21.643 (4th ed.) ("Some objections, however, are made for improper purposes, and benefit only the objectors and their attorneys (e.g., by seeking additional compensation to withdraw even ill-founded objections); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1361 n.30 (S.D. Fla. 2011) (collecting authority disapproving of objections brought with ulterior motive by those "whose sole purpose is to obtain a fee by objecting to whatever aspects of the Settlement they can latch onto.").

Likewise, Objector Pennington's argument that the release is overbroad and that "the specific statutory or common law claims to be released should be spelled out" is flawed.  It is well-established by this Circuit (and others) that broad class action releases are proper. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc*., 396 F.3d 96, 106-07 (2d Cir. 2005) (citing *Stephenson v. Dow Chem. Co*., 273 F.3d 249, 254 (2d Cir. 2001), *aff'd in part by an equally divided court and vacated in part*, 539 U.S. 111, 123 S.Ct. 2161 (2003)) (holding that "[b]road class action settlements are common, since defendants and their cohorts would otherwise face nearly limitless liability from related lawsuits in jurisdictions throughout the country.").

Further, courts have held that "class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct."  *Wal-Mart Stores, Inc.,* 396 F.3d at 106-07 (citing *TBK Partners, Ltd. v. W. Union Corp*., 675 F.2d 456, 460 (2d Cir. 1982)); *see also In re Corrugated Container Antitrust Litig*., 643 F.2d at 221 (quoting *Patterson v. Stovall*, 528 F.2d 108, 110 n.2 (7th Cir. 1976)) (holding that "'[t]he Fifth Circuit has noted, "The weight of authority establishes that ... a court may release not only those claims alleged in the complaint and before the court, but also claims which 'could have been alleged by reason of or in connection with any matter or fact set forth or referred to in' the complaint'").

Rejecting a similar objection, the Eleventh Circuit recently held that the purpose of a release is not simply to dispose of the specific claims in the complaint, but rather "to prevent the relitigation of settled questions at the core of [the] class action." *Greco v. Ginn Dev. Co., LLC*, No. 14-11443, 2015 WL 7755673, at *7 (11th Cir. Dec. 2, 2015) (emphasis added) (internal citations omitted); *see also In re Corrugated Container Antitrust Litig*., 643 F.2d at 221 (federal court "may release not only those claims alleged in the complaint and before the court, but also

14

claims which could have been alleged by reason of or in connection with any matter or fact set forth or referred to in the complaint"); *Thomas v. Blue Cross &Blue Shield Ass'n*, 333 F. App'x. 414, 420 (11th Cir. 2009) (holding that "even when the court does not have power to adjudicate a claim, it may still approve release of that claim as a condition of settlement of an action before it."); *see also Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 376–77, 116 S. Ct. 873 (1996) ("[A] court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action."). The proposed class release in this case is properly tailored to prevent relitigation of settled questions.

The proposed class release in this case is completely consistent with this controlling authority.

### 2. Claim form/claims period.

Pennington also complains that the settlement is unfair because he did not have access to the final claim form, and because the start and end dates of the Claims Period will not be known until the Settlement is approved. Essentially, he objects to the fact that the claims period will not occur until after final approval.

It is not unprecedented for a claims period to occur after final approval. More importantly, in this case, there is no other practical option. Making a claim in this case involves shipping firearms to Taurus, which for numerous logistical reasons cannot occur until the settlement is approved and becomes final. And critically, the Enhanced Warranty has no end date — essentially, the "claims period" for the Enhanced Warranty will remain open indefinitely.

### 3. Class Counsel's requested fee is reasonable and falls within well-established Eleventh Circuit guidelines.

Objector Pennington's unsubstantiated claim that Class Counsel's requested fee is unreasonable and unfair is without merit.[4] As fully set forth in Plaintiff's concurrently filed Motion for Attorneys' Fees, Costs, and Service Award, Class Counsel's requested fee is far less than the Eleventh Circuit benchmark of 25% of the total relief achieved for the settlement class, and properly compensates Class Counsel for the thousands of hours and hundreds of thousands of dollars in expenses invested in achieving an extraordinary settlement result.

Objector Pennington challenges the fee request on three grounds. He first complains that there was no fee motion available for settlement class members' review prior to the deadline for objecting to the settlement. Rule 23(h) requires counsel to file a request for attorneys' fees "at a time the court sets." Here, the Court issued a schedule for all submission relating to any motions for attorneys' fees, ECF No. 133, and Class Counsel has complied with those deadlines.   Class Members have had notice of the terms of the Settlement for several months, which include the attorneys' fee amount of no more than $9 million and the service award of $15,000.

The remainder of Objector Pennington's argument goes to the amount of the requested fee. He acknowledges the settled rule in the Eleventh Circuit that an award of 25% of the common fund is the bench mark which "may be adjusted in accordance with the individual circumstances of each case," *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 775 (11th Cir. 1991). Nonetheless, Objector Pennington's second and third arguments both rest on the false and unsupported assertion that the actual value of the Settlement is far less than Plaintiff has demonstrated it to be.   Pennington focuses solely on the $30 million cap for the cash

---

[4] This response to Objector Pennington's complaints about the requested fee and incentive awards is submitted by Officer Carter and Class Counsel.  The Taurus Defendants have agreed not to object to the fee and incentive award in the requested amounts.

payment benefit. But as Plaintiff's economic valuation expert explains, including the Enhanced Warranty benefit, the proposed settlement represents a monetary value as high as approximately $73.6 million. Further, Objector Pennington fails to understand that the requested $9 million fee and expenses and the $1.5 million Settlement Administrator fees to be paid by the Defendants must be considered an additional component of that Settlement value. *See David v. Am. Suzuki Motor Corp.*, No. 08- 22278, 2010 WL 1628362, n.14 (S.D. Fla. Apr. 15, 2010) (citing *Duhaime v. John Hancock Mut. Life Ins. Co.*, 183 F.3d 1, 4 (1st Cir. 1999); Fed. R. Civ. P. 23(h)). The true value of the settlement is therefore as high at $84.1 million, making Class Counsel's $9 million request less than 11% of the potential common fund.

As Professor Silver explains in his report, the fee request is very much in line with awards in similar class actions and with fee agreements negotiated with "real, sophisticated clients" who often pay 25% - 40% of the recovery as fees in large commercial cases. (*See* Exhibit A to Pltf.'s Mot. for Attorney' Fees, Silver Rpt. at ¶¶ 22-27, *filed contemporaneously herewith*).  Moreover, it is also settled in the Eleventh Circuit that the fees in a class action may be determined based upon the total fund available to the class, not just the actual payout to the class. *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999) (affirming fee award when actual dollars paid out to class members turned out to be "substantially less" than the total fund generated for the settlement); *see also Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 695 (S.D. Fla. 2014).  Professor Silver explains why this is a reasonable approach, recognizing that, "[w]hen reviewing requests for fees in class action settlements with claim processes, judges often wonder how to deal with the possibility that the benefits actually

paid out will be worth less than the amount made available because fewer (perhaps far fewer) than all class members will participate." (Silver Rpt. at ¶ 59).[5]

As to Objector Pennington's criticism of Officer Carter's service award, Objector Pennington appears to be primarily concerned with Officer Carter's adequacy as a class representative, a matter which was put to rest when the Court preliminarily certified the settlement class, concluding that Mr. Carter was an adequate representative, and that Mr. Carter's claims were typical of those of the settlement class as a whole. (ECF No. 133 at 10). Objector Pennington's concern that Officer Carter's incentive award is greater than average class member's relief fails to recognize Officer Carter's special role in this litigation, including: (1) the actions the class representative took to protect the interests of the class; (2) the degree to which the settlement class benefited from those actions; and (3) the amount of time and effort the class representative expended in pursuing the litigation. *See Gevaerts v. TD Bank*, No. 14-20744, 2015 WL 6751061, at *9 (S.D. Fla. Nov. 5, 2015).

Officer Carter was an active and indispensable part of the initial investigation into the class claims, and has further made himself available to class counsel as the litigation proceeded. Officer Carter sat for a deposition in February 2015, has spent three days traveling, and has participated in numerous meetings with Class Counsel. The excellent settlement achieved demonstrates that the class has benefited from his involvement and commitment. For these reasons, Officer Carter's proposed incentive award is more than fair and reasonable. *See, e.g., In*

---

[5] Plaintiff has further supported the fee request under the *Johnson* factors. *See Camden I,* 946 F.2d at 775, n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). In the Motion for Attorneys' Fees, Costs, and Service Award, Class Counsel has demonstrated that the fee is equitable through the time, labor and skill used to achieve the settlement; the resolution of numerous complex issues; the risk and financial burden borne by Class Counsel; and the result achieved for the settlement class.

*re: Terazosin Hydrochloride Antitrust Litig.*, No. 99-1317, ECF No. 1557, ¶ 27 (S.D. Fla. Apr 19, 2005) (Seitz, J.) (awarding class representatives $75,000 in total for their service to the class).

### 4.   Objector Pennington does not show how the settlement is unfair, unreasonable, or inadequate.

Like Glaviano, Objector Pennington criticizes the settlement benefits and asserts — without support — his entitlement to more relief. As with Objector Glaviano, his desire for "a better deal" is no basis for a valid objection.

### C.   Objector Scheffler

Objector Scheffler is no stranger to participating in litigation, having filed papers in at least forty-six different cases over the last decade. Objector Scheffler filed a Motion for Leave to Appear Telephonically (ECF No. 138).  The Court granted Objector Scheffler's Motion for Leave (in part), providing that Objector Scheffler may appear via videoconferencing (ECF No. 146).

Objector Scheffler's objection reflects a certain ardor, rather than sober analysis.  His concern for having "blood on his hands" is belied by the fact that his objection, if sustained, would result in more allegedly defective firearms remaining in circulation.  And his assertion that the settlement violates the Second Amendment is no more than a bare conclusion. These objections, though perhaps heartfelt, merit no further response.

Scheffler also claims not to have received notice of the settlement. The fact that he filed an objection, of course, shows otherwise. While Objector Scheffler may have expected individual mail notice, the fact that he "ran across" notice of the settlement actually shows that the targeted publication notice worked exactly as intended.

Finally, like the other objectors, Scheffler complains that the settlement benefits are insufficient, that the release is too broad, that Taurus will not be required to admit liability, and that the settlement class should not have been certified. For the same reasons as explained above, these objections have no merit.

### D.  **Objector Jordan**

Objector Jordan has one complaint: he wants more relief. Specifically, he claims should be entitled to consequential damages, such as money spent on holsters, extra magazines, night sights, laser sights, and other accessories. As explained above, such consequential damages are not available for the settlement class members' primary claims. Nonetheless, Mr. Jordan could have opted-out and pursued such damages on his own.  He chose not to do so, and does nothing to show why the proposed settlement is unfair or inadequate.[6]

CONCLUSION

The proposed class settlement in this case is more than fair, reasonable and adequate. The objections lack any factual or legal merit for the reasons discussed above.  The parties therefore jointly request that the objections be overruled, that the class settlement be finally approved, and such further relief as the Court deems proper.

---

[6] Counsel is informed that Objector Jordan directly contacted the customer service department at Taurus prior to filing his objection. As a result, Taurus has handled his customer service inquiries and requests in the ordinary course of business.

Respectfully submitted,

Counsel for Plaintiff

*/s/ David L. Selby, II*
David L. Selby, II (*Admitted Pro Hac Vice*)
BAILEY & GLASSER, LLP
3000 Riverchase Galleria, Suite 905
Birmingham, Alabama 35244
Tel.:   (205) 988-9253
Fax:    (205) 733-4896
Email: dselby@baileyglasser.com

John W. Barrett (*Admitted Pro Hac Vice*)
Eric B. Snyder (*Admitted Pro Hac Vice*)
Patricia M. Kipnis (*Admitted Pro Hac Vice*)
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, West Virginia  25301
Tel.:   (304) 345-6555
Fax:    (304) 342-1110
Email: jbarrett@baileyglasser.com

Todd Wheeles (*Admitted Pro Hac Vice*)
MORRIS, HAYNES, HORNSBY & WHEELES
3500 Colonnade Parkway, Suite 100
Birmingham, AL 35243
Tel.:   (205) 324-4008
Fax:    (205) 324-0803
Email:  twheeles@mhhlaw.net

Angelo Marino, Jr. (FBN: 151934)
ANGELO MARINO, JR., P.A.
645 S.E. 5th Terrace
Ft. Lauderdale, Florida  33301
Tel.:   (954) 765-0537
Email:  amjrpamail@aol.com

Carol Finklehoffe (FBN: 15903)
Thomas Scolaro (FBN: 178276)
Ira H. Leesfield (FBN: 140270)
LEESFIELD & PARTNERS, P.A.
2350 South Dixie Highway
Miami, Florida  33131
Tel.:   (305) 854-4900
Email:  finklehoffe@leesfield.com
        scolaro@leesfield.com
        leesfield@leesfield.com

Counsel for Defendants

*/s/ John P. Marino*
John P. Marino (FBN: 814539)
SMITH, GAMBRELL & RUSSELL, LLP
50 N. Laura Street, Suite 2600
Jacksonville, FL 32202
Tel.:   (904) 598-6100
Fax:    (904) 598-6300
Email:  jmarino@sgrlaw.com

Kristen W. Bracken (FBN: 092136)
SMITH, GAMBRELL & RUSSELL, LLP
50 N. Laura Street, Suite 2600
Jacksonville, FL 32202
Tel.:   (904) 598-6100
Fax:    (904) 598-6300
Email:  kbracken@sgrlaw.com

Timothy A. Bumann (*Admitted Pro Hac Vice*)
SMITH, GAMBRELL & RUSSELL, LLP
120 Peachtree Street, NE
Promenade, Suite 3100
Atlanta, Georgia 30309
Tel.:   (404) 815-3500
Fax:    (404) 815-3900
Email:   tbumann@sgrlaw.com

21

## CERTIFICATE OF SERVICE

I certify that on January 6, 2016, a copy of the foregoing was served upon all counsel of record through filing this document with the Clerk using the Court's CM/ECF system.  I further certify that copies of the foregoing were served by U.S. Certified Mail to:

Stephen D. Field, Esq.
STEPHEN D. FIELD, P.A.
102 E. 49th Street
Hialeah, FL  33013
Tel.:  (305) 698-3421
Fax:  (305) 698-1930
Email:  steve@field-law.com
Attorney for Objector Pennington

Troy Kenneth Scheffler
965 104th Ave. NW
Coon Rapids, Minnesota  55433

Richard Louis Jordan
2056 Walnut Creek Drive
Flint, Michigan  48532

Steven A. Glaviano
609 W. William David Pkwy
Suite 102
Metairie, Louisiana  70005

/s/ *John P. Marino*
Attorney

22