UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:13-CV-24583-PAS

FILED by __PG__ D.C.

JAN 1 4 2016

STEVEN M. LARIMORE
CLERK U.S. DIST CT
S. D. of FLA. – MIAMI

CHRIS P. CARTER,
Individually and on behalf of all
Others similarly situated,

     *Plaintiff*                               CLASS ACTION

v.

FORJAS TAURUS S.A.,
TAURUS INTERNATIONAL
MANUFACTURING, INC., and
TAURUS HOLDINGS, INC.,

     *Defendants*

---

**OBJECTOR'S RESPONSE TO PLAINTIFF'S MOTIONS FOR FINAL
SETTLEMENT APPROVAL AND ATTORNEYS' FEES**

MAY IT PLEASE THE COURT:

     The undersigned Settlement Class Member ("Member") submits the following:

## I.

     The July 30, 2015 Order Granting Joint Motion For Approval of Class Action Settlement, Preliminarily Approving Class Settlement And Granting Settlement Class Certification, And Setting Final Approval Hearing (DE133) issued based upon representations made by counsel for the parties at the July 23, 2015 Status Conference (DE131). During the Status Conference, counsel were reminded of their professional obligations.

               **"THE COURT:  I accept the fact that you all as officers of the Court
               are not going to flimflam me."** (DE 131, p 21).

     Thereafter, counsel represented to the Court that multiple "prongs" of settlement benefits were supposedly negotiated and obtained for the Settlement Class:

"MR SELBY: …. This warranty enhancement benefit **that we negotiated as part** of the settlement does not end, and the benefit to any person owning a class pistol at any time would be that they would provide that pistol back to Taurus. **That pistol would be inspected. It would be determined if it can be repaired to correct the safety defects. If it cannot be repaired, it would be replaced.**

As part of that enhanced warranty, **the other strong benefit is currently Taurus has a $35 inspection fee. That inspection fee is going to be waived for these defects."**          ***

"MR SELBY: Secondly, **another very large part of this benefit is the shipping.** While it may not seem like a big issue to a lot of people with a gun because of ATF and shipping requirements, **that cost alone is $80 to $120 per pistol; and that is being paid for by Taurus** as part of the settlement with this warranty enhancement."

"It was very important to us as class counsel that first and foremost with this settlement is that **the public be made aware, the consumers that own these pistols be made aware**, so part of this other benefit of the **third prong of this settlement is the safety training.** The safety training is going to encompass directly **these particular issues**. So it will not just be the latest gun safety video. **It is specifically tailored** as a result of this settlement **to the alleged defects."**
*Transcript of Status Conference.* DE 131, Pages 23-25. Exhibit Q.

Counsel for defendants remained silent during this presentation. The Court's approval order issued, resulting in a flawed Notice being issued to the Settlement Class.

Member filed an Objection that challenged the accuracy of the representations of counsel. (DE136)

Thereafter, plaintiff filed a Motion For Final Settlement Approval (DE147) and Motion for Attorneys Fees (DE148). In those pleadings, the multiple "prongs" and "strong benefits" supposedly negotiated for the Settlement Class disappeared. Pistols are not inspected. There is no $35 inspection fee that could be waived. No pistols are repaired. Taurus does not pay $80-$120 to ship a pistol. There is no safety video specifically tailored to the alleged defects.

The Settlement Class has not been adequately represented.

## II

Absent the adversarial process, the truth suffers. In response to Member's assertion that the parties are no longer in an adversarial posture, the parties now file joint pleadings.

Irony aside, if the plaintiff and the defendant now speak with one voice, who speaks for the Settlement Class?

Pleadings being filed by plaintiff and defendants illustrate why the only solution which would protect the Settlement Class is decertification. With no one to test for the truth, the parties wil continue to try to steam roll the Settlement Class with assertions that cannot be verified by facts.

## III

> **"Further attesting to the strength of the settlement, there were no opt-outs and only four objections, and <u>only two of the Objectors even mention the requested fee award</u>."** *DE148 Plaintiff's Motion for Attorneys' Fees.* Page 14. Emphasis added.

Member's Objection asserting that the class should be decertified, which would result in an attorney's fee award of zero, should not be interpreted as a rousing endorsement of plaintiff's request for a fee of $9 million.

An attorney being paid a percentage of his client's true recovery is the purest way to align an attorney's interests with the client's interest.   However when the class client can lose millions of dollars, a defendant's substantive concurrence with a plaintiff's attorney's fee award of $9 million creates, at best, an appearance of impropriety.

## IV

> **"As of December 9, 2015, 234,000 users (people) have visited this website, with over 301,700 sessions, and of these sessions, <u>nearly 57,000 sessions originated from Puerto Rico, over 4,000 from Guam and nearly 700 from the U.S. Virgin Islands</u>."** DE147-4, Paragraph 32, *Declaration of Jeanne C Finegan APR*

The strange number of sessions originating outside of the continental US is suspicious. It suggests the possibility that "fake traffic" was generated for the website.

See Exhibit R.  If *any* fake traffic was generated to mislead the Court, then ***none*** of the statistics presented by the parties can be considered reliable.

Additionally, the parties claim that an estimated 6,000 persons have signed up to receive updates[1], The parties' assertion that this represents 6,000 votes "for" the settlement is conjecture.  And using the parties' joint logic, this would also represent 960,335 "no" votes against the settlement, a rejection by 99.3% of the Settlement Class.

Class members have been told about alleged safety defects, that the defects are denied by Taurus, that there is no recall and they can keep using their allegedly defective pistols. It is a confusing scenario.  Member's conjecture is that 6,000 people are concerned enough about safety to fill out a form in the hopes of getting updated information.

# V

## Did The Parties Provide The Best Practicable Notice?

**"Here, it was not possible to identify and generate a list of current owners of Class Pistols"** *Plaintiffs Motion For Final Approval* , DE147, page 8.

**"As the Court is aware, Taurus has no current and reliable records of current owners of Class Pistols.** *Joint Response in Opposition To Objections To Class Settlement*, DE149  page 8.

The record reflects no effort made by the parties to contact class members using the following Taurus sources:

Taurus Database 1:  Taurus has a long running promotion whereby a purchaser of a Taurus pistol can receive a free $35 NRA membership by filling out a form and sending Taurus their receipt for their pistol purchase.  A pistol receipt typically includes the model and serial number of the purchased pistol. The form requires the purchaser's name, address and email address.

Taurus Database 2:  Taurus has an online Product enrollment form whereby a purchaser can enroll their pistol model and email address.

Taurus Database 3:  When a Taurus pistol is sent in for repair, the model and serial number are recorded together with the owner's mailing address for the pistol's return. This database is searchable by serial number.

---

[1] Joint Response in Opposition To Objections To Class Settlement, DE149  page 5

HOME : PRODUCT ENROLLMENT                                                                 ◀ BACK

## PRODUCT ENROLLMENT

Privacy Statement
Taurus does not share, sell or reveal customer information. This information is for our records only.
We will periodically send an e-mail to our customers advising them of new products. Your e-mail
address, street address, telephone number and purchase information will be kept confidential.

### FIREARM INFORMATION

To enroll your firearm, please type in the model number and your email address:

Model [            ]                    E-mail [                    ]

☑ Yes, I would like to receive additional information on my firearm

### PURCHASE INFORMATION (OPTIONAL)

Dealer's Name [                          ]

Address [              ]     City [            ]

State [    ]     Zip [            ]

### "THE TAURUS UNLIMITED LIFETIME REPAIR POLICY"

We will repair, free of charge, any firearm manufactured or distributed by Taurus International. The
terms, conditions and limitations of this unique lifetime repair policy will be contained on the card
accompanying each firearm.
Excluded from this policy are the following finish, grips and sights. Unauthorized service,
alterations or abuse will nullify this policy.

[ Enroll Now ]

www.taurususa.com/product-enrollment.cfm

# Thank you for purchasing a firearm from Taurus.
## We're committed to growing the National Rifle Association.

WELCOME TO THE MOVEMENT.

To receive your FREE one-year NRA membership from Taurus – a $35 value – complete the form below and send it along with a copy of the store receipt (retain the original for your records) to:

**Taurus International**
**NRA Membership Offer**
**16175 NW 49 Avenue**
**Miami, Fl 33014**

**NRA**

XM014568

| | |
|---|---|
| Name: ___ FIRST ___ LAST ___ M.I. <br> Street Address: ___ <br> ___ <br> City: ___ State: ___ Zip: ___ <br> Date of Birth: ___ Phone: ___ <br> Required for Junior or Distinguished Memberships. <br> Email Address: ___ | ☐ **New Member** <br> ☐ **Renewal No.** ___ <br> Please choose one type of membership: <br> ☐ Regular   ☐ Junior (18 and under) <br> ☐ Distinguished (65+ or disabled veterans) <br> Please choose one magazine & format: <br> ☐ *AMERICAN RIFLEMAN*   ☐ **Print** <br> ☐ *AMERICAN HUNTER*   ☐ **Digital\*** <br> ☐ *AMERICA'S 1ST FREEDOM* <br> *Email address required for digital version.* |

**Should be completed in name of intended member.**

Must purchase a new Taurus firearm at retail between January 1, 2015 and December 31, 2015. Submit store receipt and completed form to Taurus, c/o NRA Membership Offer, 16175 NW 49 Avenue, Miami, FL 33014 before January 31, 2016 and receive a 1-year membership in the National Rifle Association. Membership materials will come directly from NRA. Please allow 6 to 8 weeks for receipt of materials from NRA. Submissions will only be accepted via U.S. Mail. One membership per firearm purchase please. NRA membership qualifications apply.

http://www.taurususa.com/pdf/NRA/Taurus-NRA-Free-Membership-2015.pdf

## VI

### WHY DID THE ONLINE NOTICE
### OMIT THE ADDRESS OF THE CLERK OF COURT
### NEEDED FOR FILING AN OBJECTION?

**"Class Counsel have also been busy working with the claims
administrators on the details of notice to the class...."**
*DE148 Plaintiff's Motion for Attorneys' Fees.* Page 10.

**The response to the Settlement has been overwhelmingly positive. No
class members opted out, and only four (less than .0005% of the total
estimated class size) objected.**   *Plaintiff's Motion For Final Approval Of
Class Action Settlement And Incorporated Memorandum Of Law,* DE 147,
Page 7.

Why did the online FAQ regarding the requirements for filing an objection not
include the address of the Clerk of Court?

In other cases, the Heffler Claims Group provided class members with the address
of the Clerk of Court. Copies of notices from five other current class actions listed by
Heffler online[2] are attached as Exhibit S.  Included is the notice for *Kardonick v
JPMorgan Chase & Co,* filed in the Southern District of Florida.

## VII

## Class Members' Response to the Proposed Settlement

**"Not real happy about it, I loved my pistol...but, guess there is nothing I can do!"**
*10-28-2015 3:26 PM Post #1 PT140 class pistol sent in for repairs
unrelated to alleged defect, pistol not repaired. Replaced with G2.*

**"The response to the Settlement has been overwhelmingly positive."**
*Plaintiff's Motion For Final Approval Of Class Action Settlement And Incorporated
Memorandum Of Law,*  DE 147, Page 7.

---

[2]  www.hefflercases.com/cases/

Plaintiff's interpretation of the sounds of silence as "overwhelmingly positive" is conjecture. Many people already affected by the supposedly Enhanced Warranty have posted their reactions online.

Some believe that there is nothing wrong with their pistols. Some people are frightened by the mere allegation that their pistols might be unsafe. Others have taken a 'better safe than sorry' approach. Some feel duped by the class Notice that led them to send in their favorite pistols for inspection, only to have the pistols confiscated by Taurus. Some complain about the "trigger safety" breaking on the cheaper G2 pistols.



Above Picture of Broken G2 trigger safety posted by Posted by Rog**********11-23-2015, 04:22 PM, Post #1.

"On the 3rd mag, round number 30, the trigger safety snapped right in half."
Posted by Rog**********11-23-2015, 04:22 PM, Post #1.

"That's exactly what happened on my 140 G-2 after I fired the 2nd round."
Posted by Ral**** 11-24-2015, 04:56 AM #5

www.taurusarmed.net/forums/taurus-product-problems/152210-new-millennium-g2-9mm-broken-trigger-safety.html



Above picture of broken PT140G2 Trigger Safety Posted by Mic*********** 12-19-2015, 08:11 PM Post #8.

"Took my pt140 out to the range **the trigger safety broke in half when I pulled the trigger.**"  Posted by Mic**********  12-19-2015, 04:27 PM Post #1 .
www.taurusarmed.net/forums/millennium-pro-pistols/153811-pt140-g2-broken.html

"I just bought the pt140 g2 last saturday. I finally got to shoot yesterday. **The trigger safety snapped on the 6th round.** I wish I had seen this thread before I bought it. This is my first handgun and I almost threw it in the swamp when it broke."
Posted by TL*** on 01-03-2016, 08:34 AM #25.
www.taurusarmed.net/forums/millennium-pro-pistols/153811-pt140-g2-broken-3.html

The taruscartersettlement.com website has a simple online form on the Contact page that can be completed to receive future emails about the proposed settlement. Just fill in your name and addressees, then click submit.  The parties claim to have received 6,000 responses.

That same online process could have been used to allow people to voice objections. Instead, in order for someone to tell the Court that they do not like the settlement, this is what they have to do:

**"How do I tell the Court that I do not like the settlement?**

**If you are a Settlement Class Member, you can object to the settlement if you do not like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views and you may have to give a deposition. (If you object, you can still participate in the settlement – and receive money if it is approved – notwithstanding your objection.)**

**To object, you must file a written objection saying that you object to the Chris P. Carter v. Forjas Taurus S.A., Taurus International Manufacturing, Inc., and Taurus Holdings, Inc. settlement. The objection must include the following: (i) the name of the lawsuit; (ii) the objecting Settlement Class Member's full name, address, telephone number, serial number of the Class Pistol(s) and signature (an attorney's signature is not sufficient); (iii) a statement that the objector is a Settlement Class Member and an explanation of the basis upon which the objector claims to be a Settlement Class Member; (iv) all grounds for the objection, accompanied by any legal support known to the objector or his or her counsel; (v) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection; (vi) a statement confirming whether the objector or any counsel representing the objector intends to personally appear and/or testify at the Final Approval Hearing; (vii) a list of any persons who may be called to testify at the approval hearing in support of the objection; (viii) the number of times in which the objector, objector's counsel (if any), or objector's counsel's law firm (if any) has objected to a class action settlement within the five years preceding the date that the objector files the objection and the caption of each case in which such an objection was made; and (ix) a statement disclosing any consideration that the objector, objector's counsel (if any), or objector's counsel's law firm (if any) has received in connection with the resolution or dismissal of an objection to a class action settlement within five (5) years preceding the date that the objector files the objection. If the objector or his/her counsel has not objected to any other class settlement in any court in the United States in the previous five (5) years, he/she must**

affirmatively state so in the written materials filed in connection with the objection to the settlement.

The objection must be filed with the United States District Court for the Southern District of Florida, in Chris P. Carter v. Forjas Taurus S.A., Taurus International Manufacturing, Inc., and Taurus Holdings, Inc., Case No. 1:13-CV-24583-PAS, by December 14, 2015. Copies of the objection must also be mailed to the Claims Administrator, Settlement Class Counsel, and the Taurus Companies' Counsel at the following addresses postmarked no later than December 14, 2015:

Chris P. Carter v. Forjas Taurus, S. A.
c/o Heffler Claims Group
PO Box 230
Philadelphia, PA 19120-0230

David L. Selby, II
John W. Barrett
Bailey & Glasser, LLP
3000 Riverchase Galleria, Suite 905
Birmingham, AL 35244

John P. Marino
Smith, Gambrell and Russell, LLP
50 North Laura Street
Suite 2600
Jacksonville, FL 32202 "

https://www.tauruscartersettlement.com/faqs/#q17

        And as previously stated, no mailing address for the Clerk of Court is provided.

# VIII

**"The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.**
*Fed. R. Civ. P. 23(e)(3).*

Rule 23 requires the parties to disclose "any agreement"' made in connection with the Proposed Settlement. The record does not reflect any information regarding **Class Action Services Holdings dba *Risk Settlements.***

Member's assertion that Class Action Services Holdings dba Risk Settlements. is involved with the parties is based on a December 8, 2015 email Member received from that company asking to connect to Member's long dormant LinkedIn account.[3] On that date, only three people knew Member had filed an objection: Mr. Selby, Mr. Marino, and the Claims Administrator. The Clerk of Court did not enter the objection into the record until December 9, 2015.

A relationship between the parties and Class Action Services Holdings dba Risk Settlements is relevant to the fairness of the notice and the structure of the Proposed Settlement. Risk Settlements claims to provide clients with strategies to "**avoid and deal with objectors.**"[4]

This company helps defendants find "**opportunities arising from lawsuit allegations**", "**create settlements that satisfy counsel and Court**"[5] , and assist in "**structuring the settlement.**"

Additionally, Risk Settlements makes money by purchasing claims-made settlements, like the $30 million pistol buy back program, at discounted rates based upon their experience with the number of claims usually made.. They claim to rely upon proprietary analytics, statistics drawn from their historical settlement database and class action litigation expertise.[6]

If their money is at risk, Risk Settlements may have been the party in structuring the cash buy back option, with its low values offered for class pistols, the very short 120 day window for filing cash claims, and the lack of mail or email notice to known class members.

---

[3] Exhibit T
[4] http://risksettlements.com/class-action-consulting
[5] http://risksettlements.com/class-action-consulting
[6] http://risksettlements.com/class-action-settlement-insurance

"With any claims-made settlement, *there is always a great risk that too much or even all of the potential amount available under the settlement will be paid out to cover class claims.* Class Action Settlement Insurance ("CASI") allows settling defendants to shift the risk of a claims-made settlement to an insurer.

The CASI policy is simple in its operation; in exchange for a fixed premium payment, the insurer covers all valid claims made pursuant to the settlement agreement."
http://risksettlements.com/class-action-settlement-insurance   Exhibit U.

It is understandable for a defendant to work to pay as little as possible. But who is protecting the Settlement Class from overreaching by the defendants?

# IX

## NOT ALL CLASS PISTOLS ARE THE SAME

### The "False Safe" Condition Test

The parties jointly claim as an alleged defect that class pistols can be put into a "False Safe" condition.

There is a simple test for the "false safe" condition.  With the manual safety in the off (ready to fire) position, while partially depressing the trigger with one hand, use the other hand to move the manual safety into the on or safe position. Then pull the trigger.

If a pistol will then fire with the safety in the on or safe position, then the pistol has exhibited the "False Safe" condition.

However, if the pistol will not fire with the safety in the on or safe position, then the pistol is not subject to the "False Safe" condition.

Member and two other Class Members tested several different Class Pistol models manufactured in different years as set forth below.  **Of the 14 different Class Pistols tested, only two examples exhibited the "False Safe" condition.**

Since only Member will be present at the January 20, 2016 hearing, pistols tested by Member (Tester SG) are listed separately from pistols tested by the two other Class Members (Testers DO and RD).

Significantly, one of the pistols tested by Member is the same year and model Class Pistol as the plaintiff's pistol identified in Exhibit A of plaintiff's original Complaint (DE1, Exhibit A). According to the Taurus website, plaintiff's pistol, serial number SCS98571 is a 2009 PT140 PRO, model 140BP.

***The similar 2009 PT140 PRO model 140BP serial number SCP41021 tested by Member did not exhibit the "False Safe" condition.***

If the plaintiff's pistol likewise does not exhibit the "False Safe" condition, how does plaintiff have standing to assert a cause of action alleging that the "False Safe" condition is a defect?

| YEAR | MODEL | SERIAL NUMBER | TESTER | FALSE SAFE CONDITION |
|------|-------|---------------|--------|----------------------|
| 2001 | PT145  1-145041 | NUD44456 | SG | NO |
| 2007 | PT140 PRO  140BP | SZL24719 | SG | **YES** |
| 2008 | PT140 PRO  1-140039PDT | SBR34141 | SG | NO |
| 2008 | PT140 PRO  1-140039PDT | SBR34053 | SG | NO |
| 2009 | PT140 PRO  140BP | SCP41021 | SG | NO |
| *2009* | *PT140 PRO  140BP* | *SCS98571* | *PLAINTIFF'S PISTOL* | |
| 2012 | PT140 PRO  140SSP | SEX49208[7] | SG | NO |
| 2010 | PT132 PRO  132BP | FDM32625 | SG | NO |
| 2009 | PT24/7 PRO  24/7-40BP-15 | SCX56096 | SG | NO |
| 2006 | PT145  PRO 145BP | NZJ27591 | DO | **YES** |
| 2011 | PT745 PRO 745BP | NDM32656 | RD | NO |
| 2012 | PT745 PRO 745BP | NFO54725 | RD | NO |
| 2011 | PT138 PRO  138BP-12 | KDR57055 | RD | NO |
| 2011 | PT132 PRO  132BP | FEN67038 | RD | NO |
| 2011 | PT111 PRO  111BP-12 | TDS84210 | RD | NO |

---

[7] Not a typo.

**Manual Safety Lever**



By moving the safety upward you will block the firing mechanism. Keep the safety on while not using the pistol.

WARNING: To properly apply the manual safety lever, the trigger must be in its forward-most position, otherwise the lever can be moved upwards, but will not be fully engaged. Keep your finger off the trigger while moving the lever upward.

# X

## Declaration of Dr Safir

> **"The Parties negotiated the cash payment structure and amounts based in large part by arriving at average retail values of Class Pistols established by industry-accepted publications, including S.P. Fjestad and Blue Book of Gun Values (36th ed. 2015)."**
> Language from July 30, 2015 *Order Granting Joint Motion For Preliminary Approval Of Class Action Settlement, etc.* (DE133) based upon "extensive factual support" provided by counsel for the parties.

Member's Objection challenged the claim in the settlement website's FAQ that the payment structure and class pistol valuation amounts were based upon the Blue Book of Gun Values. And here again, this part of the "extensive factual support"[8] provided to the Court by counsel for the parties is nowhere to be found in either plaintiff's pleadings or Dr Safir's declaration.

And for good reason. The values in the Blue Book of Gun Values would require Dr Safir to agree that class members suffers a loss, not a gain, from the Proposed Settlement.

---

[8] DE 133, Page 2.

## Rule 702. Testimony by Expert Witnesses

**"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:**

**(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;...."**

Dr Safir holds a Ph.D in Economics from Tufts University with a specialty field in econometrics.

However, his declaration reflects no experience, training or expertise regarding the important factual questions of this case.  His knowledge of the facts is limited to the views of plaintiff's counsel. He is a plaintiff's expert, not an independent expert.

Specifically, Dr Safir's declaration demonstrates no special knowledge, skill, experience, training, or education in the following areas:

1) Regulations regarding the shipment of handguns, and the actual cost for a class member to ship a handgun to Taurus under the original warranty;
2) The price or value of Taurus pistols;
3) Differences between Class Pistol models;
4) Variations in each Class Pistol models;
5) Evaluating value of handguns by condition;
6) The overall handgun market;
7) Similarities and differences between different handgun calibers.

For the reasons set forth below, Member asks that the Court not consider Dr Safir's opinion testimony regarding the above listed areas.

## COST TO SHIP A FIREARM TO TAURUS
## UNDER THE ORIGINAL WARRANTY

Member again suggests that Taurus' shipping cost, incurred to further its corporate objectives, should not be treated as a benefit to the Settlement Class. Neither the cost of the plaintiff's and defendants' attorneys fees, nor the cost of the Claim's Administrator's services are treated as benefits to the class. And neither should shipping costs.

Dr Safir has no knowledge or experience regarding the cost to ship a class pistol to Taurus. Dr Safir states that "Taurus requires that Class Pistols be shipped via FedEx."[9] That is not true. Taurus doesn't care how a pistol is shipped to them, as long as it is legally done.

And Dr Safir's declaration is plaintiff's third effort overstating what it costs to ship a pistol to Taurus under the original warranty. First it was $80 to $100. DE131. Then in the class notice it was $100+. Now in Dr. Safir's declaration, the average cost is stated to be $64.85.

The actual cost for any Taurus pistol owner to ship a pistol to Taurus under the original warranty ran ranges between $0 and $50.

A) **$50**. Taurus routinely charges $50 for a FedEx 2nd Day Air shipping label for shipment of a pistol for warranty repair. Exhibit V.

B) **$0-$50**. Taurus will also suggest shopping around for shipping cheaper than the $50 cost of their shipping label. They are referring to shipment by a local Federal Firearms Licensee (FFL). US Postal regulations[10] allow an FFL to **mail** handguns to any other FFL, including an importer/manufacturer of firearms such as Taurus.

An FFL's cost to send a handgun to Taurus using a Priority Mail medium box is $12.95. Optional insurance cost an additional $7 for $500 of coverage. When charging to ship a pistol, FFL's can put in whatever profit they think the market will bear.

---

[9] Dr Safir's Declaration, at page 13.
[10] US Post Office Publication 53, Hazardous, Restricted, and Perishable Mail, Section 432.23, Exhibit Z.

Some report paying their FFL $20-$25 to ship their pistols to Taurus. According to the ATF, there over 100,000 FFLs in the US[11], all of whom are available for shipment of pistols to Taurus.

ATF and US Post Office rules likewise authorize Taurus to ship replacement or repaired pistols back to Settlement Class members using the $12.95 or $19.95 Priority mail options. However, Taurus has apparently made a business decision to ship only via Federal Express 2nd Day Air.

B) **$0.** Members who purchased pistols from a local retailer can ask their retailer, which must also be an FFL, to ship a pistol needing repair back to Taurus. The retailers will sometimes ship at no cost to the pistol owner. This was Member's experience with a different brand pistol in need of repair. Taurus will sometimes reimburse the retailer their cost of shipping.

### The Price Of Taurus Pistols

The Price Is Right game show uses the Manufacturer's Suggested Retail Price (MSRP) in valuing products. And so does Dr Safir in his valuation of G2 pistols. Dr Safir uses G2 MSRP values, rather than actual selling prices, to compare with individual online sales of class pistols at Gunauction.com.[12]

For example, Dr Safir asserts the $317 MSRP as the value of the PT111 G2 pistol. For comparison, below are the selling prices of three recent examples of factory new PT111 G2 pistols on Gunauction.com:

| | | |
|---|---|---|
| $213.50 | Sold 1/11/2016 | http://www.gunauction.com/buy/13752194/ |
| $233.50 | Sold 1/11/2016 | http://www.gunauction.com/buy/13751822/ |
| $227.19 | Sold 1/12/2016 | http://www.gunauction.com/buy/13752197/ |

Dr. Safir's use of MSRP is disingenuous. For that reason alone, his Table 1 Value Calculation should be ignored.

---

[11] ATF 2015 Annual Statistical Update lists 141,116 FFLs in the United States at the end of the 2014 fiscal year.
[12] Dr Safir submits no supporting documentation of the online sales. It is not known how many samples were used to estimate value.

## DR SAFIR DOES NOT KNOW THE DIFFERENCE
## BETWEEN A MILLENIUM AND A MILLENIUM PRO PISTOL

Dr Safir has no expertise in valuing class pistols or firearms in general. For example, in Table 1 Dr Safir lumps together 286,190 PT111 pistols in coming up with an absurd $157 valuation. He does not consider the difference between the older Millennium models with the double action only trigger and the newer PT111 Millennium PRO with a much different single action/double action trigger. He uses a Millenium sale to value Millenium Pro pistols.

Additionally, Dr Safir does not list the condition of any of the used pistols that he says were sold on Gunauction.com. The Blue Book of Gun values bases valuation on condition.

## DR SAFIR DOES NOT KNOW THE DIFFERENCE
## BETWEEN A PT140 PRO AND A PT640 PRO

A PT140 Pro and a PT640 Pro are virtually identical in every way except for the numbers 140 and 640 on the slide.  Dr Safir is unaware of this. In Table 1, Dr Safir lists the most similar/likely replacement for the PT140 as the G2 140 with an MSRP of $317. Fair enough. But then for the PT640, a near identical pistol to the PT140 Pro, Dr Safir lists the PT24/7 G2 , with a MSRP of $543, as the most similar pistol.

Dr. Safir's Table 1 Value Calculations should be ignored.

## DR SAFIR DOES NOT KNOW THE DIFFERENCE BETWEEN THE
## PT111, PT132, PT138, AND PT140

In Table 1, Dr Safir lists the G2 PT140 as the most similar/likely replacement for the PT132 and the PT138.  That is simply wrong.

The G2 140 fires a 40 caliber[13] cartridge that has a lot of "kick" or recoil. The PT138 fires a milder 380 caliber bullet that is the same diameter as the 9mm bullet fired by the PT111. And the 380 cartridge has slightly less recoil than the PT111.

---

[13]  Caliber refers roughly to the diameter of a bullet.  A 40 caliber bullet is .400 inches in diameter. A 32 caliber bullet diameter is .312 inches. Both 380 and 9mm caliber bullet diameters are .355 inches.

The PT132 is a 32 caliber pistol with very little recoil. The PT111 is a closer replacement for the PT132 than the PT140. Dr Safir knows nothing about class pistols.

## THE SAME COMPARISON FORMULA SHOULD BE USED FOR BOTH REPLACEMENT AND BUY BACK VALUATIONS.

In Table 1, Dr Safir uses a formula that compares the value of the class pistol returned with the value of a replacement pistol. The formula is correct even if the valuations are not. It acknowledges that returned pistols have value.

However when valuing the $200 cash buyback option, Dr Safir completely ignores the value of the returned pistols and asserts that the estimated $158-170 buy back price is the value to the class.

Again, Dr Safir's failure to consider the value of returned pistols in the buy back valuation is disingenuous. For this reason as well, Table 1 should be ignored.

## WHAT WAS THE COST OF PLAINTIFF'S EXEMPLAR PISTOLS?

**"The Blue Book of Gun Values is a commonly used resource for pricing firearms. According to a video on the bluebookofgunvalues.com website, the estimates are based on national retail sales. The auctions represent *actual retail sales and thus are a more direct measure of gun value*."**
Declaration of Dr. Andrew Safir, DE147-3, Page 11, footnote 10.

Dr Safir makes the point that actual retail sales are a more direct measure of gun values. Given a large enough sample size that is true. Yet Dr Safir did not consider in his declaration the cost paid by counsel for plaintiff for the 24 exemplar pistols.[14] Presumably those prices were higher than shown in Dr Safir's Table 1.

Dr Safir's declaration demonstrates that he cannot correctly evaluate the value of an individual firearm. His errors in evaluating a single firearm are magnified when multiplied by the total number of class pistols.

For all of the above reasons, the declaration of Dr Safir should be disregarded by the Court.

---

[14] "I know those numbers are actually broken down, because the cost of obtaining exemplar pistols is separate from the testing." DE 131, page 19. Exhibit AA.

# XI

## The Remington Release And Warning

### A.

The below language from the Remington trigger class action settlement is provided for comparison to this case:

> **"B. The Release is Reasonable and Narrowly Drawn.**
> According to the Release contained in the Settlement Agreement, **which is narrowly drawn to release only those claims at issue in this Action,** Plaintiffs and every Settlement Class Member who does not opt out of the settlement by October 5, 2015, release all claims:
>
> . . . existing now or arising in the future, whether known or unknown, both at law and in equity which were or could have been brought against Defendants, or any of them, **based upon or related in any way to the trigger mechanisms in the rifle models subject to the Settlement Agreement or any component parts thereof** . . . This release expressly exempts claims for personal injury and personal property damage.
>
> *See* Ex. 1, ¶ 26 (Second Amended Settlement Agreement). Because the Release applies only to those claims arising from the facts at issue in this Action, the Release is reasonable, and should be approved by the Court and ordered upon entry of final judgment."
> *Joint Motion For Final Settlement Approval, Pollard v Remington Arms, pages 38, 39.* Case 4:13-cv-00086-ODS Document 92 Filed 09/04/15 Page 46 of 50. remingtonfirearmsclassactionsettlement.com/ Exhibit W.

The Taurus Proposed Release is not narrowly drawn. Any release should require similarly restrictive language, such as the following or similar language suggested here by Member:

> **"....release all claims....based upon or related in any way to the absence of a trigger safety and/or related to a "false safe condition" in Class Pistols subject to the Settlement Agreement...."**

**B.**

The tauruscarterwebsite contains no admonition to "stop using your firearm." However, the following warning language is included on the Remington class action website:

**WARNING:**

*IF YOU CURRENTLY OWN A MODEL 700 OR MODEL SEVEN RIFLE WITH AN X-MARK PRO TRIGGER MANUFACTURED FROM MAY 1, 2006, TO APRIL 9, 2014, YOUR FIREARM IS THE SUBJECT OF AN ONGOING VOLUNTARY SAFETY RECALL. <u>STOP USING YOUR FIREARM.</u>*

remingtonfirearmsclassactionsettlement.com/   Exhibit X.

# XII.

## CLASS PISTOLS ARE NOT DEFECTIVE

The parties jointly still provide no proof of defect. They argue that admitting a defect would be admitting liability, and that they have to protect the defendant.

Defendants' liability issues are not the problem of the Settlement Class. To deprive 900,000+ people of their property, due process requires proof.

And it is such a simple test to prove whether a class pistol will fire when dropped with the safety properly engaged. It is not rocket science.  After placing a dummy cartridge in the pistol, you properly engage the safety, and then drop the pistol. That's the entire essence of the test.


Using two separate assumptions, in which scenario do the facts of this case make more sense?

Assume first that the 900,000 class pistols **do in fact** have a defect that would allow the pistols to fire when dropped **with the safety on**;

And then start over and separately assume that the 900,000 pistols **do not** have a defect that would allow the pistols to fire when dropped **with the safety on**.

### A

If the class pistols do have a defect, then it would make sense for a defendant to be guarded about admitting the specific defect.

But would the plaintiff have settled for so little?  Would Taurus allow class members to continue using their pistols with no warning like Remingtons?  If a defect is known to the parties to exist, and next year someone is killed because of that defect, what kind of judgment would Taurus face?

### B.

Next assume class pistols do NOT have a defect.  In this case, Taurus denying the existence of a defect is simply telling the truth and still makes sense. Now the absence of a recall also makes sense.  So does telling people they can keep using their pistols until they break. And the lack of benefits for the class also makes sense because the plaintiff has no leverage to get more money.

Then also ask why would Taurus settle with this particular plaintiff, with no proof of defect. The reverse auction theory fits perfectly. Counsels for plaintiff have another lawsuit in the queue, and that one is a tragic, emotional scenario.

On the other hand, in this case, the facts are about as weak as is possible.  If plaintiff has no proof that a pistol will fire with the safety ON, then there is a good chance a jury would find that the dropped pistol fired because the plaintiff did not engage the manual safety. The plaintiff would have assumed the risk by leaving the safety off. On top of that, counsel for plaintiff told the Court that the pistol discharged after the pistol "dislodged from his pants".

> **"And so, Your Honor, what occurred was in July of 2013, while making an arrest in an undercover situation, the pistol dislodged from his pants, hit the ground and discharged. "** *Corrected Transcript of Status Conference.* DE 131, Page 9. Exhibit Y.

Counsel for plaintiff owns firearms.  He understands the difference between carrying a pistol without using a holster. Carrying a pistol in the pants without a holster is beyond gross of negligence. It is the equivalent of texting while driving drunk in a school zone.. A loaded pistol in the pants without a holster is inherently unstable.  Every time you move, it moves. And it always seems to be pointed in the wrong direction.

Another weakness is that plaintiff suffered no injures, nor did anyone else. So there is no emotional element that might help sway a jury to his side. In sum, this plaintiff would have a very slim chance of winning.[15]

**Everything points to the defendants' fighting for this settlement, not because the plaintiff's case is very strong, but because the plaintiff's case is very weak.**

Then, look at the weak plaintiff's case for certification. How hard would it be for defendant's talented team of defense attorneys to win this certification battle? But that battle was never fought because someone pulled the plug on defense counsel's efforts in early February 2015. [16] That is the same time frame during which Taurus began stonewalling Member about the return of class pistol PT140 SEY80658. Taurus told Member they could not repair Member's pistol because of 'safety issues' that they refused to identify. They then offered Member a G2 replacement *under the original warranty.*[17] Apparently, Taurus management made the decision at that time to get the class pistols off the market, five months before the July 30, 2015 Preliminary Approval Order (DE133).

There are other signs of a reverse auction. As illustrated above, it is a simple to test a pistol for the false safe condition. Member and a couple of friends together tested fourteen different class pistols. Only two of the pistols, one 2006 model and one 2007 model could be put into the false safe condition. The other twelve pistols could not.

One pistol[18] that could **not** be put into the false safe condition happened to be the same year and model as plaintiff's pistol, as indicated by its serial number shown on Exhibit A of plaintiff's original complaint. Yet plaintiff alleges that all class pistols can be put into a false safe condition. That is demonstrably not true. And because the testing

---

[15] The Court must ensure that the defendant does not have unique defenses to the claims of the class representative; a representative plaintiff should not be permitted to impose such a disadvantage on the class. Cox v Tele-Tech@Home Inc, , USDC Northern District of Ohio, CASE NO. 1:14-CV-00993, at page 14. Copy available at http://hr.cch.com/ELD/CoxTeletech020915.pdf

[16] DE88, 2/9/2015 Notice of Withdrawal of Defendants' Motion and Supporting Memorandu To Dismiss Plaintiff's First Amended Class Action Complaint.

[17] Therefore plaintiff's taking credit for the pistol exchange program is without merit.

[18] Because of the significance of this pistol, a 2009 PT140 PRO 140BP, serial number SCP41021, it was tested 100 times. The serial number of plaintiff's pistol is SCS98571

shows it is extremely likely that plaintiff's pistol **cannot** be put into the false safe condition, plaintiff has no standing to make the "false safe" condition claim.  Taurus must know this, yet they does not object.

Similarly, the trigger actions of different pistols are significantly different. Plaintiff argues that when a pistol is dropped, inertia allows the trigger to overcome the force of the trigger spring, which allows the trigger to move rearward and fire the pistol. But even with the safety OFF, significantly more force is required to move the trigger on older models with their Double Action Only (DAO) triggers than with later pistols that have Single Action/Double Action triggers.  Plaintiff's pistol is of the SA/DA design. Yet Taurus took no action to limit the class to pistols with the plaintiff's SA/DA design. That would be an easy issue on which defendants could prevail.  Again Taurus does not object.  Why?

The most obvious benefit for Taurus would be relief from its obligation to repair 900,00 pistols.  Every time Taurus repairs and ships a pistol, they lose money[19].  And it would be business suicide for Taurus to simply announce it would no longer repair class pistols.  This Proposed Settlement provides Taurus with cheap and marketable solution to that problem.  Taurus can claim they had no choice, and blame it on the evil plaintiff attorneys.

There may be other reasons as well, such as an insurance company doing loss control on a product that, while not defective, has become a target for the plaintiffs' bar. And since every company needs insurance, if your insurer tells you something needs to be done or else you lose coverage, you do it.  Especially for an importer of firearms that very few other companies will insure.

# .XIII

Finally, the parties contend that Member misinterpreted the cash buyback schedule.  Attached as Exhibit BB.is the buyback schedule as published at tauruscartersettlement.com.  The document speaks for itself.

---

[19]" And while re-making the company, **they've figured a few things out along the way. Like exactly how much it costs – down to the penny – to fix a gun that comes back because it wasn't right to begin with.**" www.thetruthaboutguns.com/2012/10/daniel-zimmerman/taurus-puts-its-money-where-its-mouth-is/

For all of the above reasons, and the reasons stated in Member's original objection, Member asks that this case be decertified and the Proposed Final Settlement rejected.

**RESPECTFULLY SUBMITTED:**

**Steven A Glaviano, Pro Se**
**609 W William David Pkwy Suite 102**
**Metairie LA  70005**
**(504) 835-8887**
**TrustGroup@aol.com**

This pleading has been served upon the following parties via US Mail at the below addresses on January 14, 2016.

David L. Selby, II
John W. Barrett
Bailey & Glasser, LLP
3000 Riverchase Galleria, Suite 905
Birmingham, Alabama 35244

John P Marino
Smith, Gambrell and Russell, LLP
50 North Laura Street Suite 2600
Jacksonville, FL  322202

**Steven A Glaviano**

```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                     Case No. 13-24583-Civ-SEITZ

CHRIS P. CARTER, etc.,          ) Pages 1-63
                                )
               Plaintiff,       )
                                )
          -v-                   )
                                )
FORJAS TAURUS, S.A., et al.,    )
                                ) Miami, Florida
               Defendants.      ) July 23, 2015
                                ) 10:00 a.m.



                 TRANSCRIPT OF STATUS CONFERENCE

             BEFORE THE HONORABLE PATRICIA A. SEITZ

                     U.S. DISTRICT JUDGE



APPEARANCES:

For the Plaintiff    BAILEY & GLASSER, LLP
                     BY:  DAVID L. SELBY, II, ESQ.
                     300 Riverchase Galleria - Suite 905
                     Birmingham, Alabama  35244
                     BY:  JOHN W. BARRETT, ESQ.
                     209 Capital Street
                     Charleston, West Virginia  25301


For the Defendants   SMITH, GAMBRELL & RUSSELL, LLP
                     BY:  JOHN P. MARINO, ESQ., and
                     KRISTEN W. BRACKEN, ESQ.
                     50 North Laura Street - Suite 2600
                     Jacksonville, Florida  32202


REPORTED BY:         WILLIAM G. ROMANISHIN, RMR, FCRR, CRR
(305) 523-5558       Official Court Reporter
                     400 North Miami Avenue
                     Miami, Florida  33128
```

Objector Exhibit

1 of 4

STENOGRAPHICALLY RECORDED COMPUTER-AIDED TRANSCRIPT

1  issues and some evidence that they would raise that presents

2  the risks; and then the range of the possible recovery and

3  there's evidence in the record so that there can be an

4  objective evaluation that the settlement of the $30 million is

5  fair, reasonable and adequate for a class of 1,966,335 gun

6  owners.

7          MR. SELBY:  And, Your Honor, one thing I would add

8  along the $30 million is we certainly don't want the Court nor

9  anybody to be lost in the entire settlement and the benefits

10 of the settlement.

11         Our position is that in looking at the three prongs

12 of the benefits we obtained through the settlement, if you

13 look, to begin with, first and foremost is the warranty

14 enhancement.

15         THE COURT:  And help me on that, because I did not

16 see what the specifics of the enhancement were over the

17 original warranty that was provided.

18         MR. SELBY:  Yes, Your Honor.  The specifics are

19 this.  To begin with, the warranty enhancement, like the

20 existing warranty, is lifetime.  It would not pass a claim

21 period.  This warranty enhancement benefit that we negotiated

22 as part of the settlement does not end, and the benefit to any

23 person owning a class pistol at any time would be that they

24 would provide that pistol back to Taurus.  That pistol would

25 be inspected.  It would be determined if it can be repaired to

Objector Exhibit ℚ

2 of 2|

```
 1   correct the safety defects.  If it cannot be repaired, it
 2   would be replaced.
 3          As part of that enhanced warranty, the other strong
 4   benefit is currently Taurus has a $35 inspection fee.  That
 5   inspection fee is going to be waived for these defects.
 6          THE COURT:  Those details need to be laid out.
 7          MR. SELBY:  Yes, Your Honor.
 8          Secondly, another very large part of this benefit is
 9   the shipping.  While it may not seem like a big issue to a lot
10   of people with a gun because of ATF and shipping requirements,
11   that cost alone is $80 to $120 per pistol; and that is being
12   paid for by Taurus as part of the settlement with this
13   warranty enhancement.
14          THE COURT:  Is that included in the $30 million?
15          MR. SELBY:  No, Your Honor.
16          THE COURT:  That's separate and apart.
17          MR. SELBY:  That's different.
18          THE COURT:  Okay.
19          MR. SELBY:  The $30 million is only for the purposes
20   of one of the prongs of the settlement benefits, and that is
21   for those individuals who just wish to say, you know, based on
22   this settlement within the claim period, I want to get cash, I
23   want to return my pistol and get cash.
24          It was very important to us as class counsel that
25   first and foremost with this settlement is that the public be
```

Objector Exhibit Q

3 of 4

1  made aware, the consumers that own these pistols be made
2  aware, so part of this other benefit of the third prong of
3  this settlement is the safety training.  The safety training
4  is going to encompass directly these particular issues.  So it
5  will not just be the latest gun safety video.  It is
6  specifically tailored as a result of this settlement to the
7  alleged defects.
8          So the cash payment option, that's the only area,
9  Your Honor, where the $30 million comes into play.  And we
10  certainly at this point, and we will by final judgment, have
11  this.  But we will have supporting expert testimony to value
12  the entire benefit to the class, including the warranty
13  enhancement, you know, the waiver of the inspection fee, the
14  shipping costs, the safety training, the value of that to the
15  class.
16          THE COURT:  So if one desires to have their weapon
17  inspected, they take it down to the Postal Service or FedEx or
18  UPS.  They expend the money to ship it back or they contact
19  Taurus and Taurus sends them a prebox or instructions, use
20  these, folks, tell them use this particular carrier; take the
21  weapon to them; they'll package it up for you and send it, et
22  cetera?  How are those mechanics going to work?
23          MR. SELBY:  It is going to be a particular carrier,
24  and I'll let John address that, because those logistics have
25  been worked out and are being worked out as far as how that

Google    fake traffic generator

**All**    Shopping    Videos    Images    News    More ▾    Search tools

About 463,000 results (0.34 seconds)

The Top 10 Traffic Generator Applications on the Web ...
growtraffic.com/blog/2015/01/top-10-**traffic-generator**-applications-web ▾
Jan 16, 2015 - This particular site isn't really an automatic
traffic generator. ... It advertises itself as a "**fake traffic
generator**" and that's really what it is; it's not ...

Fake Traffic Generator (Website Clicker) - SourceForge
sourceforge.net/projects/**fake-traffic-generator**/ ▾
Aug 14, 2015 - **Fake Traffic Generator** (Website Clicker)
download. **Fake Traffic Generator** (Website Clicker)
2015-08-14 13:25:26 free download. Fake Traffic ...
Files - Reviews - Support

Fake Traffic Generator Bot - YouTube

https://www.youtube.com/watch?v=zxFWjxfdTvE
Jul 20, 2014 - Uploaded by Radu Programmer
Top bots traffic - http://traffic-bots.com. ... **Fake
Traffic Generator** Bot ... Free Automatic
Genuine Traffic ...

Fake traffic generator software|Generates web site fake traffic
www.soft.tahionic.com/download-million-clicks/ ▾
Program description. One Million Clicks software can simulate
**traffic** on a web page, web script, image, ad, commercial
banner. The **traffic** counters (for example ...

Fake Traffic Generator Bot - Apps | CodeCanyon
codecanyon.net/item/**fake-traffic-generator**-bot/7995040 ▾
Rating: 4.6 - 18 votes - $6.00
Jun 30, 2014 - Bot **Traffic** Increased **traffic** for your website
This bot **traffic** is an automation that allows you to navigate a
website using multiple threads ...

How to generate fake traffic using the Tor Browser
www.instructables.com/.../How-to-generate-**fake-traffic**-usin... ▾ Instructables ▾
This is a mini instructable on how to generate **fake traffic** using
the Tor Browser. Some servers have protection against this but
some don't. So this instructable ...

Best fake traffic generator atm - Bot - BlackHatWorld
www.blackhatworld.com › ... › Black Hat SEO › Black Hat SEO Tools ▾
Jun 27, 2012 - 29 posts - 16 authors
Hi all, Looking for a nice **fake traffic** bot - one that can show a
range of ips - any tips welcome.

| [GET] BlackHat **Fake** Hits Wizard **Traffic Generator** V3 | 36 posts | Nov 25, 2 |
|---|---|---|
| **Fake traffic generator**? | 16 posts | Feb 1, 20 |
| Fatboys **Fake Traffic Generator** | 45 posts | Dec 16, 2 |
| **Fake traffic generator** | 45 posts | Jun 27, 2( |

More results from www.blackhatworld.com

Traffic Generator Bot – Google Organic Search Bot
**trafficgeneratorbot**.com/ ▾
The best **traffic generator** bot on the market. ... Our bot has a
list of **fake** user agents and this means that your visitors will
appear to come from various sources ...

Fake Traffic Maker | FakeTrafficMaker.com
www.**faketrafficmaker**.com/ ▾
Faketrafficmaker.com offers **fake traffic** script. The script
sends **fake traffic** to Google Analytics account. There is no
limit on how many unique visitors you can ...

Http Traffic Generator Download - Softpedia
www.softpedia.com › Windows › Internet › Other Internet Related ▾
Rating: 3.5 - 28 votes - Windows - Internet Browser
Jul 30, 2014 - Http **Traffic Generator** is an intuitive application
designed to help website owners test their webpages by
creating **fake** traffic. It comes equipped ...

Searches related to fake traffic generator

| | |
|---|---|
| fake traffic **ticket** generator | **free** fake traffic generator |
| fake traffic generator **script** | **website** traffic generator **tool** |
| fake traffic generator **online** | fake **hit** generator |
| fake traffic generator **mac** | **ez** fake traffic **maker** |

Objector Exhibit _R_

_2_ of _2_

1 2 3 4 5 6 7 8 9 10        Next

Metairie, LA - From your Internet address - Use precise location - Learn mor

Help      Send feedback      Privacy      Terms

https://www.hefflercases.com/cases/





**Heffler Claims**
Group

HOME     CONTACT

Home     Cases     Filing Guidelines     General FAQs



Case Search

Home

Cases

Filing Guidelines

General FAQs

Contact

# Cases

### CURRENT CASES

Browse cases below alphabetically by category or by using the Case Search fun

Objector Exhibit __S__

__1__ of __11__

1/4/2016 11:31 PM

## LEGAL NOTICE BY ORDER OF THE COURT

**IF YOU WERE A CHASE CREDIT CARD HOLDER AND WERE ENROLLED IN OR BILLED FOR A PAYMENT PROTECTION PRODUCT AT ANY TIME BETWEEN SEPTEMBER 1, 2004 AND NOVEMBER 11, 2010, THIS NOTICE DESCRIBES YOUR RIGHTS IN CONNECTION WITH A SETTLEMENT OF A LAWSUIT**

*A court authorized this Notice.*
*This is not a solicitation from a lawyer.*
***This is not a legal action against you.***

This notice describes a proposed class action settlement involving Chase payment protection products – products under which credit card debt can be forgiven or suspended under certain circumstances. If you had a Chase credit card (including certain store cards) and you fit the description of the settlement class:

- You can make a claim for an amount estimated to be **$60** (before fees and expenses) if you applied for payment protection benefits and were denied those benefits;

- You can make a claim for an amount estimated to be **$30** (before fees and expenses) if you were enrolled or billed for a payment protection product without your knowledge or consent;

- You can make a claim for an amount estimated to be **$30** (before fees and expenses) if you were self-employed, retired, seasonally employed, or employed less than 30 hours per week (or less than 15 hours per week for students), or voluntarily forfeited your job (resigned) at some point during your enrollment in a Chase payment protection product;

- You can make a claim for an amount estimated to be **$15** (before fees and expenses) if you were not completely satisfied with the payment protection product in which you were enrolled.

- You must fill out a simple, 1-page claim form on-line at *www.KardonickSettlement.com*, or you may make a written request for a paper claim form to: Kardonick Settlement Administrator; P.O. Box 280; Philadelphia, PA 19105-0280 and submit it so that it is received by the deadline of August 8, 2011 to receive benefits from the settlement;

- If you want to exclude yourself from the Settlement (and receive no money from the Settlement), the Kardonick Settlement Administrator must receive your request for exclusion no later than August 19, 2011 at the address above. If the Settlement is approved and you do not exclude yourself, you will be bound by the Settlement and will release certain claims described below.

- The deadline for objecting to the Settlement is August 19, 2011.

Please read this notice carefully. It describes your rights and options under the Settlement.

**<u>DO NOT</u>** CALL OR WRITE THE COURT, THE COURT CLERK'S OFFICE, CHASE, OR CHASE'S COUNSEL FOR MORE INFORMATION.

Objector Exhibit _S_

_2_ of _11_

## 7. WHAT IF I DO NOT AGREE WITH THE SETTLEMENT?

If you are a member of the Settlement Class, you may object to the Settlement or any part of the Settlement that you think the Court should reject, and the Court will consider your views. To object, send a letter setting forth (1) the name and case number of this lawsuit (*Kardonick v. JPMorgan Chase & Co.*, Case No. 10-cv-23235, (S.D. Fla.)); (2) your full name and current address; (3) either the number that appeared on the label of the postcard you received about this Settlement, the last four digits of your Social Security Number, or the last four digits of any Chase credit card account that was enrolled in a Payment Protection Product at some time between September 1, 2004 and November 11, 2010; (4) the reasons why you object to the Settlement; and (5) your signature. **Your objection must be mailed in time to be received by the Court and counsel for the Plaintiffs and the Defendants no later than August 19, 2011.** If you mail a timely objection, the Court may permit you to speak about the settlement at a hearing currently scheduled for September 9, 2011. Objections should be mailed to all three of the following:



Clerk of the Court

Southern District of Florida

400 North Miami Ave.

Miami, Florida 33128

Carney Williams Bates Bozeman & Pulliam, PLLC

11311 Arcade Drive, Suite 200

Little Rock, Arkansas 72212

Zachary Parks

Covington & Burling LLP

1201 Pennsylvania Avenue NW

Washington, DC 20004

Objector Exhibit 5

3 of 11

## 8. HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT CLASS IN THIS CASE?

If you want to keep the right to sue or continue to sue Chase, on your own, about any of the released claims, you must exclude yourself from the Settlement Class. If you exclude yourself, you will not be eligible to recover any benefits as a result of this Settlement.

To exclude yourself from the Settlement Class, you must send a letter by mail and include: (1) the name and case number of this lawsuit (*Kardonick et. al. v. JPMorgan Chase & Co. et al.*, Case No. 10-cv-23235); (2) your full name and current address; (3) either the number that appeared on the label of the postcard you received about this Settlement, the last four digits of your Social Security Number, or the last four digits of any Chase credit card account that was enrolled in a Payment Protection Product at some time between September 1, 2004 and November 11, 2010; (4) a statement that you wish to exclude yourself from the Settlement Class; and (5) your signature. You must mail your exclusion request to the following address so that it is received no later than August 19, 2011 to: Kardonick Settlement Administrator; P.O. Box 280; Philadelphia, PA 19105-0280.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

# If You Purchased <u>Choline Chloride</u> Between 1988 and 1998, You could be Affected by a Proposed Class Action Settlement.

*A Federal Court authorized this notice. This is not a solicitation from a lawyer.*

- There is a Proposed Settlement in a class action lawsuit about Choline Chloride. The lawsuit is called *In re Vitamins Antitrust Litigation*. The lawsuit is pending in the United States District Court for District of Columbia.

- Under the Proposed Settlement, DCV, Inc. and DuCoa L.P. will transfer essentially all of their assets to purchasers of Choline Chloride. The main assets are money owed to DCV by another company, Arkion Life Sciences, LLC, and a portion of Arkion owned by DCV. If the Proposed Settlement is approved, lawyers for the Class will attempt to recover money from these assets and distribute money to Class Members. **No money is available to you at this time.**

- You may be affected by this Proposed Settlement if you directly purchased choline chloride for delivery in the United States from January 1, 1988 through September 30, 1998 and have not excluded yourself from the Class.

- Your legal rights are affected whether you act or don't act. Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS PROPOSED SETTLEMENT: | | |
|---|---|---|
| YOU MAY: | | DUE DATE: |
| OBJECT | Write to the Court about why you don't like the Proposed Settlement. | Received by April 2, 2009 |
| GO TO A HEARING | Ask to speak to the Court about the fairness of the Proposed Settlement. | Received by April 2, 2009 |
| DO NOTHING | Take no position on the Proposed Settlement and wait for more information. | |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

## WHAT THIS NOTICE CONTAINS

| | PAGE |
|---|---|
| BASIC INFORMATION | **2** |
| 1. Why did I get this notice package? | 2 |
| 2. What is this lawsuit about? | 2 |
| 3. Why is this a class action? | 2 |
| 4. Why is there a Proposed Settlement? | 2 |
| | |
| WHO IS AFFECTED BY THE PROPOSED SETTLEMENT? | **2** |
| 5. How do I know if I am part of the Proposed Settlement? | 2 |
| 6. Are there exceptions to being included? | 3 |
| 7. I'm still not sure if I am included. | 3 |
| | |
| THE PROPOSED SETTLEMENT BENEFITS | **3** |
| 8. What does the Proposed Settlement provide? | 3 |
| 9. Will I receive a payment? | 3 |
| | |
| THE LAWYERS REPRESENTING YOU | **3** |
| 10. Do I have a lawyer in this case? | 3 |
| 11. Will the lawyers be paid? | 3 |
| | |
| OBJECTING TO THE PROPOSED SETTLEMENT | **3** |
| 12. How do I tell the Court that I don't like the Proposed Settlement? | 3 |

Objector Exhibit 5

4 of 11

### 6. Are there exceptions to being included?

Governmental entities, defendants, and other manufacturers of vitamins, vitamin premixes, and bulk vitamin products, and their respective subsidiaries and affiliates, are not Class Members. In addition, persons and entities who excluded themselves from the Class are not Class Members.

### 7. I'm still not sure if I am included.

If you are still not sure whether you are included, you can ask for free help. See Question 18 below.

## THE PROPOSED SETTLEMENT BENEFITS

### 8. What does the Proposed Settlement provide?

DCV and DuCoa have agreed to transfer essentially all of their assets to Class Members. These assets include a promissory note from Arkion Life Sciences LLC for $4,419,395.86, and a 21.334 percent interest in Arkion. A complete list of assets is contained in the Settlement Agreement.

### 9. Will I receive a payment?

No money is available to you at this time. Lawyers for the class will attempt to recover money from Arkion. If they are successful, you will receive additional information about how much money is available to you and how to make a claim.

## THE LAWYERS REPRESENTING YOU

### 10. Do I have a lawyer in this case?

The Court asked the law firms of Hausfeld LLP; Boies, Schiller & Flexner, LLP; and Susman Godfrey LLP to represent the Class. These lawyers are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 11. Will the lawyers be paid?

Class Counsel were awarded attorneys' fees from earlier settlements in this case. They are not seeking fees at this time. If they are successful in recovering money from Arkion and seek additional fees, you will receive notice and will have an opportunity to object.

## OBJECTING TO THE PROPOSED SETTLEMENT

You can tell the Court that you don't agree with the Proposed Settlement or some part of it.

### 12. How do I tell the Court that I don't like the Proposed Settlement?

If you're a Class Member, you can object to the Proposed Settlement if you don't like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must send a letter that includes the following:

- A statement saying that you object to the Proposed Settlement in *In re Vitamins Antitrust Litigation*,
- Your name, address, telephone number, and your signature, and
- The reasons you object to the Proposed Settlement.

You must file the objection with the Court at the following address, **received by April 2, 2009:**



Clerk of Court
United States District Court
for the District of Columbia
333 Constitution Avenue, N.W.
Washington, DC 20001

You must also mail copies of the objection to the following attorneys, **postmarked by April 2, 2009:**

Michael D. Hausfeld
Hausfeld LLP
1700 K Street, NW, Suite 650
Washington, DC 20006

Lawrence J. Kotler
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103-4196

Objector Exhibit ___

5 of 11

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

# If you bought Toprol-XL directly from AstraZeneca, you could get a payment from a class action settlement.

*A federal court authorized this notice. It is not a solicitation from a lawyer.*

- The purpose of this notice is to alert you to the existence of a Class Action Lawsuit (the "Lawsuit") brought by Direct Purchasers of Toprol-XL (metoprolol succinate) against Defendants AstraZeneca Pharmaceuticals LP, AstraZeneca LP, AstraZeneca AB and Aktibolaget Hassle (collectively, "AZ" or the "Defendants"), and giving you the opportunity to exclude yourself from the Lawsuit by taking action within 30 days of this Notice.  The Lawsuit asserts that the Defendants violated antitrust laws relating to the sale of Toprol-XL, a prescription pharmaceutical.  Defendants have denied any wrongdoing.

- This notice is also to inform you that a settlement with the Defendants has been reached (the "Settlement") and that the Court has certified, for purposes of settlement, a class of certain entities that purchased Toprol-XL directly from the Defendants at any time between May 5, 2005 and September 23, 2011 (the "Class" or the "Direct Purchaser Class") that will provide a total of $20 million ($20,000,000.00) to resolve the Class's claims against the Defendants (the "Settlement Fund").  Defendants have also agreed to pay, in addition to the $20 million payment, up to $750,000 toward the costs associated with administration of notice to the Class and distribution of the Settlement Fund to all claimants.

- The Court has scheduled a hearing to decide upon final approval of the settlement, the plan for allocating the Settlement Fund to Class Members (summarized in Question 8 below), and Class Counsel's request for reimbursement of costs and payment of attorneys' fees out of the Settlement Fund.  That hearing is scheduled for January 26, 2012 at 2:00 p.m. EST before Magistrate Judge Mary Pat Thynge (to whom this matter was referred by consent of the parties pursuant to an Order signed by Chief U.S. District Court Judge Gregory M. Sleet on November 15, 2011) in Courtroom 2B at the United States District Court for the District of Delaware, J. Caleb Boggs Federal Building, 844 N. King Street, Room 4324, Unit 19, Wilmington, Delaware 19801-3569.

- Your legal rights are affected whether you act or don't act.  Please read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM AS PROMPTLY AS POSSIBLE** | You do not need to do anything now to retain your right to seek a share of the Settlement Fund.  But if the Settlement with the Defendants is approved and you are a Class Member, at a later date, you will need to complete, sign and return a Claim Form to obtain a share of the Settlement Fund. |
| **EXCLUDE YOURSELF** | You will not share in the Settlement, you will not be legally bound by anything that happens in this Lawsuit, and you may be able to sue (or continue to sue) Defendants in the future about the legal issues in this case. |
| **OBJECT** | Write to the Court about why you do not like the Settlement. |
| **GO TO A HEARING** | Ask to speak to the Court about the fairness of the Settlement with the Defendants. |

Objector Exhibit 5

6 of 11

Claims Administrator: www.toproldirectsettlement.hrsclaims.com. These papers will also be available at the office of the Clerk of the United States District Court for the District of Delaware, J. Caleb Boggs Federal Building, 844 N. King Street, Room 4324, Unit 19, Wilmington, Delaware 19801-3569, during normal business hours.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the Settlement with the Defendants or some part of it, and/or the application for attorneys' fees, costs, and expenses, and/or the service awards. If you exclude yourself from the Class, however, you can not object to the Settlement or application for fees, costs, expenses and service awards.

### 17. How do I tell the Court that I do not like the Settlement with the Defendants?

If you are a Class Member (and have not excluded yourself), you can object to the settlement if you do not like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must send a letter via first class U.S. mail saying that you object to the settlement in *In re Metoprolol Succinate Direct Purchaser Antitrust Litigation,* Civil Action No. 06-cv-52 (D. Del.). Be sure to include your name, address, telephone number, your signature, and the reasons you object to the Settlement. Mail the objection to all of the following:

| | | |
|---|---|---|
| Eric L. Cramer | Linda P. Nussbaum | Thomas M. Sobol |
| Berger & Montague, P.C. | Grant & Eisenhofer, P.A. | David S. Nalven |
| 1622 Locust Street | 485 Lexington Ave. | Hagens Berman Sobol Shapiro, LLP |
| Philadelphia, PA 19103 | New York, NY 10017 | 55 Cambridge Parkway, Suite 301 |
| (215) 875-3000 | (646) 722-8500 | Cambridge, MA 02142 |
| | | (617) 482-3700 |
| | | |
| John W. Treece | Michael Kelly | Clerk of the United States District |
| Sidley Austin LLP | James J. Freebery | Court for the |
| One South Dearborn | McCarter & English, LLP | District of Delaware |
| Chicago, IL 60603 | Renaissance Center | J. Caleb Boggs Federal Building |
| (312) 853-7000 | 405 N. King Street, 8th Floor | 844 N. King Street |
| | Wilmington, DE 19801 | Wilmington, DE 19801-3569 |
| | (302) 984-6300 | |

Your objection **must be postmarked no later than January 4, 2012.**

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement. You may attend and, if you have not excluded yourself from the Class, you may ask to speak, but you do not have to.

### 18. When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing at **2:00 pm on January 26, 2012**, in Courtroom 2B at the United States District Court for the District of Delaware, J. Caleb Boggs Federal Building, 844 N. King Street, Wilmington, Delaware 19801-3569. At this hearing, the Court will consider whether the Settlement is fair, reasonable and adequate. If there are objections, the Court will consider them. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

### 19. Do I have to come to the hearing?

No. Class Counsel will answer questions that Magistrate Judge Thynge may have. But you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you mail your

7

Objector Exhibit 5

7 of 11

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

# If you bought MiraLax directly from Braintree Laboratories, Inc., you could get a payment from a class action settlement.

*A federal court authorized this notice. It is not a solicitation from a lawyer.*

- The purpose of this notice is to alert you to the existence of a Class Action Lawsuit (the "Lawsuit") brought by Direct Purchasers of MiraLax (polyethylene glycol 3350) against Defendant Braintree Laboratories, Inc. ("Braintree"), and giving you the opportunity to exclude yourself from the Lawsuit by taking action within 45 days of the mailing of this Notice. The Lawsuit asserts that Braintree violated antitrust laws relating to the sale of MiraLax, which was previously a prescription drug. Braintree has denied any wrongdoing.

- This notice is also to inform you that the Court has certified, in light of settlement, a class of certain entities that purchased MiraLax directly from Braintree at any time between December 23, 2003 and December 1, 2006 (the "Class" or the "Direct Purchaser Class"), and that a settlement between the Class and Braintree has been reached that will provide a cash payment of $17,250,000.00 to resolve the Class's claims against Braintree (the "Settlement Fund").

- The Court has scheduled a hearing to decide whether to approve of the Settlement, the plan for allocating the Settlement Fund to Class Members (summarized in response to Question 8 below), and Class Counsel's request for reimbursement of costs and payment of attorneys' fees out of the Settlement Fund. That hearing is scheduled for May 31, 2012 at 4:30 p.m. before Chief U.S. District Court Judge Sue L. Robinson in Courtroom 4B at the United States District Court for the District of Delaware, J. Caleb Boggs Federal Building, 844 N. King Street, Wilmington, Delaware 19801-3569.

- Your legal rights are affected whether you act or don't act. Please read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM AS PROMPTLY AS POSSIBLE** | You do not need to do anything now to retain your right to seek a share of the Settlement Fund. But if the Settlement with Braintree is approved and you are a Class Member, at a later date, you will need to complete, sign and return a Claim Form to obtain a share of the Settlement Fund. |
| **EXCLUDE YOURSELF** | You will not share in the Settlement, you will not be legally bound by anything that happens in this Lawsuit, and you may be able to sue (or continue to sue) Braintree in the future about the legal issues in this case. |
| **OBJECT** | Write to the Court about why you do not like the Settlement. |
| **GO TO A HEARING** | Ask to speak to the Court about the fairness of the Settlement with Braintree. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the Settlement with Braintree, and if it does not, the lawyers will need to prove the claims against Braintree at trial.

Objector Exhibit 5

8 of 11

**17. How do I tell the Court that I do not like the Settlement with Braintree?**

If you are a Class Member (and have not excluded yourself), you can object to the Settlement if you do not like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must send a letter via first class U.S. mail saying that you object to the settlement in *Rochester Drug Co-Operative, Inc., et al. v. Braintree Labs., Inc.,* Civil Action No. 07-cv-142 (D. Del.). Be sure to include your name, address, telephone number, your signature, and the reasons you object to the Settlement. Mail the objection to all of the following:

Eric L. Cramer
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
(215) 875-3000

*Attorney for the Class*

Linda P. Nussbaum
Grant & Eisenhofer, P.A.
485 Lexington Ave.
New York, NY 10017
(646) 722-8500

*Attorney for the Class*

Bruce E. Gerstein
Garwin Gerstein & Fisher, LLP
1501 Broadway, Suite 1416
New York, NY 10036
(212) 398-0055

*Attorney for the Class*

Michelle D. Miller
Wilmer Cutler Pickering
Hale and Dorr, LLP
60 State Street
Boston, MA 02109
(617) 526-6000

*Attorney for Braintree Laboratories, Inc.*

Clerk of the United States District
Court for the
District of Delaware
J. Caleb Boggs Federal Building
Room 4109, Unit 18
844 N. King Street
Wilmington, DE 19801-3569

Objector Exhibit ___S___

9 of 11

Your objection **must be postmarked no later than April 12, 2012**, or 45 days from the date of this Notice.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement. You may attend and, if you have not excluded yourself from the Class, you may ask to speak, but you do not have to.

**18. When and where will the Court decide whether to approve the settlement?**

The Court will hold a Fairness Hearing at **4:30 p.m. on May 31, 2012,** in Courtroom 4B at the United States District Court for the District of Delaware, J. Caleb Boggs Federal Building, 844 N. King Street, Wilmington, Delaware 19801-3569. At this hearing, the Court will consider whether the Settlement is fair, reasonable and adequate. If there are objections, the Court will consider them. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

**19. Do I have to come to the hearing?**

No. Class Counsel will answer questions that Judge Robinson may have. But you are welcome to come at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you mail your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but it is not necessary. Moreover, attendance is not necessary to receive a *pro rata* share of the Net Settlement Fund.

**20. May I speak at the hearing?**

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter via first class U.S. mail saying that it is your "Notice of Intention to Appear in *Rochester Drug Co-Operative, Inc., et al. v. Braintree Labs., Inc.,* Civil Action No. 07-cv-142 (D. Del.)." Be sure to include your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be postmarked no later than **April 12, 2012,** and must be sent to the

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN — SOUTHERN DIVISION**

IN RE PACKAGED ICE ANTITRUST LITIGATION

Case Number: 08-MD-01952

THIS DOCUMENT RELATES TO:
DIRECT PURCHASER ACTIONS

Honorable Paul D. Borman

**NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION**
**WITH ARCTIC GLACIER INC., ARCTIC GLACIER INTERNATIONAL, INC.,**
**AND ARCTIC GLACIER INCOME FUND AND PROOF OF CLAIM FORM**

TO:   **All Purchasers Of Packaged Ice Who Purchased Packaged Ice In The United States Directly From Arctic Glacier Inc., Arctic Glacier International, Inc., Arctic Glacier Income Fund, Reddy Ice Corporation, Reddy Ice Holdings or Home City Ice Company (The "Defendants") Or Their Subsidiaries Or Affiliates (And All Predecessors Thereof) At Any Time During The Period From And Including January 1, 2001 To And Including March 6, 2008.**

**PLEASE READ THIS ENTIRE NOTICE AND THE CLAIM FORM CAREFULLY. YOUR LEGAL RIGHTS MAY BE AFFECTED BY A LAWSUIT NOW PENDING IN THIS COURT.**

This Notice is given pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Eastern District of Michigan. The purpose of this Notice is to inform you that a proposed settlement has been reached between a class of direct purchasers of Packaged Ice and Arctic Glacier Inc., Arctic Glacier International, Inc. and Arctic Glacier Income Fund (collectively, "Arctic Glacier") under which Arctic Glacier will pay the amount of Twelve Million Five Hundred Thousand Dollars ($12,500,000)[1]. The proposed settlement also requires Arctic Glacier to cooperate in the prosecution of the claims. **You will be entitled to share in the proceeds of settlements approved by the Court, subject to the conditions set forth below, if you complete and submit the attached Claim Form postmarked no later than November 26, 2011.**

"Packaged Ice" means ice packaged in bags, as well as ice in blocks. **If you purchased Packaged Ice in the United States during the Class Period directly from any of the Defendants — Arctic Glacier, Reddy Ice, and/or Home City — or their subsidiaries or affiliates (and all predecessors thereof), you are a member of the Settlement Class and have the rights summarized below, including the right to submit a claim for a portion of the settlement amounts paid by Arctic Glacier, and previously by Home City.**

Your legal rights and options with respect to this class action are to:

* Remain in the Settlement Class and be entitled to share in the Arctic Glacier settlement funds when there is a distribution to the Settlement Class members. By staying in the Settlement Class you will be giving up your right to sue, to continue to sue, to be part of any other lawsuit, or to sue in the future Arctic Glacier or the other Releasees about the Released Claims. Also, all of the Court's orders will apply to you and legally bind you, and you will release your claims in this lawsuit against Arctic Glacier and the other Releasees.
* Exclude yourself from the Settlement Class by mailing a written request for exclusion as described below, in which case you will not be entitled to receive any distribution from the Arctic Glacier settlement funds, but you will not be prohibited from participating in another lawsuit against Arctic Glacier asserting the claims being released in this lawsuit against Arctic Glacier and the other Releasees.
* If you do not exclude yourself from the Settlement Class, you may object to the proposed Arctic Glacier settlement or object to the request by Class Counsel for an award of attorneys' fees and reimbursement of expenses. You may also appear at the hearing before the Court that will be held to determine whether the proposed Arctic Glacier settlement should be approved as fair, adequate, and reasonable, and to consider Class Counsel's request for an award of attorneys' fees and reimbursement of expenses.
* Enter an appearance in the litigation through your own counsel at your own expense.
* **Share in a distribution of the settlement funds by completing and submitting the attached Claim Form postmarked no later than November 26, 2011.**

I.   **DEFINITION OF THE SETTLEMENT CLASS**

On July 20, 2011, the Court ordered that notice of the Arctic Glacier settlement be disseminated to a Settlement Class defined as follows:

All purchasers of Packaged Ice who purchased Packaged Ice in the United States directly from any of the Defendants or their subsidiaries or affiliates (including all predecessors thereof) at any time during the period from January 1, 2001 to March 6, 2008. Excluded from the Settlement Class are governmental entities and Defendants, including their parents, subsidiaries, predecessors or successors, and Defendants' alleged co-conspirators.

[1] As set forth in Section III below, the amount available for distribution to class members is st

Objector Exhibit ____5____

10 of 11

## IV.  CONSEQUENCES OF SETTLEMENT CLASS MEMBERSHIP

### A.  Remaining In The Arctic Glacier Settlement Class

You will remain a Settlement Class member unless you elect to be excluded. **If you wish to remain in the Settlement Class, you do not need to take any action at this time and your interests will be represented by Plaintiffs and by Class Counsel.** If you choose, you may also have your own attorney enter an appearance in the Action on your behalf and at your expense. As a Settlement Class member you will have no responsibility to individually pay attorneys' fees or expenses. Any such fees and expenses will be paid solely from the settlement funds, as approved by the Court.

**As described more fully in B., below, and in the Claim Form, to share in the settlement funds you must complete the attached Claim Form and submit it postmarked no later than November 26, 2011.**

If you remain in the Settlement Class, and the final judgment order dismissing Arctic Glacier from the litigation becomes final and unappealable, you will be bound by the judgment or other final disposition of this litigation as to Arctic Glacier and the Releasees.

### B.  Filing a Proof of Claim Form

You were previously notified about the $13.5 million Home City settlement. The Court approved the Home City settlement on February 22, 2011. If the Home City and Arctic Glacier settlements are approved by the Court, the $13.5 million Home City settlement amount will be combined with the $12.5 million Arctic Glacier settlement payment into a single settlement fund from which the MFN refund (if any), attorneys' fees and costs, and distribution to class members would be paid. **In order to share in the Home City or Arctic Glacier settlement funds, you must complete the attached Claim Form and submit it postmarked no later than November 26, 2011. You may file a claim for all of your purchases of Packaged Ice, whether made from Arctic Glacier, Reddy Ice, and/or Home City.** Instructions for filling out and submitting the Claim Form are on the attached Claim Form.

### C.  Excluding Yourself From The Arctic Glacier Settlement Class

If you wish to exclude yourself from the Settlement Class you must send a request for exclusion, in writing, via certified mail, return receipt requested, postmarked no later than October 8, 2011 to Class Counsel:

> Joseph C. Kohn
> Robert J. LaRocca
> William E. Hoese
> KOHN, SWIFT & GRAF, P.C
> One South Broad Street, Suite 2100
> Philadelphia, PA 19107

The request for exclusion must contain the full name of the purchaser, including any predecessor or successor entities, the dollar amount of the purchases of Packaged Ice from the Defendants during the Class Period, and the purchaser's address. If you exclude yourself from the Settlement Class, then: (1) you will not be bound by the settlement with Arctic Glacier and you can pursue any claims you may have against Arctic Glacier at your own expense; but (2) you will not share in the proceeds of the proposed settlement with Arctic Glacier.

### D.  Objections To The Arctic Glacier Settlement

Any Settlement Class member who wishes to object to any aspect of the settlement (or the application by Class Counsel for an award of attorneys' fees and reimbursement of expenses described below), must do so in writing. The objection must: include the caption of this litigation; be signed; and be filed no later than October 8, 2011 with the Clerk of Court, United States District Court for the Eastern District of Michigan, Theodore Levin United States Courthouse, 231 West Lafayette Boulevard, 5th Floor, Detroit, Michigan 48226, and also must be sent to:

| | |
|---|---|
| Joseph C. Kohn<br>Robert J. LaRocca<br>William E. Hoese<br>KOHN, SWIFT & GRAF, P.C<br>One South Broad Street<br>Suite 2100<br>Philadelphia, PA 19107<br>(215) 238-1700<br><br>*Class Counsel* | John M. Majoras<br>Jones Day<br>51 Louisiana Avenue, N.W.<br>Washington, D.C. 20001-2113<br>(202) 879-7652<br><br>Eric P. Enson<br>Jones Day<br>555 South Flower Street, Fiftieth Floor<br>Los Angeles, CA 9007-2300<br>(213) 243-2304<br><br>Paula W. Render<br>Jones Day<br>77 West Wacker Street<br>Chicago, IL 60601-1692<br>(312) 782-3939<br><br>*Counsel for Arctic Glacier Income Fund,*<br>*Arctic Glacier, Inc., and Arctic Glacier International, Inc.* |

Objector Exhibit 5

11 of 11

**From:** Laura F. Hron <member@linkedin.com>
**To:** Steve Glaviano <TrustSteve@aol.com>
**Subject:** Steve, please add me to your LinkedIn network
**Date:** Tue, Dec 8, 2015 11:59 am

LinkedIn

Hi Steve,

I'd like to connect with you on LinkedIn.

**Laura F. Hron**
Research Director at Class Action Services Holdings dba Risk Settlements

| Accept | View Profile |

You are receiving Invitation emails. Unsubscribe
This email was intended for Steve Glaviano (Owner, TrustGroup Insurance Agency). Learn why we included this.
If you need assistance or have questions, please contact LinkedIn Customer Service.

© 2015, LinkedIn Corporation. 2029 Stierlin Ct. Mountain View, CA 94043, USA

Objector Exhibit ___

___ of ___

# RISK
## SETTLEMENTS

Login (http://45.56.127.109/)   ☰ 

(http://risksettlements.com/)



## Class Action Consulting

Class action litigation exposes companies to tremendous risks and uncertainty, including:

- Large financial liability
- Increasing expenses to defend
- Uncertain result and ultimate cost
- Damage to brand reputation
- Impaired liquidity and financial planning

While these issues may seem daunting and difficult to manage, we can assist you in assessing, analyzing and ultimately exiting the litigation. The process starts with a review of the risks and opportunities arising from lawsuit allegations and the nature of the class. Using proprietary analytics, statistics drawn from our historical settlement database and expertise, we identify those factors that create excess risk and perpetuate waste, fraud and abuse. We work seamlessly with our clients and their defense counsel to exit litigation at the lowest cost.

Contact us (http://risksettlements.com/contact) to learn more about how our consulting services can be used to:

- Assess the risk of pending or current class action litigation
- Review possible exit scenarios and cost/benefit analysis of litigation vs. settlement
- Create settlements which satisfy counsel and Court while saving substantial costs.
- Develop strategies to avoid and deal with objectors
- Overall strategy on how to best navigate the uncertainty of class litigation

Objector Exhibit U

1 of 4

More Products & Solutions →



**RISK**
SETTLEMENTS

Login (http://45.56.127.109/)

≡

(http://risksettlements.com/)



Objector Exhibit ___U___

___2___ of ___4___

## Class Action Settlement Insurance

Class action litigation (http://risksettlements.com/articles/white-paper-class-action-litigation) is one of the most powerful tools in the United States civil justice system and is affecting entire industries (http://risksettlements.com/articles/class-action-litigation-is-affecting-entire-industries). Being served with a class action lawsuit can, and probably should, jolt even the most hardened of company executives.

Class action litigation exposes companies to tremendous risks and uncertainty, including:

- Large financial liability.
- Increasing expenses to defend.
- Uncertain result and ultimate cost.
- Damage to brand reputation.
- Impaired liquidity and financial planning.

When resolving class litigation, companies face complications surrounding the recognition of the settlement on their financial statements stemming from uncertainty regarding the amount of payments to class members. This can lead to a significant reduction in earnings and impairment of the balance sheet (http://risksettlements.com/articles/class-action-litigation-

financial-and-tax-reporting). Unfortunately, settlement is just another step down the road of uncertainty.

Risk Settlements has created the only post-lawsuit settlement insurance product specifically designed to manage settlement risk, cap exposure and provide certainty to the uncertain world of class action settlements.

Class Action Settlement Insurance is a revolutionary new tool to help companies stop the expense and uncertainty of a class action lawsuit. With any claims-made settlement (http://risksettlements.com/articles/common-vs-claims-made), there is always a great risk that too much or even all of the potential amount available under the settlement will be paid out to cover class claims. Class Action Settlement Insurance ("CASI") allows settling defendants to shift the risk of a claims-made settlement to an insurer. A defendant settling a class action can purchase the settlement insurance for a fixed premium based on the circumstances of the case and settlement. The insurer will then step in and cover the cost of claims submitted under the settlement. The insurer, not the settling company, assumes the risk that the settlement will end up costing more than originally hoped.

CASI can be used in a variety of different class action cases (http://risksettlements.com/articles /what-type-of-class-litigation-is-best-suited-for-insurance) including:

- Deceptive or fraudulent marketing allegations.
- Employee claims (unpaid overtime, wage and hour, benefits, etc.)
- Telephone Consumer Protection Act (TCPA) violations.
- Defective product claims.
- Breach of contract or breach of warranty claims.

Objector Exhibit ∪

3 of 4

**Approach**

We analyze the financial risks associated with class action litigation and design fully insured settlements that reduce risk and cost. The process starts with a review of the risks and opportunities arising from lawsuit allegations and the nature of the class. Using proprietary analytics, statistics drawn from our historical settlement database and expertise, we identify those factors that create excess risk and perpetuate waste, fraud and abuse. We work seamlessly with our clients and their defense counsel to exit litigation at the lowest cost while providing a tailored insurance solution to protect the balance sheet. This consulting is done completely at our cost, with no risk to the company.

**CASI Solution**

Even well-designed settlements can have significant variability due to the uncertainty surrounding the number of class members that file claims for benefits. Class Action Settlement Insurance was developed to transfer that variability from the company to a global insurer. The CASI policy is simple in its operation; in exchange for a fixed premium payment, the insurer covers all valid claims made pursuant to the settlement agreement. Unlike traditional insurance products, with CASI there are no gaps in coverage because the policy is tailored to each individual settlement agreement. And the insurance is only purchased at the time the company is sure to need it – after the litigation has been filed.

**Benefits**

Armed with our class action litigation expertise, extensive historical claims database, and proprietary algorithms, we assist companies in analyzing the risk, structuring the settlement and insuring risk. Using our unique approach and innovative risk transfer solution, we have saved companies millions of dollars while providing the following additional benefits:

- Certainty as to the actual settlement costs.
- Preservation of shareholder equity.
- Mitigates financial impact of settlement and improves liquidity.
- Improves pathways to resolution ending expensive litigation.
- Risk transfer removing impediments for M&A transactions and financing.
- Financial security of a large A-rated A.M. Best insurer.

---

## More Products & Solutions →

### (http://risksettlements.com/our-products-services)

---

Objector Exhibit ∪

4 of 4

**Get In Touch**

(214) 570-3661 (tel:(214) 570-3661)

**Visit Us**

6900 N. Dallas Parkway
Suite 200

**Sign Up For Updates**

Email Address

**UNDER ORIGINAL WARRANTY,**
**TAURUS CHARGES $50 FOR SHIPPING LABEL TO SHIP A FIREARM TO TAURUS**

**EXCERPTS** from online posts at http://www.taurusarmed.net/forums/taurus-product-problems/141089-shipping-label-cost.html  Emphasis Added

05-21-2015, 12:03 PM #1
*******<u>ooter</u>[OP]

**Shipping label cost?**

> When I **talked to a Taurus service rep** yesterday about my PD Poly I was having a problem with she agreed that blowing primers, and missfires was definitely something that needed to be looked at. After giving me a service claim # she also said **she would send me a shipping label for $50. But advised me if I checked around I might be able to find shipping cheaper somewhere else.**
> Has anyone found that "cheaper" shipping rate? Or is it just as easy to get the label from Taurus for the $50?
>
> ****

5-21-2015, 02:41 PM #7
*****aff

> **I paid the $50**. Figured that was easier. I have had to ship 4 times, and I have always declared the contents like a good little boy. Twice I got a look of complete indifference, and once the gal had to "check with a supervisor." Guessing she was new.

---

**EXCERPTS** from online posts at https://forums.1911forum.com/showthread.php?t=485184
Emphasis added

N******1A1    03-15-2015, 03:11 AM  Post #7

Don't own a Taurus 1911. Like other 1911's, there are mixed reviews.
But do own a Model 850 revolver.

After maybe 300 rounds downrange, the cylinder timing was off. Sent it back to Taurus.
Got it back 3 weeks later. Timing issue fixed & forcing cone was reamed. Now it's operating just fine.

**My only complaint is that I had to pay Taurus $50 for a shipping label.**

EXHIBIT _V_

PAGE _1_ OF _4_

http://www.taurusarmed.net/forums/faq-s/100747-shipping-your-firearm-back-taurus.html

07-17-2013, 02:06 PM f Post #1
*******argo

# Shipping your firearm back to Taurus.

If your firearm needs to be shipped back to Taurus for Warranty work you have a few options.

If your firearm is new (less than 90 days) Taurus will pick up the shipping charges by sending you a prepaid shipping label. In some cases they have picked this up for up to a year, it never hurts to ask.

If past the 90 days **Taurus can offer you a prepaid shipping label. Currently they are charging $50.00 for this.**

Another option is to contact a local FFL dealer in your area and ask what they will charge to send the firearm in for you. They often have better rates because they have more options with their FFL and established shipping accounts.

The last option is taking it to UPS or FedEx yourself. If you follow their rules (as you should) by informing them it is a firearm you will be forced into a more expensive shipping option, most of the time being overnight delivery, which can easily be over the $50.00 option Taurus offers.

http://www.taurusarmed.net/forums/taurus-product-problems/119151-small-709-issues-big-customer-service-issues.html

05-08-2014, 01:57 PM #7
*******argo

Sorry to hear of the break in. I could never figure out the magazine issue my self either. Are there that many people looking for extra mags that Taurus can't keep up???

Cost of shipping a gun back has always been an issue. **My local FFL will ship it for me for $20.00. Because he has an FFL he can use the post office and get a better rate.**

EXHIBIT V

PAGE 2 OF 4

Tuesday, December 29, 2015 9:15:56 AM -UTC

**Pre-Chat Survey**

**Your Name:**
Bob

**Email Address (Send Transcript)**
REDACTED

**Phone Number:**

**Serial Number (if applicable):**
SES51841

Welcome to taurususa Bob, dayana will be right with you. Your chat ID is SMX122915092503-614

dayana 9:25:04 AM
Thank you for contacting customer Care. My name is Dayana, how may I assist you today ?

Bob 9:26:02 AM
Hi.

If I have to ship my 840C pistol o Taurus, does Taurus still charge $50 for a shipping label?

And if I decide to go that route, can I pay on a chat like this, or should the 800 number be called?

dayana 9:27:02 AM
Good afternoon

dayana 9:27:10 AM
yes you can ship the firearm to us for repair

dayana 9:27:16 AM
Attached are the links to the work order & the shipping instructions http://www.taurususa.com/repair-policy-shipping.cfm and http://www.taurususa.com/prelog.cfm

Bob 9:29:38 AM
Thanks. And does Taurus still offer to send a shipping label for $50?

dayana 9:30:08 AM
yes, once you shop around you can contact us for the label if you did not find anything more affordable

Bob 9:31:11 AM
Ok. If I need to get a shipping label from Taurus, is it better to do it through a chat like this, or should I call the 800 number?

dayana 9:31:43 AM
Please Call Toll Free: (800) 327-3776
Monday thru Friday - 8:00 AM to 10:00 PM (EST)

Bob 9:32:05 AM
Thank you Dayana. Have a nice day!

dayana 9:35:24 AM



EXHIBIT  V

PAGE  3  OF  4

you as well thank you

dayana has ended the chat

## Post-Chat Survey

Please leave a short response regarding the quality of service provided to you by our Operators.

**Message:**
Dayana was prompt and professional. Thank you.

EXHIBIT $\sqrt{}$

PAGE 4 OF 4

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| IAN POLLARD, on behalf of himself<br>and all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:13-cv-00086-ODS |
| | ) | |
| REMINGTON ARMS COMPANY, LLC, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| ─────────────────────────── | ) | |

## JOINT MOTION FOR FINAL SETTLEMENT APPROVAL

Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e), Plaintiffs[1] and Defendants Remington Arms Company, LLC, E.I. du Pont de Nemours & Company, and Sporting Goods Properties, Inc. move this Court to grant final approval of the Settlement Agreement that this Court preliminarily approved on April 14, 2015 (Doc. # 88).

The facts and arguments in support of this Motion are set forth in the accompanying Suggestions in Support filed herewith.

WHEREFORE, the Parties respectfully request that the Court grant their joint motion and: (1) grant final approval of the Settlement Agreement; (2) certify the Settlement Classes for the purposes of the Settlement Agreement; and (3) dismiss this Action on the merits and with prejudice.

Objector Exhibit W

1 of 3

─────────────────────

[1]  Dylan Anderson, Rodney Barbre, Wallace Brown, John Corsi, Chase Delperdang, Gordon Hardaway, Roger Keesy, William Massie, William Moodie, Gary Otis, Ian Pollard, James Waterman, and Mitchell Winterburn. (Doc. 90).

"the relatively small amount of potential recovery per individual" weighs in favor of class certification as a superior means of adjudication).  Moreover, seeking redress through individual litigation is highly uncertain and may not occur before a lengthy trial and appellate proceedings are complete.  *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d at 932; *Cohn v. Nelson*, 375 F. Supp. 2d 844, 859 (E.D. Mo. 2005) (noting that the possible length and complexity of further litigation is a relevant factor to consider when evaluating class action settlement).  In contrast, the Settlement provides Settlement Class Members with real benefits under a straightforward claims framework, while fully preserving their due process rights.  Accordingly, Rule 23's requirements for certification of the Settlement Classes are satisfied.

## VIII.   FINAL JUDGMENT SHOULD BE ENTERED, DISSMISSING THE ACTION ON THE MERITS AND WITH PREJUDICE, AND THE SETTLEMENT CLASS MEMBERS SHALL RELEASE ALL CLAIMS IN ACCORDANCE WITH THE TERMS OF THE SETTLEMENT AGREEMENT

### A.   Final Judgment Should be Entered.

Final judgment should be entered, dismissing the Action on the merits and with prejudice under Fed. R. Civ. P. 54.  The Settlement reached by the Parities, once approved by the Court, resolves the dispute.

### B.   The Release is Reasonable and Narrowly Drawn.

According to the Release contained in the Settlement Agreement, which is narrowly drawn to release only those claims at issue in this Action, Plaintiffs and every Settlement Class Member who does not opt out of the settlement by October 5, 2015, release all claims:

> . . . existing now or arising in the future, whether known or unknown, both at law and in equity which were or could have been brought against Defendants, or any of them, based upon or related in any way to the trigger mechanisms in the  rifle models subject to the Settlement Agreement or any component parts thereof . . . This release expressly exempts claims for personal injury and personal property damage.

*See* Ex. 1, ¶ 26 (Second Amended Settlement Agreement).  Because the Release applies only to those claims arising from the facts at issue in this Action, the Release is reasonable, and should be approved by the Court and ordered upon entry of final judgment.

## IX.   CONCLUSION

For the reasons stated above, the proposed Settlement Agreement is the product of serious, non-collusive, arm's-length negotiations, and is a fair, reasonable, and adequate resolution of Plaintiffs' claims, and the Settlement Classes meet the requirements of Federal Rules of Civil Procedure 23(a) and (b)(3).  As a result, the Parties respectfully request that the Court grant their motion and enter the proposed order attached hereto which: (1) grants final approval of the Settlement Agreement; (2) certifies the Settlement Classes for the purposes of the Settlement Agreement; and (3) dismisses this Action on the merits and with prejudice.

Respectfully submitted,

NEBLETT, BEARD & ARSENAULT                          SHOOK, HARDY & BACON LLP

_____s/ Richard Arsenault_____                    _____s/ John K. Sherk_____
Richard Arsenault                                    John K. Sherk, MO Bar #35963
2220 Bonaventure Court                               Amy M. Crouch, MO Bar #48654
Alexandria, LA 71301                                 Molly S. Carella, MO Bar #56902
Phone:  800-256-1050                                 2555 Grand Blvd.
Fax:  318-561-2592                                   Kansas City, MO 64108
rarsenault@nbalawfirm.com                            Phone:  816-474-6550
                                                     Fax:  816-421-5547
                                                     jsherk@shb.com
                                                     amcrouch@shb.com
                                                     mcarella@shb.com

Charles E. Schaffer                                  Dale G. Wills
LEVIN, FISHBEIN, SEDRAN & BERMAN                     SWANSON, MARTIN & BELL, LLP
510 Walnut Street, Suite 500                         330 North Wabash Avenue, Suite 3300
Philadelphia, PA 19106                               Chicago, Illinois  60611
Phone:  215-592-1500                                 Phone:  312-321-9100
Fax:  215-592-4663                                   Fax:  312-321-0990
cschaffer@lfsblaw.com                                dwills@smbtrials.com

Objector Exhibit W
3 of 3

mechanism that utilizes a trigger connector;

2. Current owners of Remington Model 700 and Model Seven rifles containing an X-Mark Pro trigger mechanism manufactured from May 1, 2006 to April 9, 2014 who did not participate in the voluntary X-Mark Pro product recall prior to April 14, 2015; and

3. Current and former owners of Remington Model 700 and Model Seven rifles who replaced their rifle's original Walker trigger mechanism with an X-Mark Pro trigger mechanism.

**WHAT DOES THE SETTLEMENT PROVIDE?**

Settlement Class Members may be entitled to: (1) have their trigger mechanism retrofitted with a new X-Mark Pro or other connectorless trigger mechanism at no cost to the class members; (2) receive a voucher code for Remington products redeemable at Remington's online store; and/or (3) be refunded the money they spent to replace their Model 700 or Seven's original Walker trigger mechanism with an X-Mark Pro trigger mechanism.

**HOW CAN I OBTAIN BENEFITS?**

12/14/15 - Fairness hearing seeking final approval

WARNING:
IF YOU CURRENTLY OWN A MODEL 700 OR MODEL SEVEN RIFLE WITH AN X-MARK PRO TRIGGER MANUFACTURED FROM MAY 1, 2006, TO APRIL 9, 2014, YOUR FIREARM IS THE SUBJECT OF AN ONGOING VOLUNTARY SAFETY RECALL. STOP USING YOUR FIREARM.

Any unintended discharge has the

Objector Exhibit ⤬

1 of 1

Objector Exhibit Y

1 of 1

```
 1        MR. SELBY:  His father.
 2        THE COURT:  His father?
 3        MR. SELBY:  Yes.
 4        And so, Your Honor, what occurred was in July of
 5   2013, while making an arrest in an undercover situation, the
 6   pistol dislodged from his pants, hit the ground and
 7   discharged.
 8        THE COURT:  His police unit does not issue weapons?
 9   You have to supply your own weapon?
10        MR. SELBY:  No.  They do issue weapons, Your Honor.
11   But in the role, he was on loan to a narcotics task force, and
12   because of the undercover role he was in, they were allowed to
13   qualify and carry their own personal weapons for the purpose
14   of concealment.  Their service-issued revolvers were not
15   easily concealed.  So that is the reason.
16        The record would reflect we would be able to show
17   that Mr. Carter was approved with that pistol at the time.
18        So what followed that unintended discharge was an
19   investigation by his department as to why this gun discharged,
20   and as Your Honor can imagine, he came under the magnifying
21   class as well.
22        He began to do research on, you know, why this pistol
23   fell off.  In doing that research, he actually pled through
24   the Internet to one of our cocounsel who's not here today, but
25   Todd Wheeles, and the reason he was led to Todd Wheeles is
```

# Summary of Changes

## Publication 52, *Hazardous, Restricted, and Perishable Mail*

Publication 52, *Hazardous, Restricted, and Perishable Mail,* has been updated, effective February 19, 2015, with the following changes:

| The chapter, subchapter, part, appendix, or section... | titled... | was... | in *Postal Bulletin* issue number... | with an issue date of... |
|---|---|---|---|---|
| Chapters 1-7 | 1. Introduction<br>2. General Guidelines<br>3. Hazardous Materials<br>4. Restricted Matter<br>5. Perishable Matter<br>6. International Mail<br>7. Air Transportation Requirements | revised to provide new standards for the mailing of lithium batteries and to align with current agency practices related to the elimination of PS Form 1770 and revisions to SP9275. | 22408<br>22409 | 2-5-15<br>2-19-15 |
| Appendix A | Hazardous Materials Table: Postal Service Mailability Guide | revised to provide new standards for the mailing of lithium batteries. | 22408 | 2-5-15 |
| Appendix B | Numerical Listing of Proper Shipping Names by Identification (ID) Number | revised to provide new standards for the mailing of lithium batteries. | 22408 | 2-5-15 |
| Appendix C | USPS Packaging Instructions for Mailable Hazardous Materials | revised to provide new standards for the mailing of lithium batteries and to align with current agency practices related to the elimination of PS Form 1770 and revisions to SP9275. | 22408<br>22409 | 2-5-15<br>2-19-15 |

Objector Exhibit __Z__

__1__ of __2__

intended for the addressee's official use. The affidavit must also bear a certificate stating that the firearm is for the official duty use of the addressee, signed by one of the following, as appropriate:

a.   For officers of Armed Forces, by the commanding officer.

b.   For officers and employees of enforcement agencies, by the head of the agency employing the addressee to perform the official duty with which the firearm is to be used.

c.   For watchmen, by the chief clerk of the department, bureau, or independent branch of the government of the United States, the state, the territory, or the district by which the watchman is employed.

d.   For the purchasing agent or other designated member of enforcement agencies, by the head of such agency, that the firearm is to be used by an officer or employee included in 432.21c through 432.21e.

## 432.23  Manufacturers, Dealers, and Importers

Handguns may also be mailed between licensed manufacturers of firearms, licensed dealers of firearms, and licensed importers of firearms in customary trade shipments, or for repairing or replacing parts.

## 432.24  Certificate of Manufacturers, Dealers, and Importers

A federal firearms licensee manufacturer, dealer, or importer need not file the affidavit under 432.22, but must file with the Postmaster a statement on PS Form 1508, *Statement by Shipper of Firearms,* signed by the mailer that he or she is a licensed manufacturer, dealer, or importer of firearms. The mailer must also state that the parcels containing handguns, or parts and components of handguns under 432.2d, are being mailed in customary trade shipments or contain such articles for repairing or replacing parts, and that to the best of their knowledge the addressees are licensed manufacturers, dealers, or importers of firearms. Registered Mail service is recommended.

Postmasters may forward an unsatisfactory mailer statement to the PCSC for a ruling.

## 432.25  Federal and Other Law Enforcement Agencies

Handguns may be mailed without regard to 432.21 through 432.24 if the item is:

a.   Addressed to a scientific laboratory or crime detection bureau of any federal, state, or local law enforcement agency whose members are authorized to serve warrants of arrest or commitment.

b.   Sent by an authorized agent of the federal government as an official shipment to any qualified addressee in 432.21, or to a licensed manufacturer, dealer, or importer of firearms, or to a federal agency.

Objector Exhibit ___Z___

___1___ of ___2___

1   two experts came to the mediation and shared their findings

2   with the defendant?

3        MR. SELBY:  Yes, Your Honor.

4        THE COURT:  So the defendant did not have to take

5   their depositions?

6        MR. SELBY:  That is correct, Your Honor.

7        THE COURT:  Good plan.  It's very expensive to depose

8   experts.

9        How much in the way of costs have you all incurred in

10  the way of experts, especially if they tested 24 exemplar

11  pistols and did 300 individualized drop tests?

12       MR. SELBY:  Right, Your Honor.  I know those numbers

13  are actually broken down, because the cost of obtaining

14  exemplar pistols is separate from the testing.  Some of the

15  testing labs are separate from actual hourly services charged

16  by Mr. Powell and Dr. Van Schoor.  We'll get that for Your

17  Honor here in just a second.

18       THE COURT:  Tell me, Mr. Selby, how do I get this

19  information into the record?  I don't want to run up

20  unnecessary legal costs, but I do need to make sure that I

21  have this type of information in the court record, so that if

22  anybody wants to investigate as to whether or not they want to

23  object, it's all there.

24       My job is to see if I can make sure that I make the

25  class comfortable; that they have all of the information; it's

Objector Exhibit AA

__1__ of __1__

The Court did not decide in favor of Plaintiff or Defendants. Instead, both sides agreed to a settlement. That way, they avoid the time and expense of going to trial. The Class Representative and his attorneys think the settlement is best for everyone.

Back to top

**How do I know if I am part of the settlement?**

The Court previously decided that everyone who fits the following description is a Settlement Class Member:

All Persons or entities of the United States, Commonwealth of Puerto Rico, U.S. Virgin Islands, and Guam who owned one or more of the following Taurus-branded firearms on July 30, 2015: PT-111 Millennium; PT-132 Millennium; PT-138 Millennium; PT-140 Millennium; PT-145 Millennium; PT-745 Millennium; PT-609; PT-640; and PT-24/7. The "Pro" Series of each model are also included. The settlement does not include Taurus G2 model pistols. Excluded from the Settlement Class are all state, local or federal governments, bodies or agencies, the District Court Judge and Magistrate Judge to whom the lawsuit is assigned and any member of their staffs and immediate families, as well as all persons who validly request exclusion from the Settlement Class.

Back to top

**What does the settlement provide?**

If approved, the proposed settlement will provide the following: the Taurus Companies will pay the costs of notice and administration; will pay a class representative incentive payment of up to $15,000; will make safety training available to all Settlement Class Members; will pay a cash payment to Settlement Class Members who timely submit a valid claim form and return their Class Pistol to the Taurus Companies; and will provide enhanced lifetime warranty benefits. More specifically:

1) Safety Training - The Taurus Companies have produced special and particularized safety training addressing the operation and handling of Class Pistols. Among other things, this safety training addresses proper handling and carrying to avoid dropping a pistol; educates owners concerning the safety features and safety systems in the Class Pistols; and provides information and instructions on how to properly store, pack, and ship the Class Pistols for return to the Taurus Companies.

The training video can be viewed online at www.TaurusCarterSettlement.com or you can request a hard copy DVD by calling 1-844-528-0180 or mailing Chris P. Carter v. Forjas Taurus S.A., c/o Heffler Claims Group, PO Box 230, Philadelphia, PA 19107-0230

2) Settlement Payment Option - Settlement Class Members may elect to return their Class Pistol to the Taurus Companies and receive a payment of up to $200 per Class Pistol. The Taurus Companies will pay shipping costs. The minimum payment if every Class Pistol were returned would be $31. The actual amount that you will receive will depend on the total number of Class Pistols returned. The amount of the cash payments will be based on the following schedule:

  a) if less than 10,000 Class Pistols are returned, the payment for each returned Class Pistol shall be $200;

  b) if 10,001 to 20,000 Class Pistols are returned, the payment for each returned Class Pistol shall be $175;

  c) if 20,001 to 200,000 Class Pistols are returned, the payment for each returned Class Pistol shall be $150; and

  d) if more than 200,000 Class Pistols are returned, the payment for each returned Class Pistol shall be less than $150 and shall be equal to a $30 Million aggregate cap divided by the number of Class Pistols returned.

3) Enhanced Warranty - The Taurus Companies agree to modify its existing warranty for all Class Pistols to allow any owner to submit a warranty claim at any time. The Class Pistol will be inspected by the Taurus Companies at no cost and repaired or replaced with a new pistol as necessary. The Taurus Companies will pay all costs associated with this enhanced warranty, including but not limited to the cost of shipping to and from the Taurus Companies and the cost to inspect the Class Pistol.

Complete details about the Enhanced Warranty can be found in the Enhanced Lifetime Warranty policy available here: Enhanced Lifetime Warranty

Back to top

**Will I know how much I will get when I send my Class Pistol back?**

You will not know the payment amount until after the deadline to return Class Pistols has passed and the exact number of Class Pistols returned for payment is known. If you return your Class Pistol for a payment, it will not be returned to you even if the payment amount is less than you want.

The Parties negotiated the cash payment structure and amounts based in large part by arriving at average retail values of Class Pistols established by industry-accepted publications, including S.P. Fjestad and Blue Book of Gun Values (36th ed. 2015).

Back to top

**How will I send my Class Pistol back?**

On the settlement website, there is a safety video to be viewed prior to packing and shipping your Class Pistol. This video has important safety information. We will also provide you with a Shipping Checklist to be completed before securing the box for shipment. With a valid claim for the cash payment, you will receive a prepaid shipping label, with the shipping costs paid by the Taurus Companies. Failing to properly disarm your Class Pistol and ship it in accordance with federal law could result in injury, harm, or damage and subject you to penalties. You must follow all instructions.

Objector Exhibit _BB_

_l_ of _l_

Back to top

**How can I get payment or other benefits?**

Align top of FedEx Express® shipping label here.



earthsmart

FedEx carbon-neutral
envelope shipping

ORIGIN ID:MSYA (504) 835-8887
STEVEN A GLAVIANO
609 W WILLIAM DAVID PKWY

METAIRIE, LA 70005
UNITED STATES US

TO CLERK OF COURT USDC
SOUTHERN DISTRICT OF FLORIDA
400 NORTH MIAMI AVE

MIAMI FL 33128
(11) 111-1111

SHIP DATE: 13JAN16
ACTWGT: 0.50 LB
CAD: 0069945SI/SSFE1621

BILL CREDIT CARD

REF:
DEPT:
INV:
PO:

FedEx
Express

THU – 14 JAN 10:30A
PRIORITY OVERNIGHT

TRK# 7821 6254 1004
0201

XH MPBA

33128
FL-US   MIA

RT 457   1   B
10:30   1004
FZ   01.14

Express
FedEx