FILED by __MM__ D.C.

MAY 1 2 2016

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### Case No. 1:13-CV-24583-PAS

CHRIS P. CARTER,
Individually and on behalf of all
Others similarly situated,

     *Plaintiff*

v.

                                    CLASS ACTION

FORJAS TAURUS S.A.,
TAURUS INTERNATIONAL
MANUFACTURING, INC., and
TAURUS HOLDINGS, INC.,

     *Defendants*

_____

### <u>OBJECTION TO FINAL SETTLEMENT APPROVAL</u>

MAY IT PLEASE THE COURT:

     Preliminary Approval of the Proposed Settlement and Certification was based upon inaccurate information presented to the Court. Considering all presently available information, Member asks that this class action be decertified, that the Proposed Settlement be rejected, and that defendants and the individual plaintiff be allowed to make a separate peace.

     The undersigned Settlement Class Member ("Member") hereby readopts and incorporates as if fully set forth herein all Objections in Member's prior pleadings and provides the following additional information:

# I.

## THE PARTIES JOINTLY FAILED TO LIMIT THE RELEASE TO CLAIMS RELATED TO THIS LAWSUIT

> ***"6. Release of liability without remedy***
> **A natural impulse on the part of settling parties is to attempt to expand the
> class and release claims of those on the periphery of the class, such as the
> spouses and children of class members, without providing any direct benefit
> to those individuals."**
>
> *Managing Class Action Litigation: A Pocket Guide for Judges*, page 15.
> http://www.fjc.gov/public/pdf.nsf/lookup/ClassGd3.pdf/$file/ClassGd3.pdf

The parties in the Remington trigger class action settlement were required by that
Court to strictly limit their release to claims directly arising out of the affected rifle parts.

Similarly, in the January 20, 2016, hearing for the Taurus Proposed Settlement,
the Court asked the parties to clarify and limit the Proposed Release to claims arising out
of the absence of the G2 trigger safety and the alleged false safe condition.  The Court
even offered suggested language to defendants to limit the release.[1]  Counsel seemed to
understand that the purpose of the Court's request was to limit the release to claims
related to the lawsuit:

> **MR. MARINO: It seems to me the asserted defects deal with alleged
> unintended discharge. Maybe there is a way to say, "design defects that could
> potentially cause unintentional discharges." Something of that nature. I don't
> want to be sitting in court next week with a new case saying, well, my safety
> defect I'm alleging isn't the lack of trigger safety, it's something else that
> caused unintended discharges.** *Transcript of January 20, 2016, Hearing*, DE
> 168, page 28

On February 1, 2016, the parties jointly filed proposed revised release language.[2]

---

[1] DE 168 page 28  Transcript of January 20, 2016, Hearing, DE 168, page 28
[2] Exhibit C to DE 174-3.   Exhibit CC herein.

However, the parties retained the following language, which **_still_** constitutes a release of any and every imaginable claim that might be brought by any owner of a Class Pistol:

> **"The Released Claims include all known and unknown claims, actions, and causes of action relating to the Settlement Class members' purchase and/or ownership of the Class Pistols.** Exhibit C to DE 174-3.  Exhibit CC herein.

The Court's suggested limitation on the Release would benefit the settlement class. Again, the settlement class has not been adequately represented.

# II.

# SECOND AMENDMENT

**"A well regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms shall not be infringed."** *U.S. Constitution, Amendment 2*

**"Johnson defined "keep" as, most relevantly, "[t]o retain; not to lose," and "[t]o have in custody." Johnson 1095. Webster defined it as "[t]o hold; to retain in one's power or possession."** *District of Columbia v Heller, 554 U.S. 570,* at page 8 of opinion.

**It is now undisputed that the Second Amendment right to keep and bear arms is a fundamental right .... A right expressly guaranteed by the Constitution.** *Wollschlaeger v Governor of the State of Florida,* No. 12-14009, Eleventh Circuit (12/14/2015) http://media.ca11.uscourts.gov/opinions/pub/files/201214009.reh2.pdf

The right of owners of class pistols to "keep" their weapons is protected by the Constitution. The Brazilian-owned Taurus defendants, with the help of counsel for plaintiff, have already obtained some class pistols via misrepresentations contained in the notice of "Enhanced Warranty." Taurus' confiscation and seizure of class pistols sent to defendant for repair, and Taurus' refusal to return those class pistols, constitute a taking and an infringement of class members' right to keep their firearms.

Likewise, the Brazilian-owned Taurus defendants' efforts to terminate their repair warranty would ultimately result in the "taking" of every class pistol.  Sooner or later, every class pistol will be sent to Taurus for repair, never to be returned to their owners.

The plaintiff and defendants are asking the Court to provide judicial approval of these actions. Judicial approval would deprive class members of their right to legal recourse against defendants and would constitute a governmental infringement upon the 2nd Amendment rights of the absentee owners of 966,355 class pistols.

As fiduciary[3] and guardian of the Constitutional rights of the absentee settlement class, this Court should apply the highest level of scrutiny, require the highest burden of proof, and enforce the highest standards of Constitutional procedural safeguards before considering approval of the Proposed Settlement.

However, plaintiff and defendants have demonstrated that they are not able to meet even the most minimal level of independent proof that class pistols are defective. **They ask the Court to assume as true what they cannot prove**.

If a Court were able to merely assume facts in order to deprive citizens of Constitutional rights, Due Process and the Constitution would be rendered meaningless.

Member's 2007 Millennium Pro PT140, serial number SZL24719, experienced a malfunction wherein the magazine would drop out of the pistol when fired, thus emptying the pistol of all ammunition and making the pistol unable to fire the next round. The malfunction could be demonstrated to others. It was repeatable. Is that proof that the other 966,354 class pistols have the identical issue?

**No.** The malfunction does not exist in Member's other class pistols.

Member's 2013 Millennium Pro PT140, serial number SEY80658, experienced a malfunction wherein the fired casing would not extract or exit the barrel, thus making it unable to load the next round of ammunition. The malfunction could be demonstrated to others. It was repeatable. Is that proof that the other 966,354 class pistols have the identical issue?

**No.** The malfunction does not exist in Member's other class pistols.

Likewise, even if it were demonstrably provable that the inertia of the trigger caused plaintiff's pistol to fire when dropped with the manual safety properly engaged (which Member does not accept as true), that is not proof that the other 966,354 class pistols have the identical issue.

---

[3] A fiduciary duty is an obligation to act in the best interest of another party. http://definitions.uslegal.com/

The record is devoid of any independent proof that trigger inertia would cause the other 966,354 class pistols to fire when dropped with the manual safety properly engaged.  Plaintiff's unsupported allegations are not sufficient to deprive the owners of 966,355 class pistols of their Constitutional right to keep their firearms.

Court approval of the Proposed Settlement in these circumstances would be an unconstitutional violation of the 2nd Amendment rights of the owners of class pistols.



2009 Model 140BP
Plaintiff's PT140 DE 1-1 Exhibit A
Serial Number SCS98571



2009 Model 140 BP
PT140 Tested By Member
Serial Number SCP41021

Passed California Drop Certification
No "False Safe" Condition
Manual Safety Tested To Over
4500 Times Mass/Weight Of Trigger

## III.

## CLASS PISTOLS ARE NOT DEFECTIVE:

## CLASS PISTOLS PASSED
## CALIFORNIA "DROP TEST" CERTIFICATION

**"I have been involved in a number of civil cases, where it was alleged that a pistol discharged when dropped. Most involved Glocks. In every case, the allegation was proven false."[4]**
John S. Farnam, president of Defensive Training International

California has some of the nation's most restrictive gun laws. It is a crime for a manufacturer to sell any handgun in California unless the handgun model has passed statutory firing, safety, and drop tests to become certified for sale in California by their Department of Justice. All testing must be done by state-certified laboratories.[5]

California maintains a Roster Of Handguns Certified For Sale. Those handguns remain on the roster as long as the manufacturer pays to renew the listing prior to a specified expiration date.[6] If the manufacturer declines to pay the renewal fee and allows the Certification to expire, the handguns models are moved to a separate listing and can no longer be sold in California.[7] No G2 pistols appear on either the certified or decertified listings.[8]

As of May 5, 2016, there were only 767 handgun models still certified for sale in California. The manufacturers of over 1,000 certified handguns, including Taurus, elected to allow many of their certifications to expire.[9]

California Penal Code Section 12128 defines the specific testing protocol that must be used by their certified independent testing laboratories in order for a handgun to meet their "drop safety requirements."[10] The requirements are summarized as follows:

---

[4] http://www.thetruthaboutguns.com/2015/08/robert-farago/john-farnham-all-pistols-should-be-drop-safe/ See also: "Paulding County authorities now believe the bullet that killed an 8-year-old girl in October was accidentally *fired by her brother — not discharged from a handgun that fell from a table, as her mother originally told deputies.*" http://www.ajc.com/news/news/crime-law/cops-paulding-girl-8-was-accidentally-shot-and-kil/np7cB/
[5] Exhibit DD. See also Cal Penal Code Sections 12125-12131.
[6] Exhibit EE.
[7] Exhibit FF; Cal Penal Code Section 12131
[8] Member attaches no significance to the absence of G2 pistols from either California list.
[9] http://certguns.doj.ca.gov/; Exhibit DD.

The manufacturer must provide 3 handguns of each make and model for which certification is sought.

Each pistol is dropped with a primed case in the chamber (no powder, no projectile).

Each pistol is dropped from a height of 1 meter + 1 centimeter (i.e., 39.8 inches).

Each pistol is dropped "in the condition that it would be in if it were dropped from a hand (cocked **with no manual safety applied**)." (Emphasis added)

Each of the three pistols is dropped six times, in the following orientations:

(a) Normal firing position with barrel horizontal.
(b) Upside down with barrel horizontal.
(c) On grip with barrel vertical.
(d) On muzzle with barrel vertical.
(e) On either side with barrel horizontal.
(f) If there is an exposed hammer or striker, on the rearmost point of that device, otherwise on the rearmost point of the weapon.

The handgun passes this test if each of the three test guns does not fire the primer.[11]

***Even without relying upon the added protection of the manual safety***, the following class pistol models all passed this California drop testing and appear on the expired/de-certified handgun model list:[12]

```
PT745 (Blue) / Blued  45 ACP
PT745 (Stainless) / Stainless Steel  45 ACP
PT24/7 (Blue 9mm) / Blue Steel    9mm
PT24/7 (Stainless 9mm) 1-237099/Stainless Steel   9mm
PT24/7  (40 S&W) / Stainless Steel   40 S&W
PT24/7  (40 S&W) /  (Blue 40 S&W) / Blued Steel   40 S&W
PT111 (Gray/Blue) / Blue Steel    9mm
PT111 (Gray/Stainless) / Stainless  9mm
PT111 (Stainless) / Stainless   9mm
PT140 (Stainless) / Stainless   40 S&W
PT111 (Blue w night sight) / Blue Steel 9mm
PT111 (Blue) / Blue Steel  9mm
PT140 (Blue w night sight) / Blue Steel  40 S&W
PT140 (Blue) /  Blue Steel   40 S&W
PT145P (Blue) / Blue Steel   45 ACP
```

---

[10] Exhibit GG; Cal. Penal Code Section 12128
[11] Exhibit GG.
[12] Exhibit HH; http://oag.ca.gov/sites/oag.ca.gov/files/pdfs/firearms/removed.pdf at pages 14,37,38,40,41

PT145P (Stainless) / Stainless 45 ACP
PT24-7 (Two-Tone) / Stainless Steel 45 ACP
PT145 (Blue) / Blue Steel   45 ACP
PT145 (Stainless) / Stainless Steel   45ACP
PT111P-CA (Blue) / Blued Steel   9mm
PT140P-CA (Blue) / Blued Steel   40 S&W
PT145P-CA (Blue) / /Blued Steel   45 ACP
PT111P (Stainless) / Stainless   9mm
PT111P (Blue) / Blued Steel   9mm
**PT140P (Blue) / Blued Steel   40 S&W      (This is plaintiff's pistol model)**
PT140P (Stainless) / Stainless Steel  40 S&W

California required that 3 handguns of each of the above 26 model class pistols be drop tested 6 times (or 18 drop tests per model), for a total of 468 drop tests. The class pistols successfully passed the independent testing, *all without relying on the extra protection of the manual safety, and with no G2 "trigger blade safety."*

This Court should give deference to the findings of the State of California. There is no independent factual basis to do otherwise.  Class pistols are not defective.

# IV.

# CLASS ACTION SETTLEMENT INSURANCE (CASI)

**"The parties seeking approval _must_ file a statement identifying _any_ agreement made in connection with the proposal.**
*Fed. R. Civ. P. 23(e)(3).* (Emphasis added)

Defense counsel has admitted hiring Texas-based Risk Settlements as a consultant.  Risk Settlements is a company that says it provides clients with strategies to **"avoid and deal with objectors."**  This company helps defendants find **"opportunities arising from lawsuit allegations"**, **"create settlements that satisfy counsel and Court,"** and assists in **"structuring the settlement."**[13]  The actions of defense and plaintiff counsel reflect those strategies.

---

[13] Class Action Services Holdings dba *Risk Settlements.* http://risksettlements.com/class-action-consulting

Risk Settlements is the unseen hand guiding the actions of the parties. With no adversarial process to test the truth of the parties' assertions, no Trial Court has the resources to challenge unsubstantiated sales presentations by the teams of plaintiff and defense counsel. Their joint game plan is simple but effective:

Minimize objections and opt-outs by exaggerating benefits and using only the notoriously ineffective notice by publication. Jointly deny the existence of the Taurus mail and email databases. Set up a Rubik's cube of requirements before anyone can file an objection. Then claim that absence of objections and opt-outs means universal approval by the settlement class.

If an Objector like Mr. Richard Jordan points out the inequity of the $600 loss he will incur, then jointly portray him as a greedy complainer and use the simplistic chant "He just wants more."

Meanwhile, stay focused on the objectives:

For plaintiff counsel, it is the $9 million attorneys' fee.

For defendants, the objectives are (a) the vague blank check in the Proposed Settlement which allows Taurus to "address" the many different class pistols any way they see fit; and (b) the multi-million-dollar financial plum in a universal release which terminates the Taurus unlimited repair warranty rights of 966,355 class pistol owners.

And all this is being accomplished with no proof that class pistols are defective.

## A. RISK SETTLEMENTS-
## CLASS ACTION SETTLEMENT INSURANCE (CASI)

Risk Settlements also makes money by marketing Class Action Settlement Insurance (CASI) for claims-made settlements. The proposed "up to" $30 million pistol buy-back is a claims-made settlement. Risk Settlement profits by the knowledge that very few claims are actually made in a claims-made settlement, and that the supposed $30 million benefit to the settlement class is only an illusion. And every possible technique is used to keep the number of cash claims as low as possible. Fewer claims made equals greater profits for Risk Settlements and their associated insurer.

9

> **"Class Action Settlement Insurance ("CASI") allows settling defendants to shift the risk of a claims-made settlement to an insurer.**
>
> **A defendant settling a class action can purchase the settlement insurance for a fixed premium based on the circumstances of the case and settlement.**
>
> **The insurer will then step in and cover the cost of claims submitted under the settlement.**
>
> **The *insurer*, not the settling company, *assumes the risk* that the settlement will end up costing more than originally hoped."**
>
> **"The CASI policy is simple in its operation; in exchange for a fixed premium payment, the insurer covers all valid claims made pursuant to the settlement agreement."[14]** Emphasis added.

Risk Settlements markets this insurance contract through a broker, and an unnamed A-rated global insurer underwrites the risk.[15]

Counsel have denied the existence of any such side deal. However, the proposed release includes language that makes provision for the protection of consultants, agents, brokers, and insurers as would be expected if Taurus had contracted for class action settlement insurance for the cash buy-back option.

> **"Released Parties" means (a) Defendants; (b) the Taurus Companies; ... and (f) ... consultants, insurers, insurance brokers, ... insurers, insurance agencies ...."[16]**

So, did Taurus enter into a secret contract with an undisclosed insurer who has a $30 million profit motive to minimize the benefits to the class under the pistol cash buy-back option?

Counsel for defendant and counsel for plaintiff were direct and unequivocal in their denial of an arrangement with an insurer for the cash buy-back option.

---

[14] http://risksettlements.com/class-action-settlement-insurance. Exhibit JJ
[15] http://risksettlements.com/news/2014/marsh
[16] Proposed Settlement Agreement And Release, pages 7-8; DE 123, Exhibit A, pages 26-27. "Insurers" is listed twice.

## C.  FORJAS TAURUS
## JUNE 30, 2015, QUARTERLY REPORT

***This agreement*, which does not imply a confession or admission of guilt regarding alleged faults in some pistols, *provides for the payment of a certain amount for each pistol returned by owners that adhere to the agreement.***

***This payment will be made by insurance company already contracted by the Company.***

*Forjas Taurus S.A. 6/30/2015 Quarterly Report*, page 32. describing the July 30, 2015, preliminary approval of the Proposed Settlement Agreement.[17]


**"There is no side deal."**
Counsel for Defendant, Transcript January 20, 2016,
DE 168 page 54, Exhibit LL.

**"The plaintiffs have no type of deal whatsoever."**
Counsel for Plaintiff, Transcript January 20, 2016,
DE 168 page 54, Exhibit LL.


Contrary to denials by counsel, the Forjas Taurus S.A. Quarterly Report states that Taurus has in fact entered into an agreement with an undisclosed insurer for the "up to" $30 million cash pistol buy-back.

Were the one sided terms of the cash buy-back the result of an arms-length negotiation?

Or were the terms dictated by and for the sole profit of an undisclosed insurer who is not answerable to this Court, to the detriment of the settlement class, with the consent of counsel for plaintiff?

**And note that this consolidated quarterly report does not even mention a need to replace the supposedly defective class pistols with the cheaper G2.**

---

[17] Exhibit KK; http://quote.morningstar.com/stock-filing/Quarterly-Report/2015/6/30/t.aspx?t=XBSP:FJTA3&ft=&d=850604efbbce6fd87a9da5315ed9e56b

**8.2 Carter Case**

According to relevant fact disclosed on July 30, 2015, judge of the U.S. District Court for the Southern District of Florida granted a preliminary approval to the agreement in order to end lawsuit proposed against Taurus and its subsidiaries in the United States, Taurus Holdings, Inc. and Taurus International Manufacturing, Inc. (jointly with Taurus, the "Companies") denominated Chris Carter v. Forjas Taurus, S.A. et. al. This agreement, which does not imply a confession or admission of guilt regarding alleged faults in some pistols, provides for the payment of a certain amount for each pistol returned by owners that adhere to the agreement. This payment will be made by insurance company already contracted by the Company. In addition, the Company will offer an additional warranty to owners of pistols so that they may be subject to inspection at no costs and specific training and security material.

## D. THE AIG CONNECTION

**"The parties seeking approval _must_ file a statement identifying _any_ agreement made in connection with the proposal.**
*Fed. R. Civ. P. 23(e)(3). (Emphasis added)*

This rule is a compulsory requirement of transparency. The Court and the Settlement Class should not be required to guess what secret agreements have been made behind the scenes. All agreements should have been included in the Notice to the class.

The Forjas Taurus Financial Statement confirms the existence of insurance. The proposed release twice mentions "insurers." These facts raise two questions:

1) *Who is funding the "up to" $9 million attorneys' fees provision?* and

2) *What other undisclosed insurance coverage is affecting the Proposed Settlement?*

Due process requires disclosure. Nothing in the Florida Non-Joinder Statute[18] precludes compliance with Rule 23(e)(3).

Such disclosure is relevant. Many might view payment by Taurus as an admission of guilt. However, insurers pay policy limits every day to protect their insureds from excess judgments. A payment by an insurer conveys no inference of guilt.

Absent full disclosure, the Notice to the settlement class remains fatally flawed.

---

[18] Fla. Stat. Section 627.4136 (2015)

## AIG

AIG is a global A-rated insurer, and one of the few insurers that offers liability insurance to the importers and manufacturers of firearms. Through its Firearms Business Insurance Program, AIG offers General liability coverage with $1,000,000/$2,000,000 limits, as well as Umbrella coverage with limits up to $10 million.[19]

AIG is listed as a representative client of counsel for defendants.[20] Additionally, a Risk Settlements press release states that a Managing Director of Risk Settlements was previously employed by AIG as President of AIG's assumed reinsurance division for thirteen years. The press release further states that its Class Action Settlement Insurance (CASI) is underwritten by a "global A-rated insurer."[21]

Counsel for plaintiff more than once made the unsubstantiated assertion that consideration was given to the financial condition of Taurus. If instead it is an insurer that is providing the funding for the proposed settlement, the Court should require that every insurer's coverage and proposed settlement payments be disclosed.

For example, the Court should require the parties to disclose whether it was an insurer such as AIG, and not Taurus, that capitulated and put up $12 million coverage limits to settle this case. Such an insurer could have offered "up to" $9 million for attorneys fees and used the remaining $3 million to purchase Risk Settlements Class Action Settlement Insurance[22] for the "up to" $30 million cash buy-back option.

This could explain counsel for plaintiff's campaign to exaggerate settlement benefits such as the absurd $239,147,281[23] claimed value of the settlement and the "strongly negotiated" prongs of benefits that do not exist. If a Court were to discover that out of $12 million available coverage, counsel for plaintiff would receive $9 million and the settlement class would only receive the benefit of $3 million[24] used to purchase CASI insurance for the pistol buyback, then the "up to" $9 million in attorneys fees could and should evaporate.

---

[19] Exhibit MM
[20] Exhibit NN
[21] Exhibit OO
[22] Possibly also underwritten by AIG.
[23] DE 169, Plaintiff's Exhibit A, Value of Enhanced Warranty Benefit.
[24] That would average as a $3.10 benefit per owner of each class pistol. ($3 million divided by 966,355).

And if this is simply just another insurance company settlement of a disputed plaintiff's claim, then the release provision terminating the lifetime warranty and giving Taurus the legal ability to replace rather than repair broken class pistols can be explained by the Risk Settlements strategy to "find opportunities arising from lawsuit allegations,"[25] even though class pistols are not defective.

# V.
# THE $48 MILLION EXAGGERATION

**"And where the parties have negotiated at arm's length,
the Court should find that the settlement is not
a product of <u>collusion</u>.**
*Plaintiff's Motion For Final Approval* (DE 147, page 17)

**Collusion:**
**"A *secret arrangement* between two or more persons, *whose interests are apparently conflicting*, to make use of the forms and proceedings of law in order to defraud a third person, or *to obtain that which justice would not give them, by deceiving a court* or it officers.**[26]  Emphasis added.

### FedEx 2nd Day Air Rates versus FedEx Published Rates

There is a difference between "puffing" and pure fabrication of facts.  It is one thing for a defense attorney to refrain from objecting to a plaintiff attorney's request for fees.  It is quite another thing for defense counsel to remain silent when fabricated facts about his client are presented to the settlement class and to the Court.  One does not retain clean hands by remaining silent when there is a duty to speak.

For years, Taurus has been shipping pistols via the FedEx 2nd Day Air rate instead of the published rate.  Member was involved in 7 transactions with Taurus involving shipment of pistols.[27]  In each and every transaction, Taurus used the less expensive FedEx 2nd Day Air rate instead of the higher FedEx published rate.  Other class pistol owners who have received replacement G2 pistols shipped by Taurus also report the use of the less expensive 2nd Day Air Rate.[28]

---

[25] http://risksettlements.com/class-action-settlement-insurance. Exhibit JJ-2.
[26] Baldwin v. New York; 45. Barb. (N. Y.) 359; Belt v. Blackburn, 28 Md. 235; Railroad Co. v. Gay, 86 Tex. 571, 26 S. W. 599, 25 L." http://thelawdictionary.org/collusion/
[27] Taurus has the records for the shipments of Member's PT140 Serial Number SEY80658, PT140 Serial Number SZL54719, PT140 SBR34141 via FedEx 2nd Day Air instead of FedEx's higher published rates.
[28] Exhibit PP. "Mine has been shipped.  FedEx 2 day.  Should be here tomorrow"

The parties have not explained the FedEx 2nd Day Air label that was provided by Taurus for shipment of Member's PT140 Millennium Pro pistol. The shipping label lists the name of the Taurus Customer Service Representative who authorized the shipping label. It lists the serial number of the Millennium Pro pistol that was shipped as the Taurus RMA number.



Only Taurus is competent to confirm or deny Member's documented assertion that Taurus ships pistols via the cheaper 2nd Day FedEx rate. And no one from Taurus has done so. The Taurus facility is only 20 minutes from the Courthouse. It would be easy enough for a Taurus representative to come to Court and testify under oath whether or not Member's assertion is correct.

Counsel for Taurus, whose law firm also lists Federal Express as a representative client, is in a position to tell the Court the answer to this $48 million question. Yet when given the opportunity to address the issue, counsel for Taurus instead deferred to a representative of the Claims Administrator.

"**THE COURT: Do you have a special relationship with FedEx, a bulk -- I mean does Taurus?  Doctor Safir came up with a mean cost of mailing that he used in his analysis, and I was wondering if there was any deal that you worked out with FedEx.**

**MR. MARINO: I have not, Your Honor. I think Mr. Prutsman has."**
*Transcript of January 20 hearing,* DE 168, pages 54-55.

Why does everyone speak for Taurus but counsel for Taurus?  Plaintiff's counsel told the Court what Taurus should pay to ship pistols.  Dr Safir told the Court what Taurus should pay to ship pistols.  And now even the Claims Administrator is telling the Court what Taurus should pay to ship pistols?

It's time for Taurus to speak for itself, under oath.

And does it make any sense for Taurus to pay more to ship class pistols pursuant to a settlement than it pays for to ship class pistols in the normal course of business?  The published shipping rate costs roughly an extra $25 each way.  For 966,355 pistols, this extra cost would be $48,317,750 more than if Taurus shipped those same pistols in their normal course of business via the FedEx 2nd Day Air rate.  Why would Taurus pay an extra $48 million for shipping?

Or does it make more sense to suggest that defense counsel avoided answering the Court's question in order to further assist the plaintiff counsel's quest for $9 million in attorneys' fees?

# VI.

# FINANCIAL BENEFITS FOR TAURUS

The settlement class will lose millions, yet the Forjas Taurus S.A. 6/30/2015 conolidated quarterly report makes no mention of any need to replace the supposedly defective class pistols with the cheaper G2.

And what are the financial gains for Taurus?

### A.   $13,663,420 (US)--Taurus 2013 Reported Product Warranty Expense

The December 31, 2013 and 2012 financial statements of Forjas Taurus S.A indicated 2013 Product Warranty Expenses of $13,663,420 (US).[29]

Every time Taurus repairs and ships a pistol, they lose money[30].

Replacing class pistols with the cheaper G2s, instead of repairing them, is Taurus's dream come true.

The Taurus original Unlimited Lifetime Repair Warranty for the 966,355 class pistols, which applies regardless of ownership transfers, is a constantly growing financial albatross hanging around the neck of Taurus profitability. The release of this liability, and the corresponding responsibility for shipping costs, would be a huge financial benefit for Taurus, with a corresponding huge financial loss for the settlement class.

For a comparison, look at how other firearms companies legitimately handle this business issue. Florida-based firearm manufacturer Kel-Tec recently announced that they would no longer be able to continue their lifetime warranty for anyone other than the original purchasers. Subsequent owners will no longer have free warranty coverage.

**"As the years pass and more and more Kel-Tec weapons enter circulation, the cost of offering a blanket lifetime warranty increases drastically. To stave off some of these costs, we have officially decided to enforce our lifetime warranty, which applies only to the original owner of the firearm."[31]**

Firearms manufacturer Remington goes even further. It limits its warranty to only one or two years, and likewise limits its warranty to the original purchaser only. Subsequent owners have no free warranty coverage. And even the original purchasers have no free warranty repairs after either one or two years.[32]

---

[29] Exhibit QQ. http://quote.morningstar.com/stock-filing/Annual-Report/2013/12/31/t.aspx?t=XBSP:FJTA3&ft=&d=c63bdb48541a51bd595c140aae8aa110
The financial report lists the expense as 32,273,000 in the Brazilian Real currency (BRL, plural Reais). The published exchange rate on 12/31/2013 was 1 BRL = 0.423370 USD. 32,273,000 BRL x 0.423370 = $13,663,420 US Dollars.
[30]"And while re-making the company, **they've figured a few things out along the way. Like exactly how much it costs – down to the penny – to fix a gun that comes back because it wasn't right to begin with."** www.thetruthaboutguns.com/2012/10/daniel-zimmerman/taurus-puts-its-money-where-its-mouth-is/
[31] Exhibit RR.  Kel-Tec Warranty Update: Second Owner Responsibilities, August 4, 2011
[32] Exhibit SS.  The Remington warranty varies depending on the particular firearm purchased.



**Taurus Millennium Pro 45 ACP 3.25" Barrel 10 Round Double Action Blued Refurbished Semi Automatic Pistol Z1145031P**
see more from **Taurus**

Mfg#: TAUR Z1145031P
SKU: 11047293
UPC: NOUPC5160

Qty in stock: 0

## Price: $303.63
MSRP: $331.95

Click to View Larger

### B.  $96 Million--Refurbishment Of Returned Class Pistols
### And Resale Outside The US Market

Taurus routinely refurbishes and resells used pistols.  Taurus is an international company that sells its pistols worldwide.  The Proposed Settlement Agreement makes no provision for the disposal of class pistols.  Taurus contends Class Pistols are not defective.  Unlike Remington, Taurus has issued no recall and has issued no warning to owners to stop using their class pistols. Taurus could refurbish and resell returned pistols in their overseas markets.  If Taurus makes just $100 per pistol, their profit on 966,355 class pistols would be $96,635,500.

Class pistols are semi-automatic handguns that are worthless without a magazine[33] to hold and feed the bullets.  Supporting the contention that refurbishing and reselling returned pistols will generate cash for Taurus is the settlement Packaging Return video, which class members must confirm they have watched viewed before class pistols can be returned.[34]  In that video, the spokesperson instructs class members to *return their pistols with both "original magazines."*[35]

What is the financial reason that Taurus is asking to receive shipment of 1,932,710[36] magazines weighing 326,144 pounds?[37]   Taurus is not going to pay to put 163 tons of usable magazines in the scrap heap.

---

[33] Taurus' list price for new magazines is $36.  Used magazines sell in the $30 range.
[34] DE 168, pages 55-56. Transcript of January 20, 2016 hearing.
[35] https://www.tauruscartersettlement.com/safetytrainingvideo/ At minute 1:26-1:35.
[36] Taurus list price for new magazines is $36.  Used magazines sell in the $30 range.
[37] 966,355 Class Pistols times 2 magazines weighing 2.7 ounces each = 326,144 pounds (over 163 tons).

Taurus can resell refurbished pistols overseas in its other worldwide markets unaffected by this settlement. Taurus would be crazy if they did not do so. Due to the exorbitant shipping costs and restrictions on the overseas shipment of firearms back to Taurus, overseas Taurus gun owners are not able to return pistols for warranty repair like United States owners can. Taurus' warranty repair costs will evaporate.



**"If you have the original firearm case or box, position your firearm**
**_AND ORIGINAL MAGAZINES_ in your case or box so that it is able to close."**
https://www.tauruscartersettlement.com/safetytrainingvideo/ At minute 1:26-1:35.



Magazine for a semi-automatic pistol.

# VII.

## IT IS NOT POSSIBLE FOR INERTIA OF THE TRIGGER
## TO DEFEAT THE MANUAL SAFETY

In light of the California Certification of class pistols without allowing the additional protection of the manual safety, this issue is moot.  California does not allow the use of manual safeties in their Certification testing because manual safeties are so simple and so effective.

When properly engaged, the manual safety operates as a physical block to the rearward movement of the trigger. The trigger CANNOT be physically pulled hard enough to defeat the manual safety without destroying the pistol. There is no allegation that plaintiff's pistol was destroyed by the inertia of the trigger.

A Taurus PT140 Millennium Pro trigger weighs 30.8 grains, or 44/10,000[th] of a pound.[38] One grain is 1/7000[th] of a pound. For comparison, a dime weighs 35 grains. The inertia of an object is proportional to its mass.[39] Drop a dime onto your bare foot to feel its inertia. Drop a dime onto a bowling ball and see if it moves.



**PT140 Trigger**
**Weight--30.8 Grains**

**Silver Dime**
**Weight—35 Grains**

Plaintiff's counsel asserts that when a class pistol is dropped, inertia allows the mass of the trigger to continue moving rearward, overpowering the manual safety and firing the pistol. Inertia is related to Sir Isaac Newton's First Law of Motion: An object's inertia causes it to continue moving until it is acted upon by another force.[40]

> **"What that prevents and what the testing from our experts concluded was that the reason for the unintended discharges was without the trigger blade safety it was allowing the trigger the *inertia of the drop*, the inertia of any kind of sudden movement of that gun, that *that trigger would fully engage what would be termed its fully rearward position without being pulled physically.*"** *Transcript of July 23, 2015 Status Conference.* DE 131, page 13.

---

[38] 30.8 grain trigger weight divided by 7000 gr/lb = 0.0044 or 44/10.000[th] of a pound.
[39] https://www.mansfieldct.org/Schools/MMS/staff/hand/lawsinertia.htm
[40] https://www.mansfieldct.org/Schools/MMS/staff/hand/lawsinertia.htm

But a trigger is not just hanging freely on a pistol. It requires force to move a trigger rearward. "Trigger pull" is the force, measurable in pounds, required to move a trigger rearward with your finger in order for a pistol to fire. And unlike the lightweight polymer plastic trigger, the manual safety is made out of steel.



4.23

Using a gunsmith's trigger pull scale, and with the manual safety properly engaged, Member applied over 20 lbs. of rearward trigger force[41] to the same year, make, and model pistol as used by plaintiff. The manual safety did not fail. The pistol did not fire.

Twenty pounds is more than 4,500 times the mass of the PT140 trigger.[42] Twenty pounds is about four times the trigger pull normally required to fire an unaltered PT140. The inertia of a falling trigger cannot overcome the protection of the manual safety.

## VIII.
## THE ALLEGED FALSE SAFE CONDITION

**NRA Gun Safety Rules**

A GIRL & A GUN   4 Rules of Gun Safety

q **Always keep the gun pointed in a safe direction**

**1.** Treat all guns as if they are always loaded.

**2.** Never let the muzzle cover (gun point at) anything that you are not willing to destroy.

q **Always keep your finger off the trigger until you are ready to shoot.**

**3.** Keep your finger off the trigger until your sights are on target and you have made the decision to shoot.

q **Always keep the gun unloaded until you're ready to use it.**

**4.** Be sure of your target and what is behind it.

---

[41] Pick up four two-liter bottles of Coca-Cola in one bag for comparison. It would weigh about 18 ¾ lbs.
[42] 20 lbs is 140,000 grains divided by 30.8 grains = 4,545.4

A pistol can only be put in the alleged "false safe condition" as a result of operator error and gross negligence.

A cardinal rule of firearms safety is to never touch the trigger until the pistol is pointed at the target and you are ready to fire. "Keep your finger off the trigger" is a basic mantra of firearms safety. Failure to abide by this rule can result in tragedy.

To even *touch* the trigger prior to that moment is negligence. To *pull* the trigger prior to that moment is gross negligence.

One of the Taurus manuals appropriately warns that a trigger must be in its full forward position in order for a manual safety to be properly engaged. Testing by member indicates that this warning only applies to a very few of the class pistols. Not all class pistols are the same.

Taurus did not issue a new manual every year for the class pistols. Later manuals specific to the 24/7 models did not even include the warning because those pistols cannot be put into the "false safe condition" even if someone negligently pulls the trigger while applying the manual safety.

Member tested the identical year, make, and model pistol as used by plaintiff.[43] It could not be put into the false safe condition. Twelve of fourteen different year, make, and model class pistols could not be put into the "false safe condition". Only two of fourteen pistols tested, a 2006 model and a 2007 model, could be put in the false safe condition, but only if the trigger were pulled while applying the manual safety, contrary to safety rules.

There is nothing to indicate that plaintiff's pistol could be put into the false safe condition. Plaintiff has no standing to assert this claim.

But if plaintiff does contend that he put his pistol into the "false safe condition" by pulling the trigger while applying the safety, then his gross negligence makes him a non-typical plaintiff. He would not qualify as a class representative.

---

[43] Because of the significance of this pistol, a 2009 PT140 PRO 140BP, serial number SCP41021, it was tested 100 times. The serial number of plaintiff's 2009 PT140 PRO 140BP is SCS98571

# IX.

## DECERTIFY THE CLASS

**"But other specifications of the rule <u>designed to protect absentee class
members by blocking unwarranted or overbroad class definitions are of vital
importance in the settlement context,</u> for the court in such a case will lack the
opportunity to adjust the class as litigation unfolds."**
*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 117 S.Ct. 2231 (1997).
Emphasis added.

**"Settlement, though a relevant factor, does not inevitably signal that class
action certification should be granted more readily than it would be were the
case to be litigated. For reasons the Third Circuit aired, see 83 F.3d 610, 626-
635 (1996), <u>proposed settlement classes sometimes warrant more, not less
caution on the question of certification.</u>"** *Id.*, n.16.  Emphasis added.

The parties have failed to satisfy Rule 23's requirements for certification of a
proposed class settlement as required by the US Supreme Court in several critical
respects:

1) **Lack of commonality:**  Not all class pistols are the same.  Some pistols have "single
action/double action" triggers; others have "double action only" triggers.

2) **Lack of commonality:** Different pistols have different safety mechanisms; twelve of
fourteen models tested could not be put in the "false safe" condition.

3) **Lack of commonality:**  Each pistol has a unique and different value[44] that can only be
fairly evaluated on a case-by-case basis; each class member's damages are different.

4) **Lack of commonality:** Different state laws require differing remedies. For owners in
certain states, the class notice is vague and does not even specify their remedy.

5) **No "management superiority":** Every class pistol owner's remedy would be decided
by Taurus on a case-by-case basis, the same as returned pistols have always been handled
by Taurus.  There is nothing "superior" about the remedy as required by
FRCP Rule 23 (b)(3).

6) **Absence of proof of adequacy of remedy:**  Dr. Safir is a lay person offering opinion
testimony regarding issues for which he has no prior knowledge, experience, or expertise,

---

[44] Exhibit TT. Blue Book Of Gun Values.

with no foundation for his opinions, and with calculations lacking logic, consistency, or adherence to standard accounting practices.

# X.

# CONCLUSION

The parties have had enough bites at the apple. They have demonstrated the consequences of the absence of an adversarial posture.

With the documentation presently available, Member asks that the Court decertify the class, reject the Proposed Settlement, and allow defendants and the individual plaintiff to make their separate peace.

RESPECTFULLY SUBMITTED:

**Steven A Glaviano, Pro Se**
**609 W William David Pkwy Suite 102**
**Metairie LA  70005**
**(504) 835-8887**
**TrustGroup@aol.com**


This pleading has been mailed the following at the below addresses on May 11, 2016.

David L. Selby, II
John W. Barrett
Bailey & Glasser, LLP
3000 Riverchase Galleria, Suite 905
Birmingham, Alabama 35244

Chris P. Carter v Forjas Taurus, S.A
C/O Heffler Claims Group
PO Box 230
Philadelphia PA  19107-0230.

John P Marino
Smith, Gambrell and Russell, LLP
50 North Laura Street Suite 2600
Jacksonville, FL  32202

Steven A Glaviano

## Declaration of Steven A Glaviano

I, Steven A Glaviano, declare as follows:

I have owned firearms for over fifty years.

I received firearms training in connection with my service in the US Air Force Reserve.

I received firearms training in connection with my service as a police officer/deputy sheriff for the University of Southwest Louisiana in Lafayette, Louisiana.

I received firearms training required by the Sheriff of Jefferson Parish for issuance of a concealed carry permit for Jefferson Parish.

I received firearms training required for the issuance of a Louisiana statewide concealed carry permit, which training was accepted by the State of Florida for the issuance of a Florida non-resident concealed carry permit.

I am licensed by the State of Louisiana as a Nuisance Wildlife Control Operator and authorized to use firearms to control nuisance wildlife.

I have owned Taurus class pistols for over ten years.

I own Taurus class pistols with different types of trigger actions, requiring different trigger pulls: the single action/double action version; and the double action only version.

I have bought and sold class pistols. I am familiar with the general market value of class pistols. I have specifically followed the values of the PT140 Millenium Pro pistol since 2013.

I am familiar with ATF and USPS regulations, and FedEx published requirements, regarding the shipment of pistols.

I am an insurance agent licensed by the State of Louisiana.
I have been the owner/managing agent of an insurance agency in Louisiana since 1998.

In 1975, I received a BA in economics from the University of Southwest Louisiana.
In 1979, I received a Juris Doctor from Louisiana State University Law School.

_____
Steven A Glaviano      May 10, 2016



The Released Claims include all known and unknown claims, actions, and causes of action relating to the Settlement Class Members' purchase and/or ownership of the Class Pistols. This Settlement covers and includes all such claims, actions, and causes of action, for losses or damages of any type and specifically provides the following release:

> The Releasing Parties fully release and forever discharge the Released Parties from any and all claims, demands, rights, damages, obligations, suits, debts, liens, contracts, agreements, and causes of action of every nature and description whatsoever, ascertained or unascertained, suspected or unsuspected, existing now or arising in the future, whether known or unknown, both at law and in equity which were or could have been brought against the Taurus Companies based upon, arising from, or related in any way to alleged defects in the design and manufacturing of the Class Pistols (or any component parts thereof) that may result in an unintended discharge, whether arising under statute, rule, regulation, common law or equity, and including, but not limited to, any and all claims, causes of action, rights or entitlements under any federal, state, local or other statute, law, rule and/or regulation, any consumer protection, consumer fraud, unfair business practices or deceptive trade practices laws, any legal or equitable theories, any claims or causes of action in tort, contract, products liability, negligence, fraud, misrepresentation, concealment, consumer protection, restitution, quasi-contract, unjust enrichment, express warranty, implied warranty, and/or any injuries, losses, damages or remedies of any kind, in law or in equity, under common law, statute, rule or regulation, including, but not limited to, compensatory damages, economic losses or damages, exemplary damages, punitive damages, statutory damages, restitution, or any other legal or equitable relief. Released claims also include any claim for attorneys' fees, expenses, costs, and catalyst fees under any state's law or under federal law.

> Provided, however this Release specifically excludes claims for death, personal injury, or damage to property other than the Class Pistols themselves.

Objector Exhibit ⊆C

⊥ of ⊥

| Home | About | News | Careers | Contact | Programs A - Z |
|------|-------|------|---------|---------|----------------|

**FIREARMS**

Firearms Home

California Firearms Laws
Summary Booklet, pdf
(revised 2016)

FAQs

Forms and Publications

Handgun Safety Certificate
Program

Regulations

Roster of Handguns
Certified for Sale

Roster of Firearm Safety
Devices Certified for Sale

Archive

Contact Us

## Roster of Handguns Certified for Sale

Effective January 1, 2001, no handgun may be manufactured within California, imported into California for sale, lent, given, kept for sale, or offered/exposed for sale unless that handgun model has passed firing, safety, and drop tests and is certified for sale in California by the Department of Justice. Private party transfers, curio/relic handguns, certain single-action revolvers, and pawn/consignment returns are exempt from this requirement.

Use the query form to find the handgun models currently certified for sale in California.
All handguns listed on the roster are approved with or without night sights.

Search

Select a manufacturer [or all] from the drop-down menu, then click FIND.
There are 767 models in the database.

Select gun make [manufacturer] :   **All**

Sort by:  ⦿ Make  ○ Model  ○ Type  ○ Barrel Length  ○ Caliber  ○ Exp Date

🔍 **FIND**

View list of handgun models whose status has changed recently:

- Recently Added Handgun Models, pdf
  Models added recently to the Roster of Handguns certified for sale.

- Recently Removed Handguns, pdf
  Handgun models whose certification has expired or otherwise removed from the Roster. These models may no longer be sold, offered for sale, or manufactured in California.

Objector Exhibit DD

1 of 1

Home    About    News    Careers    Contact    Programs A - Z

Search

**FIREARMS**

Firearms Home

California Firearms Laws
Summary Booklet, pdf
(revised 2016)

FAQs

Forms and Publications

Handgun Safety Certificate
Program

Regulations

Roster of Handguns
Certified for Sale

Roster of Firearm Safety
Devices Certified for Sale

Archive

Contact Us

# Roster of Handguns Certified for Sale

Handgun models will be removed from the roster on the list expiration date unless the manufacturer renews the listing prior to the list expiration date.

Search again

Showing all records matching **Bersa (Industria Argentina)**
The matching records list is sorted by Expiration Date
This list is valid for **Thursday, May 05, 2016**

| Model | Gun Type | Barrel Length | Caliber | Exp Date |
|---|---|---|---|---|
| Firestorm 380 / 4140 Steel; Alloy | Pistol | 3.5" | .380 ACP | 1/1/2017 |

Search again

Return to the DOJ Bureau of Firearms web page

DECISIONS PENDING & OPPORTUNITIES FOR PUBLIC PARTICIPATION |    ACCESSIBILITY |
CHANGE TEXT SIZES |    PRIVACY POLICY |    CONDITIONS OF USE |    DISCLAIMER |    SUBSCRIBE |    © 2015 DOJ

Objector Exhibit EE

____ of ____
1       1

You are here: <u>California</u> / <u>Penal Code - PEN</u> / <u>CHAPTER 1.3. Unsafe◻Handguns [12125. - 12133.]</u> / <u>Section 12131.</u>

Section 12131. (Amended (as amended by Stats. 2002, Ch. 912) by Stats. 2006, Ch. 71, Sec. 1.)
**Cite as:** Cal. Penal Code §12131.

(a)On and after January 1, 2001, the Department of Justice shall compile, publish, and thereafter maintain a roster listing all of the pistols, revolvers, and other firearms capable of being concealed upon the person that have been tested by a certified testing laboratory, have been determined not to be unsafe handguns, and may be sold in this state pursuant to this title. The roster shall list, for each firearm, the manufacturer, model number, and model name.

(b)(1)The department may charge every person in this state who is licensed as a manufacturer of firearms pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code, and any person in this state who manufactures or causes to be manufactured, imports into the state for sale, keeps for sale, or offers or exposes for sale any pistol, revolver, or other firearm capable of being concealed upon the person in this state, an annual fee not exceeding the costs of preparing, publishing, and maintaining the roster pursuant to subdivision (a) and the costs of research and development, report analysis, firearms storage, and other program infrastructure costs necessary to implement this chapter.

(2)Any pistol, revolver, or other firearm capable of being concealed upon the person that is manufactured by a manufacturer who manufactures or causes to be manufactured, imports into the state for sale, keeps for sale, or offers or exposes for sale any pistol, revolver, or other firearm capable of being concealed upon the person in this state, and who fails to pay any fee required pursuant to paragraph (1), may be excluded from the roster.

(3)If a purchaser has initiated a transfer of a handgun that is listed on the roster as not unsafe, and prior to the completion of the transfer, the handgun is removed from the roster of not unsafe handguns because of failure to pay the fee required to keep that handgun listed on the roster, the handgun shall be deliverable to the purchaser if the purchaser is not otherwise prohibited from purchasing or possessing the handgun. However, if a purchaser has initiated a transfer of a handgun that is listed on the roster as not unsafe, and prior to the completion of the transfer, the handgun is removed from the roster pursuant to subdivision (f), the handgun shall not be deliverable to the purchaser.

(c)The Attorney General may annually retest up to 5 percent of the handgun models that are listed on the roster described in subdivision (a).

(d)The retesting of a handgun model pursuant to subdivision (c) shall conform to the following:

(1)The Attorney General shall obtain from retail or wholesale sources, or both, three samples of the handgun model to be retested.

(2)The Attorney General shall select the certified laboratory to be used for the retesting.

(3)The ammunition used for the retesting shall be of a type recommended by the manufacturer in the user manual for the handgun. If the user manual for the handgun model makes no ammunition recommendation, the Attorney General shall select the ammunition to be used for the retesting. The ammunition shall be of the proper caliber for the handgun,

Are you an Attorney? <u>Click here for Ideas to promote your practice</u>

Objector Exhibit FF

1 of 2

commercially available, and in new condition.

(e)The retest shall be conducted in the same manner as the testing prescribed in Sections 12127 and 12128.

(f)If the handgun model fails retesting, the Attorney General shall remove the handgun model from the roster maintained pursuant to subdivision (a).

(g)A handgun model removed from the roster pursuant to subdivision (f) may be reinstated on the roster if all of the following are met:

(1)The manufacturer petitions the Attorney General for reinstatement of the handgun model.

(2)The manufacturer pays the Department of Justice for all of the costs related to the reinstatement testing of the handgun model, including the purchase price of the handguns, prior to reinstatement testing.

(3)The reinstatement testing of the handguns shall be in accordance with subdivisions (d) and (e).

(4)The three handgun samples shall be tested only once for reinstatement. If the sample fails it may not be retested.

(5)If the handgun model successfully passes testing for reinstatement, and if the manufacturer of the handgun is otherwise in compliance with this chapter, the Attorney General shall reinstate the handgun model on the roster maintained pursuant to subdivision (a).

(6)The manufacturer shall provide the Attorney General with the complete testing history for the handgun model.

(7)Notwithstanding subdivision (c), the Attorney General may, at any time, further retest any handgun model that has been reinstated to the roster.


Search this site:

Search   Google™
Custom Search

OCLAW.ORG - California Legal Reference
Copyright 2009-2015. No claims made to original government works.

Objector Exhibit FF

2 of 2

You are here: California / Penal Code - PEN / CHAPTER 1.3. Unsafe☐Handguns [12125. - 12133.] / Section 12128.

**Section 12128.** (Added by Stats. 1999, Ch. 248, Sec. 1.)
**Cite as:** Cal. Penal Code §12128.

Are you an Attorney?
**Click here for Ideas to promote your practice**

As used in this chapter, the "drop safety requirement for handguns" means that at the conclusion of the firing requirements for handguns described in Section 12127, the same certified independent testing laboratory shall subject the same three handguns of the make and model for which certification is sought, to the following test:

A primed case (no powder or projectile) shall be inserted into the chamber. For pistols, the slide shall be released, allowing it to move forward under the impetus of the recoil spring, and an empty magazine shall be inserted. For both pistols and revolvers, the weapon shall be placed in a drop fixture capable of dropping the pistol from a drop height of 1m + 1cm (39.4 + 0.4 in.) onto the largest side of a slab of solid concrete having minimum dimensions of 7.5 × 15 × 15 cm (3 × 6 × 6 in.). The drop distance shall be measured from the lowermost portion of the weapon to the top surface of the slab. The weapon shall be dropped from a fixture and not from the hand. The weapon shall be dropped in the condition that it would be in if it were dropped from a hand (cocked with no manual safety applied). If the design of a pistol is such that upon leaving the hand a "safety" is automatically applied by the pistol, this feature shall not be defeated. An approved drop fixture is a short piece of string with the weapon attached at one end and the other end held in an air vise until the drop is initiated.

The following six drops shall be performed:

(a)Normal firing position with barrel horizontal.

(b)Upside down with barrel horizontal.

(c)On grip with barrel vertical.

(d)On muzzle with barrel vertical.

(e)On either side with barrel horizontal.

(f)If there is an exposed hammer or striker, on the rearmost point of that device, otherwise on the rearmost point of the weapon.

The primer shall be examined for indentations after each drop. If indentations are present, a fresh primed case shall be used for the next drop.

The handgun shall pass this test if each of the three test guns does not fire the primer.

Search this site:

[                                    ] Search  Google™
Custom Search

Objector Exhibit G G

1 of 1

# Department of Justice Bureau of Firearms De-Certified Handgun Models



The following handgun model listings have expired and consequently have been removed from the DOJ Handgun Roster and may no longer be sold, manufactured, etc., within California unless such sale, manufacture, etc., is otherwise expressly allowed under

| Make | Model | Caliber | Type | Barrel Length | Date De-Certified |
|------|-------|---------|------|---------------|-------------------|
| Barsto | Bar Sto Precision / Stainless Steel, Polymer | .40 | Pistol | 5" | 1/1/2016 |
| Cobra Enterprises | C32 (Majestic Pink) / Alloy, Steel | .32 | Derringer | 2.4" | 1/1/2016 |
| Cobra Enterprises | C32B / Alloy, Steel | .32 ACP | Derringer | 2.4" | 1/1/2016 |
| Cobra Enterprises | C32S / Alloy, Steel | .32 ACP | Derringer | 2.4" | 1/1/2016 |
| Colt | O1070 NRA / Stainless Steel | .45 ACP | Pistol | 5" | 1/1/2016 |
| Colt | O1070XSE Government Model / Stainless Steel | .45 ACP | Pistol | 5" | 1/1/2016 |
| Colt | O1091 M1991A1 Ser 80 (Ame Eagle Old Glory Tribute) / Stainless Steel | .45 ACP | Pistol | 5" | 1/1/2016 |
| Colt | O1091 M1991A1 Ser 80 / Stainless Steel (matte) | .45 ACP | Pistol | 5" | 1/1/2016 |
| Colt | O1980XSE Government Model / Carbon Steel (blue) | .45 ACP | Pistol | 5" | 1/1/2016 |
| Colt | O1991 M1991A1 Ser 80 (Matte Blue) / Steel (matte blue) | .45 ACP | Pistol | 5" | 1/1/2016 |
| Colt | O1991AR (2nd Amend Founding Fathers) / Blue Steel | .45 ACP | Pistol | 5" | 1/1/2016 |
| Colt | O1991AR (Audie Murphy Tribute) / Blue Steel | .45 ACP | Pistol | 5" | 1/1/2016 |
| Colt | O1991AR (Brothers Forever Vietnam Tribute) / Blue Steel | .45 ACP | Pistol | 5" | 1/1/2016 |
| Colt | O1991AR (Chuck Norris Tribute) / Blue Steel | .45 ACP | Pistol | 5" | 1/1/2016 |
| Colt | O1991AR (D Day Tribute) / Blue Steel | .45 ACP | Pistol | 5" | 1/1/2016 |
| Colt | O1991AR (Elvis Presley) America Remembers / Blue Steel | .45 ACP | Pistol | 5" | 1/1/2016 |
| Colt | O1991AR (Fearless Defenders of Freedom) / Blue Steel | .45 ACP | Pistol | 5" | 1/1/2016 |
| Colt | O1991AR (George S. Patton Tribute) / Blue Steel | .45 ACP | Pistol | 5" | 1/1/2016 |

Objector Exhibit H H

1 of 6

| Make | Model | Caliber | Type | Barrel Length | Date De-Certified |
|---|---|---|---|---|---|
| Para USA (Para Ordnance) | DCX1445EN / Steel | .45 ACP | Pistol | 4.25" | 7/27/2014 |
| Para USA (Para Ordnance) | DCX1445ER / Steel | .45 ACP | Pistol | 4.25" | 7/27/2014 |
| Para USA (Para Ordnance) | DCX745E / Steel | .45 ACP | Pistol | 4.25" | 7/27/2014 |
| Para USA (Para Ordnance) | DCX745EL / Steel | .45 ACP | Pistol | 4.25" | 7/27/2014 |
| Para USA (Para Ordnance) | DCX745EN / Steel | .45 ACP | Pistol | 4.25" | 7/27/2014 |
| Para USA (Para Ordnance) | DX1445SL / Stainless Steel | .45 ACP | Pistol | 5" | 7/27/2014 |
| Para USA (Para Ordnance) | DX1445SN / Stainless Steel | .45 ACP | Pistol | 5" | 7/27/2014 |
| Para USA (Para Ordnance) | DX1445SR / Stainless Steel | .45 ACP | Pistol | 5" | 7/27/2014 |
| Para USA (Para Ordnance) | RX1445EL / Steel | .45 ACP | Pistol | 5" | 7/27/2014 |
| Para USA (Para Ordnance) | RX1445EN / Steel | .45 ACP | Pistol | 5" | 7/27/2014 |
| Para USA (Para Ordnance) | RX1445ER / Steel | .45 ACP | Pistol | 5" | 7/27/2014 |
| Smith & Wesson | 629-6 Classic DX SKU 163644 / Stainless Steel | .44 Magnum | Revolver | 6.5" | 7/26/2014 |
| Smith & Wesson | 629-6 Classic DX SKU 163646 / Stainless Steel | .44 Magnum | Revolver | 8.37" | 7/26/2014 |
| Smith & Wesson | 637-2  SKU 163050 / Alloy, Stainless Steel | .38 Spl | Revolver | 1.87" | 7/23/2014 |
| Taurus | PT92 Special / Stainless Steel, Steel | 9mm | Pistol | 5" | 7/22/2014 |
| Taurus | PT 940 (Blue) / Aluminum Alloy, Blued Steel | .40 S&W | Pistol | 3.625" | 7/18/2014 |
| Taurus | PT745 (Blue) / Blued Steel/Polymer | .45 ACP | Pistol | 3.25" | 7/18/2014 |
| Taurus | PT745 (Stainless) / Stainless Steel, Polymer | .45 ACP | Pistol | 3.25" | 7/18/2014 |
| Taurus | PT940 (Stainless) / Aluminum Alloy, Stainless Steel | .40 S&W | Pistol | 3.625" | 7/18/2014 |
| Smith & Wesson | 438 (Matte Black)  SKU 163438 / Alloy, Stainless Steel | .38 Spl | Revolver | 1.87" | 7/17/2014 |
| Smith & Wesson | 60-15  SKU 162430 / Stainless Steel | .357 Magnum | Revolver | 3" | 7/17/2014 |
| Smith & Wesson | 22A-1 Fluted Polished Barrel SKU 107438 / Stainless Steel, Alloy | .22 LR | Pistol | 7" | 7/11/2014 |
| Smith & Wesson | 57-5 SKU 161300 / Steel | .41 Magnum | Revolver | 4" | 7/11/2014 |

Objector Exhibit HH

2 of 6

| Make | | Model | Caliber | Type | Barrel Length | Date De-Certified |
|------|---|-------|---------|------|---------------|-------------------|
| Sturm, Ruger & Co. | | P4 / Blue Steel, Polymer | .22 LR | Pistol | 4" | 12/31/2011 |
| Sturm, Ruger & Co. | | P512 / Blue Steel, Polymer | .22 LR | Pistol | 5.5" | 12/31/2011 |
| Sturm, Ruger & Co. | | P678GC (22/45 Comp. Target) / Blue Steel, Polymer | .22 LR | Pistol | 6.87" | 12/31/2011 |
| Sturm, Ruger & Co. | | P89TH / Blue Steel, Alum. Alloy, Stainless Steel | 9mm | Pistol | 4.5" | 12/31/2011 |
| Sturm, Ruger & Co. | | P90 / Blue Steel, Alum. Alloy | .45 ACP | Pistol | 4.5" | 12/31/2011 |
| Sturm, Ruger & Co. | | P90TH / Blue Steel, Alum. Alloy, Stainless Steel | .45 ACP | Pistol | 4.5" | 12/31/2011 |
| Sturm, Ruger & Co. | | P944 / Blue Steel, Alum. Alloy | .40 S&W | Pistol | 4.2" | 12/31/2011 |
| Sturm, Ruger & Co. | | P944TH / Blue Steel, Alum. Alloy, Stainless Steel | .40 S&W | Pistol | 4.2" | 12/31/2011 |
| Sturm, Ruger & Co. | | KBSR9-10-L (Black) / Stainless Steel, Polymer | 9mm | Pistol | 4.14" | 12/16/2011 |
| Sturm, Ruger & Co. | | KODBSR9-10-L (Blk/Green) / Stainless Steel, Polymer | 9mm | Pistol | 4.14" | 12/16/2011 |
| Charter 2000 (Charter Arms) | | 53884 Undercover Lite (Orange/SS) Std / Aluminum, Stainless Steel | .38 Spl | Revolver | 2" | 7/1/2011 |
| Taurus | | PT24/7 (Blue 9mm) / Blue Steel, Polymer | 9mm | Pistol | 4" | 6/20/2011 |
| Taurus | | PT24/7 (Stainless 9mm) 1-247099 / Stainless Steel, Polymer | 9mm | Pistol | 4" | 6/20/2011 |
| Taurus | | PT911 (Stainless) / Aluminum Alloy, Stainless Steel | 9mm | Pistol | 4" | 6/20/2011 |
| Taurus | | PT24/7 (40 S&W) / Stainless Steel, Polymer | .40 S&W | Pistol | 4" | 6/16/2011 |
| Taurus | | PT24/7 (Blue 40 S&W) / Blued Steel, Polymer | .40 S&W | Pistol | 4" | 6/16/2011 |
| Taurus | | PT911 (Blue) / Blued Steel | 9mm | Pistol | 4" | 6/16/2011 |
| Browning | | Buck Mark Camper SS MS / Stainless Steel, Alloy | .22 LR | Pistol | 5.5" | 4/25/2011 |
| Browning | | Buck Mark Challenge SE MS / Steel, Alloy | .22 LR | Pistol | 5.5" | 4/25/2011 |
| Taurus | | PT111 (Gray/Blue) / Blue Steel, Polymer | 9mm | Pistol | 3" | 4/16/2011 |
| Taurus | | PT111 (Gray/Stainless) / Stainless, Polymer | 9mm | Pistol | 3" | 4/16/2011 |
| Sig Sauer, Inc. (Sauer, J.P. & Sons, Sig Arms) | | P6 (C.A.I.) / Steel, Alloy | 9mm | Pistol | 3.9" | 4/10/2011 |

Objector Exhibit H H

3 of 6

| Make | Model | Caliber | Type | Barrel Length | Date De-Certified |
|---|---|---|---|---|---|
| Browning | Buck Mark Camper MS FO Sight / Steel, Alloy | .22 LR | Pistol | 5.5" | 4/8/2011 |
| Browning | Buck Mark Micro Bull MS / Steel, Alloy | .22 LR | Pistol | 4" | 4/7/2011 |
| Browning | Buck Mark SE MS FLD PLUS RSWD UDX ADJ S / Steel, Alloy | .22 LR | Pistol | 5.5" | 4/7/2011 |
| Taurus | PT111 (Stainless) / Stainless, Polymer | 9mm | Pistol | 3" | 3/25/2011 |
| Taurus | PT140 (Stainless) / Stainless, Polymer | .40 S&W | Pistol | 3" | 3/25/2011 |
| Sturm, Ruger & Co. | KSP-831X / Stainless Steel | .38 Spl | Revolver | 3.06" | 3/12/2011 |
| Browning | Buck Mark 5.5 Target Cocabolo SE MS / Steel, Alloy | .22 LR | Pistol | 5.5" | 3/8/2011 |
| Browning | Buck Mark Plus Stainless UDX MS / Stainless Steel, Alloy | .22 LR | Pistol | 5.5" | 3/8/2011 |
| Browning | Buck Mark Standard SS MS / Stainless Steel, Alloy | .22 LR | Pistol | 5.5" | 3/8/2011 |
| Sturm, Ruger & Co. | KSP-3231X / Stainless Steel | .32 H&R Magnum | Revolver | 3.063" | 3/6/2011 |
| Beretta | 92FS Vertec (Black) / Steel, Stainless Steel, Alloy | 9mm | Pistol | 4.52" | 3/5/2011 |
| Browning | Buck Mark 5.5 Field Cocabolo SE MS / Steel, Alloy | .22 LR | Pistol | 5.5" | 3/5/2011 |
| Browning | Buck Mark Contour 5.5 Lite URX SE MS / Steel, Alloy | .22 LR | Pistol | 5.5" | 3/5/2011 |
| Browning | Buck Mark Contour 5.5 URX SE MS / Steel, Alloy | .22 LR | Pistol | 5.5" | 3/5/2011 |
| Browning | Buck Mark Contour 7.25 Lite URX SE MS / Steel, Alloy | .22 LR | Pistol | 7.25" | 3/5/2011 |
| Browning | Buck Mark LT Splash 5.5 URX FO MS / Steel, Alloy | .22 LR | Pistol | 5.5" | 3/5/2011 |
| Browning | Buck Mark LT Splash 7.25 URX FO SE MS / Steel, Alloy | .22 LR | Pistol | 7.25" | 3/5/2011 |
| Browning | Buck Mark Micro Standard SS URX MS / Stainless Steel, Alloy | .22 LR | Pistol | 4" | 3/5/2011 |
| Browning | Buck Mark Micro Standard URX SE MS / Steel, Alloy | .22 LR | Pistol | 4" | 3/5/2011 |
| Browning | Buck Mark Plus UDX SE MS / Steel, Alloy | .22 LR | Pistol | 5.5" | 3/5/2011 |
| Browning | Buck Mark Standard SS URX MS / Stainless Steel, Alloy | .22 LR | Pistol | 5.5" | 3/5/2011 |

Objector Exhibit _H H_

_4_ of _6_

| Make | | Model | Caliber | Type | Barrel Length | Date De-Certified |
|------|---|-------|---------|------|---------------|-------------------|
| Taurus | | PT111 (Blue w/night sight) / Blue Steel, Polymer | 9mm | Pistol | 3" | 1/19/2011 |
| Taurus | | PT111 (Blue) / Blue Steel, Polymer | 9mm | Pistol | 3" | 1/19/2011 |
| Taurus | | PT140 (Blue w/night sight) / Blue Steel, Polymer | .40 S&W | Pistol | 3" | 1/19/2011 |
| Taurus | | PT140 (Blue) / Blue Steel, Polymer | .40 S&W | Pistol | 3" | 1/19/2011 |
| Springfield Armory | | PX9181L (ambi safety) / Stainless Steel | .45 ACP | Pistol | 5" | 12/31/2010 |
| Springfield Armory | | PX9181L / Stainless Steel | .45 ACP | Pistol | 5" | 12/31/2010 |
| Sturm, Ruger & Co. | | RH-44 / Blue Steel | .44 Magnum | Revolver | 7.5" | 12/31/2010 |
| Sturm, Ruger & Co. | | RH-445 / Blue Steel | .44 Magnum | Revolver | 5.5" | 12/31/2010 |
| Sturm, Ruger & Co. | | RH-44R / Blue Steel | .44 Magnum | Revolver | 7.5" | 12/31/2010 |
| Wilson Combat | | CQB, Ambi, AT Tac Lt R1 (Blk) (WCQB-AL-CA) / Steel | .45 ACP | Pistol | 5" | 12/29/2010 |
| Taurus | | PT145P (Blue) / Blue Steel, Polymer | .45 ACP | Pistol | 3.3" | 12/8/2010 |
| Taurus | | PT145P (Stainless) / Stainless Steel, Polymer | .45 ACP | Pistol | 3.3" | 12/8/2010 |
| Taurus | | M22H SS (Raging Hornet) / Stainless Steel | .22 Hornet | Revolver | 10" | 11/2/2010 |
| Taurus | | PT24-7 (Two-Tone) / Stainless Steel | .45 ACP | Pistol | 4" | 10/26/2010 |
| Springfield Armory | | PB9162L / Carbon Steel | .45 | Pistol | 3.5" | 10/4/2010 |
| Taurus | | PT145 (Blue) / Blue Steel, Polymer | .45 ACP | Pistol | 3.3" | 10/3/2010 |
| Taurus | | PT145 (Stainless) / Stainless Steel, Polymer | .45 ACP | Pistol | 3.3" | 10/3/2010 |
| Taurus | | PT111P-CA (Blue) / Blued Steel/Polymer | 9mm | Pistol | 3.25" | 10/1/2010 |
| Taurus | | PT140P-CA (Blue) / Blued Steel/Polymer | .40 S&W | Pistol | 3.25" | 10/1/2010 |
| Taurus | | PT145P-CA (Blue) / Blued Steel/Polymer | .45 ACP | Pistol | 3.3" | 10/1/2010 |
| Springfield Armory | | XD9524 / Polymer, Stainless Steel | .45 GAP | Pistol | 4' | 9/26/2010 |
| Springfield Armory | | XD9525 / Polymer, Stainless Steel | .45 GAP | Pistol | 5" | 9/26/2010 |
| Springfield Armory | | PX9806L / Stainless Steel | .45 ACP | Pistol | 3" | 9/22/2010 |

Objector Exhibit HH

| Make | Model | Caliber | Type | Barrel Length | Date De-Certified |
|---|---|---|---|---|---|
| Sig Sauer, Inc. (Sauer, J.P. & Sons, Sig Arms) | P226R HSP / Stainless Steel, Alloy | .40 S&W | Pistol | 4.4" | 9/21/2010 |
| Sig Sauer, Inc. (Sauer, J.P. & Sons, Sig Arms) | P229R HSP / Stainless Steel, Alloy | .40 S&W | Pistol | 3.9" | 9/21/2010 |
| Springfield Armory | PX9105L / Blue Steel | .45 ACP | Pistol | 5" | 9/6/2010 |
| Springfield Armory | PX9505L / Alloy, Stainless Steel | 9mm | Pistol | 3.5" | 9/6/2010 |
| Springfield Armory | PX9808L / Blue Steel | .45 ACP | Pistol | 3" | 9/6/2010 |
| Browning | Hi-Power MKIII Fixed Sights / Steel | .40 S&W | Pistol | 4.66" | 9/4/2010 |
| Beretta | M9 "America's Defender" 20th Anniversary / Steel, Alloy | 9mm | Pistol | 4.9" | 8/24/2010 |
| Taurus | PT111P (Stainless) / Stainless | 9mm | Pistol | 3.25" | 8/23/2010 |
| Kimber | NRA Eclipse II / Stainless Steel | .45 ACP | Pistol | 5" | 8/16/2010 |
| Springfield Armory | PX9802L / Alloy, Stainless Steel | .45 ACP | Pistol | 3" | 8/13/2010 |
| Browning | Hi-Power Practical Fixed Sights / Stainless Steel, Steel | .40 S&W | Pistol | 4.66" | 8/12/2010 |
| Springfield Armory | PX9609L / Carbon Steel | .45 ACP | Pistol | 5" | 7/31/2010 |
| Browning | Hi-Power Practical Adj Sights / Steel | 9mm | Pistol | 4.66" | 7/26/2010 |
| Browning | Hi-Power Practical Fixed Sights / Steel | 9mm | Pistol | 4.66" | 7/26/2010 |
| Browning | Hi-Power Silver Chrome Fixed Sights / Steel | 9mm | Pistol | 4.66" | 7/26/2010 |
| Magnum Research | Desert Eagle Mark XIX DE44CA/blk oxide / Steel | .44 Magnum | Pistol | 6" | 7/19/2010 |
| Taurus | PT111P (Blue) / Blued Steel/Polymer | 9mm | Pistol | 3.25" | 7/18/2010 |
| Taurus | PT140P (Blue) / Blued Steel/Polymer | .40 S&W | Pistol | 3.25" | 7/18/2010 |
| Taurus | PT140P (Stainless) / Stainless Steel/Polymer | .40 S&W | Pistol | 3.25" | 7/18/2010 |
| Sturm, Ruger & Co. | MK4NRA / Blue Steel | .22 LR | Pistol | 4.75" | 7/10/2010 |
| Walther USA (Carl Walther) | PPK/S-1 (Crimson Trace) / Stainless Steel | .380 ACP | Pistol | 3.35" | 6/16/2010 |
| Walther USA (Carl Walther) | PPK/S-1 (Two-Tone) / Stainless Steel, Steel | .380 ACP | Pistol | 3.35" | 5/27/2010 |
| Walther USA (Carl Walther) | PPK/S-1 / Stainless Steel | .380 ACP | Pistol | 3.35" | 5/8/2010 |

Objector Exhibit H H

6 of 6

Case 1:13-cv-24583-PAS    Document 182    Entered on FLSD Docket 05/12/2016    Page 38 of 59

**RISK**
SETTLEMENTS

Login (http://45.56.127.109/)

Objector Exhibit ͞JJ͟

(http://risksettlements.com/)

__ of 3

## Class Action Settlement Insurance



Class action litigation (http://risksettlements.com/articles/white-paper-class-action-litigation) is one of the most powerful tools in the United States civil justice system and is affecting entire industries (http://risksettlements.com/articles/class-action-litigation-is-affecting-entire-industries). Being served with a class action lawsuit can, and probably should, jolt even the most hardened of company executives.

Class action litigation exposes companies to tremendous risks and uncertainty, including:

- Large financial liability.
- Increasing expenses to defend.
- Uncertain result and ultimate cost.
- Damage to brand reputation.
- Impaired liquidity and financial planning.

When resolving class litigation, companies face complications surrounding the recognition of the settlement on their financial statements stemming from uncertainty regarding the amount of payments to class members. This can lead to a significant reduction in earnings and impairment of the balance sheet (http://risksettlements.com/articles/class-action-litigation-financial-and-tax-reporting). Unfortunately, settlement is just another step down the road of uncertainty.

Risk Settlements has created the only post-lawsuit settlement insurance product specifically

Risk Settlements | Class Action Settlement Insurance                    http://risksettlements.com/class-action-settlement-insurance

designed to manage settlement risk, cap exposure and provide certainty to the uncertain world
of class action settlements.

Class Action Settlement Insurance is a revolutionary new tool to help companies stop the
expense and uncertainty of a class action lawsuit. With any claims-made settlement
(http://risksettlements.com/articles/common-vs-claims-made), there is always a great risk that
too much or even all of the potential amount available under the settlement will be paid out to
cover class claims. Class Action Settlement Insurance ("CASI") allows settling defendants to
shift the risk of a claims-made settlement to an insurer. A defendant settling a class action can
purchase the settlement insurance for a fixed premium based on the circumstances of the case
and settlement. The insurer will then step in and cover the cost of claims submitted under the
settlement. The insurer, not the settling company, assumes the risk that the settlement will end
up costing more than originally hoped.



CASI can be used in a variety of different class action cases (http://risksettlements.com/articles
/what-type-of-class-litigation-is-best-suited-for-insurance) including:

- Deceptive or fraudulent marketing allegations.
- Employee claims (unpaid overtime, wage and hour, benefits, etc.)
- Telephone Consumer Protection Act (TCPA) violations.
- Defective product claims.
- Breach of contract or breach of warranty claims.

Objector Exhibit JJ

2 of 3

**Approach**

We analyze the financial risks associated with class action litigation and design fully insured
settlements that reduce risk and cost. The process starts with a review of the risks and
opportunities arising from lawsuit allegations and the nature of the class. Using proprietary
analytics, statistics drawn from our historical settlement database and expertise, we identify
those factors that create excess risk and perpetuate waste, fraud and abuse. We work
seamlessly with our clients and their defense counsel to exit litigation at the lowest cost while
providing a tailored insurance solution to protect the balance sheet. This consulting is done
completely at our cost, with no risk to the company.

**CASI Solution**

Even well-designed settlements can have significant variability due to the uncertainty
surrounding the number of class members that file claims for benefits. Class Action Settlement
Insurance was developed to transfer that variability from the company to a global insurer. The
CASI policy is simple in its operation; in exchange for a fixed premium payment, the insurer
covers all valid claims made pursuant to the settlement agreement. Unlike traditional insurance
products, with CASI there are no gaps in coverage because the policy is tailored to each
individual settlement agreement. And the insurance is only purchased at the time the company



is sure to need it — after the litigation has been filed.

**Benefits**

Armed with our class action litigation expertise, extensive historical claims database, and proprietary algorithms, we assist companies in analyzing the risk, structuring the settlement and insuring risk. Using our unique approach and innovative risk transfer solution, we have saved companies millions of dollars while providing the following additional benefits:

- Certainty as to the actual settlement costs.
- Preservation of shareholder equity.
- Mitigates financial impact of settlement and improves liquidity.
- Improves pathways to resolution ending expensive litigation.
- Risk transfer removing impediments for M&A transactions and financing.
- Financial security of a large A-rated A.M. Best insurer.

---

## More Products & Solutions →

(http://risksettlements.com/our-products-services)

---

Get In Touch

(214) 570-3661 (tel:(214) 570-3661)
info@risksettlements.com
(mailto:info@risksettlements.com)

**in** (https://www.linkedin.com
/company/risk-
settlements?trk=top_nav_home)

Visit Us

6900 N. Dallas Parkway
Suite 200
Plano, TX 75024
United States

Sign Up For Updates

Email Address    Sign Up

© Copyright 2016 Risk Settlements | Login (/admin)

Objector Exhibit JJ

3 of 3

# Contents

## Company information

| | |
|---|---|
| Capital composition | 1 |

## Individual financial statements

| | |
|---|---|
| Balance sheet - Assets | 2 |
| Balance sheet - Liabilities | 3 |
| Statement of income | 5 |
| Statement of comprehensive income | 6 |
| Statement of cash flows | 7 |
| **Statement of changes in shareholders' equity** | |
| Statement of changes in shareholders' equity (DMPL) – 01/01/2015–06/30/2015 | 8 |
| Statement of changes in shareholders' equity (DMPL) – 01/01/2014–06/30/2014 | 9 |
| Statement of added-value | 10 |

## Consolidated financial statements

| | |
|---|---|
| Balance sheet - Assets | 11 |
| Balance sheet - Liabilities | 12 |
| Statement of income | 14 |
| Statement of comprehensive income | 15 |
| Statement of cash flows | 16 |
| **Statement of changes in shareholders' equity** | |
| Statement of changes in shareholders' equity (DMPL) – 01/01/2015–06/30/2015 | 17 |
| Statement of changes in shareholders' equity (DMPL) – 01/01/2014–06/30/2014 | 18 |
| Statement of added-value | 19 |
| Performance comment | 20 |
| Notes to the financial statements | 38 |

## Opinions and Statements

| | |
|---|---|
| Special review report - Unqualified | 84 |
| Fiscal Council opinion or equivalent body | 86 |
| Statement of the Executive Officers on the Financial Statements | 87 |
| Statement of the Board Members on the Independent auditors' report | 88 |

**Performance comment**

| 2. Market value (thousand of reais) | | 2Q15 | Quarter | Year | 12 months |
|---|---|---|---|---|---|
| ON - FJTA3 | R$ | 16,963 | -38% | -69% | -82% |
| PN - FJTA4 | R$ | 15,486 | -52% | -71% | -85% |
| TOTAL | R$ | 32,450 | -45% | -70% | -84% |

8. Subsequent events

Objector Exhibit KK

8.1 New Capital Increase approved in an Annual Shareholders' Meeting

2 of 3

Annual Shareholders' Meeting held on July 15, 2015 approved a new proposal for the Company's Capital Increase in the amount of up to R$100,000,000.00, with minimum amount for approval of R$1,000,000.00, through issuance of up to 31,875,098 new common shares and 29,100,511 new preferred shares, being all nominative, registered and with no par value, at issuance price of R$1.64 per share, and a subscription bonus issued by the Company is an additional benefit to subscribers of each new share.

Detailed information on capital increase and issuance of subscription bonus may be found in the minutes of the Annual Shareholders' Meeting and Notice to Market on July 15, 2015, which were made available in CVM website and in website for the Company's investor relations.

The purpose of this capital increase is to strengthen the Company's capital structure, improve its financial ratios, permit compliance with short-term obligations related to working capital, and manage financial indebtedness. In addition, this capitalization also intends to bring in additional cash in order to replace disbursements made for lawsuit filed by Hunter Douglas N.V., as well as to provide necessary support funds in agreement entered into in proceeding Chris Carter v. Forjas Taurus, S.A. et. al.

Remember that capital increase approved in the Board of Directors' meeting held on April 28, 2015 was not homologated because it does not reach the minimum amount of R$50,000,000.00.

 8.2 Carter Case 

According to relevant fact disclosed on July 30, 2015, judge of the U.S. District Court for the Southern District of Florida granted a preliminary approval to the agreement in order to end lawsuit proposed against Taurus and its subsidiaries in the United States, Taurus Holdings, Inc. and Taurus International Manufacturing, Inc. (jointly with Taurus, the "Companies") denominated Chris Carter v. Forjas Taurus, S.A. et. al. This agreement, which does not imply a confession or admission of guilt regarding alleged faults in some pistols, provides for the payment of a certain amount for each pistol returned by owners that adhere to the agreement. This payment will be made by insurance company already contracted by the Company. In addition, the Company will offer an additional warranty to owners of pistols so that they may be subject to inspection at no costs and specific training and security material.

| Taurus | BMF& BOVESPA The New Stock Exchange | Index of shares with Distinguished Corporate Governance | Index of shares - Distinguished Tag Along | LEVEL 2 BMF&BOVESPA | FIJA3 LEVEL 3 BMF&BOVESPA | FIJA4 LEVEL 2 BMF&BOVESPA |
|---|---|---|---|---|---|---|

PAGE: 32 of 88

## Opinions and Statements / Statement of the Executive Officers on the Financial Statements

STATEMENT OF FORJAS TAURUS S.A. BOARD MEMBERS ON FINANCIAL STATEMENTS FOR THE 1ST SEMESTER OF 2015

Messrs. Marco Aurélio Salvany, Thiago Piovesan, Salésio Nuhs e Eduardo Rácz, Officers of Forjas Taurus S.A., company with head office at Avenida do Forte, 511, Vila Ipiranga, Porto Alegre, Rio Grande do Sul State (RS), enrolled in CNPJ under no. 92,781,335/0001-02, in compliance with provisions of items V and VI of Article 25 of CVM Instruction no. 480, of December 07, 2009, state that they have reviewed, discussed and agreed with Financial Statements of Forjas Taurus S.A. and consolidated companies for the period from January 01, 2015 to June 30, 2015.

Porto Alegre, August 13, 2015.

Marco Aurélio Salvany

CEO

Thiago Piovesan

CFO, IRO

Salésio Nuhs

Sales and Marketing Officer

Eduardo Rácz

COO

Objector Exhibit KK

3 of 3

```
 1    thought -- and there was nothing in the papers that addressed

 2    that suggestion that there was a side deal with an outfit

 3    called Risk Settlements.  I am not familiar with this outfit.

 4              MR. SELBY:  The Plaintiffs have no type of deal

 5    whatsoever.

 6              THE COURT:  Who is Risk Settlements?

 7              MR. MARINO:  Your Honor, I can address that.

 8              Risk Settlements provides consulting services in

 9    connection with Class action settlements.  Also at times

10    assisting in insurance settlements.

11              Risk Settlements, in this case, had been used by

12    Taurus as a consulting expert.  There has been no involvement

13    with Plaintiffs in terms of any kind of agreement or anything

14    of that nature with Risk Settlements.  Risk Settlements did not

15    knowing this deal.  There is no side deal.  They are simply a

16    consulting expert.

17              THE COURT:  So you consulted with them?

18              MR. MARINO:  I have consulted with them, Your Honor.

19              THE COURT:  Mr. Selby?

20              MR. SELBY:  No, not at all.

21              THE COURT:  Are you ever used Risk Settlements?

22              MR. SELBY:  No, Your Honor.

23              THE COURT:  Do you have a special relationship with

24    FedEx, a bulk -- I mean does Taurus?

25              Doctor Safir came up with a mean cost of mailing that
```

Objector Exhibit LL

l of l



Objector Exhibit _N_M_ __1__ of __1__

For Individuals    For Businesses    About Us    News & Insights    Investors    Careers

... / Insurance    / Products and Services    / Casualty



**Firearms Business Insurance Program**

**Overview**    **Program Administrator**

## Firearms Business Insurance Program

[Administered by Joseph Chiarello & Co, Inc .]

The Firearms Business Insurance Program provides insurance products to firearms enterprises of many types including: wholesalers and distributors, gunsmiths, retailers, indoor/outdoor ranges, instructors, reloaders, hunting and shooting clubs, preserves, ammunition and accessory manufacturers, trade groups, manufacturers and importers. The program is available in all states on an admitted basis.

**Contact Us**    >

**Related Topics**

**Casualty**

**Small to Midsize Business**

### Features & Benefits

- The program's liability protection can be paired with property coverage that responds to fire and burglary as well as business income losses

- Property limits and replacement cost can be tailored to meet an individual account's needs

- Exceptional claims and litigation support

### Coverage

- General Liability (with available limits of up to $1 million per occurrence and $2 million in the aggregate)

- Commercial Property

- Equipment Breakdown

- Commercial Inland Marine

- Commercial Crime

- Firearms Instructor's Liability

- Umbrella Liability (with available limits of up to $10 million)

About SGR
Practices
Our People

Our Clients
Publications
News and Events

Contact Us
Pro Bono
Careers

Search

# OUR CLIENTS

HOME   > OUR CLIENTS   >

PRINT      EMAIL

Representative Clients       Serving Our Clients

Adecco Group
AIG
The Archdiocese of Atlanta
Avianca
Blue Cross and Blue Shield of Florida, Inc.
Blue Bird Body Company
Branch Banking & Trust
Cox Enterprises
Emory University
Everbank
Federal Express
GEICO
Gerdau Ameristeel
The Home Depot
Innospec
Intermedix
International Olympic Committee

Kia Motor Company
Kumho Tires
Kyocera Mita
Morgan Crucible
Nationwide Insurance
Norfolk Southern
Novartis
The Quikrete Companies
Regions Bank
Republic National Distributing
Southwest Airlines
The St. Joe Company
Sunbelt Rental
SunTrust Banks
Telecommunications Systems

Objector Exhibit _NN_

1 of 1

Home

Copyright 2016, Smith, Gambrell & Russell, LLP

SGRLAW

Client Access
Site Map
Terms
Blogs



Solutions (http://www.prnewswire.com/knowledge-center/Knowledge-Center/Blog (http://blog.prnewswire.com/)News Releases (http://www.prnewswire.com/news/)Send a Release (https://p

See more news releases in
Banking & Financial Services (http://www.prnewswire.com/news-releases/financial-services-latest-news/banking-financial-services-list/)
Insurance (http://www.prnewswire.com/news-releases/financial-services-latest-news/insurance-list/)
Personnel Announcements (http://www.prnewswire.com/news-releases/general-business-latest-news/personnel-announcements-list/)

# Steven Schienvar Joins Risk Settlements as Managing Director

   

DALLAS, July 14, 2015 /PRNewswire/ -- Risk Settlements is proud to announce that Steven Schienvar has joined the company as a Managing Director. Prior to joining Risk Settlements, Steven spent 13 years at AIG in various positions including President of AIG's assumed reinsurance division (AIG Re) and EVP COO & Chief Risk Officer of AIG Risk Finance, an alternative solutions insurance group. "We are thrilled to have an industry veteran like Steven join our organization. His quantitative and qualitative underwriting expertise enables us to provide a higher level of risk assessment and more risk transfer options," says Joel Fineberg, co-founder.  "I'm very excited to join an innovative group that designed the nation's first post-loss class action settlement insurance product (CASI) available in the market place. Our proprietary algorithms, industry-leading database and unique approach to settlement design create effective solutions for companies facing intractable class action liability," said Schienvar.

About Risk Settlements:  Risk Settlements, the industry leader in class action settlements, evaluates settlement options and customizes the optimal settlement structure that reduces risk and translates into immediate cost savings. In order to lock in the savings, Risk Settlements designed CASI, which is the nation's only insurance product that transfers all the volatility associated with claims payments to a global A-rated insurer. By working with Risk Settlements, companies save money, cap risk and remove all financial volatility and uncertainty arising out of class action settlements. As of July 1, 2015, Risk Settlements has provided risk transfer for over $70M in class action settlement liability.  For more information on Risk Settlements or the CASI Product visit us at www.risksettlements.com (http://www.risksettlements.com/).

SOURCE Risk Settlements

Objector Exhibit O O

1 of 1

RELATED LINKS
http://www.risksettlements.com (http://www.risksettlements.com)

Objector Exhibit PP

1 of 1

www.taurusarmed.net/forums/taurus-product-problems/145905-my-pt-140-issue-7.html

🔍 bellows1 taurusarmed.net ☆  

10-08-2015, 09:22 AM                                                                                    #65

**Bellows1**

Senior Member



| Member #: | 47062 |
| Join Date: | Oct 2015 |
| Posts: | 565 |
| Liked: | 601 times |

Mine has been shipped. FedEx 2 day. Should be here tomorrow. Don't give up hope friends.



Share

🗨 Reply With Quote

# Financial statements

# Forjas Taurus S.A.

*December 31, 2013 and 2012*
with Independent Auditor's Report.

Objector Exhibit QQ

1 of 3

**Forjas Taurus S.A.**

Notes to financial statements (Continued)
December 31, 2013 and 2012
(In thousands of reais, unless otherwise stated)

## 29. Expenses by nature

The Company opted for presenting consolidated income statement by function.  As required by IFRS, the Company sets out below a detailed consolidated income statement by nature:

| | Consolidated | | Company | |
|---|---|---|---|---|
| | **2013** | **2012** | **2013** | **2012** |
| **Expenses by function** | | | | |
| Cost of goods sold | **(565,619)** | (434,237) | **(311,813)** | (275,683) |
| Selling expenses | **(126,341)** | (89,419) | **(47,399)** | (32,249) |
| General and administrative expenses | **(77,885)** | (60,730) | **(35,895)** | (32,594) |
| Other operating income (expenses) (Note 25) | **(30,806)** | (41,284) | **(8,155)** | (11,666) |
| | **(800,651)** | (625,670) | **(403,262)** | (352,192) |
| **Expenses by nature** | | | | |
| Depreciation and amortization | **(35,307)** | (31,241) | **(11,925)** | (11,810) |
| Personnel expenses | **(152,632)** | (144,686) | **(125,611)** | (115,274) |
| Raw materials and use and consumption materials | **(430,844)** | (337,089) | **(197,647)** | (165,197) |
| Freight | **(21,834)** | (13,600) | **(8,742)** | (10,850) |
| Commissions | **(27,478)** | (19,778) | **(6,357)** | (10,243) |
| Outsourced services | **(18,757)** | (15,378) | **(9,536)** | (11,317) |
| Advertising and promotion | **(14,741)** | (11,559) | **(1,894)** | (2,447) |
| Research and development | **(1,009)** | (2,992) | **(1,009)** | (2,986) |
| Amortization of intangible assets | **(986)** | (709) | **(803)** | (674) |
| Provision for loss on Renill notes | **(3,539)** | - | - | - |
| Product warranty expenses | **(32,273)** | (6,448) | **(19,541)** | (1,745) |
| Idle capacity | **(820)** | (1,337) | - | - |
| Provision for impairment of property, plant and equipment | - | (13,522) | - | - |
| Other expenses | **(60,431)** | (27,331) | **(20,197)** | (19,649) |
| | **(800,651)** | (625,670) | **(403,262)** | (352,192) |

Objector Exhibit QQ

2 of 3

www.x-rates.com/historical/?from=BRL&amount=1&date=2013-12-31

# X-RATES™

Objector Exhibit QQ

3 of 3

Home > Historic Lookup

**1.** Configure Converter



1 ▶

BRL - Brazilian Real





### HISTORIC LOOKUP

**1** Brazilian Real Rates table

Top 10

2013-12-31   Go!

Dec 31, 2013 17:00 UTC

| Brazilian Real | 1.00 BRL | inv. 1.00 BRL |
|---|---|---|
| US Dollar | 0.423370 | 2.362000 |
| Euro | 0.307321 | 3.253925 |
| British Pound | 0.255440 | 3.914810 |
| Indian Rupee | 26.189247 | 0.038184 |
| Australian Dollar | 0.474208 | 2.108779 |
| Canadian Dollar | 0.450139 | 2.221534 |
| Singapore Dollar | 0.534451 | 1.871079 |
| Swiss Franc | 0.377074 | 2.652002 |
| Malaysian Ringgit | 1.388143 | 0.720387 |
| Japanese Yen | 44.570589 | 0.022436 |

Alphabetical or    Dec 31, 20  7:00 UTC

Case 1:13-cv-24583-PAS   Document 182   Entered on FLSD Docket 05/12/2016   Page 52 of 59



**Location**
**KEL-TEC CNC**
**INDUSTRIES INC**
1505 Cox Road
Cocoa FL 32926
tel:   321-631-0068
fax:  321-631-1169

## 04 <sup>AUG</sup> <sub>2011</sub>  WARRANTY UPDATE: SECOND OWNER RESPONSIBILITIES

Hello from Kel-Tec!

We wanted to take a minute to update all of our Kel-Tec customers about what we term "second owner responsibilities" in regards to our lifetime warranty. Since the founding of Kel-Tec we've always had a lifetime warranty that technically applied to original owners only. We have never actually enforced this rule and would accept all Kel-Tec weapons under this lifetime warranty regardless of ownership.

As the years pass and more and more Kel-Tec weapons enter circulation, the cost of offering a blanket lifetime warranty increases drastically. To stave off some of these costs, we have officially decided to enforce our lifetime warranty, which applies only to the original owner of the firearm.

That said, all Kel-Tec owners may still enjoy great service, however if you are not the original owner we will ask that shipping be paid in addition to a flat $40.00 labor fee. Depending on the severity of the repair we may need to charge for parts as well. This applies only to those who are NOT the original owner of their weapon.

As a courtesy we have decided to grandfather those who have already been through the repair system as original owners. So if your weapon has already been in to us prior to this implementation, we will still treat you as the original owner even if you are not.

In order to prove original ownership we will need a copy of the bill of sale in the owner's name, or a copy of the form 4473 that was filled out with the firearm when it is sent in. Indication of the date of purchase must be included. If you have trouble obtaining these items, please call in to our customer service and we will see what can be done to help you.

As yet another courtesy, we may be able to reimburse up to $35.00 of shipping charges IF the difficulty can be duplicated by Kel-Tec (be sure you aren't limp-wristing before sending your weapon in) and the following criteria are met:

Shipping refund requests must be provided in writing, along with a copy of the original shipping receipt, and must accompany both the firearm and the bill of sale at the time of service. The firearm must meet Kel-Tec's criteria and be approved by the servicing gunsmith before eligibility will be considered.

Additionally, most FFL holders or licensed gunsmiths can ship a firearm back to the manufacturer via a US Mail one rate box for significantly less than a civilian can. We highly suggest going that route for sending weapons in as it is the least cost prohibitive.

If you have any questions please call our customer service at 321-631-0068 or 1-800-515-9983.

**Categories:** News

You must be logged in to post a comment.
click here to log in

Objector Exhibit RR



1 of 1

Case 1:13-cv-24583-PAS   Document 182   Entered on FLSD Docket 05/12/2016   Page 53 of 59

(/)



(/RETAIL HTTP://WWV
LOCATOR)

# ◑ REMINGTON 2 YEAR LIMITED WARRANTY





**Who and what is covered by this warranty and for how long?**

Remington warrants to you, the original purchaser of a new firearm, that for two years from the date of purchase in the United States or Canada, your Remington firearm will be free from defects in material and workmanship.

**What will Remington do if you discover a defect?**

If you make a claim within the warranty period following the instructions given in this warranty, we will, at our option, repair the defect(s), or replace the firearm at no cost to you. If we send you a new firearm, we will keep the defective one.

**What must you do to make a claim under this warranty?**

First, when you purchase your firearm, you must complete and mail the warranty registration card to us. Then, if you discover a defect, you must notify us or an authorized Remington warranty repair center before the end of the two-year period. You may either call or write to Remington at:

Remington Arms Company, LLC
Consumer Service Department
870 Remington Drive
P.O. Box 700
Madison, NC 27025-0700
(800) 243-9700

Objector Exhibit SS

\_\_ of \_\_

**PLEASE DO NOT RETURN FIREARMS TO THE ABOVE ADDRESS.**

If we decide that it is necessary for you to return the firearm to the factory or an authorized warranty repair center, the sender must prepay freight. We will not accept C.O.D. shipments.

**What is not covered by this warranty?**

# Blue Book of Gun Values

Home   Media ▼   Products ▼   FFL Solutions   Company ▼   Information & Services ▼   Subscriptions ▼

## How To Use This Online Subscription

Change Letter Section ▼

Feedback
How To Use
More Information
View Collection
Photo Percentage
Grading System
Search



NEW!

SHOTGUN

TRUE-SCALE

Thank you for your interest in an online subscription with current value information on your firearm(s). Information on most makes/models is now provided free of charge, so please check the listings carefully before purchasing. If you purchase firearms values for the entire *Blue Book of Gun Values* database, your subscription will be for either one, two, or three years. If you decide to buy pricing information on an individual manufacturer or trademark, you will get all the values within this listing, and you have 5 days of access time. Values for individual models are also available, and again, you have 5 days of access.

If you decide to purchase the information and values for a specific make/model, the most important thing is to make sure you pick the correct model or submodel. Simply read the model names and descriptions carefully (images are also provided in some cases) to ensure that your selection is the one that you want.

Up-to-date values are listed by percentages of original condition remaining. Please refer to the Photo Percentage Grading System™ on how to accurately determine condition, including conversions to NRA Grading Standards. In a few cases value ranges are given based on condition factors. To ensure that you get the right value, please ascertain the correct grade and look under the corresponding percentage/condition factor for your gun's retail value.

The values listed in the *Blue Book of Gun Values* online subscription are based on national average retail prices for both modern and antique firearms, and some important accessories/accoutrements may also be included. This is not a firearms wholesale pricing guide. More importantly, do not expect to walk into a gun/pawn shop or gun show and think that the proprietor/dealer/collector should pay you the retail price listed within this text for your gun(s). Resale offers on many models could be anywhere from near retail to 20%-50% less than the values listed, depending upon locality, desirability, dealer inventory, and profitability. In other words, if you want to receive 100% of the price (retail value) then you have to do 100% of the work (become the retailer, which also includes assuming 100% of the risk).

Pricing lines that have an MSR value indicate currently manufactured items with the current manufacturer's suggested retail price. 100% values on currently manufactured guns may reflect

Objector Exhibit __ of __

**Add to Collection**

## PT-140 MILLENNIUM PRO

.40 S&W cal., similar to Model PT-140 Millennium, except has SA/DA trigger, current mfg. has Heinie Straight 8 sights, improved ergonomics, Posi-Traction slide serrations, recessed magazine release, manual safety lever, trigger block mechanism, firing pin block, and lightweight frame. 23 1/2 oz. Mfg. 2003-2012.



courtesy Taurus

View Historic Prices

| Grading | 100% | 98% | 95% | 90% | 80% | 70% | 60% |
|---------|------|-----|-----|-----|-----|-----|-----|
|         | $395 | $345 | $300 | $260 | $220 | $195 | $175 |

Last MSR was $483.

**Add $78 for night sights (disc. 2004).**

---

**Add to Collection**

### PT-140 Millennium Pro Stainless

similar to Model PT-140 Millennium Pro, except has stainless steel slide. Mfg. 2003-2012.



courtesy Taurus

Objector Exhibit 11

2 of 4

View Historic Prices

| Grading | 100% | 98% | 95% | 90% | 80% | 70% | 60% |
|---------|------|-----|-----|-----|-----|-----|-----|
|         | $415 | $350 | $310 | $280 | $240 | $210 | $185 |

Last MSR was $498.

**Add $78 for night sights (disc. 2004).**

## PT-111 Millennium Pro Stainless

**Add to Collection**

similar to Model PT-111 Millennium Pro, except has stainless steel slide. Mfg. 2003-2012.



courtesy Taurus

View Historic Prices

| Grading | 100% | 98% | 95% | 90% | 80% | 70% | 60% |
|---|---|---|---|---|---|---|---|
| | $395 | $330 | $285 | $260 | $210 | $170 | $135 |

Last MSR was $483.

**Add $78 for night sights (mfg. 2004).**

---

## PT-111 Ti Millennium Pro Titanium

**Add to Collection**

similar to Model PT-111 Millennium Pro, except has titanium slide and 3 dot sights, 16 oz. Mfg. 2005-2011.

View Historic Prices

| Grading | 100% | 98% | 95% | 90% | 80% | 70% | 60% |
|---|---|---|---|---|---|---|---|
| | $525 | $480 | $425 | $375 | $325 | $280 | $230 |

Last MSR was $655.

Objector Exhibit 11
3 of 4

**Add to
Collection**

## PT-24/7

9mm Para., .40 S&W. or .45 ACP (new 2005) cal., DAO, SFO, large black polymer frame with blued steel or satin stainless steel slide. 4 in. barrel with 3-dot sights. grips have Ribber grip overlays. 10, 12 (.45 ACP cal.), 15 (.40 S&W cal.), or 17 (9mm Para. cal.) shot mag., built-in Picatinny rail system on bottom of frame, includes 3 safeties. 27 1/2 oz. Mfg. late 2004-2005.



*courtesy Taurus*

*courtesy Taurus*

View Historic Prices

| Grading | 100% | 98% | 95% | 90% | 80% | 70% | 60% |
|---|---|---|---|---|---|---|---|
| | $450 | $395 | $345 | $295 | $260 | $225 | $195 |

Last MSR was $578.

**Add $16 for stainless steel.**

Objector Exhibit 11

4 of 4

**STEVEN A GLAVIANO**

609 West William David Parkway
Suite 102
Metairie, LA 70005
Office: (504) 835-8887
Fax:    (504) 835-3024
TrustGroup@aol.com

May 10, 2016


Clerk of Court, USDC
Southern District of Florida
U.S. Courthouse
400 North Miami Avenue
Miami, FL  33128


Re:   Carter v Forjas Taurus S. A., et al.
      **Case No. 1:13-CV-24583-PAS**

Dear Sirs:

Enclosed for filing please find
**OBJECTION TO FINAL SETTLEMENT APPROVAL.**


Sincerely,


Steven A Glaviano

SG/mbs

ORIGIN ID:MSYA      (504) 833-8887
STEVEN GLAVIANO

609 W WILLIAM DAVID PKWY
SUITE 102
METAIRIE, LA 70005
UNITED STATES US

SHIP DATE: 10MAY16
ACTWGT:
CAD: 308600009/INET3732

BILL CREDIT CARD

TO  CLERK OF COURT
    SOUTHERN DISTRICT OF FLORIDA
    400 NORTH MIAMI AVENUE

    MIAMI FL 33128
(305) 523-5100              REF:
INV:
PO:                    DEPT:




Express



THU - 12 MAY 10:30A
MORNING 2DAY
DSR
33128
FL-US  MIA

TRK#
0201  7763 0659 8345

SH MPBA

