IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| CHRIS P. CARTER,<br>Individually and on behalf of all<br>others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>FORJAS TAURUS S.A.,<br>TAURUS INTERNATIONAL<br>MANUFACTURING, INC., and<br>TAURUS HOLDINGS, INC.,<br><br>*Defendants*. | Case No. 1:13-cv-24583-PAS<br><br>**CLASS ACTION** |

**Plaintiff's Additional Submission in Support of
Motion for Final Approval of Class Action Settlement (DE 147) and
<u>Motion for Attorneys' Fees, Costs, and Service Award (DE 148)</u>**

**Introduction**

As the Court will recall, at the January 20, 2016 final approval hearing the Court heard extensive argument from counsel for the parties, and from Objectors Scheffler (by videoconference) and Glaviano (in person), regarding all aspects of the proposed settlement. The Court expressly overruled Scheffler's and Glaviano's objections (Hr'g Tr. 68, Jan. 20, 2016 (DE 168)) and concluded that the settlement was fair and adequate. *See Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir. 1984) (setting forth factors for analyzing fairness of proposed class settlement). (DE 168. at 69.) However, the Court continued the hearing so that additional class notice could be provided regarding the scope of the release, potential limitations on shipping firearms into certain states, and the terms of enhanced warranty. (DE 167, Order of Jan. 21, 2016.)

1

Also at the hearing, Plaintiff's economic valuation expert, Dr. Andrew Safir, testified that the overall value of the settlement to the class was approximately $239 million. (DE 168 at 81 and DE 169-1.) That figure was comprised of the $135 million total value of the replacement class pistols, the $30 million cash component, and the shipping costs of $74 million. (DE 168at 77-81.)

As the Court allowed in its January 21, 2016 order, Plaintiff respectfully provides this additional submission in support of final settlement approval and Plaintiff's request for attorneys' fees and costs. As stated below, (1) the administrator has provided the supplemental class notice; (2) the proposed fee award represents less than 3.8% of the total settlement value, a reasonable award by any measure, including under district and circuit precedent; (3) given the safety concerns implicated in the settlement, the Court should grant final approval as soon as possible; and (4) the mediator has provided a declaration in support of the proposed settlement.

### The Administrator Has Provided the Supplemental Class Notice

Pursuant to the Court's order (DE 167), the parties prepared a Supplemental Notice addressing the scope of the Release, explaining any possible limitations on the shipment of firearms into certain states, and clarifying the terms of the Enhanced Warranty. (DE 174.) Following Court approval (DE 175), the Administrator immediately began implementation of the Supplemental Notice Program. The Administrator utilized the same methodologies employed in the First Notice Program, including peer-accepted strategies for identifying target class-member demographics and selecting the most appropriate traditional, digital and social media platforms, for reaching those individuals. (Exhibit 1, Finegan Decl. ¶¶16-28.)

The Supplemental Notice ran as directed in four daily newspapers and seven national magazines with combined circulation of over 22.5 million households and 134.5 million readers.

(*Id. ¶¶* 19-22.)  The Administrator also used algorithmic technology to place online ads in three main forms: "banners" on websites most likely to be visited by members of the class; on search engines linked to associated keywords; and on Facebook. (*Id. ¶¶* 24-26.) The Administrator supplemented these efforts with a multi-media news release, and tallied 535 earned media mentions and more than 9,700 social media engagements through June 28. (*Id. ¶* 28.)  The Administrator also continued to operate a toll-free telephone hotline and maintain the official settlement website. (*Id. ¶* 29-31.)

The combination of traditional, online, mobile, social and reached approximately 86% of the targeted audience, with an average frequency of five times, while the hundreds of news mentions and thousands of social media shares achieved an even greater reach. (*Id*. ¶ 33.) According to the Administrator, the notice campaigns in this case "rank among the most robust in the last few years[,]" met "the highest modern communication standards," and were "consistent with the best practicable court approved notice programs in similar matters and the Federal Judicial Center's guidelines concerning appropriate reach." (*Id*.)  After two robust notice campaigns, there were only six objectors and four opt-outs (*Id*. ¶ 32.) — approximately .001046% of the 955,796 class members served.

The Supplemental Notice Program, designed to assuage the Court's concerns at the first final approval hearing, was the "best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12, (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, (1950)).

## The Requested Attorneys' Fees Amount to
## Less than 3.8% of the Value of the Settlement

In the Eleventh Circuit, a fee of less than 25% of the total value of the settlement is presumptively reasonable. *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 775 (11th Cir. 1991). The total value of a settlement includes injunctive and other nonmonetary relief. *See Poertner v. Gillette Co.,* 618 F. App'x 624, 628-30 (11th Cir. 2015), *cert. denied sub nom. Frank v. Poertner*, 136 S. Ct. 1453 (2016); *see also Camden I*, 946 F.2d at 775 (recognizing "non-monetary benefits" as a "pertinent factor" in fee analysis); *Saccoccio v. JP Morgan Chase Bank, N.A.,* 297 F.R.D. 683, 695 (S.D. Fla 2014) (holding that value of injunctive relief "should play a major part" in fee analysis). The Court should consider the total value of the relief available to the class, even if the value of claims made is substantially less. *See Poertner,* 618 F. App'x at 626, 628 (awarding $5.68 million fee where cash claims made totaled only $344,850); *see also Waters v. Int'l Precious Metals Corp.*, 1980 F.3d 1291, 1296, 1298 (11th Cir. 1999) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 477 (1980)) (approving fee based on $40 million total value of settlement, despite district court's prediction that "actual dollars paid out" would be "substantially less"); *Saccoccio*, 297 F.R.D. at 695 ("The attorneys' fees in a class action can be determined based upon the total fund, not just the actual payout to the class.").

As stated above, the total value of the settlement to class members, exclusive of attorneys' fees and costs, is $239 million. The $9 million fee Plaintiff requests is less than 3.8% of the total settlement value, an abundantly reasonable number in light of the circumstances. The Defendants do not dispute these amounts or the testimony of Plaintiff's economic expert.

**In the interest of public safety, Plaintiff requests the Court
Issue a final approval order as soon as possible.**

A critical benefit of this settlement is the removal of deadly, defective products from the stream of commerce, but that can only occur once the final approval order is entered and any appeals are concluded. Unfortunately, any delay in the proceedings brings a risk of more deaths or injuries. To illustrate this point, the following timeline shows the number of known deaths or serious injuries involving the Class Pistols, including at least two serious injuries while the settlement has awaited final approval:[1]

| | |
|---|---|
| February 14, 2005 | Adam M. was seriously injured from unintended discharge of Taurus PT-111. |
| April 30, 2009 | Craig P. was seriously injured from unintended discharge of Taurus PT-111. |
| November 24, 2009 | Judy P. was seriously injured from unintended discharge of Taurus PT-140. |
| February 18, 2011 | Scott A. was seriously injured from unintended discharge of Taurus PT-140. |
| December 20, 2013 | *Class Action Filed*. |
| February 18, 2014 | Jason F. was seriously injured from unintended discharge of Taurus 24/7. |
| May 1, 2014 | Nelson M. died of injuries resulting from unintended discharge of Taurus 24/7. |
| October 2, 2014 | Zachary D. was seriously injured from unintended discharge of Taurus PT-140. |
| October 21, 2014 | Nicholas A. was seriously injured from unintended discharge of Taurus 24/7. |

---

[1] This timeline represents only those unintended discharges of Class Pistols of which Class Counsel has personal knowledge and may not encompass all unintended discharges of Class Pistols. (Exhibit 2, Selby Decl.)

5

| | |
|---|---|
| November 7, 2014 | William P. was seriously injured from unintended discharge of Taurus PT-111. |
| November 9, 2014 | Karen M. was seriously injured from unintended discharge of Taurus PT-145. |
| February 15, 2015 | DJS (Minor) died from injuries resulting from unintended discharge of Taurus PT-609. |
| May 15, 2015 | *Class Settlement Agreement*. |
| November 21, 2015 | Rudy E. was seriously injured from unintended discharge of Taurus PT-745. |
| January 19, 2016 | *First Final Approval Hearing*. |
| April 15, 2016 | Richard A. was seriously injured from unintended discharge of Taurus PT-111. |

There can be no doubt that final approval of this settlement will save lives. These unique and compelling circumstances weigh in favor of the swiftest resolution possible.

**The Mediator Agrees the Settlement is Fair, Adequate and Reasonable**

Prior to reaching the proposed settlement, the parties participated in six in-person mediation sessions with Rodney Max, an experienced and certified mediator in the Southern District of Florida. Relying on his "complete understanding of the full range of the dispute, the respective positions of the parties, the relative strengths and weaknesses of those positions, as well as the risks, rewards, and costs of continued litigation," Mr. Max has prepared a declaration reflecting his belief that the settlement is "fair, reasonable, and adequate." (Exhibit 3, Max Decl. ¶ 22, 26.)

Specifically, Mr. Max notes that the settlement negotiations, while "professionally conducted," were "difficult" and "quite adversarial." (*Id.* ¶ 18.) He observed counsel's "considerable work" and careful analysis of the case's value in light of "strongly disputed legal

6

claims, defenses and damages issues." (*Id.* ¶¶ 19-21.) He confirms the parties' assertions that there were no discussions of attorneys' fees or incentive awards until the substantive terms of the settlement were resolved. (*Id.* ¶ 23.) And he opines that in light of the "complexity of this matter and the significant relief obtained," counsel's fee request is "in line with the amounts approved by federal courts as being fair and reasonable in . . . litigation such as this." (*Id.* ¶ 28.)

Although the Court must make its own determination, Mr. Max's neutral and veteran assessment weighs heavily in favor of final approval.

## Conclusion

For these reasons, as well as the reasons set forth in Plaintiff's previous submissions for final approval and approval of Plaintiff's attorneys' fee, Plaintiff respectfully requests final approval of the proposed Settlement.

Respectfully submitted, this 7th day of July, 2016.

> */s/ David L. Selby, II*
> David L. Selby, II (*Admitted Pro Hac Vice*)
> BAILEY & GLASSER, LLP
> 3000 Riverchase Galleria, Suite 905
> Birmingham, Alabama 35244
> Tel.:   (205) 988-9253
> Fax:   (205) 733-4896
> Email: dselby@baileyglasser.com
>
> John W. Barrett (*Admitted Pro Hac Vice*)
> Eric B. Snyder (*Admitted Pro Hac Vice*)
> Patricia M. Kipnis (*Admitted Pro Hac Vice*)
> BAILEY & GLASSER, LLP
> 209 Capitol Street
> Charleston, West Virginia  25301
> Tel.:   (304) 345-6555
> Fax:   (304) 342-1110
> Email: jbarrett@baileyglasser.com
>            esnyder@baileyglasser.com
>            pkipnis@baileyglasser.com

Marc R. Weintraub (FBN: 119976)
BAILEY & GLASSER, LLP
360 Central Avenue
St. Petersburg, Florida 33701
Tel.: (727) 894-6745
Fax: (727) 894-2649
Email: mweintraub@baileyglasser.com

Todd Wheeles (*Admitted Pro Hac Vice*)
MORRIS, HAYNES, HORNSBY & WHEELES
3500 Colonnade Parkway, Suite 100
Birmingham, AL 35243
Tel.: (205) 324-4008
Fax: (205) 324-0803
Email: twheeles@mhhlaw.net

Angelo Marino, Jr. (FBN: 151934)
ANGELO MARINO, JR., P.A.
645 S.E. 5th Terrace
Ft. Lauderdale, Florida 33301
Tel.: (954) 765-0537
Email: amjrpamail@aol.com

Carol Finklehoffe (FBN: 15903)
Thomas Scolaro (FBN: 178276)
Ira H. Leesfield (FBN: 140270)
LEESFIELD & PARTNERS, P.A.
2350 South Dixie Highway
Miami, Florida 33131
Tel.: (305) 854-4900
Email: finklehoffe@leesfield.com
          scolaro@leesfield.com
          leesfield@leesfield.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify on July 7, 2016, I caused a true and correct copy of the foregoing to be served to the following parties via U.S. Mail, email, fax, and/or overnight courier:

Stephen D. Field, Esq.
Stephen D. Field, P.A.
102 E. 49th Street
Hialeah, FL 33013
Tel.: (305) 698-3421
Fax: (305) 698-1930
Email: steve@field-law.com
Attorney for Objector Pennington

Troy Kenneth Scheffler
965 104th Ave. NW
Coon Rapids, Minnesota 55433

Dean McAdams
8574 San Vicente Drive
Yucca Valley, CA 92284

Richard Louis Jordan
2056 Walnut Creek Drive
Flint, Michigan 48532

Steven A. Glaviano
609 W. William David Pkwy
Suite 102
Metairie, Louisiana 70005

Michael Reamy
P.O. Box 957
Cuero, TX 77954

I further certify that the foregoing has been filed with the Clerk using the Court's CM/ECF system, which will provide notification of and make available the same to all counsel of record.

/s/ *David L. Selby, II*
David L. Selby, II